UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL BOARDLEY,<br>11532 Quay St. NW, Coon Rapids,<br>MN 55433<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR; NATIONAL PARK SERVICE; DIRK KEMPTHORNE, Secretary of the U.S. Department of Interior, in his official and individual capacities; MARY BOMAR, Director of the National Park Service, in her official and individual capacities, ERNIE QUINTANA, Midwestern Regional Director of the National Park Service, in his official and individual capacities; GERARD BAKER, Superintendent of Mt. Rushmore National Monument, in his official and individual capacities; MIKE PFLAUM, Chief Ranger of Mt. Rushmore National Monument, in his official and individual capacities,<br><br>      Defendants. | CIV NO. _____<br><br><br><br>Case: 1:07-cv-01986<br>Assigned To : Robertson, James<br>Assign. Date : 11/2/2007<br>Description: TRO/PI |

## VERIFIED COMPLAINT

Michael Boardley, Plaintiff, through his counsel, alleges the following causes of action against Defendants.

### I.
### INTRODUCTION

1. This is a civil rights action to protect the First Amendment rights of an individual to distribute tracts in a public forum. Defendants unlawfully restrict these rights by policies and practices, which involve content-based and viewpoint discrimination, constitute a

1

prior restraint, and are vague. These constitutional defects give rise to both facial and as-applied constitutional challenges to Defendants' discriminatory policies and practices.

## II.
## JURISDICTION AND VENUE

2. This action raises federal questions under the United States Constitution, particularly violations of the Free Speech and Free Exercise Clauses of the First Amendment, violations of equal protection and due process under the Fifth Amendment, as well as federal questions under the Religious Freedom Restoration Act, 42 U.S.C. § 2000(bb) et. seq. ("RFRA"); these claims are properly challenged pursuant to federal law, particularly 28 U.S.C. §§ 1331; 1346; 2201 – 2202.

3. This court has original jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331 and 1346.

4. This Court has authority to grant the requested injunctive and declaratory relief under 28 U.S.C. §§ 2201 – 2202; attorney's fees and costs under 28 U.S.C. § 2412 and the Equal Access to Justice Act; and damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

5. Venue is proper in the U.S. District Court for the District of Columbia under 28 U.S.C. § 1391(e), because a Defendant resides within the District of Columbia.

## III.
## IDENTIFICATION OF PLAINTIFF

6. Plaintiff Michael Boardley is and was at all times relevant to this Complaint a resident of Coon Rapids, Minnesota.

7. Mr. Boardley is a professing Christian, and he believes it is his Christian duty and privilege to inform others about the Gospel of Jesus Christ.

8. Mr. Boardley hands out gospel tracts in public areas because of his sincerely held religious beliefs concerning Christianity.

## IV.
## IDENTIFICATION OF DEFENDANTS

9. The United States Department of Interior is an executive department of the U.S. government. It is headed by a Secretary and has the responsibility, among others, to

manage public parks and public lands. It oversees multiple governmental bureaus, one of which is the National Park Service.

10. The National Park Service is a bureau within the United States Department of the Interior. It works to preserve the natural and cultural resources and values of the national park system, which includes the Mount Rushmore National Memorial ("Mt. Rushmore"). It is headed by a Director, and the organization consists of a headquarters office, as well as regional offices, including the Midwest Region.

11. Defendant Dirk Kempthorne is, and was at all times relevant to this Complaint, the Secretary of the Interior for the U.S. Department of the Interior. The Secretary is charged, with the responsibility, among others, of overseeing the governmental administration of national monuments, national memorials, and national parks, including Mt. Rushmore in Keystone, South Dakota.

12. Defendant Mary Bomar is, and was at all times relevant to this Complaint, the Director of the National Park Service. Among other things, she is charged with the responsibility of administering governmental policies concerning national parks, including Mt. Rushmore.

13. Defendant Ernie Quintana is, and was at all time relevant to this Complaint, the Midwestern Regional Director of the National Park Service. Among other things, he is charged with the responsibility of administering governmental policies concerning Mt. Rushmore, among other national parks and monuments in the Midwest.

14. Defendant Gerard Baker is, and was at all times relevant to this Complaint, the Superintendant of Mt. Rushmore for the National Park Service. He is charged with oversight of the Mt. Rushmore monument and park area.

