UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL BOARDLEY,<br><br>          Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>          Defendants. | Civil Action No. 07-1986 (JR) |

**REPLY IN SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. i

I. INTRODUCTION ........................................................................................................................ 1

     A. THERE IS A SUBSTANTIAL LIKELIHOOD THAT PLAINTIFF WILL SUCCEED ON THE MERITS OF HIS CLAIMS ................................................... 1

          1. Defendants' Regulations Are Not Reasonable Time, Place, or Manner Restrictions ................................................................................................. 2

     B. PLAINTIFF WILL NOT SUFFER IRREPARABLE INJURY IF AN INJUNCTION IS NOT GRANTED ................................................................. 7

     C. AN INJUNCTION WILL NOT SUBSTANTIALLY INJURE THE DEFENDANTS ................................................................................................. 9

II. CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*,
   418 F.3d 600 (6th Cir. 2005) ............................................................................... 7

*A Quaker Action Group v. Morton*, 516 F.2d 717 (D.C. Cir. 1975) ................................. 5

*Bantam Books v. Sullivan,* 372 U.S. 58 (1963) ................................................................ 2

\**Cmty. For Creative Non-Violence v. Turner*, 893 F.2d 1387 (D.C. Cir. 1990) ............. 7

\**Cox v. City of Charleston*, 250 F. Supp. 2d 582 (D.S.C. 2003) ..................................... 7

\**Douglas v. Brownell*, 88 F.3d 1511 (8th Cir. 1996) ....................................................... 7

*Elrod v. Burns,* 427 U.S. 347 (1976) ................................................................................ 7

\**Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ................................... 2

*FW/PBS Inc. v. City of Dallas*, 493 U.S. 215 (1990) ....................................................... 4

\**Grossman v. City of Portland,* 33 F.3d 1200 (9th Cir. 1994) ....................................... 7

*Knowles v. City of Waco*, 462 F.3d 430 (5th Cir. 2006) .................................................. 7

*N.A.A.C.P. v. Button*, 371 U.S. 415 (1963) ...................................................................... 7

*New York Times Co. v. United States*, 403 U.S. 713 (1971) ........................................... 2

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) ..................... 2

*Thomas v. Chicago Park District*, 534 U.S. 316 (2002) ................................................. 3

\**United States v. Frandsen*, 212 F.3d 1231 (11th Cir. 2000) ................................. 2, 4, 6

*United States v. Kistner*, 68 F.3d 218 (8th Cir. 1995) .............................................. 3, 4, 6

*United States v. Sued*, 143 F. Supp. 2d 346 (S.D. NY 2001) .......................................... 6

**Regulations**

\*36 C.F.R. §§2.51-2.52 (2007) ............................................................................... *passim*

\*Pursuant to LCvR7(a) counsel has placed asterisks to the left of those cases or authorities on which counsel chiefly relies.

I.  **INTRODUCTION**

Defendants have failed to carry their burden in proving that the regulations at issue are narrowly tailored to serve a significant government interest, leave open ample alternative channels of communication, and do not grant unfettered discretion to administrators.  In fact, Defendants hardly even address the issues of overbreadth, vagueness, and unfettered discretion. Plaintiff will suffer irreparable injury if the injunction is not granted because the regulations violate the First Amendment on their face, and Mr. Boardley was not given a permit despite multiple requests.  In fact, Defendants' current offer to give Mr. Boardley a permit if he fills out a proper application, even though he was never asked to do that before, seems litigation-motivated at best and does not mean Defendants will not stonewall Mr. Boardley or others again in the future.  The injunction will further the public interest, and an injunction will not substantially injure the Defendants, as they have other means at their disposal to serve their legitimate interests and have not explained why those means are inadequate. Thus, Plaintiff is entitled to a preliminary injunction.

    A.  **THERE IS A SUBSTANTIAL LIKELIHOOD THAT PLAINTIFF WILL SUCCEED ON THE MERITS OF HIS CLAIMS.**

Defendants assert that Plaintiff is not entitled to a preliminary injunction because their regulations have been upheld in other cases.  However, the cases cited by Defendants are clearly distinguishable and do not support their argument.  In a traditional public forum like a national park, the burden is on the government to show a significant state interest justifying the restriction on speech.  But the Defendants made no attempt to show why it is necessary for them to have such broad, sweeping regulations, which, read fairly, would indicate that an individual requires a permit to engage in any literature distribution or "public expression of views" at any national

1

park. There is no compelling interest to justify such a breathtakingly overbroad restriction on clearly protected First Amendment activity, and Defendants' regulations are facially infirm.

