UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL BOARDLEY,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,

    Defendants.

Civil Action No. 07-1986 (JR)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER, PURSUANT TO 28 U.S.C. § 1404(a), AND TO STAY FURTHER PROCEEDINGS PENDING DISPOSITION OF MOTION**

    Comes now Plaintiff Michael Boardley, by and through counsel, and hereby submits this Memorandum of Points and Authorities in Opposition to Defendants' Motion to Transfer, Pursuant to 28 U.S.C. § 1404(a), and to Stay Further Proceedings Pending Disposition of Motion.[1]

    Transfer in this case is improper, as the United States District Court for the District of Columbia is the most appropriate forum for litigating this case. Four of seven Defendants are found in D.C., and the heart of Plaintiff's case, his constitutional challenge to 36 C.F.R. §§ 2.51-2.52 (2007), is a challenge to a federal regulation which applies nationwide, not just at Mount Rushmore National Memorial. Though Defendants have consistently attempted to reframe this case as merely a local dispute, this case is about far more than that and is therefore more

---

[1] A week prior to filing this motion, Defendants asked Plaintiff to give them yet another extension to respond to the Complaint in order to allow them to prepare a motion for summary judgment. Plaintiff opposed this extension because they have already had more than sufficient time to respond to the Complaint, having already received one extension. Moreover, responding to the Complaint is not related to the preparation of a summary judgment motion, and Plaintiff wants to conduct discovery prior to filing a motion for summary judgment. Defendants did not consent to have a Fed. R. Civ. P. 26(f) conference as required by the Federal and Local Rules when Plaintiff requested, and consequently Plaintiff is currently unable to move forward with the prosecution of this case.

1

appropriately litigated in the place where the offending regulation was promulgated. Defendants cannot meet the stringent burden required to set aside the Plaintiff's choice of forum and the pending motion is merely a delay tactic. Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety, and affirmatively order the Defendants to respond to the Complaint, which was filed November 2, 2007.

### I. PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO DEFERENCE.

28 U.S.C. § 1404 provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As the movants, the Defendants bear the burden of establishing that transfer of this action is proper. *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 124, 127 (D.D.C. 2001) (citation omitted). When a choice of venue exists, the decision to transfer must be made "according to an 'individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc., v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). When balancing these factors, a "plaintiff's choice of forum is given paramount consideration and the burden of demonstrating that an action should be transferred is on the movant." *Air Line Pilots Ass'n v. E. Air Lines,* 672 F. Supp. 525, 526 (D.D.C. 1987).

Absent specific facts that would cause a district court to question a plaintiff's choice of forum, a plaintiff's choice is afforded substantial deference. *Int'l Bd. of Painters & Allied Trades Union v. Best Painting & Sandblasting Co.*, 621 F. Supp. 906, 907 (D.D.C. 1985). In fact, the court is less deferential to the plaintiff's choice of forum only where "the forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Islamic Republic of Iran v. Boeing Co.,* 477 F. Supp. 142, 144 (D.D.C. 1979). But it is settled that a case should not be transferred "from a plaintiff's chosen forum simply because another

forum, in the court's view, may be superior to that chosen by the plaintiff." *Pain v. United Technologies Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980).

Here, Plaintiff's choice of forum is entitled to deference because the District of Columbia has meaningful ties to the controversy and interest in the subject matter. This is *not* a case where the plaintiff is challenging a local policy affecting Mount Rushmore only. *See, e.g., Trout Unlimited v. Dept. of Agriculture,* 944 F. Supp. 13, 18 (D.D.C. 1996) (declining to defer to plaintiffs' choice of forum because the alleged harm occurred in Colorado, not the District of Columbia). Instead, Plaintiff is challenging the constitutionality of a federal regulation both facially and as applied. The regulation applies to National Park land throughout the country. Thus, this is not a localized controversy, as Defendants puzzlingly continue to insist. This is a case of nationwide interest, and affects every visitor to National Park lands—not just Mr. Boardley, and not just Mount Rushmore National Memorial. Moreover, the federal regulations at issue were promulgated by the Agency Defendants. Thus, the larger harm to Mr. Boardley— the existence of a vague, overbroad permit requirement that restricts his First Amendment rights—was caused through actions that occurred in the District of Columbia, not South Dakota, and Plaintiff's choice of forum in the District of Columbia is entitled to deference. *See, e.g., The Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 14-15 (D.D.C. 2000) (deferring to the plaintiff's choice of forum in part because the environmental issue raised by the Plaintiff was of national scope, even though the land itself was located in Alaska).

