UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL BOARDLEY,** | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) Civil Action No. 07-01986 (JR) |
| v. | ) <br> ) |
| **UNITED STATES DEPARTMENT OF THE INTERIOR** et al., | ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**REPLY MEMORANDUM**

Defendants respectfully reply to Plaintiff's Opposition to Defendants' Motion to Transfer, Pursuant to 28 U.S.C. § 1404(a), and to Stay Further Proceedings Pending Disposition of Motion. Defendants moved to transfer this case to the United States District Court for the District of South Dakota for the convenience of the parties and witnesses and in the interest of justice. Plaintiff opposes transfer and contends that this case should remain in this jurisdiction because this lawsuit challenges the constitutionality of regulations that have nationwide effect and because he has sued several national officials. To the contrary, plaintiff, who has no connections to the District of Columbia, challenges two actions taken by the Mount Rushmore officials pursuant to agency regulations that have been in effect for a number of years and which were upheld against a similar facial and as-applied challenge, see, e.g., United States v. Kistner, 68 F.3d 218 (8th Cir. 1995), and therefore neither of the national officials named in this case had any direct involvement in the actions taken at Mount Rushmore pursuant to the challenged regulations. Accordingly, transfer to the District of South Dakota is appropriate.

**Discussion**

Plaintiff, Michael Boardley, a resident of Coon Rapids, Minnesota, filed this lawsuit in Washington, D.C., where he has no connection, to litigate a dispute with National Park Service officials at the Mount Rushmore National Memorial ("Mount Rushmore"), located in Keystone, South Dakota, over a permit to distribute leaflets on the park grounds. The governing general demonstration and printed matter regulations are found at 36 C.F.R. §§ 1.2(a), 2.51, 2.52. Defendants submit that this case should be transferred to the District of South Dakota because none of the witnesses or records relevant to the challenged agency actions are located in the District of Columbia, and plaintiff engaged in blatant forum shopping by filing this case in this jurisdiction to avoid the obvious adverse controlling precedent of United States v. Kistner, 68 F.3d 218 (8th Cir. 1995) (affirming conviction for distribution of pamphlets without a permit at Jefferson National Expansion Memorial in St. Louis, as a violation of 36 CFR § 2.52 (a)).

Plaintiff opposes transfer and contends that this case should remain in this jurisdiction because this lawsuit challenges the constitutionality of regulations that have nationwide effect (except in the National Capital Region, which include the District of Columbia) and because the Department of Interior ("Interior"), the Secretary of Interior, the National Park Service "(NPS"), and the Director of NPS are based in Washington, D.C.[1] See, e.g., Pl.'s Opp'n Br. at 3 ("Moreover, the federal regulations at issue were promulgated by Agency Defendants. Thus, the larger harm to Mr. Boardley – the existence of a vague, overbroad permit requirement that restricts his first Amendment

---

[1] The National Capital Region of the National Park Service comprises eight Washington, D.C. area parks that are subject to special demonstration and sales regulations found at 36 C.F.R. §§ 1.2(c) and 7.96(a). Typically, First Amendment lawsuits brought in this jurisdiction involve disputes arising under the National Capital Region regulations because a number of the national parks subject to those regulations are located in this jurisdiction.

rights – was caused through actions that occurred in the District of Columbia, not South Dakota, and Plaintiff's choice of forum in the District of Columbia is entitled to deference. See, e.g., The Wilderness Society v. Babbitt, 104 F.Supp.2d 10, 14-15 (D.D.C. 2000).").

Plaintiff's reliance on the Wilderness Society is misplaced. That case involved a challenge to the Department of Interior's decision to commence oil and gas leasing in the National Petroleum Reserve planning area in Alaska, and was brought under the National Environmental Protection Act of 1969, as amended, and the Administrative Procedure Act, 5 U.S.C. §§ 701-706. Wilderness Society, 104 F.Supp.2d at 11. In denying the motion to transfer the case to Alaska, the court noted that "Secretary Babbitt's heavy involvement [in the challenged decision] thus highlights the significance of this decision to the entire nation," and the plaintiff's ties to the District of Columbia weighed against transfer. Id. at 14-15. The court distinguished other cases where a motion to transfer from this jurisdiction was granted, such as Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13 (D.D.C.1996), and Hawksbill Sea Turtle v. FEMA, 939 F.Supp 1, 3 (D.D.C. 1996), where "all decision-making . . . took place outside of the District of Columbia." Id. at 14.