15. Defendant Mike Pflaum is, and was at all times relevant to this Complaint, the Chief Ranger of Mt. Rushmore for the National Park Service. He is charged, among other duties, with granting or denying free speech permits and overseeing the free speech permit process.

16. Each defendant is sued in his or her official and individual capacities.

## V.
## STATEMENT OF FACTS

17. On August 9, 2007, Mr. Boardley and a few other individuals traveled to Mt. Rushmore to hand out free gospel tracts.

18. They distributed the tracts beside the "Alley of Flags," an open section with walkways for visitors after visitors gain entrance to the Mt. Rushmore National Memorial facility.
19. They distributed the tracts that day without incident or comment from park officials.
20. The next day, August 10, 2007, in the same location Mr. Boardley and the other individuals continued to hand out free gospel tracts.
21. Mr. Boardley was not engaging in any loud, consistent speech.
22. Mr. Boardley was not using any amplification.
23. Mr. Boardley was distributing the tracts by offering them to passersby.
24. Mr. Boardley did not attempt to force his tracts on anyone who did not wish to take one.
25. Mr. Boardley was approached by Park Ranger L. Hanson.
26. Ranger Hanson told Mr. Boardley that unless he had a free speech permit to be in the free speech zone he would not be allowed to distribute the gospel tracts.
27. The free speech zone is an area reserved for expression of free speech and is contained within a section of the Mt. Rushmore visitor complex, between and near to the visitor parking lots and the main entrance area.
28. This free speech zone is approximately 50 feet by 30 feet in area.
29. Ranger Hanson told Mr. Boardley in order to obtain a free speech permit he needed to call a certain phone number, which was available on the Mt. Rushmore website, to request one.
30. Ranger Hanson told Mr. Boardley that there is a two-day waiting period for free speech permits.
31. After Mr. Boardley returned to Minnesota, he called the office in order to request a permit, and he left two messages.
32. A park official returned his call and asked for some information from Mr. Boardley, such as his name and address.
33. There was no application form given to Mr. Boardley to fill out personally.
34. The park official said she would mail a free speech permit to him.
35. Mr. Boardley, however, to date has not received a permit or a denial of permit from any park official regarding his request.
36. On October 2, 2007, Boardley called park official Nancy Marteens and left a voicemail requesting an additional new permit for a different date.

37. Ms. Marteens returned his call and told Mr. Boardley to contact Chief Ranger Mike Pflaum, Defendant, regarding a permit.

38. Ms. Marteens also said she would forward Mr. Boardley's request to Defendant Pflaum.

39. Mr. Boardley called Defendant Pflaum and requested a permit.

40. To date, Mr. Boardley has not received a permit or a denial of permit from Defendant Pflaum or any other official regarding his October 2nd request, or his previous requests.

41. Mr. Boardley desires to return to Mt. Rushmore to exercise his First Amendment rights, including distributing gospel tracts.

42. Defendants' regulations, policies and practices, however, are preventing him from doing so.

43. Defendants knew or should have known that denying Mr. Boardley permits or other access to speak at Mt. Rushmore clearly violates Mr. Boardley's constitutional rights.

44. One of Mr. Boardley's associates, Mark Oehrlein, experienced similar problems obtaining a free speech permit in July of 2006.

45. Mr. Oehrlein brought tracts to distribute at no charge at Mt. Rushmore.

46. Mr. Oehrlein asked a park ranger about doing so, and the park ranger said he needed a permit to distribute tracts.

47. Mr. Oehrlein went to the office to request a permit and was told by park staff to return later in the day.

48. Mr. Oehrlein returned at the requested time and was told that they "ran out of permits."

49. Mr. Oehrlein called the next morning about his request for a permit and was told by park staff to come back to the office.

50. Mr. Oehrlein came back and a park official asked him why he wanted a permit.

51. Mr. Oehrlein responded that he wanted to distribute tracts about the Gospel and Christianity.

52. The park official told Mr. Oehrlein that he "didn't like that" and that he would have to speak with Defendant Pflaum.

53. However, Mr. Oehrlein was told that Defendant Pflaum was at the dentist that day.

54. Mr. Oehrlein then called the South Dakota Governor's office to complain about the issue, but when he received no meaningful response to his complaint, he gave up trying to obtain a free speech permit.