> 1. **Defendants' Regulations Are Not Reasonable Time, Place, or Manner Restrictions.**

In a traditional public forum, restrictions on speech must be (1) content neutral, (2) narrowly tailored to serve a significant government interest, *and* (3) leave open adequate alternative channels of communication. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Moreover, regulations requiring authorization from a public official before expressive activity may occur in an archetypical public forum are a prior restraint on speech. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992). Prior restraints bear a heavy presumption against their constitutionality. *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963). Thus, prior restraints have to meet the three part test for speech restrictions in a traditional public forum, *and also* a fourth requirement prohibiting delegation of overly broad discretion to a government official. *Forsyth County*, 505 U.S. at 130.

Permit requirements are prototypical examples of prior restraints, and the permit requirements of §2.51 and 2.52 are no exception. *See United States v. Frandsen*, 212 F.3d 1231, 1237 (11th Cir. 2000). But Defendants misstate the traditional public forum test, asserting that the government can place "reasonable restrictions on the time, place, or manner of protected speech, so long as ample alternative means of communication are left open." (Defs. Resp. Pl. App. Prelim. Inj. at 9). Because the freedoms at stake are so fundamental, in traditional public forums the government's regulation must meet all three requirements; if the regulation is a prior restraint, it must meet all four, and the government has the burden of proving that it does. *See New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam). Defendants' regulations cannot pass this stringent test because Defendants have failed to demonstrate that

2

their policies are narrowly tailored, do not leave open ample alternative channels of communication, and do not delegate unbridled discretion to government officials.

Defendants argue that *Thomas v. Chicago Park District*, 534 U.S. 316 (2002), supports their argument that their regulations are valid. However, the regulation at issue in *Thomas* is very different than those at issue here, since the Chicago regulation required permits only for demonstrations of *more than fifty people*. That is a far cry from the regulations here, which apply to as few as only one person passing out literature or "publicly expressing views." The Chicago regulation is more narrowly tailored to the significant government interest in coordinating multiple uses of limited space and preserving park facilities, since groups of fifty or more are large and have much more potential to disrupt the park or cause damage. Conversely, what danger is there for Mt. Rushmore if Mr. Boardley stands peacefully with a few friends and gives out gospel tracts?

Defendants also point out that the regulations at issue here, 36 C.F.R. §2.51 and §2.52, were upheld in *United States v. Kistner*, 68 F.3d 218 (8th Cir. 1995). But the facts in that case differ from the facts here, and the plaintiff in that case failed to raise a claim of overbreadth, which is being raised here. In *Kistner*, the plaintiff could have received a permit in approximately thirty-five minutes. *Id. at* 219. In the present case, Mr. Boardley would have had to wait two business days to obtain a permit. (Compl. ¶30; Defs. Resp. Pl. App. Prelim. Inj. at 4). In *Kistner*, the court was also convinced that there were ample alternatives, since the plaintiff wanted to distribute literature at the St. Louis arch, which is in an urban area and there were public sidewalks nearby which were available to the plaintiff. *Id.* at 222. Here, Mt. Rushmore is in a more isolated area, and there was nowhere else for Mr. Boardley to go to reach the same audience. But most crucially, the plaintiff in *Kistner* failed to raise an overbreadth argument in

opposition to the regulations, so the court did not rule on that issue. *Id.* at 220 n.5. Here, Mr. Boardley has contended that the regulations are overbroad on their face, as they apply to as few as one person and can apply to any "public expression of views." 36 C.F.R. §2.51. Finally, it should be noted that that the Eleventh Circuit later struck down the regulations at issue here because they grant too much discretion to park officials in *Frandsen*, 212 F.3d 1231.

In *Frandsen*, the court reviewed §2.51 on its face, as Mr. Boardley is also asking the court to do in this case. §2.51 does not define the time for permit processing on its face; thus, the Eleventh Circuit struck it down as vesting officials with too much discretion. *Id*. Whether or not the Park Service has additional policies beyond the Department of the Interior's §2.51 and 2.52 regulations should not matter in determining whether or not the DOI's regulations are invalid on their face. Moreover, even if we were to take the Park Service policy into account, it still gives a two business day window for permit processing, which is entirely too long, is overbroad, and acts to prevent speech from occurring.