The incidents alleged in the Complaint that occurred in South Dakota are relevant in that they are constitutional violations in and of themselves. But more broadly, they are symptomatic of the larger problem created by the vague and overbroad regulations. In other words, they are an illustration of the constitutional infirmities of the regulations at issue—they are *not* the

nucleus of this case. This is not to say that the events that took place in South Dakota are insignificant—it is difficult to weigh the significance of a violation of a fundamental constitutional right against another violation. But Plaintiff's challenge to 36 C.F.R. §§ 2.51-2.52 is the heart of this case, as the other violations would not have happened but for the existence of the unconstitutional regulations in the first place. These regulations were promulgated in the District of Columbia, and given their nationwide application, there are material ties to this forum such that Plaintiff's choice to litigate this case in the District of Columbia is entitled to deference and should not be disturbed.

## II.    DEFENDANTS HAVE NOT MET THE HEAVY BURDEN REQUIRED TO SET ASIDE PLAINTIFF'S CHOICE OF FORUM.

In order to prevail on their motion to transfer under § 1404(a), Defendants must demonstrate that considerations of convenience and the interests of justice weigh in favor of transfer to their desired court. *Trout Unlimited,* 944 F. Supp. at 16. The statute directs the court to weight a number of case-specific private-interest and public-interest factors. *Stewart Org.,* 487 U.S. at 29. The private interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Id.* The public interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in deciding local controversies at home. *Id.* Here, the balance of the private and public interest factors do not weigh in favor of transfer, and Defendants have not met their burden in showing that they do. Thus, Plaintiff's choice of forum should not be set aside, and Defendants' motion to transfer should be denied.

### A. Private Interest Factors Weigh Against Transfer to the District of South Dakota.

The weight of the private interest factors do not favor transfer. As discussed above, because of the nationwide significance of the case and the fact that the harm stems from actions taken in the District of Columbia, this Court has significant ties to the controversy and Plaintiff's choice of forum is entitled to deference. Thus, the first private interest factor, the plaintiff's choice of forum, weighs in favor of denying the motion to transfer. Defendants' choice of venue is also considered in the balancing of private interest factors, but here, it cannot outweigh the Plaintiff's choice of forum. Defendants seek to litigate this case in South Dakota, but it is unclear why that would be more convenient for Defendants. Four of seven Defendants are found in the District of Columbia, and as discussed above, the unconstitutional regulations were promulgated by agency officials in the District of Columbia, not local officials.

Defendants' entire motion centers around their contentions that a) this is a local dispute, and b) Plaintiff is supposedly engaged in "flagrant forum shopping" for choosing to file this case in D.C. instead of South Dakota. The Defendants' first contention has been addressed above and is blatantly incorrect. The Defendants' second contention, the accusation of forum shopping, is equally unsupported, and could equally apply to their desire to move the case back to a jurisdiction they clearly feel has more favorable case law to their position. Because Plaintiff has legitimate reasons for choosing the District of Columbia as the forum for his case, and because of the other private factors of analysis, it would seem that if anyone was trying to "shop" for a forum here, it would be Defendants.

As discussed above, Plaintiff had several legitimate reasons for filing this case in the District of Columbia: he seeks to challenge the constitutionality of nationally applicable federal regulations promulgated within the District. Most of the Defendants are located in the District of

5

Columbia; most of the documentation regarding the creation and national application of these regulations should be located in the District of Columbia; and the most personally convenient forum for Plaintiff, the District of Minnesota, has no ties to the controversy whatsoever except that it is where Plaintiff lives.  None of these reasons support the repeated claims of Defendants that Plaintiff engaged in nefarious "forum shopping."