Thus, two of the factors that weighed heavily against transfer in Wilderness Society are not present here. Plaintiff has no connections to the District of Columbia, and plaintiff challenges two actions taken by the Mount Rushmore officials pursuant to agency regulations that have been in effect for a number of years, see, e.g., United States v. Kistner, 68 F.3d 218 (8th Cir. 1995), and therefore neither of the national officials named in this case had any direct involvement in the actions taken at Mount Rushmore pursuant to the challenged regulations.[2] Specifically, the first

---

[2] In Kistner, the Eighth Circuit rejected the plaintiff's claim that the requirement that permits be issued "without reasonable delay" under § 2.52 (a) was not narrowly tailored to serve a significant government interest because the policy statement of the national park at issue in that

alleged violation of plaintiff's rights occurred when a Mount Rushmore park ranger told him that he needed a permit to distribute leaflets at the park, 36 CFR § 2.52 (a), and that it could take 48 hours to process a permit request. Plaintiff voluntarily left the park grounds and contacted Mount Rushmore about getting a permit to distribute gospel tracts and preach on a return visit a year later (in August 2008). The second alleged violation of plaintiff's rights occurred when Mount Rushmore officials allegedly delayed the processing of his request for a permit to return to the park in August 2008. The latter permit has been approved.

Transfer is appropriate here because the same regulations that plaintiff challenges in this case were also challenged on First Amendment grounds by a single leafleter in Kistner. That decision would be controlling precedent if this case had been brought in the District of South Dakota, where Mount Rushmore is located. Clearly, plaintiff filed this suit in this jurisdiction to avoid the obvious adverse precedent, and engaged in blatant forum shopping. Moreover, plaintiff's contention that Kistner was wrongly decided, and Fransden was correctly decided, weighs in favor of transfer. See, .e.g., Schmid Laboratories, Inc. v. Hartford Accident and Indemnity Co., 654 F.Supp 734, 737 (D.D.C. 1986) ("This Court cannot find that it is in the interest of justice to encourage, or even to

---

case required that permits "should be received at least ten (10) working days prior to date needed." 68 F.3d at 221-22. The current NPS Management Policies § 8.6.3 (2006), provides that a First Amendment permit request will be issued or denied "within two business days after receipt of a proper application" (Exhibits A, B to Defendant's Opposition to Motion for Preliminary Injunction). See also United States v. Sued, 143 F.Supp.2d 346, 349-50 (S.D.N.Y. 2001) (Magistrate Judge opinion denying motion to dismiss citations issued for violations of 36 CFR §§ 2.51 and 2.52 at Statute of Liberty and Liberty Island, and noting that "published procedures" afforded NPS officials "at least 72 hours to review each written permit application, [although] in practice the review is considerably less involved"). See also Liberman v. Schesventer, 447 F. Supp. 1355 (M.D. Fla. 1978) (finding an earlier version of the printed matter regulation, 36 CFR § 2.52, to be constitutional, even as applied in nondiscriminatory fashion to religious literature).

allow, a plaintiff to select one district exclusively or primarily to obtain <u>or to avoid specific precedents</u>, particularly in circumstances such as these where the relevant law is <u>unsettled</u> and the choice of the forum may well dictate the outcome of the case) (citations omitted) (emphasis added). Indeed, if plaintiff wants to challenge the adverse Eighth Circuit precedent, he is free to pursue his claims in the District of South Dakota, and, if he were to prevail could resolve the alleged split in the circuits.

Plaintiff's attempt to minimize the relevance of <u>Kistner</u> is unavailing (<u>see</u> Pl.'s Opp'n Br. at 7-9). Mr. Kistner, unlike plaintiff, was given a citation for refusing to comply with the permit requirement at a different national park. The Eighth Circuit rejected a facial and as-applied First Amendment challenge to the same national regulation at issue here and held that the National Park Service "policy statement and regulation are content neutral," and "that the regulation and policy statement on the sale or distribution of printed matter satisfy the requirements for a reasonable time, place, or manner restriction under the First Amendment." 68 F.3d at 221-222. Plaintiff continues to attempt to distinguish <u>Kistner</u> as not having challenged the statute as overbroad. On the contrary, Mr. Kistner made precisely the same challenge as plaintiff attempts to make here – that the regulation was unconstitutional because it requires single leafleters to obtain a permit. Generally, an overbreadth argument is one made by a plaintiff, who concedes that a regulation may be applied to him or her, but it is unconstitutionally overbroad because it sweeps a substantial amount of protected expression into its regulatory ambit. <u>See</u>, <u>e.g.</u>, <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 612, (1973) (overbreadth doctrine permits "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity"). Plaintiff's overbreadth argument is therefore atypical

because he does not concede that his own conduct may be regulated under the regulation.