55. Like Mr. Boardley, Mr. Oehrlein desires to return to Mt. Rushmore to exercise his First Amendment rights, including distributing gospel tracts.

56. Defendants' regulations, policies and practices, however, are preventing him from doing so.

### Challenged Regulations & Policies

57. The following regulations apply to public expression at Mount Rushmore: 36 C.F.R. §§ 2.51 – 2.52 (2007). These regulations often use the same language.

58. The former regulation states:

**2.51 Public assemblies, meetings.**

(a) Public assemblies, meetings, gatherings, demonstrations, parades and other public expressions of views are allowed within park areas, provided a permit therefore has been issued by the superintendent.

(b) An application for such a permit shall set forth the name of the applicant; the date, time, duration, nature and place of the proposed event; an estimate of the number of persons expected to attend; a statement of equipment and facilities to be used and any other information required by the permit application form.

(c) The superintendent shall, without unreasonable delay, issue a permit on proper application unless:

> (1) A prior application for a permit for the same time and place has been made that has been or will be granted and the activities authorized by that permit do not reasonably allow multiple occupancy of that particular area; or
>
> (2) It reasonably appears that the event will present a clear and present danger to the public health or safety; or
>
> (3) The event is of such nature or duration that it cannot reasonably be accommodated in the particular location applied for, considering such things as damage to park resources or facilities, impairment of a protected area's atmosphere of peace and tranquility, interference with program activities, or impairment of public use facilities.

(d) If a permit is denied, the applicant shall be so informed in writing, with the reason(s) for the denial set forth.

(e) The superintendent shall designate on a map, that shall be available in the office of the superintendent, the locations available for public assemblies. Locations may be designated as not available only if such activities would:

> (1) Cause injury or damage to park resources; or

    (2) Unreasonably impair the atmosphere of peace and tranquility maintained in wilderness, natural, historic or commemorative zones; or

    (3) Unreasonably interfere with interpretive, visitor service, or other program activities, or with the administrative activities of the National Park Service; or

    (4) Substantially impair the operation of public use facilities or services of National Park Service concessioners or contractors; or

    (5) Present a clear and present danger to the public health and safety.

(f) The permit may contain such conditions as are reasonably consistent with protection and use of the park area for the purposes for which it is established. It may also contain reasonable limitations on the equipment used and the time and area within which the event is allowed.

(g) No permit shall be issued for a period in excess of 7 days, provided that permits may be extended for like periods, upon a new application, unless another applicant has requested use of the same location and multiple occupancy of that location is not reasonably possible.

(h) It is prohibited for persons engaged in activities covered under this section to obstruct or impede pedestrians or vehicles, or harass park visitors with physical contact.

(i) A permit may be revoked under any of those conditions, as listed in paragraph (c) of this section, that constitute grounds for denial of a permit, or for violation of the terms and conditions of the permit. Such a revocation shall be made in writing, with the reason(s) for revocation clearly set forth, except under emergency circumstances, when an immediate verbal revocation or suspension may be made to be followed by written confirmation within 72 hours.

(j) Violation of the terms and conditions of a permit issued in accordance with this section may result in the suspension or revocation of the permit.

59.    The latter regulation states:

**36 C.F.R. § 2.52 Sale or distribution of printed matter.**

(a) The sale or distribution of printed matter is allowed within park areas, provided that a permit to do so has been issued by the superintendent, and provided further that the printed matter is not solely commercial advertising.

(b) An application for such a permit shall set forth the name of the applicant, the name of the organization (if any), the date, time, duration, and location of the proposed sale or distribution, the number of participants, and any other information required by the permit application form.

(c) The superintendent shall, without unreasonable delay, issue a permit on proper application unless:

> (1) A prior application for a permit for the same time and location has been made that has been or will be granted and the activities authorized by that permit do not reasonably allow multiple occupancy of the particular area; or

> (2) It reasonably appears that the sale or distribution will present a clear and present danger to the public health and safety; or

> (3) The number of persons engaged in the sale or distribution exceeds the number that can reasonably be accommodated in the particular location applied for, considering such things as damage to park resources or facilities, impairment of a protected area's atmosphere of peace and tranquility, interference with program activities, or impairment of public use facilities; or

> (4) The location applied for has not been designated as available for the sale or distribution of printed matter; or

> (5) The activity would constitute a violation of an applicable law or regulation.