Not many people linger at Mt. Rushmore for more than two business days. In this case, Mr. Boardley was told he needed a permit on Friday, August 10, 2006. (Boardley Decl. ¶3 [lodged]; Compl. ¶¶20-30). Even if he were permitted by park officials to apply for a permit on that day, which he was not, he would not have been able to return to use his permit until Wednesday, August 15, 2006. Where a permit scheme "creates a risk of delay, such that every application of the statute create[s] an impermissible risk of suppression of ideas," a prior restraint is invalid for overbreadth. *FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 223-24 (1990) (internal citations and quotations omitted). Here, because Mt. Rushmore is so isolated, and because visitors to National Parks, like Mr. Boardley, often come from far away, the two business day processing time risks the suppression of speech, as park officials can simply delay for the full

4

two business days if someone wishes to present speech they do not approve of, and that person may likely have to leave the park area before they get their permit. Moreover, the Defendants cannot show, and have made no attempt to show, why it is necessary to take two business days to process the application of an individual for a permit to distribute literature. If Mt. Rushmore staff can and do "expedite" simple permits, they did not do it for Mr. Boardley, even though he asked them to. Therein lies the problem with a regulation that does not readily ascribe a reasonable time limit—park officials can act quickly for speech they like, but act as slow as molasses when it comes to speech they would rather keep out of the park.

Defendants also make much of the D.C. Circuit's decision in *A Quaker Action Group v. Morton*, 516 F.2d 717 (D.C. Cir. 1975), finding that even though the regulations at issue there were prior restraints, they were acceptable on some grounds because they were narrowly tailored. *Id.* at 727. However, the regulations at issue in *Morton* applied to demonstrations in the immediate area of the White House, which clearly presents specific security and safety concerns that the regulations here do not. *Id.* Notably, the *Morton* court pointed out that the regulation's requirement of a permit for any "public gathering" was overbroad, *even though the term was defined in the regulation*:

> The problem is that the Park Service may have defined "public gathering" for enforcement purposes to mean only those public gatherings with expressive content. We inquired on this point at oral argument. Government counsel then took the position that a "public gathering" would be any group in which at least one person carried a sign or engaged in First Amendment activity. By contrast, counsel noted that a group of persons in the White House area would not be considered a "public gathering" if there were no manifestation of such expressive activity. Further, Government counsel put it that *even a single individual* constituted a "public gathering" by taking up a sign and marching in behalf of some cause. This result is absurd and it demonstrates the aridity of the Government's approach.

*Id.* at 728 (emphasis added).

5

This is precisely the problem with Defendants' permit requirement for individuals engaged in "public expression of views," which is *not* defined in the regulation. On its face, it allows the government to require a permit before an individual may publicly express a "view"—as discussed in Plaintiffs' Application for Preliminary Injunction, this could mean an individual wearing a t-shirt with a political slogan, sporting a tattoo, or wearing a button is subject to a permit requirement at the national parks. As the D.C. Circuit stated, this is absurd. And though the burden is on the Government to show how their regulation is narrowly tailored to serve a significant government interest, Defendants include no discussion on this point in their response, perhaps because Defendants simply cannot show that requiring a permit for individual "public expression of views" or literature distribution is narrowly tailored to serve any significant interest.

Finally, Defendants also make virtually no effort to address Mr. Boardley's argument that the regulations at issue are unconstitutionally overbroad because they apply to individuals or small groups. Defendants state only that the challenges to the constitutionality of these same regulations in *Kistner*, *Frandsen*, and *United States v. Sued*, 143 F. Supp. 2d 346, 349-50 (S.D. N.Y. 2001), involved enforcement against individuals who demonstrated or distributed printed matter in national parks. (Defs. Resp. Pl. App. Prelim. Inj. at 13). As stated above, the plaintiff in *Kistner* did not even raise an overbreadth challenge. *Kistner*, 68 F.3d at 220 n.5. In *Frandsen*, the court found the regulations unconstitutional on other grounds and did not visit the issue of overbreadth. *Frandsen,* 212 F.3d at 1240. And the opinion in *Sued* also did not address the issue of overbreadth, and analyzed the rest of the factors rather perfunctorily. *Sued*, 143 F. Supp. 2d at 352-53. These cases certainly cannot support the Government's heavy burden in proving these regulations are constitutional, especially when compared with the strong rulings in several