On the other hand, the Defendants have made no showing as to why the District of South Dakota is a more convenient forum for litigating this case.  Certainly some of the documents Plaintiff wishes to obtain through discovery might exist in South Dakota, but this does not weigh in the Defendants' favor, as documents are easily transportable in this day and age, and likely would be transported to D.C. anyway because that is where Defendants' counsel is located. *See Thayer/Patricof Educ. Funding, L.L.C., v. Pryor Resources, Inc.,* 196 F. Supp. 2d 21, 36 (D.D.C. 2002).  Additionally, a significant amount of documents related to the creation and implementation of the regulations at issue should be found in the District of Columbia., as it is the location where this happened.

The convenience or availability of witnesses also does not weigh in favor of transfer for two reasons: first, both parties agree that this case is appropriate for summary judgment, and the availability of witnesses is only a relevant factor where the case is expected to go to trial.  *See Wilderness Soc'y*, 104 F. Supp. 2d at 15 (citing *Vencor Nursing Ctrs. L.P. v. Shalala*, 63 F.Supp.2d 1, 7 (D.D.C. 1999) (noting that convenience of witnesses was of little relevance because no evidentiary hearing[2] or trial was foreseeable)).  And second, even if there were a

---

[2] Plaintiff notes that his Application for Preliminary Injunction is still pending before this Court, but the Local Rules specifically state that the usual practice in this District is to decide preliminary injunction motions without live testimony.  *See* LCvR 65.1(d).  Thus, an evidentiary hearing on this matter is not likely, and the convenience of witnesses does not favor transfer.  *See Wilderness Soc'y*, 104 F.Supp.2d at 15 ("While it is possible that upon a motion for a preliminary injunction or temporary restraining order this Court may allow witnesses to testify, it is more likely that there will be not be witnesses at all in this matter.  Accordingly, this factor does not favor transfer.")

possibility that there could be a trial in this case, Defendants have not presented any evidence that the individual defendants not located in the District of Columbia would refuse to testify there. *See Thayer/Patricof,* 196 F. Supp. 2d at 33; *see also Trout Unlimited*, 944 F.Supp. at 16 (convenience of the witnesses should be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora") (citation omitted). Defendants have not met their burden in showing why this forum is inconvenient.

Because there is no evidence suggesting the current forum is inconvenient for Defendants, it seems that the Defendants have their own strategic reasons in wanting to transfer the case to South Dakota—what they clearly feel is favorable case law to their position.[3] And that *is* "forum shopping." *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 13 (D.D.C. 2007).

        **1.**    ***Kistner v. United States*** **is largely inapplicable and is of limited precedential value.**

Aside from the above, Plaintiff has already shown that the case law Defendants accuse him of avoiding in filing his case here rather than South Dakota, *Kistner v. United States,* 68 F.3d 218 (8th Cir. 1995), is largely inapplicable and of limited precedential value.[4] First, Plaintiff has raised significant issues as to the overbreadth of the regulations[5]—and the plaintiff in *Kistner* notably did not raise this issue, so it was not even addressed by that court. 68 F.3d at 220 n.5. Second, *Kistner* was criticized by a sister circuit as being wrongly decided because it

---

[3] To the extent that Defendants raise new legal arguments in their Motion to Transfer regarding the applicability of *Kistner v. United States,* 68 F.3d 218 (8th Cir. 1995), and *United States v. Frandsen*, 212 F.3d 1231 (11th Cir. 2000), Plaintiff requests that the Court disregard these untimely arguments, as they should have been raised in Defendants' Response to Plaintiff's Application for Preliminary Injunction, and not in the present motion—Defendants should not get "two bites at the apple" in opposing that motion. But to the extent that Defendants have made these arguments an issue for purposes of the present motion, and to the extent that Defendants have accused Plaintiff of intentionally misleading this Court as to the applicability of these cases, Plaintiff addresses the substance of these arguments out of an abundance of caution.