Plaintiff also attempts to distinguish <u>Kistner</u> as involving a "local policy interpretation of § 2.51." (Pl. Opp. Br. at 9). To the contrary, Mr. Kistner was given a citation pursuant to the same "national" regulations as the challenged actions raised in this case. Plaintiff fails to appreciate that each national park must enforce the permit regulations in accordance with the land use policies of the particular park. Mount Rushmore, for example, has designated three "First Amendment" areas where pamphlets may be distributed. Those areas are now posted on the NPS website, along with a copy of the permit application. In any case, if <u>Kistner</u> was decided based on a "local policy interpretation" of the national regulations, then this case also involves a "local policy interpretation" by Mount Rushmore of the national regulation and polices requiring a two business day turnaround of permit requests (see n.2, <u>supra</u>). In both cases, however, the "local policies" were consistent with the national regulations and policies at the time. Nonetheless, if plaintiff is correct that <u>Kistner</u> involved a challenge to "local policy interpretations" by Mount Rushmore park officials, then this case, like <u>Kistner</u>, should be litigated in the jurisdiction where those local interpretations were made.

The second action challenged by plaintiff relates to an alleged delay in processing his request for a permit to return to Mount Rushmore in August 2008. This claim is "moot" because the permit was issued. Under established "mootness" principles, moreover, a claim does not remain justiciable simply because the existing record is sufficient to allow an informed decision on the merits. Rather, the plaintiff must establish a continuing concrete stake in the outcome of the litigation in order to obtain relief in court. <u>See</u>, e.g., <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180 (2000) ("The Constitution's case-or-controversy limitation on federal judicial authority, Art. III, § 2, underpins . . . [this Court's] mootness jurisprudence."); <u>Lewis v. Continental</u>

Bank Corp., 494 U.S. 472, 477 (1990) ("Article III denies federal courts the power 'to decide questions that cannot affect the rights of litigants in the case before them,'" and "[t]his case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.") (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)). Since Mount Rushmore has approved and issued the requested permit, and agreed to consider any future permit requests, plaintiff has no concrete practical stake in any question that affects his rights.

Finally, plaintiff's contentions that plaintiff's choice of forum is entitled to deference and transfer is inappropriate because this lawsuit involves a challenge to nationwide regulations enforced by national officials based in Washington, D.C. is flawed (see Pl's Opp'n Br. at 2-4).[3]  Specifically, plaintiff's complaint fails to allege a waiver of sovereign immunity for the sweeping declaratory and injunctive relief he seeks pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (see Compl., ¶ 4) ("This Court has authority to grant the requested declaratory and injunctive relief under [those sections]".)[4]  A court lacks jurisdiction over claims against the United States absent an

---

[3] Plaintiff claims that the District of South Dakota is not a more convenient forum because "a significant amount of documents related to the creation and implementation of the regulations at issue should be found in the District of Columbia" and "both parties agree that this case is appropriate for summary judgment" (Pl's Opp'n Br. at 6). On the contrary, if any discovery is required in this case it will be of actions taken at Mount Rushmore by park officials in enforcing the applicable national regulations and policies.

[4] Plaintiff does not argue in its opposition that transfer would be inappropriate because he has also sued all of the Defendants, including the Mount Rushmore officials, in their individual capacities. Because the declaratory and injunctive relief sought in this case can only be pursued against these federal defendants in their official capacities, plaintiff's Bivens claims cannot succeed. See Brancaccio v. Reno, 964 F. Supp. 1, 2 n.4 (D.D.C. 1997) (plaintiff failed to state a claim against federal officials in their individual capacities where allegations made against them referred to actions that could only be performed by the defendants in their official capacities and where plaintiff requested injunctive relief which could only be performed by defendants in their official capacities); Simpkins v. District of Columbia Government, 108 F.3d 366, 368 (D.C. Cir. 1997) (A Bivens suit is an action against a federal officer in an individual

express waiver of sovereign immunity. United States v. Mitchell, 463 U.S. 206, 212 (1983). Although plaintiff correctly notes that § 2201 provides declaratory relief as a remedy, the provision does not waive the federal government's sovereign immunity. See, e.g. Walton v. Federal Bureau of Prisons, – F.Supp.2d –, 2008 WL 318326, *5 (D.D.C. 2008) (citing Balistrieri v. United States, 303 F.2d 617, 619 (7th Cir.1962) (Declaratory Judgment Act "created a remedy as to controversies of which the federal courts have jurisdiction," but it is not the United States' consent to suit"). Nor does plaintiff's complaint cite any other statutory provision waiving sovereign immunity. Plaintiff also alleges that this Court has original jurisdiction over the federal claims by operation of 28 U.S.C. § 1331 (Compl., ¶ 3). That statute's grant of subject matter jurisdiction to a federal court does not constitute a waiver of the Federal Government's sovereign immunity. Walton, 2008 WL 318326, *5 (citing Swan v. Clinton, 100 F.3d 973, 981 (D.C.Cir.1996) (holding that 28 U.S.C. § 1331 does not constitute a waiver of sovereign immunity).