(d) If a permit is denied, the applicant shall be so informed in writing, with the reason(s) for the denial set forth.

(e) The superintendent shall designate on a map, which shall be available for inspection in the office of the superintendent, the locations within the park area that are available for the sale or distribution of printed matter. Locations may be designated as not available only if the sale or distribution of printed matter would:

> (1) Cause injury or damage to park resources; or

> (2) Unreasonably impair the atmosphere of the peace and tranquility maintained in wilderness, natural, historic, or commemorative zones; or

> (3) Unreasonably interfere with interpretive, visitor service, or other program activities, or with the administrative activities of the National Park Service; or

> (4) Substantially impair the operation of public use facilities or services of National Park Service concessioners or contractors.

> (5) Present a clear and present damage to the public health and safety.

(f) The permit may contain such conditions as are reasonably consistent with protection and use of the park area for the purposes for which it is established.

(g) No permit shall be issued for a period in excess of 14 consecutive days, provided that permits may be extended for like periods, upon a new application, unless another applicant has requested use of the same location and multiple occupancy of that location is not reasonably possible.

(h) It is prohibited for persons engaged in the sale or distribution of printed matter under this section to obstruct or impede pedestrians or vehicles, harass park visitors with physical contact or persistent demands, misrepresent the purposes or affiliations of those engaged in the sale or distribution, or misrepresent whether the printed matter is available without cost or donation.

(i) A permit may be revoked under any of those conditions, as listed in paragraph (c) of this section, that constitute grounds for denial of a permit, or for violation of the terms and conditions of the permit. Such a revocation shall be made in writing, with the reason(s) for revocation clearly set forth, except under emergency circumstances, when an immediate verbal revocation or suspension may be made, to be followed by written confirmation within 72 hours.

(j) Violation of the terms and conditions of a permit issued in accordance with this section may result in the suspension or revocation of the permit.

60. Mt. Rushmore maintains policies and practices under the authority of the above challenged regulations.

61. Mt. Rushmore maintains policies and practices regarding a free speech zone permit scheme to control free speech on memorial grounds, based on the challenged regulations described in ¶¶ 58 – 59.

## VI.

### STATEMENT OF LAW

62. At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to the Defendants who acted under color of a statute, regulation, custom, or usage of the United States of America.

63. Speech, including religious speech, is entitled to comprehensive protection under the First Amendment of the U.S. Constitution.

64. The free speech zone at Mt. Rushmore is a traditional public forum.

65. At minimum Mt. Rushmore is a designated public forum, since Defendants have opened it up for expressive use.

66. Regardless of the type of forum (traditional, designated, limited, or nonpublic), the government may not discriminate based upon the viewpoint expressed by the speaker.

67. Mr. Boardley challenges Defendants' policies restricting speech both on their face and as-applied.

68. Defendants' policies restricting speech in public fora are unconstitutional on their face and as applied because they impermissibly restrict expression, involve content-based and viewpoint discrimination, are vague, are prior restraints, are overbroad, and grant government officials unfettered discretion in the restriction of speech.

69. Defendants' practices concerning the free speech zone in the public forum at Mount Rushmore are unconstitutional as applied because they impermissibly restricts speech, involve content-based and viewpoint discrimination, are vague, are prior restraints, are overbroad, and grant government officials unfettered discretion in the restriction of speech.

70. Defendants knew or should have known that denying Mr. Boardley a permit or other access to speak at Mt. Rushmore is clear violation of his constitutional rights.

71. Because Mr. Boardley has been, and is being, prevented from exercising his First Amendment rights at Mt. Rushmore, he is suffering irreparable injury from the challenged policies of Defendants which cannot be fully compensated by an award of money damages.

## VII.

### FIRST CAUSE OF ACTION:

### VIOLATION OF THE RIGHT TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

72. Mr. Boardley realleges all matters set forth in the preceding paragraphs and incorporates them herein.

73. Defendants' regulation, 36 C.F.R. § 2.52, and its corresponding policies and practices as applied to Mr. Boardley constitute impermissible content- and viewpoint-based restrictions on constitutionally protected expression in public fora.