appellate courts that permit requirements for individuals or small groups are unconstitutionally overbroad. *See, e.g., Cox v. City of Charleston*, 416 F.3d 281 (4th Cir. 2005); *Cmty. For Creative Non-Violence v. Turner*, 893 F.2d 1387 (D.C. Cir. 1990); *Douglas v. Brownell*, 88 F.3d 1511 (8th Cir. 1996); *Grossman v. City of Portland*, 33 F.3d 1200 (9th Cir. 1994)*; see also Knowles v. City of Waco,* 462 F.3d 430, 436 (5th Cir. 2006) ("Other circuits have held, and we concur, that ordinances requiring a permit for demonstrations by a handful of people are not narrowly tailored to serve a significant government interest"); *American-Arab Anti-Discrimination Comm. v. City of Dearborn,* 418 F.3d 600, 608 (6th Cir. 2005) ("Permit schemes and advance notice requirements that potentially apply to small groups are nearly always overly broad and lack narrow tailoring").

### B. PLAINTIFF WILL SUFFER IRREPARABLE INJURY IF AN INJUNCTION IS NOT GRANTED.

Plaintiff is entitled to a preliminary injunction because he will continue to suffer irreparable injury if it is not granted. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). Even if Defendants now claim they will give Mr. Boardley a permit, his rights are still violated. First, he should not have to have a permit at all for individual, small scale speech. *See, e.g., Cox*, 416 F.3d 281; *Turner*, 893 F.2d 1387; *Douglas,* 88 F.3d 1511; *Grossman*, 33 F.3d 1200. Second, the vague and overbroad nature of the regulations on their face continues to violate Mr. Boardley's rights so long as they remain on the books. *See N.A.A.C.P. v. Button,* 371 U.S. 415, 433 (1975). Third, as discussed above, Defendants state that there is a two day processing time for permits of this nature, which is entirely too long to be acceptable under the First Amendment. Mr. Boardley requires a preliminary injunction in order to halt the ongoing violation of his First Amendment rights.

Defendants focus their argument on their assertion that Plaintiff has not suffered irreparable injury because he has not submitted a "proper application." (Defs. Resp. Pl. App. Prelim. Inj. at 1, 7). But if Plaintiff has not submitted an application, it is not for lack of trying—he talked to the ranger's office at Mt. Rushmore several times and never did anyone mention to him he needed to fill out a "proper application" to be granted a permit. (Boardley Decl. ¶¶3-19 [lodged]; Compl. ¶¶20-40). If there is such a requirement and no one bothered to tell Mr. Boardley, it only proves that Defendants were simply stonewalling Mr. Boardley instead of allowing him to exercise his constitutional rights. Defendants' current offer to give Mr. Boardley a permit if he fills out a proper application, even though he was never asked to do that before, seems litigation-motivated at best and does not mean Defendants will not stonewall Mr. Boardley or others again in the future.

Defendant Pflaum claims that the permit approval process can be "expedited" where they "obtain appropriate information and come to [a] verbal agreement, [they can] simply issue the member of the public a permit based on telephone conversations or person to person meetings, rather than requiring the member of the public to fill out the application." (Defs. Resp. Pl. App. Prelim. Inj. at 4; Pflaum Decl. ¶6). As there is no written policy for this method of approving permits, it gives administrators unfettered discretion to quickly approve speech they like, while making speakers they do not approve of go through a formal process. And if park administrators do issue permits in this way, why was Mr. Boardley not given his permit after he provided his information to the park ranger's office, as he did on several occasions? Why didn't Ranger Hanson simply tell Mr. Boardley to walk over to the Ranger's office, tell them what he was doing, and get a permit that way? Why didn't Defendant Pflaum respond to Mr. Boardley's October 2, 2006 request, even when Mr. Boardley said he needed the permit right away so he

could plan his trip? (Boardley Decl. at ¶16-18 [lodged]). Defendants' current explanation of their permit requirement cannot be reconciled with the actual facts in this case. It is plain that Defendants were sitting on Mr. Boardley's requests, just as they did a year ago to Mr. Boardley's associate Mark Oehrlein. (Compl. ¶¶44-54). Mr. Boardley requires injunctive relief against the Defendants to prevent them from engaging in such tactics in the future.[1]