[4] See Pl. Reply Supp. App. Prelim. Inj. at 3-4; 6-7.

[5] See Pl. App. Prelim. Inj. at 15-19; Pl. Reply Supp. App. Prelim. Inj. at 3-4; 6-7. Defendants in fact failed to respond to Plaintiff's argument that 26 C.F.R. §2.51-2.52 is overbroad in their opposition to Plaintiff's motion. *Id.*

7

conflicted with Supreme Court precedent in *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992). *United States v. Frandsen*, 212 F.3d 1231, 1240 n.8 (11th Cir. 2000). Also, *Kistner* limited its analysis to a local policy interpreting the federal regulation, not the regulation itself. *Id.*

Defendants seem to assert that *Forsyth County* and its progeny no longer apply to the analysis of prior restraints under the First Amendment based on *Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002), but this is incorrect. In the context of a permit requirement for 50 or more people (not just one person, like this case), *Thomas* held that the *Freedman* procedural safeguards, which applied in situations where a licensing body had the authority to approve or disapprove of expression before it occurred, did not apply where the regulations were facially content-neutral. *Thomas*, 534 U.S. 316. But the *Freedman* safeguards are as follows: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *Id.* at 321 (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227 (1990)). Plaintiff has *never* claimed that this analysis applies to the regulations at issue here. Instead, prior restraints, such as the regulations here, are properly analyzed under *Forsyth County*, which is still good law, as recognized in the *Thomas* decision itself. *Id.* at 323-324.

*Forsyth County* held that prior restraints are invalid if they grant unfettered discretion to administrators as to whether they may grant or deny a permit. 505 U.S. at 133. And as *Thomas* and *Forsyth County* both recognize, even facially content-neutral permit requirements can be applied in a manner that stifles expression. *Thomas*, 534 U.S. at 323 (citing *Forsyth County*, 505

8

U.S. at 131). Further, as with any time, place or manner regulation, a permit requirement like 36 C.F.R. §§ 2.51-2.52 must still meet all three prongs of the test required for such regulations in a traditional public forum. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

While it is true that under *Thomas*, the *Freedman* safeguards listed above do not apply where there is a facially content-neutral regulation on speech, prior restraints still may not grant unfettered discretion to administrators. *Kistner* analyzes whether there was evidence to suggest that permits were granted or denied under the local policy interpretation of § 2.51 based on the content of speech involved, but does not engage in significant analysis of the language of the policy. (Notably, *Kistner* limited its analysis to only the language of the local policy interpretation of § 2.51, not the regulation itself.) This *is* inconsistent with *Forsyth County*, which held that if the language of a content-neutral time, place or manner regulation is vague or overbroad such that it allows administrators to apply it on the basis of content, it is unconstitutional, even if there is no evidence indicating this was ever actually done. *Forsyth County*, 505 U.S. at 133 n.10. In the context of the *Frandsen* opinion, the footnote criticizing *Kistner* as being inconsistent with *Forsyth County* appears immediately following *Frandsen*'s analysis of whether § 2.51 granted unfettered discretion to administrators. *Frandsen*, 212 F.3d at 1240. Thus, while the explicit *Freedman* safeguards do not apply to the current case based on *Thomas*, and Plaintiff does not argue that they do, *Kistner* is still not wholly consistent with *Forsyth County* because of the limited analysis of unfettered discretion in that opinion.[6] For these reasons, Plaintiff maintains that *Kistner* is of limited precedential value.