Even if this Court were to find a waiver of sovereign immunity for plaintiff's challenge to the constitutionality of the existing regulations, plaintiff's complaint requests that a single district judge exercise the same broad power to vacate in their entirety agency regulations that Congress only rarely confers upon the District of Columbia Circuit, while freeing the plaintiff from the constraints (such as a specified appellate-court venue and a short filing period) that are characteristic of special judicial review provisions. See, e.g., 42 U.S.C. 7607(b)(1) (petition for review of an Environmental Protection Agency regulation of nationwide applicability under the Clean Air Act

---

capacity, seeking damages for violations of the plaintiff's constitutional rights.) Given plaintiff's position that venue is appropriate in the District of Columbia based on official actions allegedly taken by the national officials in enforcing agency regulations, and his request for declaratory and injunctive relief, Defendants submit that plaintiff has conceded this point.

must be filed in the District of Columbia Circuit within 60 days after the rule is published in the Federal Register). Moreover, a nationwide injunction, extending far beyond the particular national park at which plaintiff has a dispute, grants the same relief that would be available in a nationwide class action, but without the procedural prerequisites and protections mandated by Federal Rule of Civil Procedure 23, and without the prospect of nationwide preclusive effect in the government's favor if the named plaintiff loses on the merits.

The Supreme Court has made clear that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." Califano v. Yamasaki, 442 U.S. 682, 702 (1979); see also United States Dep't of Defense v. Meinhold, 510 U.S. 939 (1993) (granting stay of Armed-Forces-wide injunction, except as to individual plaintiff). Similarly in a variety of contexts, courts of appeals have recognized that the sort of categorical injunction sought from the district court in this case, which applies nationwide and without regard to particular applications of the challenged regulations or to whether such applications are likely to injure non-parties, is an inappropriate exercise of a court's equitable powers. See, e.g., Virginia Soc'y for Human Life, Inc. v. FEC, 263 F.3d 379, 393 (4th Cir. 2001) (holding that nationwide injunction prohibiting application of challenged regulations to non-parties was inappropriate because, inter alia, "[t]he broad scope of the injunction has the effect of precluding other circuits from ruling on the" relevant legal question, in contravention of the principles announced by this Court in United States v. Mendoza, 464 U.S. 154 (1984)); Everhart v. Bowen, 853 F.2d 1532, 1539 (10th Cir. 1988) ("Absent a class certification, the district court should not have treated the suit as a class action by granting statewide injunctive relief, and accordingly should have tailored its injunction to affect only those persons over whom it has power.") (citations, brackets, and internal quotation marks omitted),

rev'd on other grounds sub nom. Sullivan v. Everhart, 494 U.S. 83 (1990); Brown v. Trustees of Boston Univ., 891 F.2d 337, 361 (1st Cir. 1989) (holding injunction overbroad insofar as it extended beyond that necessary to redress the plaintiff's injury, and explaining that "[o]rdinarily, classwide relief . . . is appropriate only where there is a properly certified class"), cert. denied, 496 U.S. 937 (1990).

Accordingly, this case should be transferred to the District of South Dakota so that it may be litigated in the district where all relevant witnesses and records are located, and in the interests of justice to avoid blatant forum shopping and so that a district judge may consider plaintiff's request for declaratory and injunctive relief in the context of controlling circuit precedent and tailor any injunctive relief to the injuries alleged by the plaintiff in this case. Plaintiff may challenge the existing circuit precedent in that jurisdiction. Finally, the Court should also stay further proceedings in this case until it rules on the transfer motion, which was filed at an early stage in the litigation, and prior to any discovery or rulings by this Court on any substantive matters. Those matters should be addressed upon transfer of the case to the District of South Dakota.

WHEREFORE, for the foregoing reasons and those stated in our moving paper, the Court should grant Defendants' motion and transfer this case to the District of South Dakota.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
JOHN G. INTERRANTE
PA Bar # 61373
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7220
(202) 514-8780 (fax)
John.Interrante@usdoj.gov