74. Defendants' regulation, 36 C.F.R. § 2.52, and its corresponding policies and practices do not serve compelling governmental interests, are not narrowly tailored, and do not leave open ample alternative channels of communication.

75. Defendants' regulations, 36 C.F.R. §§ 2.51 – 2.52, and their corresponding policies and practices, are facially unconstitutional as violative of the First Amendment's free speech protections.

76. Defendants' regulations, 36 C.F.R. §§ 2.51 – 2.52, and their corresponding policies and practices, are impermissibly overbroad and restrict more speech than is necessary.

77. Defendants' regulations, 36 C.F.R. §§ 2.51 – 2.52, and their corresponding policies and practices, are impermissible prior restraints on Mr. Boardley's expression in violation of his rights to freedom of speech.

78. Defendants' regulations, 36 C.F.R. §§ 2.51 – 2.52, and their corresponding policies and practices, are not content-neutral time, place, and manner restrictions on speech.

79. Defendants' regulations, 36 C.F.R. §§ 2.51 – 2.52, and their corresponding policies and practices, are not content-neutral, are not narrowly tailored to serve a significant governmental interest, and do not leave open ample alternative channels of communication.

80. Defendants' regulations, 36 C.F.R. §§ 2.51 – 2.52, and their corresponding policies and practices, vest unfettered discretion in the Defendants to restrict constitutionally protected speech in public fora.

WHEREFORE, Mr. Boardley respectfully requests that the Court grant the relief set forth hereinafter in the prayer for relief.

## VIII.

### SECOND CAUSE OF ACTION:

### VIOLATION OF THE RIGHT TO FREE EXERCISE OF RELIGION UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

81. Mr. Boardley realleges all matters set forth in the preceding paragraphs and incorporates them herein.

82. Laws which burden the free exercise of religion must be neutral and generally applicable.

83. Mr. Boardley's distribution of gospel tracts in the free speech zone is motivated by his sincerely held religious beliefs.

84. Defendants effectively prohibited Mr. Boardley from handing out gospel tracts at Mt. Rushmore, which is a public forum.

85. Defendants' policy and practice of unconstitutionally administering their free speech permit policy substantially burdens Mr. Boardley's free exercise of his religion without compelling or rational justification.

86. Defendants' policy and practice of refusing to respond to Mr. Boardley's requests for a free speech permit substantially burdens the exercise of Mr. Boardley's religion without compelling or rational justification.

87. Defendants' policy and practice of prohibiting Mr. Boardley from obtaining a free speech permit, by refusing to respond to Mr. Boardley's requests, substantially burdens the exercise of Mr. Boardley's religion without compelling or rational justification.

88. Defendants' policy and practice of utilizing an unconstitutionally vague free speech permit scheme substantially burdens Mr. Boardley's free exercise of religion without compelling or rational justification.

WHEREFORE, Mr. Boardley respectfully requests that the Court grant the relief set forth hereinafter in the prayer for relief.

## IX.

## THIRD CAUSE OF ACTION:

## VIOLATION OF THE RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

89. Mr. Boardley realleges all matters set forth in the preceding paragraphs and incorporates them herein.

90. Defendants' regulations, 36 C.F.R. §§ 2.51 – 2.52, and their corresponding policies and practices, constitute violations of the right to due process of law under the Fifth Amendment to the U.S. Constitution.

91. Defendants' regulations, 36 C.F.R. §§ 2.51 – 2.52, requiring permits to be granted "without unreasonable delay," are vague, lack defining terms, and allow for unbridled governmental discretion, as shown by Defendants' continuing failure to respond to Mr. Boardley's requests.

92. Defendants' exceptions to the granting of a permit where "[i]t reasonably appears that the sale or distribution will present a clear and present danger to the public health and safety" are vague, lack defining terms, and allow for unbridled governmental discretion.