Defendants also find it important that "Plaintiff did not apply for a permit prior to going to Mt. Rushmore and did not ask for a permit until he was stopped by a Park service employee . . . ." (Defs. Resp. Pl. App. Prelim. Inj. at 7). According to Defendants' argument, the permit requirement is the very epitome of a prior restraint on speech. Apparently, Mr. Boardley would have to anticipate the overbroad permit requirement at least two business days in advance of his trip to Mt. Rushmore, apply for a permit to distribute literature or "publicly express views," wait for it to be approved, and only then would he be able to exercise his bedrock constitutional freedoms in a traditional public forum. Such an arrangement is repugnant to the First Amendment and cannot be allowed to stand. Plaintiff requires a preliminary injunction to halt the continuing violation of his First Amendment rights.

---

[1] Defendant Pflaum asserts that "[i]n my 18 years [as Chief Park Ranger, Mt. Rushmore], I do not believe that the Memorial has ever formally denied a demonstration application." (Defs. Resp. Pl. App. Prelim. Inj. at 4; Pflaum Decl. ¶2). This statement is so full of weasel words that it is rendered of no consequence to this case. The Memorial could very well have denied such permits, but Pflaum simply does not "believe" they have. The fact they have not "formally denied" an application does not mean they have not simply let applications sit on their desks until it was too late for the applicant to exercise his or her rights, or so that the applicant never got a permit. And the statement refers to "demonstration applications," and Mr. Boardley was attempting to get a permit for distributing literature, not demonstrating.

## C. AN INJUNCTION WILL NOT SUBSTANTIALLY INJURE THE DEFENDANTS.

Defendants made only a conclusory statement that enjoining §2.51-2.52 will harm their interests. (Defs. Resp. Pl. App. Prelim. Inj. at 14). But Defendants will not suffer any substantial harm if these unconstitutional regulations are enjoined because they have other means at their disposal to protect their interest in maintaining the character of the National Parks, and they made no attempt to explain why such means are inadequate. Defendants are free to enforce anti-littering regulations, criminal and civil legal penalties, and content-neutral time, place and manner restrictions which comply with the Constitution in order to protect National Park lands. Thus, a preliminary injunction would impose only a minimal burden on the Defendants, and it is undoubtedly worth this cost to protect the bedrock constitutional freedoms at stake.

## II. CONCLUSION

Mr. Boardley respectfully requests that the Court grant his application for a preliminary injunction, and enjoin Defendants from enforcing 36 C.F.R. §§3.51-3.52 during the pendency of this litigation.

Respectfully submitted this 3rd day of December, 2007.

By: s/Heather Gebelin Hacker
    Heather Gebelin Hacker
    ALLIANCE DEFENSE FUND

| | |
|---|---|
| Heather Gebelin Hacker* | Jordan W. Lorence |
| California Bar No. 249273 | D.C. Bar No. 385022 |
| 101 Parkshore Drive, Suite 100 | 801 G. Street NW, Suite 509 |
| Folsom, California 95630 | Washington, D.C. 20001 |
| Tel: (916) 932-2850 | Tel: (202) 637-4610 |
| Fax: (916) 932-2851 | Fax: (202) 347-3622 |
| hghacker@telladf.org | jlorence@telladf.org |
| | |
| Kevin H. Theriot* | Benjamin W. Bull+ |
| Kansas Bar No. 21565 | Arizona Bar No. 009940 |
| W. Jesse Weins* | 15100 N. 90th Street |
| Kansas Bar No. 23127 | Scottsdale, Arizona 85260 |
| 15192 Rosewood | Tel: (480) 444-0020 |
| Leawood, Kansas 66224 | Fax: (480) 444-0028 |
| Tel: (913) 685-8000 | bbull@telladf.org |
| Fax: (913) 685-8001 | |
| ktheriot@telladf.org | |
| jweins@telladf.org | |

Attorneys for Plaintiff

*Admitted *pro hac vice*
+Of counsel, not admitted in this jurisdiction