---

[6] *Frandsen* itself does not even apply all of the *Freedman* safeguards. It finds § 2.51 to be unconstitutional because it does not place a time limit on the decision of whether to grant or deny a permit, but this factor is easily encompassed by "unfettered discretion," which is still a very valid factor in evaluating any prior restraint. At any rate, this issue is hardly as "clear" or "square" as Defendants claim, and Plaintiff strongly rejects any assertion that

### B. Public Interest Factors Weigh Against Transfer to the District of South Dakota.

The public considerations relevant to this case, or the "interests of justice," also weigh against transfer. The local interest in having local issues decided locally, the transferee forum's familiarity with the laws governing the case, and the possible pendency of a related case can weigh in favor of a transfer. *Wilderness Soc'y*, 180 F. Supp. 2d at 129 (citing *Armco Steel Co. v. CSX Corp.,* 790 F. Supp. 311, 324 (D.D.C. 1991)). Conversely, the possibility that the defendants are forum shopping can weigh against transfer. *Id.* (citing *Ferens v. John Deere Co.,* 494 U.S. 516, 527 (1990)). As discussed above, given the lack of evidence cited by Defendants that the District of Columbia is an inconvenient forum for them, it seems likely that Defendants are angling to litigate in a forum they believe is more favorable to their position. Moreover, the other public interest factors weigh against transfer, and Defendants' motion to transfer should be denied.

This case, unlike others transferred out of the District of Columbia, involves no state law claims, which would make it better adjudicated in a forum with knowledge of the applicable state laws. Instead, the present case involves only federal constitutional claims, and contains issues of national significance, since the regulations at issue affect every visitor to every national park in every state of the Union. Thus, this case is more like *Wilderness Soc'y* and *Greater Yellowstone* than *Trout Unlimited*. In *Greater Yellowstone*, as here, there were no issues of state law and the case had national significance, as it involved a decision by the Forest Service to renew a permit for cattle grazing in lands populated by bison without evaluating the environmental impact as required by federal law. 180 F. Supp. 2d at 129. In *Wilderness Soc'y*, the case did not involve issues of state law and had national significance, involving the decision of the Department of the

---

he was intentionally trying to mislead the Court on the applicability of authorities cited in his Application for Preliminary Injunction.

Interior to allow oil and gas leasing in the National Petroleum Reserve area in Alaska. 104 F. Supp. 2d at 16. In both of these cases, the court denied the government's motion to transfer. In contrast, in *Trout Unlimited*, the court granted the transfer because the case involved a very localized conflict in Colorado with little national significance and the transferee forum, the District of Colorado, was more familiar with the governing state laws. 944 F. Supp. at 19-20. Despite Defendants' continued assertions, this case is about far more than Mt. Rushmore park officials stonewalling Mr. Boardley's efforts to obtain a speech permit—although that is not insignificant—it is about whether the federal government can enforce federal regulations which flagrantly contradict the First Amendment of the Constitution. Thus, the public interest factors do not weigh in favor of transfer, and Defendants' motion to transfer should be denied.

### III.   DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING THE RESOLUTION OF THIS MOTION SHOULD BE DENIED AS IT IS CAUSING UNDUE DELAY.

Defendants, despite already receiving the customary 60 days to respond to the Complaint as government defendants, and an additional 30 days by order of this Court, have still failed to respond to the Complaint. Defendants were required by the Federal Rules and this Court's order to file their response to the Complaint on February 6, 2008. Instead, they filed the present motion. The Complaint in this case was filed November 2, 2007, there is a fully briefed application for preliminary injunction pending before the Court, and Plaintiffs are unable to conduct discovery and continue with the prosecution of this case until Defendants are required to respond to the Complaint and have a Fed. R. Civ. P. 26(f) conference. As noted in Plaintiff's Application for Preliminary Injunction, Plaintiff suffers irreparable injury every day that the unconstitutional regulations at issue remain in force. Plaintiff respectfully requests that this Court put an end to Defendants' delay tactics, deny their motion to stay, and order them to respond to the Complaint.

## CONCLUSION

Because there are significant ties to this forum, Plaintiff's choice of forum is entitled to deference, and Defendants have not shown that the public and private interest factors weigh so strongly in their favor that Plaintiff's choice should be set aside—a very high burden. Instead, it appears that Defendants' motivation for this motion is to transfer the case to a court where they feel they have better case law, and to delay. The Defendants were served with the Complaint on November 6 and 7, 2007. They have now had over one hundred days to respond to the Complaint, which they have yet to do, and now they seek to delay even more. Plaintiff respectfully requests that this Court deny Defendants' Motion to Transfer and to Stay Further Proceedings, and affirmatively order them to promptly respond to the Complaint.