93. Defendants' regulations, 36 C.F.R. §§ 2.51 – 2.52, are vague, lack defining terms, and allow for unbridled governmental discretion. For example, impermissible vagueness is found in the following subsections:

> (e) The superintendent shall designate on a map, which shall be available for inspection in the office of the superintendent, the locations within the park area that are available for the sale or distribution of printed matter. Locations may be designated as not available only if the sale or distribution of printed matter would:
>
> (1) Cause injury or damage to park resources; or
>
> (2) Unreasonably impair the atmosphere of the peace and tranquility maintained in wilderness, natural, historic, or commemorative zones; or
>
> (3) Unreasonably interfere with interpretive, visitor service, or other program activities, or with the administrative activities of the National Park Service; or
>
> (4) Substantially impair the operation of public use facilities or services of National Park Service concessioners or contractors.
>
> (5) Present a clear and present damage to the public health and safety.

94. Defendants' regulations, 36 C.F.R. §§ 2.51 – 2.52, which state that the "permit may contain such conditions as are reasonably consistent with protection and use of the park area for the purposes for which it is established" are vague, lack defining terms, and allow for unbridled governmental discretion.

WHEREFORE, Mr. Boardley respectfully requests that the Court grant the relief set forth hereinafter in the prayer for relief.

## X.

## FOURTH CAUSE OF ACTION:

## VIOLATION OF EQUAL PROTECTION UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

95. Mr. Boardley realleges all matters set forth in the preceding paragraphs and incorporates them herein.

96. Freedom of speech under the First Amendment is a fundamental right.

97. The Fifth Amendment requires that the government treat all similarly situated individuals equally.

98. Upon information and belief, Defendants allow similarly situated persons access to public ways at Mt. Rushmore to engage in speech, expression and conduct.

99. Defendants' practice of refusing to timely respond to Mr. Boardley's requests for a permit, but not refusing to respond to the requests of others, treats Mr. Boardley differently than other similarly situated individuals and groups on the basis of the content and viewpoint of his speech.

100. Defendants' practice of restricting Mr. Boardley's expression by not responding to his requests for a permit, but not so restricting other individuals or groups, treats Mr. Boardley differently than other similarly situated individuals and groups on the basis of the content and viewpoint of his speech.

101. Defendants do not have a compelling or legitimate governmental interest for such disparate treatment of Mr. Boardley's expression.

102. Therefore, Defendants' policy and practices comprise an unconstitutional and continuing interference and infringement upon the rights of Boardley to equal protection of the laws as guaranteed by the Fifth Amendment to the United States Constitution.

WHEREFORE, Mr. Boardley respectfully requests that the Court grant the relief set forth hereinafter in the prayer for relief.

## XI.

## FIFTH CAUSE OF ACTION:

## VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT, 42 U.S.C. § 2000(bb) et. seq.

103. Mr. Boardley realleges all matters set forth in the preceding paragraphs and incorporates them herein.

104. Federal laws such as Defendants' regulations, 36 C.F.R. §§ 2.51 – 2.52, are subject to RFRA, and federal laws which substantially burden one's exercise of religion, even if neutral and generally applicable, must be in furtherance of a compelling governmental interest and be the least restrictive means of furthering that interest.

105. Defendants' regulations, 36 C.F.R. §§ 2.51 – 2.52, and their corresponding policies and practices, substantially burden Mr. Boardley's exercise of religion.

106. Defendants cannot produce a compelling governmental interest for 36 C.F.R. §§ 2.51 – 2.52, and their corresponding policies and practices.

107. Defendants cannot demonstrate that 36 C.F.R. §§ 2.51 – 2.52, and their corresponding policies and practices, are the least restrictive means of furthering a compelling governmental interest.

WHEREFORE, Mr. Boardley respectfully requests that the Court grant the relief set forth hereinafter in the prayer for relief.

## XII.
## PRAYER FOR RELIEF

WHEREFORE, Mr. Boardley respectfully requests that the Court:

a) Assume jurisdiction over this action;

b) Declare that 36 C.F.R §§ 2.51 – 2.52, and their corresponding policies and practices as described in this Complaint, are unconstitutional and violative of RFRA on their faces because they violate the right to freedom of speech, the right of equal protection, the right to due process, and the right to free exercise of religion, which are guaranteed to Mr. Boardley under the Constitution of the United States and by operation of federal law;

c) Declare that Defendants' policies and practices under the authority of and relating to 36 C.F.R § 2.52, as described in this Complaint, are unconstitutional and violative of RFRA as applied to Boardley because they violate his right to freedom of speech, the right of equal protection, the right to due process, and the right to free exercise of religion, which are guaranteed to Boardley under the Constitution of the United States and by operation of federal law;