Respectfully submitted this 20th day of February, 2008.

By: s/Heather Gebelin Hacker
    Heather Gebelin Hacker
    ALLIANCE DEFENSE FUND

| | |
|---|---|
| Timothy D. Chandler* | Jordan W. Lorence |
| California Bar No. 234325 | D.C. Bar No. 385022 |
| Heather Gebelin Hacker* | 801 G. Street NW, Suite 509 |
| California Bar No. 249273 | Washington, D.C. 20001 |
| 101 Parkshore Drive, Suite 100 | Tel: (202) 637-4610 |
| Folsom, California 95630 | Fax: (202) 347-3622 |
| Tel: (916) 932-2850 | jlorence@telladf.org |
| Fax: (916) 932-2851 | |
| tchandler@telladf.org | |
| hghacker@telladf.org | |
| | |
| Kevin H. Theriot* | Benjamin W. Bull+ |
| Kansas Bar No. 21565 | Arizona Bar No. 009940 |
| W. Jesse Weins* | 15100 N. 90th Street |
| Kansas Bar No. 23127 | Scottsdale, Arizona 85260 |
| 15192 Rosewood | Tel: (480) 444-0020 |
| Leawood, Kansas 66224 | Fax: (480) 444-0028 |
| Tel: (913) 685-8000 | bbull@telladf.org |
| Fax: (913) 685-8001 | |
| ktheriot@telladf.org | |
| jweins@telladf.org | |

Attorneys for Plaintiff

*Admitted *pro hac vice*
+Of counsel, not admitted in this jurisdiction

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL BOARDLEY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al*.,<br><br>　　　　Defendants. | Civ. Action No. 07-1986 (JR) |

### [PROPOSED] ORDER DENYING DEFENDANTS' MOTION TO TRANSFER, PURSUANT TO 28 U.S.C. § 1404(a), AND TO STAY FURTHER PROCEEDINGS PENDING DISPOSITION OF MOTION

THIS MATTER coming to be heard on the Defendants' Motion to Transfer, Pursuant to 28 U.S.C. § 1404(a), and to Stay Further Proceedings Pending Disposition of Motion, the Court being advised, it is HEREBY ORDERED:

1. Defendants' Motion to Transfer, Pursuant to 28 U.S.C. § 1404(a) is **DENIED**;
2. Defendants' Motion to Stay Further Proceedings Pending Disposition of Motion is **DENIED**; and
3. Defendants' are ordered to respond to Plaintiff's Verified Complaint no later than _____, 2008.

IT IS SO ORDERED.

DATED this \_\_\_\_\_ day of _____, 2008.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Hon. James Robertson
　　　　　　　　　　　　　　　　　　　United States District Judge

Copy to:

John G. Interrante, Attorney for Defendants
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
John.Interrante@usdoj.gov

Jordan W. Lorence, Attorney for Plaintiff
ALLIANCE DEFENSE FUND
801 G Street, NW
Suite 509
Washington, DC 20001
jlorence@telladf.org

Heather Gebelin Hacker, Attorney for Plaintiff
Timothy D. Chandler, Attorney for Plaintiff
ALLIANCE DEFENSE FUND
101 Parkshore Drive, Suite 100
Folsom, California 95630
hghacker@telladf.org
tchandler@telladf.org

Kevin H. Theriot, Attorney for Plaintiff
W. Jesse Weins, Attorney for Plaintiff
ALLIANCE DEFENSE FUND
15192 Rosewood
Leawood, Kansas 66224
ktheriot@telladf.org
jweins@telladf.org

Benjamin W. Bull, Attorney for Plaintiff
ALLIANCE DEFENSE FUND
15100 North 90th Street
Scottsdale, Arizona 85260
bbull@telladf.org