d) Issue a preliminary and permanent injunction against the Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf, from enforcing said policies and practices against Boardley and others for his/their participation in the activities described in this Complaint;

e) Grant to Mr. Boardley an award of attorneys fees in an amount deemed appropriate by this Court in accordance with the Equal Access to Justice Act;

f) Grant to Mr. Boardley an award of his costs of litigation in accordance with the Equal Access to Justice Act;

g) Grant to Mr. Boardley an award of nominal and compensatory damages in an amount deemed appropriate by this Court; and,

h) Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 2nd day of November, 2007.

By: /s/ Jordan W. Lorence
Jordan W. Lorence
ALLIANCE DEFENSE FUND

Jordan W. Lorence
D.C. Bar No. 385022
801 G. Street NW, Suite 509
Washington, D.C. 20001
Tel: (202) 637-4610
Fax: (202) 347-3622
jlorence@telladf.org

Kevin H. Theriot*
Kansas Bar No. 21565
W. Jesse Weins*
Kansas Bar No. 23127
15192 Rosewood
Leawood, Kansas 66224
Tel: (913) 685-8000
Fax: (913) 685-8001
ktheriot@telladf.org
jweins@telladf.org

Heather Gebelin Hacker*
California Bar No. 249273
101 Parkshore Drive, Suite 100
Folsom, California 95630
Tel: (916) 932-2850
Fax: (916) 932-2851
hghacker@telladf.org

Benjamin W. Bull+
Arizona Bar No. 009940
15100 N. 90th Street
Scottsdale, Arizona 85260
Tel: (480) 444-0020
Fax: (480) 444-0028
bbull@telladf.org

*Motions to permit appearances *pro hac vice* filed concurrently
+Of counsel, not admitted in this jurisdiction

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29th day of October, 2007.

_Michael Boardley_
Michael Boardley

Verification - 1

The Alliance Defense Fund
15333 N. Pima Rd., Suite 165
Scottsdale, AZ 85260

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

MICHAEL BOARDLEY

**DEFENDANTS**

UNITED STATES DEPARTMENT OF INTERIOR; NATIONAL PARK SERVICE; DIRK KEMPTHORNE; MARY BOMAR; ERNIE QUINTANA; GERARD BAKER; and MIKE PFLAUM

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Anoka - 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

SEE ATTACHED

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
● 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff))
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*   OR   ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ⊙ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. §§ 2201-2202, 2412, Bivens v. 6 Unknown Fed. Agents, 42 U.S.C. § 2000(bb) et. seq.; violations of 1st & 5th amends. to the U.S. Constitution.

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐

DEMAND $ _____  Check YES only if demanded in complaint

JURY DEMAND: YES ☐ NO ☒

## VIII. RELATED CASE(S) IF ANY

(See instruction) YES ☐ NO ☒  If yes, please complete related case form.

DATE Nov. 7, 2007  SIGNATURE OF ATTORNEY OF RECORD  *Jordan W. Lorence*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

CIVIL COVER SHEET ATTACHMENT, § 1(c):

Attorneys for plaintiffs:

Jordan W. Lorence
D.C. Bar No. 385022
801 G. Street NW, Suite 509
Washington, D.C. 20001
Tel: (202) 637-4610
Fax: (202) 347-3622
jlorence@telladf.org

Heather Gebelin Hacker*
California Bar No. 249273
101 Parkshore Drive, Suite 100
Folsom, California 95630
Tel: (916) 932-2850
Fax: (916) 932-2851
hghacker@telladf.org

Kevin H. Theriot*
Kansas Bar No. 21565
W. Jesse Weins*
Kansas Bar No. 23127
15192 Rosewood
Leawood, Kansas 66224
Tel: (913) 685-8000
Fax: (913) 685-8001
ktheriot@telladf.org
jweins@telladf.org

Benjamin W. Bull+
Arizona Bar No. 009940
15100 N. 90th Street
Scottsdale, Arizona 85260
Tel: (480) 444-0020
Fax: (480) 444-0028
bbull@telladf.org


*Motions to permit appearances *pro hac vice* filed concurrently
+Of counsel, not admitted in this jurisdiction