UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL BOARDLEY,

               Plaintiff,

v.                                   Civil Action No. 07-1986 (JR)

UNITED STATES DEPARTMENT OF THE
INTERIOR, *et al.*,

               Defendants.

## **PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

Comes now Plaintiff Michael Boardley, by and through counsel, and pursuant to Fed. R. Civ. P. 56(c) and LCvR 56.1, hereby moves this Court for partial summary judgment on his facial challenge to 36 C.F.R. §§2.51-2.52 (2008). Plaintiff relies upon the following exhibits submitted in support of this Motion:

    a) Declaration of Michael Boardley in Support of Application for Preliminary Injunction, originally filed as Doc. No. 21, submitted here as Exhibit 1 ("Boardley Decl.");

    b) Declaration of Mike Pflaum, originally filed by Defendants as Exhibit C of Doc. No. 16, submitted here as Exhibit 2 ("Pflaum Decl.");

    c) Declaration of Mike Pflaum, originally filed by Defendants as Doc. No. 23, submitted here as Exhibit 3 ("Pflaum Addl. Decl.");

    d) Declaration of Mark Oehrlein, submitted as Exhibit 4 ("Oehrlein Decl.");

    e) 36 C.F.R. §2.51 (2008), submitted as Exhibit 5 ("Ex."); and

    f) 36 C.F.R. §2.52 (2008), submitted as Exhibit 6.

Plaintiff also relies on his Verified Complaint ("Compl.") in support of this motion. Pursuant to LCvR 7(h), a proposed order consistent with this Motion is also attached hereto.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

I.      STATEMENT OF FACTS ...........................................................................................1

II.     ARGUMENT ................................................................................................................5

     A.     DEFENDANTS' REGULATIONS VIOLATE THE FIRST AMENDMENT
            ON THEIR FACE ...............................................................................................5

           1.     The speech at issue is constitutionally protected. .......................................6

           2.     National Parks and Memorials are traditional public fora. ........................6

           3.     36 C.F.R. §§2.51-2.52 are unconstitutional prior restraints ......................8

                a.     Defendants' regulations grant unfettered discretion to park
                     officials to grant or deny permission for expressive activities. .......9

                b.     Defendants' regulations are facially content-neutral, but allow
                     park officials to apply them based on the content of the speech
                     at issue ...........................................................................................13

                c.     Defendants' regulations are not narrowly tailored ........................14

                     i.     Permit requirements that apply to small groups or
                          individual speakers are not narrowly tailored. ...................14

                     ii.     Defendants' regulations are not narrowly tailored
                          because they restrict a vast range of activities without
                          adequate justification. ........................................................18

                     iii.     Defendants' regulations are not narrowly tailored
                          because they completely foreclose both anonymous and
                            spontaneous speech without adequate justification. ..........18

                  d.     Defendants' regulations leave open no alternative channel of
                        communication ...............................................................................20

     B.     DEFENDANTS' REGULATIONS ARE FACIALLY OVERBROAD IN
            VIOLATION OF THE FIRST AND FIFTH AMENDMENTS ...........................20

     C.     DEFENDANTS' REGULATION §2.51 IS UNCONSTITUTIONALLY
            VAGUE IN VIOLATION OF THE FIFTH AMENDMENT. .............................22

III.    CONCLUSION .........................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*American-Arab Anti-Discrimination Comm. v. City of Dearborn,*
    418 F.3d 600 (6th Cir. 2005) ................................................................... 15, 18

*Arkansas Writers' Project, Inc. v. Ragland,*
    481 U.S. 221 (1987)................................................................................... 13

*Ashcroft v. Free Speech Coal.,*
    535 U.S. 234 (2002).................................................................................. 21

*Bantam Books v. Sullivan,*
    372 U.S. 58 (1963)..................................................................................... 8

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.,*
    482 U.S. 569 (1987)............................................................................. 18, 23

*Boos v. Barry,*
    485 U.S. 312 (1988)................................................................................... 6

*Broadrick v. Oklahoma,*
    413 U.S. 601 (1973)................................................................................. 21

*Burk v. Augusta-Richmond County,*
    365 F.3d 1247 (11th Cir. 2004) .............................................................. 15

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)................................................................................... 5

*Chester v. Washington Metro. Area Transit Auth.,*
    335 F. Supp. 2d 57 (D.D.C. 2004) ........................................................... 5

*City of Lakewood v. Plain Dealer Publ'g Co.,*
    486 U.S. 750 (1988)................................................................................... 9

*Clark v. Cmty. for Creative Non-Violence,*
    468 U.S. 288 (1984)............................................................................... 7, 13

*Cmty. For Creative Non-Violence v. Turner,*
    893 F.2d 1387 (D.C. Cir. 1990)................................................ 15, 16, 20, 23

*Connally v. Gen. Constr. Co.,*
    269 U.S. 385 (1926)................................................................................. 22

*Cornelius v. NAACP Legal Def. and Educ. Fund*,
    473 U.S. 788, 797 (1985) ............................................................................. 6

*Cox v. City of Charleston*,
    250 F. Supp. 2d 582 (D.S.C. 2003) .............................................................. 15

*Cox v. City of Charleston*,
    416 F.3d 281 (4th Cir. 2005) ........................................................ 15, 16, 19

*Douglas v. Brownell*,
    88 F.3d 1511 (8th Cir. 1996) ................................................................ 15, 16

*Fernandes v. Limmer*,
    663 F.2d 619, 628 (5th Cir. 1981) ....................................................... 10, 11

*Forsyth County v. Nationalist Movement*,
    505 U.S. 123 (1992) .............................................................................. 8, 9, 14

*Freedman v. Maryland*,
    380 U.S. 51 (1965) ......................................................................................... 12

*Frisby v. Schultz*,
    487 U.S. 474 (1988) ....................................................................................... 14

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ................................................................................. 22, 23

*Grossman v. City of Portland*,
    33 F.3d 1200 (9th Cir. 1994) ................................................ 8, 15, 16, 19, 21

*Hague v. CIO*,
    307 U.S. 496 (1939) ......................................................................................... 6

*Henderson v. Lujan*,
    964 F.2d 1179 (D.C. Cir. 1992) ............................................................ 7, 8, 17

*Hynes v. Mayor and Council of Borough of Oradell*,
    425 U.S. 610 (1976) ....................................................................................... 22

*Knowles v. City of Waco*,
    462 F.3d 430 (5th Cir. 2006) ........................................................................ 15

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ....................................................................................... 23

iii

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995)............................................................................ 19, 22

*Members of City Council v. Taxpayers for Vincent*,
    466 U.S. 789 (1984)................................................................................ 21

*NAACP v. Alabama ex rel. Flowers*,
    377 U.S. 288 (1964)................................................................................ 20

*NAACP v. Button*,
    371 U.S. 415 (1963)................................................................................ 23

*\*Naturist Soc'y, Inc. v. Fillyaw*,
    858 F.Supp. 1559 (S.D. Fla. 1994) ....................................................... 10

*Naturist Soc'y, Inc. v. Fillyaw*,
    958 F.2d 1515 (11th Cir. 1992) ............................................................... 7

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976).................................................................................. 8

*\*Parks v. Finan*,
    385 F.3d 694 (6th Cir. 2004) ................................................. 15, 18, 22, 23

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983).................................................................................... 6

*Regan v. Time, Inc.*,
    468 U.S. 641 (1984)................................................................................ 13

*Santa Monica Food Not Bombs v. City of Santa Monica*,
    450 F.3d 1022 (9th Cir. 2006) ............................................................... 17

*Schneider v. New Jersey*,
    308 U.S. 147, 160 (1939).......................................................................... 6

*Shuttlesworth v. City of Birmingham*,
    394 U.S. 147 (1969)............................................................................ 9, 10

*Thomas v. Chicago Park Dist.*,
    534 U.S. 316 (2002)................................................................................ 12

*Thornhill v. Alabama*,
    310 U.S. 88 (1940).................................................................................. 21

*United States v. Baugh*,
    187 F.3d 1037 (9th Cir. 1999) ........................................................................ 7

*United States v. Bynum*,
    327 F.3d 986 (9th Cir. 2003) .......................................................................... 5

*United States v. Frandsen*,
    212 F.3d 1231 (11th Cir. 2000) ......................................................... 6, 11, 12

*United States v. Grace*,
    461 U.S. 171 (1983).......................................................................................... 6

*United States v. Kokinda*,
    497 U.S. 720 (1990)........................................................................................ 17

\*United States v. Rainbow Family*,
    695 F.Supp. 294 (E.D. Tex. 1988)................................................................ 10

*Vill. of Schaumberg v. Citizens for a Better Env't*,
    444 U.S. 620 (1980)......................................................................................... 5

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989)........................................................................................ 14

\*Watchtower Bible and Tract Soc'y of New York v. Village of Stratton*,
    536 U.S. 150 (2002)................................................................... 18, 19, 21, 22

## Rules

Fed. R. Civ. P. 56(c) ................................................................................................ 5

## Regulations

36 C.F.R. §2.51 (2008) ..................................................................................... passim

36 C.F.R. §2.52 (2008) ..................................................................................... passim

*Pursuant to LCvR7(a) counsel has placed asterisks to the left of those cases or authorities on which counsel chiefly relies.

Plaintiff Michael Boardley, by and through counsel, hereby moves this Court for partial summary judgment on his facial challenges to 36 C.F.R. §§2.51-2.52 (2008). These regulations are unconstitutional prior restraints on expression in our National Parks, which are traditional public fora. They are so overbroad that a permit is required before even a single speaker can publicly wear a T-shirt or a button with a message, distribute literature, or engage in any other "public expression of views" in a National Park—a serious affront to the First Amendment. The factual circumstances in this case make the restrictive nature of these regulations all the more ironic, given that they were used by park administrators to restrain Mr. Boardley's protected expression at Mt. Rushmore National Monument, formerly proclaimed by Defendants as "America's Shrine to Democracy."[1] Defendants' regulations violate the First Amendment under clearly established case law, and Plaintiff is entitled to partial summary judgment on his facial challenge to those regulations.

## I.    STATEMENT OF FACTS

Plaintiff Michael Boardley is a resident of Coon Rapids, Minnesota. (Compl. ¶6; Boardley Decl. ¶1). He is a professing Christian, and he believes it is his Christian duty and privilege to inform others about the Gospel of Jesus Christ. (Compl. ¶7). Mr. Boardley hands out gospel tracts in public areas because of his sincerely held religious beliefs concerning Christianity. (Compl. ¶8). On August 9, 2007, Mr. Boardley and a few other individuals traveled to Mt. Rushmore to hand out free gospel tracts. (Compl. ¶17). They distributed the tracts beside the "Alley" or "Avenue of Flags," an open section with walkways for visitors after

---

[1]This description of Mt. Rushmore was on the Mount Rushmore National Memorial website as of November 1, 2007. *See* Pls.' App. Prelim. Inj. 1, at n.1. But perhaps Defendants now agree with Plaintiff that such a description may not be accurate in light of the denial of First Amendment rights that took place there, as that description is no longer on their website. *See* Mount Rushmore National Memorial (U.S. National Park Service), http://www.nps.gov/moru/index.htm (last visited April 9, 2008).

visitors gain entrance to the Mt. Rushmore National Memorial facility. (Compl. ¶18). Their activities occurred without incident or comment from park officials. (Compl. ¶19).

On August 10, 2007, Mr. Boardley and the other individuals returned to Mt. Rushmore and began to hand out the same gospel tracts near the same spot. (Compl. ¶20). Mr. Boardley was not engaging in any loud, consistent speech or using any amplification. (Compl. ¶¶21-22). Mr. Boardley was distributing the tracts by offering them to passersby, and at no time did he attempt to force his tracts on anyone who did not wish to take one. (Compl. ¶¶23-24). While he was engaged in this activity, Mr. Boardley was approached by Park Ranger L. Hanson. (Compl. ¶25; Boardley Decl. ¶3). Ranger Hanson told Mr. Boardley that unless he had a free speech permit for the free speech zone, he would not be allowed to distribute the free gospel tracts. (Compl. ¶26; Boardley Decl. ¶3). Ranger Hanson told Mr. Boardley in order to obtain a free speech permit he needed to call a certain phone number—which was available on the Mt. Rushmore website—to request one. (Compl. ¶29; Boardley Decl. ¶4). Ranger Hanson did not mention a permit application. (Boardley Decl. ¶5). There is a two-day waiting period for free speech permits at Mt. Rushmore. (Compl. ¶¶29-30; Pflaum Decl. ¶8).

After Mr. Boardley returned to Minnesota, he called the ranger's office in order to request a permit, and he left two messages. (Compl. ¶31; Boardley Decl. ¶¶6-7). A park official returned his call and asked for some information from Mr. Boardley, such as his name and address. (Compl. ¶32; Boardley Decl. ¶8). There was no application form given to Mr. Boardley to fill out personally. (Compl. ¶33; Boardley Decl. ¶9). The park official said that she would mail a free speech permit to him; however, Mr. Boardley never received a permit or denial of permit. (Compl. ¶¶34-35; Boardley Decl. ¶10).

On October 2, 2007, Mr. Boardley called Nancy Marteens at the ranger's office and left a voicemail requesting an additional new permit for a different date. (Compl. ¶36; Boardley Decl. ¶¶11-12). Ms. Marteens returned his call and told Mr. Boardley to contact Chief Ranger Mike Pflaum regarding a permit. (Compl. ¶37; Boardley Decl. ¶13). Ms. Marteens also said she would forward Mr. Boardley's request to Defendant Pflaum. (Compl. ¶38; Boardley Decl. ¶14). Mr. Boardley called Defendant Pflaum and requested a permit. (Compl. ¶39; Boardley Decl. ¶16). Mr. Boardley indicated in his message that he needed the permit as soon as possible because he needed to plan his trip in advance. (Boardley Decl. ¶¶17-18). Mr. Boardley did not receive a permit from Defendant Pflaum or any other official until one month after this lawsuit was filed. (Compl. ¶40; Boardley Decl. ¶19; Pflaum Addl. Decl. ¶4).

One of Mr. Boardley's associates, Mark Oehrlein, experienced similar problems obtaining a free speech permit in July of 2006. (Compl. ¶¶44-54; Oehrlein Decl. ¶¶1-14). Mr. Oehrlein brought tracts to distribute at no charge at Mt. Rushmore. (Compl. ¶45; Oehrlein Decl. ¶¶2-3). He asked a park ranger about doing so, and the park ranger said he needed a permit to distribute tracts. (Compl. ¶46; Oehrlein Decl. ¶4). Mr. Oehrlein went to the office to request a permit and was told by park staff to return later in the day. (Compl. ¶47; Oehrlein Decl. ¶5). He returned at the requested time and did not receive a permit because the park official he spoke with said she could not find any. (Compl. ¶48; Oehrlein Decl. ¶6). The park official told Mr. Oehrlein he needed to speak with a Mr. Baker or a Mr. Pflaum, and told him to call them the next day. (Oehrlein Decl. ¶6).

Mr. Oehrlein called the next morning about his request for a permit and spoke with Defendant Baker, was told him to come back to the office. (Compl. ¶49; Oehrlein Decl. ¶7). He returned to the office to obtain a permit and Defendant Baker asked him what he intended to do.

(Compl. ¶50; Oehrlein Decl. ¶8).  Mr. Oehrlein responded that he wanted to distribute tracts about the Gospel and Christianity.  (Compl. ¶51; Oehrlein Decl. ¶8).  Defendant Baker responded that he "didn't like that" and after a period of time stated that he could not find any permit forms.  Because he could not find a permit form, Defendant Baker stated that Mr. Oehrlein would have to speak with Defendant Pflaum.  (Compl. ¶52; Oehrlein Decl. ¶10).  However, Mr. Oehrlein was informed that Defendant Pflaum was at the dentist that day.  (Compl. ¶53; Oehrlein Decl. ¶10).  Defendant Baker invited Mr. Oehrlein to return to the ranger's office again later that day, and Mr. Oehrlein called the office, but did not receive a permit.  (Oehrlein Decl. ¶11).  Despite his efforts, Mr. Oehrlein was never able to obtain a permit and as a result left Mt. Rushmore without being able to give tracts to anyone as he had wished to do.  (Oehrlein Decl. ¶12).

36 C.F.R. §§2.51-2.52 (2008) apply to public expression at all national park lands, including Mt. Rushmore.  These regulations often use the same language.  (Compl. ¶¶58-59; Exs. 1-2, Text of 36 C.F.R. §§2.51-2.52).  §2.51 allows "public assemblies, meetings, gatherings, demonstrations, and *other public expressions of views*" on park lands only where a permit has been granted by the park superintendent.  (Ex. 1) (emphasis added).  The time frame for granting a permit is only stated as "without unreasonable delay."  (Ex. 1).  A permit may be denied if the superintendent feels that the event will "present a clear and present danger to the public health or safety."  (Ex. 1).  The regulation also gives the superintendent the discretion to designate which areas are available for "public assemblies," allowing the superintendent to decide not to allow the activity in an area if he or she determines that the activity will "unreasonably impair the atmosphere of peace and tranquility maintained in wilderness, natural, historic or

commemorative zones," or if it presents a "clear and present danger to the public health and safety," among other reasons.  (Ex. 1).

§2.52 allows the sale or distribution of "printed matter" within park lands only where a permit has been granted by the park superintendent, and disallows any sale or distribution of printed matter if it is "solely commercial advertising."  (Ex. 2). It allows the superintendent to deny a permit on the same grounds as §2.51.  (Ex. 2).  It also allows the superintendent to designate the area available for the activity, subject to the same conditions as §2.51.  (Ex. 2).

## II.    ARGUMENT

Under Federal Rule of Civil Procedure 56(c), a court should grant summary judgment when the evidence in the record demonstrates that there are no disputed issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The issue raised by the present motion is whether or not the regulations in 36 C.F.R. §§2.51-2.52 are facially constitutional.  Because this is a pure question of law, it is appropriate for resolution through summary judgment.  *See Vill. of Schaumberg v. Citizens for a Better Env't*, 444 U.S. 620, 634-35 (1980) (upholding appellate court's review of district court's grant of summary judgment as it involved only a question of law); *Chester v. Washington Metro. Area Transit Auth.*, 335 F. Supp. 2d 57, 59 (D.D.C. 2004) (entering summary judgment based on questions of law); *see also United States v. Bynum*, 327 F.3d 986, 990 (9th Cir. 2003) ("[A] facial challenge to the constitutionality of a statute is a question of law").

### A.    DEFENDANTS' REGULATIONS VIOLATE THE FIRST AMENDMENT ON THEIR FACE.

A three-part framework is used to evaluate the constitutionality of a restriction on free speech; first, it must be determined whether or not the speech is protected; second, the nature of

the forum where the speech would take place must be identified; third, the government's restriction on the speech must be justified by the requisite standard. *Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. 788, 797 (1985).

### 1.    The speech at issue is constitutionally protected.

It is beyond dispute that Plaintiff's desired expression—peacefully handing out gospel tracts to those who wish to take them—is protected by the Constitution.  Oral communication and literature distribution are also protected activities and classic forms of speech, and their exercise lies at the very "foundation of free government by free men." *Schneider v. New Jersey*, 308 U.S. 147, 160 (1939).  Plaintiff's peaceful leafleting activities are clearly protected by the First Amendment. *See United States v. Grace*, 461 U.S. 171, 176 (1983); *Schneider*, 308 U.S. at 160-64 (1939).

### 2.    National Parks and Memorials are traditional public fora.

Streets and parks are the quintessential traditional public fora because those areas "'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)).  Public places historically associated with the free exercise of expressive activities, such as parks, are "considered, generally without further inquiry, to be public forum property." *Grace,* 461 U.S. at 179.  As such, the government's capacity to limit expressive activities in these areas is severely limited. *Boos v. Barry*, 485 U.S. 312, 318 (1988).

National parks are no exception to this rule, for they too are public fora. *See United States v. Frandsen*, 212 F.3d 1231, 1237-38, 1238 n.4 (11th Cir. 2000) (noting that the government conceded that national parks are traditional public fora, and that their decision in

*Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515 (11th Cir. 1992), confirms that national parks are traditional public fora); *see also United States v. Baugh,* 187 F.3d 1037, 1042 (9th Cir. 1999) (stating that the Presidio, a part of Golden Gate National Recreation Area, was a "quintessential public forum," and analyzing 36 C.F.R. §2.51 in that context).   This circuit has previously analyzed national park property as a traditional public forum.  *See Henderson v. Lujan*, 964 F.2d 1179, 1182 (D.C. Cir. 1992) (determining sidewalk part of Vietnam Veterans Memorial was a traditional public forum).  And in *Clark v. Cmty. for Creative Non-Violence,* 468 U.S. 288, 293 (1984), the Supreme Court analyzed restrictions on speech in Lafayette Park, part of a National Historic Landmark District and governed by Defendant National Park Service, under the public forum framework.

     As an illustration, the characteristics of the specific area of Mt. Rushmore where Mr. Boardley tried to engage in expressive activity confirm that traditional public forum analysis is appropriate.   Mr. Boardley was distributing his tracts near the "Avenue of Flags," an open outdoor area with walkways for visitors after they gain entrance to the Mt. Rushmore National Memorial facility, when he was told he needed a permit.  (Compl. ¶¶18, 20, 25-26; Boardley Decl. ¶3).  There is nothing that makes this area different than what may be found in any other public park, except for perhaps a view of Mt. Rushmore.  But that alone is not enough to strip the Avenue of Flags and preceding areas of its natural character as what appears to be a traditional public forum.

     As an additional example, in *Henderson*, this circuit described the sidewalks abutting the Vietnam Veterans Memorial as "physically indistinguishable from ordinary sidewalks used for the full gamut of urban walking," and found that the sidewalks' "apparent similarity to ones of the classic variety at a minimum put the burden on the government to show that the use was

*overwhelmingly specialized*" if it wanted to argue that the sidewalks were not a traditional public forum. *Henderson,* 964 F.2d at 1182 (emphasis added).  In other words, if a piece of National Park property looks and feels like a traditional public forum, the burden is on the government to show that there is some specialized use for that particular property that takes it out of that category.  Unless there is such a specialized use, the public areas of the National Parks should be considered a traditional public forum for purposes of the First Amendment.

### 3.    36 C.F.R. §§2.51-2.52 are unconstitutional prior restraints.

Regulations requiring authorization from a public official before expressive activity may occur in an archetypical public forum are a prior restraint on speech.  *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992).  Since prior restraints censor speech before it occurs, there is a heavy presumption against their constitutionality.  *Bantam Books v. Sullivan,* 372 U.S. 58, 70 (1963).  This heavy presumption is "justified by the fact that 'prior restraints on speech . . . are the most serious and least tolerable infringement on First Amendment rights.'" *Grossman v. City of Portland,* 33 F.3d 1200, 1204 (9th Cir. 1994) (quoting *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976)).  In fact, in order to survive constitutional scrutiny, a regulation or scheme amounting to a prior restraint must meet several requirements.  First, it may not delegate overly broad discretion to a government official.  *Forsyth County,* 505 U.S. at 130.  Second, any prior restraint that controls the time, place or manner of speech must not be based on the content of the message.  *Id.* (citation omitted).  Finally, the regulation must also be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication.  *Id.*  It is enough that Defendants' regulations and actions fail just one of these requirements to render them unconstitutional; but as discussed below, they fail multiple requirements.

a.    **Defendants' regulations grant unfettered discretion to park officials to grant or deny permission for expressive activities.**

The Supreme Court has consistently condemned regulations on speech which vest discretion in an administrative official to grant or withhold a permit based upon broad criteria unrelated to the proper regulation of public places. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 153 (1969) (citations omitted). If the permit scheme involves the appraisal of facts, exercise of judgment, and formation of an opinion, the danger of censorship is too great to be permitted. *Forsyth County*, 505 U.S. at 130. Left with only vague or non-existent criteria on which to base their decision, government officials "may decide who may speak and who may not based upon the content of the speech or the viewpoint of the speaker." *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 757, 763-64 (1988). Even if there is no evidence to point to a content-based motive for the Defendants' application of their regulations, the very fact that the regulations are so open-ended as to allow administrators to enforce them based on content is enough for them to fail constitutional scrutiny. "The success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so." *Forsyth County*, 505 U.S. at 133 n.10.

§§2.51 and 2.52 run afoul of this requirement in two different ways. First, the criteria for granting a license and whether or not the regulations apply are vague and bestow too much discretion on the park official. Second, there is no specified time limit on the park official's decision to grant or deny the permit, allowing officials to foreclose speech by delaying a response.

§§2.51 and 2.52 are facially unconstitutional because the criteria park officials must follow in considering whether to grant or deny a permit are vague and permit those officials to

exercise unbridled discretion. Both regulations permit the park superintendent to deny a permit if "it reasonably appears" that the expressive conduct "will present a clear and present danger to the public health or safety." 36 C.F.R. §2.51(c)(2), §2.52(c)(2). The language of the regulations also allows park officials to restrict the areas speech is allowed in according to this same standard. Other courts have found similar language to vest excessive discretion in administrators, since the term is not defined and is unduly vague. For example, in *Naturist Soc'y, Inc. v. Fillyaw*, 858 F.Supp. 1559 (S.D. Fla. 1994), the court found a state park regulation containing the same language to be unconstitutional on its face. The court found that "clear and present danger" was somewhat vague, and "require[d] park managers to make individualized judgments about the nature of a demonstration." *Id.* at 1570. In the court's opinion, this "bestow[s] too much discretion upon park managers, and therefore pose[s] a danger that permits may be denied based upon the content of a demonstrator's message." *Id.*

In *United States v. Rainbow Family*, 695 F.Supp. 294 (E.D. Tex. 1988), the court found that a Forest Service regulation with the same language at issue here was facially unconstitutional for granting unbridled discretion to administrators. The court stated:

> Indeed, under *Shuttlesworth* [*v. City of Birmingham*, 394 U.S. 147, 153 (1969)] and *Fernandes* [*v. Limmer*, 663 F.2d 619, 628, 631 (5th Cir. 1981), *cert. dismissed*, 458 U.S. 1124 (1982)] it is apparent that the "clear and present danger to public health and safety" ground for denial of a special use permit is standardless, and allows Forest Service officials to deny permits for expressive activity based on their subjective, unbridled discretion. Under this criterion, an official is free to speculate as to the likely effect of some act of speech, association or other expressive activity, before it happens, drawing his or her own conclusions as to what the "public health or safety" may be.

*Id.* at 311.

The provision at issue in *Fernandes* gave administrators the authority to deny a permit for expressive activities if they had "good reason to believe that the granting of the permit will result in a direct and immediate danger or hazard to the public security, health, safety or welfare." *Id.*

10

at 631.  In the Fifth Circuit's view, this standard of "good reason" for denial of a permit is "indefinite" and "does not comport with the constitutional requirement that discretion in public officials be specifically and narrowly circumscribed." *Id.*  A "before-the-fact determination as to the harmful consequences of an applicant's speech is . . . a subjective judgment call in the total discretion of the Director.  *This type of unbridled discretion has been condemned time and time again by the Supreme Court*." *Id.* (emphasis added).  §§2.51 and 2.52 contain the same language as the regulations in *Fillyaw* and *Rainbow Family*, and similar language to the regulations at issue in *Fernandes*.  For like reasons, these regulations are facially unconstitutional prior restraints because they bestow too much discretion on the park superintendent in whether to grant or deny a permit or in determining where speech is allowed to occur.

Additionally, §2.51 requires a permit for any "public expression of views."  As discussed in Part II (C) *infra*, if the Defendants do not mean to require a permit for every instance of someone publicly expressing their views at a National Park, these words are unduly vague and do not restrain administrators in deciding whether or not a permit should be required.  The words of the regulation give park administrators the authority to decide what, in their sole discretion, constitutes a "public expression of views" necessitating a permit.  This type of unbridled discretion is repugnant to the First Amendment, and renders §2.51 unconstitutional.

Another way §§2.51-2.52 grant unfettered discretion to administrators is through the lack of a defined time period on the face of the regulation in which the permit must be granted or denied.  For example, in *United States v. Frandsen*, the Eleventh Circuit held that §2.51 was facially unconstitutional because it failed to confine the time within which park officials must grant or deny a permit application.  212 F.3d at 1239-40.  Although §2.51(c) requires the park superintendent to issue a permit "without unreasonable delay," the Eleventh Circuit found that

this "does not provide the superintendent, the public, or any reviewing court, with any guidance as to what is considered 'unreasonable.'" *Frandsen* at 1240. §2.52(c) contains the same language.

*Frandsen* was decided before *Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002),[2] which held that the *Freedman*[3] criteria for prior restraints should not be applied where the law is facially content-neutral. But *Frandsen*'s analysis of the regulation was in the context of its discussion of unfettered discretion, and the court's concerns about the effect of a lack of time constraint on the discretion of officials and the resulting danger of content-based enforcement remain highly relevant. The *Frandsen* court was concerned that because this language puts no real time limits on the park superintendent, he or she could receive a permit application for planned speech well in advance, but fail to act on the request until after the date of the event, deciding on his or her own that they were acting without "unreasonable delay." *Id.* at 1240. The court was also concerned that a superintendent that does not agree with the political message to be espoused could allow the permit request to sit on his or her desk for an indefinite period of time—resulting in speech being silenced by inaction. *Id.*

This concern about the language in §§2.51 and 2.52 was borne out by what happened to Mr. Boardley and Mr. Oehrlein at the hands of the Defendants. Here, Mr. Boardley applied twice for a permit and received no response until after this lawsuit was filed. (Compl. ¶¶31-40; Boardley Decl. ¶¶3-19). Mr. Oehrlein also tried to apply for a permit but was told by a park official that they "didn't like" what he wanted to do, they "could not find" the permits, and Defendant Pflaum was at the dentist and unavailable, so he never received a permit and left the

---

[2] The permit requirement at issue in *Thomas* applied to groups of 50 or more.

[3] *Freedman v. Maryland*, 380 U.S. 51 (1965).

park without having been able to engage in his desired expression.  (Compl. ¶¶44-54; Oehrlein

Decl. ¶¶4-12).   Whether Defendants do not "like" gospel tracts or just do not approve when

individuals exercise their free speech rights at Mt. Rushmore, they effectively silenced Mr.

Oehrlein's speech through their concerted inaction—precisely the danger of the vague language

and lack of constraints in §§2.51-2.52 that was pointed out by the Eleventh Circuit.  This danger

is of particular significance in the context of National Parks and Monuments.  Many of the parks

and monuments are geographically isolated, making quick, last minute trips out of the question

for most individuals, and visitors to the parks and monuments often only stay for a short time.

Like Mr. Oehrlein found, allowing the Park Service to give potential speakers the runaround for

even a couple of days effectively forecloses their speech, since many cannot wait and have to

leave.   Aside from their broad language as to when they apply and when a permit should be

granted, §§2.51-2.52 are also facially unconstitutional because they fail to adequately confine the

time in which the park official must act in granting or denying a permit, vesting unfettered

discretion in the park administrators and allowing them to simply delay, and by default deny, a

permit.  Both regulations are therefore unconstitutional prior restraints.

> **b.  Defendants' regulations are facially content-neutral, but allow park officials to apply them based on the content of the speech at issue.**

"Regulations which permit the Government to discriminate on the basis of the content of

the message cannot be tolerated under the First Amendment."  *Regan v. Time, Inc*., 468 U.S. 641,

648-49 (1984).  Restrictions on speech are content-based when the message determines whether

the speech is subject to the restriction.  *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221,

230 (1987).  In other words, the requirement is content-neutral if it is "justified without reference

to the content of the regulated speech."  *Clark,* 468 U.S. at 293.  In this situation, it appears to

Plaintiff that the regulations at issue are facially content-neutral.   However, the vague and

overbroad nature of the regulations allows park officials to *apply* them based on the content of the speech at issue, since their discretion is virtually unrestrained. This alone, even without any evidence of actual content-based discrimination, is enough to find these regulations facially unconstitutional. *Forsyth County*, 505 U.S. at 133 n.10.

c.       **Defendants' regulations are not narrowly tailored.**

In order to satisfy a requirement of narrow tailoring, a regulation must promote a "substantial government interest that would be achieved less effectively absent the regulation," but must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). In other words, a regulation is narrowly tailored if it "targets and eliminates no more than the exact source of the evil it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (internal quotation and citation omitted). Mr. Boardley does not dispute that the government has a substantial interest in protecting and maintaining the National Parks for future generations. But under clear precedent, Defendants' regulations are not narrowly tailored to serve that interest and are facially unconstitutional prior restraints on this basis as well.

i.       **Permit requirements that apply to small groups or individual speakers are not narrowly tailored.**

The regulations at issue here do not restrict the applicability of the permit requirement by the size of the group. Rather, they require a permit for *any* "public assemblies, meetings, gatherings, demonstrations, parades and other public expressions of views . . . within park areas," §2.51, and for *any* "sale or distribution of printed matter," §2.52. Thus, on their face, the ordinances apply to individual speakers or pamphleteers. Because Defendants' regulations can apply to even individual speakers, they are not narrowly tailored and are therefore unconstitutional.

14

Courts have repeatedly recognized that permit requirements on individual speakers or small groups violate the First Amendment because they are overbroad and lack narrow tailoring. *See, e.g., Cmty. For Creative Non-Violence v. Turner*, 893 F.2d 1387 (D.C. Cir. 1990); *Douglas v. Brownell*, 88 F.3d 1511 (8th Cir. 1996); *Grossman v. City of Portland*, 33 F.3d 1200 (9th Cir. 1994); *Cox v. City of Charleston*, 250 F. Supp. 2d 582 (D.S.C. 2003), *aff'd*, 416 F.3d 281 (4th Cir. 2005); *see also Knowles v. City of Waco*, 462 F.3d 430, 436 (5th Cir. 2006) ("Other circuits have held, and we concur, that ordinances requiring a permit for demonstrations by a handful of people are not narrowly tailored to serve a significant government interest"); *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608 (6th Cir. 2005) ("Permit schemes and advance notice requirements that potentially apply to small groups are nearly always overly broad and lack narrow tailoring"); *Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1259 (11th Cir. 2004) (Barkett, C.J., concurring) (striking down an ordinance as not narrowly tailored because it applied to "small intimate groups"); *Parks v. Finan*, 385 F.3d 694 (6th Cir. 2004) (striking down a permit requirement for individuals to engage in an activity of "broad public purpose" as a "substantially overbroad restriction on individual speech").

In *Turner*, this circuit struck down a permit scheme that applied to all "free speech activities" on transit authority property. *Turner*, 893 F.2d at 1392. The court pointed out that while the defendant transit authority's state interests were achieved more effectively with the regulation than without it, the permit requirement also "restricts many incidents of free expression that pose little or no threat to WMATA's ability to provide safe and efficient transportation and an equitably available forum for public expression." *Id.* The court found this requirement so overbroad that it was "unclear what free speech activities would *not* be covered by the permit requirement," thereby restricting a "substantial quantity of speech that does not

impede WMATA's permissible goals." *Id.* Even if the defendants' interests were admirable, requiring a permit for all free speech activities accomplished that interest at "too high a cost." *Id.*

If it were not enough that Defendants' regulations are unconstitutional under controlling precedent in this circuit, the decisions of several other circuits dictate the same result. The Eighth Circuit came to a similar conclusion in *Douglas* and struck down a permit requirement for parades of ten or more people. 88 F.3d at 1524. The *Douglas* court noted, "We entertain doubt whether applying the permit requirement to such a small group is sufficiently tied to the City's interest in protecting the safety and convenience of citizens who use the public sidewalks and streets." *Id.*

The *Douglas* court cited *Grossman*, where the Ninth Circuit was concerned that the permit scheme applied to small groups of "six to eight people." *Grossman,* 33 F.3d at 1207. While the court recognized that "some type of permit requirement *may* be justified in the case of large groups, where the burden placed on park facilities and the possibility of interference with other park users is more substantial," this same concern is not present when there is a small group or individual speaker. *Id.* at 1206 (emphasis in original).

In *Cox,* the Fourth Circuit found that "ordinances are facially unconstitutional to the extent that they require small gatherings, *including sole protestors*, to obtain a permit before protesting in a public forum." 250 F. Supp. 2d at 591. Ordinances which "requir[e] gatherings of a few people or a single protester to obtain a permit days in advance before protesting in a public forum "sweep[] too broadly and [are] not narrowly tailored to achieve the cities' safety interest." *Id.* at 590.

The Ninth Circuit recently summed up these concerns in dicta in *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1039-40 (9th Cir. 2006). While analyzing a regulation that required a permit for a march or assembly of more than 500 people, the court stated:

> As the cautionary language in our earlier opinions indicates, the significant governmental interest justifying the unusual step of requiring citizens to inform the government in advance of expressive activity has always been understood to arise only when large groups of people travel together on streets and sidewalks. . . . Without a provision limiting the permitting requirements to larger groups, or some other provision tailoring the regulation to events that realistically present *serious* traffic, safety, and competing use concerns, significantly beyond those presented on a daily basis by ordinary use of the streets and sidewalks, a permitting ordinance is insufficiently narrowly tailored to withstand time, place, and manner scrutiny.

*Id.* at 1039 (emphasis in original) (internal citations omitted).

Prohibiting expressive conduct by one or a few individuals is simply not justified by the Defendants' interest in maintaining park lands. This holds true even for individuals or small groups distributing literature, as Mr. Boardley wishes to do. As the Supreme Court has noted, free distribution of literature is far less disruptive than solicitation: "One need not ponder the contents of a leaflet or pamphlet in order mechanically to take it out of someone's hand, but one must listen, comprehend, decide, and act in order to respond to a solicitation." *United States v. Kokinda*, 497 U.S. 720, 734 (1990) (plurality opinion). And it is difficult to see how a few people distributing tracts in a public area of a National Park like Mt. Rushmore harms the government's interest in protecting those park lands, especially when this circuit has invalidated a Park Service regulation restricting literature distribution on sidewalks in close proximity to the Vietnam Veterans Memorial, a much more solemn venue, for precisely that reason. *Henderson*, 964 F.2d at 1184-85. This total ban on expression without receiving a permit in advance is not narrowly tailored, and cannot be allowed consistent with the First Amendment.

17

ii.    **Defendants' regulations are not narrowly tailored because they restrict a vast range of activities without adequate justification.**

The language of §2.51 sweeps broadly and requires a permit for a vast range of First Amendment activities.  It prohibits *any* "public expression of views" without a permit, which does not even come close to being narrowly tailored to satisfy a substantial government interest. In *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987), the Supreme Court struck down a policy at Los Angeles International Airport (LAX) that banned all "First Amendment activities."  The Court stated:

> The resolution therefore does not merely reach the activity of respondents at LAX; it prohibits even talking and reading, or the wearing of campaign buttons or symbolic clothing. Under such a sweeping ban, virtually every individual who enters LAX may be found to violate the resolution by engaging in some "First Amendment activity." We think it obvious that such a ban cannot be justified even if LAX were a nonpublic forum because no conceivable governmental interest would justify such an absolute prohibition of speech.

*Id.* at 575.

There are certainly a great many instances where a person might publicly express their views on National Park land; yet the plain language of the regulation, like LAX's policy, requires a permit for any expression, which would even include a message on a T-shirt, a button, or tattoo.  It suffices to say that this regulation is "hopelessly overbroad."  *American-Arab Anti-Discrimination Comm.*, 418 F.3d at 608.

iii.    **Defendants' regulations are not narrowly tailored because they completely foreclose both anonymous and spontaneous speech without adequate justification.**

Under the Supreme Court's holding in *Watchtower Bible and Tract Soc'y of New York v. Vill. of Stratton,* 536 U.S. 150, 167 (2002), this court must give weight to the concern that a permitting scheme will stifle spontaneous or anonymous speech.  *See Parks,* 385 F.3d at 701.

18

Because §§2.51-2.52 require a permit before even an individual may engage in expressive activity or leafleting, they completely eliminate the possibility of spontaneous speech in every National Park in the country.  And because an individual must fill out an application before they may engage in any expressive activities, anonymous speech is likewise eliminated.  This is a severe burden on the First Amendment.

Spontaneous expression is often "the most effective kind of expression."  *Grossman*, 33 F.3d at 1206.  But "[b]oth the procedural hurdle of filling out and submitting a written application, and the temporal hurdle of waiting for the permit to be granted may discourage potential speakers.  Moreover, because of the delay caused by complying with the permitting procedures, immediate speech can no longer respond to immediate issues."  *Id.* (internal quotations omitted).  The Fourth Circuit in *Cox* struck down a similar permit ordinance that applied to individuals and small groups, giving several examples of innocuous speech activities which would be rendered illegal simply because the participants did not obtain a permit from the city administrator first, and finding such a burden on the First Amendment was not narrowly tailored on its face.  *See Cox*, 416 F.3d at 286.

§§2.51-2.52 also burdens protected speech by completely foreclosing an additional crucial method of expression—anonymous speech.  "[A]nonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or . . . privacy. . . Whatever the motivation may be . . . the interest in having anonymous [speech] enter the marketplace of ideas unquestionably outweighs any public interest in requiring disclosure as a condition of entry."  *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 341-42 (1995).  Because this type of expression is so vital to the First Amendment, bans on anonymous speech have been struck down by the Supreme Court as a violation of the First Amendment.  *Id.*; *see also Watchtower*, 536 U.S.

at 166-67 (2002) (holding a permit requirement for door-to-door leafleting effectively prevents a canvasser from remaining anonymous).  By requiring a person to fill out an application and obtain a permit prior to any "public expression of views" or distributing any "printed matter," Defendants' regulations completely foreclose anonymous speech at National Parks.

These regulations are a restriction on First Amendment rights of breathtaking scope and cannot be justified by a significant governmental interest; thus the regulations are not narrowly tailored and also fail this prong of prior restraint analysis.

> **d.    Defendants' regulations leave open no alternative channel of communication.**

In considering whether a regulation leaves open ample alternative channels of communication, the Supreme Court has generally upheld regulations which merely limit expressive activity to a specific part of the regulated area or to a limited time frame.  *Turner*, 893 F.2d at 1393.  But in contrast, Defendants' permit requirements at issue here completely exclude all individuals wishing to engage in "public expression of views" or "distribution of printed matter," from all areas of all National Park land unless they obtain a permit.  There are no National Park lands *not* covered by the permit requirement.  Thus, "there is no intra-forum alternative."  *Id.* Defendants' regulations and actions fail this final prong of prior restraint analysis, and are unconstitutional under the First Amendment as unlawful prior restraints.

> **B.    DEFENDANTS' REGULATIONS ARE FACIALLY OVERBROAD IN VIOLATION OF THE FIRST AND FIFTH AMENDMENTS.**

Overbroad laws offend the constitutional principle that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 307 (1964). The Constitution gives "significant protection from overbroad laws that chill speech within the First Amendment's vast

and privileged sphere." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). A regulation is facially unconstitutional according to the overbreadth doctrine where there is a "likelihood that the statute's very existence will inhibit free expression" by "inhibiting the speech of third parties who are not before the Court." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 799 (1984); *see also Thornhill v. Alabama*, 310 U.S. 88, 97 (1940). "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Free Speech Coal.*, 535 U.S. at 255.

Facial overbreadth claims have been entertained both where statutes, by their terms, purport to regulate the time, place, and manner of expressive or communicative conduct, and where such conduct has required official approval under laws that delegated standardless discretionary power to local functionaries, resulting in "virtually unreviewable prior restraints on First Amendment rights." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) (citations omitted).

Here, Defendants' regulations are facially overbroad because they include a sweeping amount of protected activity within their scope. §2.51 and §2.52 require a permit for any individual who may "publicly express views" or distribute literature. As discussed above, there is no justification for the regulation of such small scale First Amendment activities in a traditional public forum, yet this clearly protected activity is swept in with expressive conduct such as a large gathering, march or parade involving many people, a type of activity that may be more properly regulated with a permit scheme. Moreover, simply requiring a permit before even an individual may engage in expressive activity or leafleting chills speech because it makes it less likely an individual will jump through all of the bureaucratic hoops to do so. *See Grossman*, 33 F.3d at 1206 (internal citations omitted).

§§2.51-2.52 additionally chill protected speech by completely foreclosing crucial methods of expression. As discussed above, requiring a person to apply for and obtain a permit prior to "publicly expressing views" or distributing any "printed matter" completely forecloses both spontaneous and anonymous speech. Limitations on these types of speech without justification are overbroad and violate the First Amendment. *Watchtower*, 536 U.S. at 166-67; *McIntyre,* 514 U.S. 334; *Parks*, 385 F.3d at 702-03. §2.51 is also facially overbroad because it grants unfettered discretion to administrators in determining what "public expression of views" means, as it is a vague term not defined by the regulation. This discretion creates the danger of uneven or discriminatory enforcement. These regulations are both substantially overbroad in relation to their legitimate purposes, and violate the First Amendment on this alternative ground.

### C. DEFENDANTS' REGULATION §2.51 IS UNCONSTITUTIONALLY VAGUE IN VIOLATION OF THE FIFTH AMENDMENT.

Vague laws offend several important values:

> Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts on sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (internal quotations omitted).

For a statute to pass muster with respect to vagueness, it must define the offense involved with sufficient specificity so that a person of ordinary intelligence is not required to guess at what conduct is prohibited. *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). This standard is applied even more strictly to statutes that inhibit free speech because of the high value our society places on it. *Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S.

610, 620 (1976).  "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963).  A "void for vagueness" challenge may be brought against regulations if the terms are vague and would result in arbitrary and discriminatory enforcement by law enforcement officials. *Kolender v. Lawson,* 461 U.S. 352, 357 (1983); *see also Grayned,* 408 U.S. at 108-09.

Just like the provisions at issue in *Turner* and *Jews for Jesus*, it is unclear what expressive activity would *not* be included within the ambit of these regulations.  §2.51 requires a permit for any "public expression of views."  Under these regulations, a visitor to Mt. Rushmore may shout to a companion, "hurry up!" without requiring a permit; however, if the same visitor shouts, "I think you should hurry up," that could be a "public expression of views."  A "public expression of views" could mean anything from a planned speech or rally to simply holding a sign, wearing a t-shirt emblazoned with some type of message, arguing with a friend, wearing an armband, etc.  *Jews for Jesus,* 482 U.S. at 574-75; *Parks,* 385 F.3d at 703.  The requirement of a permit for *all* "public expression of views" in all National Park lands is clearly unconstitutionally overbroad, as discussed above.  Defendants cannot save their regulations by reading them more narrowly because if they are not meant to proscribe such a broad spectrum of expression, the language of §2.51 is unconstitutionally vague, since on its face it is so broad that it will cause potential speakers to self-censor speech in order to not run afoul of the regulation.  This is because if it is not meant to proscribe such a broad gamut of speech, the language does not put a person of reasonable intelligence on notice of what conduct is and is not allowed. In turn, this allows park officials to apply the regulation at their sole discretion, which cannot be countenanced under the First Amendment.

23

### III.    CONCLUSION

Through the regulations of the Defendants, "America's Shrine to Democracy" has instead become a mockery of it.  The free exchange of ideas and distribution of literature have been treasured values in this country since the days of George Washington and Thomas Jefferson, and Abraham Lincoln is the ultimate icon symbolizing the American values of freedom and equality of all persons.  Sadly, these sacred rights have been denied to Mr. Boardley literally right under their noses at Mt. Rushmore, and to all visitors of National Parks across the country. Mr. Boardley respectfully requests that the Court grant his motion for partial summary judgment, declare Defendants' regulations unconstitutional, and permanently enjoin Defendants from enforcing them.

Respectfully submitted this 15th day of April, 2008.

By: /s/ Heather Gebelin Hacker
     Heather Gebelin Hacker
     ALLIANCE DEFENSE FUND


Jordan W. Lorence
D.C. Bar No. 385022
801 G. Street NW, Suite 509
Washington, D.C. 20001
Tel: (202) 637-4610
Fax: (202) 347-3622
jlorence@telladf.org


Kevin H. Theriot*
Kansas Bar No. 21565
W. Jesse Weins*
Kansas Bar No. 23127
15192 Rosewood
Leawood, Kansas 66224
Tel: (913) 685-8000
Fax: (913) 685-8001
ktheriot@telladf.org
jweins@telladf.org


Timothy D. Chandler*
California Bar No. 234325
Heather Gebelin Hacker*
California Bar No. 249273
101 Parkshore Drive, Suite 100
Folsom, California 95630
Tel: (916) 932-2850
Fax: (916) 932-2851
tchandler@telladf.org
hghacker@telladf.org


Benjamin W. Bull+
Arizona Bar No. 009940
15100 N. 90th Street
Scottsdale, Arizona 85260
Tel: (480) 444-0020
Fax: (480) 444-0028
bbull@telladf.org


*Admitted *pro hac vice*
+Of counsel, not admitted in this jurisdiction

# EXHIBIT 1
Civ. Action No. 07-1986 (JR)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL BOARDLEY,<br><br>         Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE<br>INTERIOR, *et al.*,<br><br>         Defendants. | Civil Action No. 07-1986 (JR) |

## DECLARATION OF MICHAEL BOARDLEY IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

I, Michael Boardley, hereby declare as follows:

1.  My name is Michael Boardley, and I am over the age of eighteen (18). I reside in Coon Rapids, Minnesota, and I make this declaration based on my personal knowledge.

2.  I am the plaintiff in the above captioned matter.

3.  On August 10, 2007, I was told by Ranger L. Hanson that I needed a permit to continue to pass out tracts at Mt. Rushmore.

4.  Ranger Hanson directed me to call a phone number found on the Mt. Rushmore National Monument website in order to request a permit.

5.  Ranger Hanson did not mention filling out any applications.

6.  When I returned home to Minnesota a few days later, I called the number on the website that Ranger Hanson referred to in order to request a permit.

7.  I left two messages at that number for someone to return my call.

1

8.   A female park official returned my call and asked me for my name, phone number and address, and said that she would mail a free speech permit to me.

9.   This park official never said anything to me about an application form.

10.   I never received a permit in the mail.

11.   On October 2, 2007, I called the Mt. Rushmore Ranger's Office again to request a permit.

12.   I left a voice message for Nancy Martines requesting a permit for August 7 and 8, 2008.

13.   Ms. Martines returned my call and told me that I needed to speak with Mike Pflaum about obtaining a permit.

14.   Ms. Martines also said that she would forward my request to Mr. Pflaum.

15.   Ms. Martines never said anything to me about an application form.

16.   I called Mr. Pflaum and left him a voice message requesting a permit for August 7 and 8, 2008.

17.   In my message, I indicated I needed the permit as soon as possible because I needed to plan my trip for next year.

18.   The trip needed to be planned in advance, as I live in Minnesota.

19.   I never received a response from Mr. Pflaum.

//

//

//

//

//

## DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct..

Dated this 30th day of November, 2007.

Michael Boardley

3

# EXHIBIT 2
Civ. Action No. 07-1986 (JR)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Michael Boardley<br>11532 Quay St. N.W., Coon Rapids,<br>MN 55433<br>    Plaintiff,<br><br>  v.<br><br>United States Department of<br>Interior et al.,<br><br>   Defendants. | Civil Action No. 01986 (JR) |

DECLARATION OF MIKE PFLAUM

1. I am the Chief Park Ranger for Mount Rushmore National Memorial (hereinafter Memorial), a unit of the National Park Service, which is an agency of the Department of Interior. The Memorial is located in South Dakota. I have served as Chief Park Ranger of the Memorial for 18 years. I make this declaration in support of defendant's opposition to plaintiff's motion for a preliminary injunction in the above captioned case.

2. In my capacity as Chief Park Ranger, one of my duties is to oversee the granting of permits for 1st Amendment demonstration activity within the

Memorial, with the Memorial's Superintendent as the final authority. I would not deny such a permit request without the Superintendent's concurrence or final decision. In my 18 years here I do not believe that the Memorial has ever formally denied a demonstration application. Moreover, because of my responsibilities in this area, I recall Mr. Boardley's questions regarding 1st Amendment activity within the Memorial.

3. On August 13, 2007, while I was on leave and out of state on a family trip, Supervisory Ranger Nancy Martinz left a voice mail message on my telephone. The message stated that she was passing along information that Mike Boardley of Redeemer Bible Church in Minnesota at phone number 612-987-8808 was wanting information to distribute gospel tracts and do some preaching as a 1st Amendment Activity at the Monument "next summer", which I interpreted as the Summer of 2008.

4. I listened to this voice mail on approximately August 20 when I returned to work following leave. I recall thinking at that time that this event was a long while away, and that we would have plenty of time to handle Mr. Boardley's request and intended to do so.

5. On October 5, 2007, I received a telephone voice mail message from Mr. Boardley. In the message, Mr. Boardley stated that he was interested in

getting a permit for August 7 and 8, 2008 to hand out gospel tracts and to conduct open air preaching at the Memorial. With over ten months to deal with Mr. Boardley's request for a permit, I knew that I would be able to get his request processed and a permit issued many months in advance of the proposed dates in August of 2008.

6. In some instances where members of the public contact us for 1st Amendment permits, if we are able to obtain appropriate information and come to verbal agreement, we simply issue the member of the public a permit based on telephone conversations or person to person meetings, rather than requiring that the member of the public fill out the application. The Memorial does have an application for demonstration activity, which is enclosed here as Attachment A. The Memorial also has 3 designated 1st Amendment areas, shown on the map enclosed as Attachment B. These areas provide ample opportunity for demonstrators to interact with members of the public as they journey from the parking lot of the Memorial to the Grand View Terrace, Visitor Center, and Amphitheatre, which are the focal points for most visitors' trip to the Memorial. I have also enclosed photographs of these 1st Amendment areas, as Attachment C.

7. On November 5, 2007, a media representative contacted a staff member at the Memorial wanting comments on a lawsuit that had been filed against the Memorial regarding 1st Amendment rights. This phone call was when and how I first learned of the above captioned lawsuit. I immediately searched my notes in an attempt to determine who might be taking such an action. I remembered and located my note of a telephone message from Mr. Boardley on October 5, 2007, and I called and spoke to him on the morning of November 5, 2007. I told him that I was prepared to further discuss and prepare a permit for his proposed activity at the Memorial on August 7 and 8, 2008, and that we could prepare such a permit in a very short time frame. I also told him that we had no intent to deny his request for a permit. Mr. Boardley confirmed that he was involved with the lawsuit and he told me that he would have to talk to his lawyer before he could provide any further response. As of today November 15, 2007, I have not heard back from Mr. Boardley.

8. I remain committed to processing Mr. Boardley's permit in an expedited manner, and would be able to issue him a permit for demonstration activity within 2 business days after receipt of an application.

This declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing are true and correct to the best of my current knowledge.

Executed in Mount Rushmore National Memorial, Keystone, South Dakota on this 15 day of November 2007.

_Mike Pflaum_

Mike Pflaum
Chief Ranger
Mount Rushmore National Memorial
National Park Service
Civil Action No. 01986 (JR)

# EXHIBIT 3
Civ. Action No. 07-1986 (JR)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

_____
                                    )
Michael Boardley                    )
                                    )
            Plaintiff,              )        Civil Action No. 01986 (JR)
                                    )
      v.                            )
                                    )
United States Department of         )
Interior et al.,                    )
                                    )
            Defendants.             )
_____)

## DECLARATION OF MIKE PFLAUM

1. I am the Chief Park Ranger for Mount Rushmore National Memorial (hereinafter Memorial), a unit of the National Park Service, which is an agency of the Department of Interior.   I make this second declaration in support of defendant's opposition to plaintiff's motion for a preliminary injunction in the above captioned case.

2. In my capacity as Chief Park Ranger, one of my duties is to oversee the granting of permits for First Amendment demonstration activity within the Memorial, with the Memorial's Superintendent as the final authority. As I recounted in my declaration dated November 14, 2007, I recall Mr.

1

Boardley's questions regarding First Amendment activity within the
Memorial.

3.   While I provided a copy of the park application for him with my
declaration dated November 14, 2007-- and I remained committed to process
his permit in an expedited manner and certainly within 2 business days after
receipt of an application–to date I have not received any application from
Mr. Boardley.

4. Nevertheless, based on the information that we now have, and
consistent with our regulations we are able to issue a permit for Michael
Boardley.  Mr. Boardley's permit is enclosed as Attachment A.  It authorizes
him to distribute gospel tracts and to conduct open air preaching at Mount
Rushmore National Memorial on August 7 and 8, 2008 from 5:00 a.m. to
11:30 p.m.

5. The designated  First Amendment area assigned under Mr.
Boardley's permit is the Area #2 Walkway and is further depicted  on the
map that is enclosed as Attachment B   Also enclosed are two photographs,
marked as Attachment C, which show slightly different views of the Area #
2 Walkway area and which shows the walkway as well as the sculptured

heads of Presidents George Washington, Thomas Jefferson, Abraham
Lincoln and Theodore Roosevelt in the background.

6.    Area #2 Walkway is located adjacent to the pergola, a columned
pedestrian entrance structure, and between the Audio Tour Building/
Information Center And Bookstore and the Concessions Building.  This
walkway area is where the vast majority of pedestrian visitors to Mount
Rushmore National Memorial walk on their way to and from the visitor
parking lot to the Visitor Center, the Concessions Buildings, and to the
Memorial's prime viewing areas.   The designated area also provides the
permittee a maximum exposure to visitors, and has worked very well for
past permittees' conducting similar activities.

7.   Also enclosed  as Attachment D are photographs of two other
designated First Amendment areas, designated as Area # 1 the Greenway
and Area #3 the Amphitheater, for literature distribution and public
assembly.   If plaintiff desires the use of one of these alternative areas,
however, he should contact me to modify the permit consistent with our
regulations.

8.   Finalizing the enclosed permit requires Mr. Boardley's signature.
Once signed, it should be forwarded to me either by fax at (605) 574-2307 or

3

by mail at Mount Rushmore National Memorial, 13000 Highway 244,

Building 1, Suite 1, Keystone, South Dakota 57751.


This declaration is made pursuant to 28 U.S.C. § 1746. I declare

under penalty of perjury that the foregoing are true and correct to the best of

my current knowledge.

Executed in Mount Rushmore National Memorial, Keystone,
South Dakota on this 6th day of December 2007.

Mike Pflaum
Chief Ranger
Mount Rushmore National Memorial
National Park Service

4

Attachment A



```
Form 10-114
Rev. DEC. 00
Page 1 of  2
```

UNITED STATES DEPARTMENT OF THE INTERIOR
National Park Service

Special Use Permit

Name of Use __ Distribute Printed Material / Public Assembly __                                Date
Permit  Reviewed

Reviewed

Reviewed

Expires  August 8, 2008
        Long Term _____                                                    Permit #  MWR-
1500-2520-08002

Region    Park    Type      No. #
        Short Term _X_

Mount Rushmore National Memorial
Name of Area

 Michael Boardley_____ 11532 Quay St. NW , Coon Rapi ds, MN 55433    (612)-987-8808
                    Name or Permittee

Address                                        Phone

is hereby authorized during the period from (Time _5:00 a.m._ day __07_ Month __08, 2008_), through (Time 11:30 p.m._ day _08_ Month __08, 2008_ , (exclusive of the hours from 11:30 p.m. on 08/07 to  5:00 a.m. on 08/08 when the Memorial is closed to visitors), to use the following described land or facilities in the above named area:
Along the main walkway from the "pergola" (columned pedestrian entrance structure) to the area adjacent to the rear wall of the concessions building.  This is the main pedestrian access from the parking lot at Mount Rushmore National Memorial to the visitor center and prime viewing areas. This area is marked on the attached map as "Area #2 Walkway".  A photograph of the area is also attached.

For the purpose(s) of:  Distribution of literature ("gospel tracts") and open air preaching.


Authorizing legislation or other authority (RE - DO-53): 36 CFR 2.52; 36 CFR 2.51

NEPA Compliance:  CATEGORICALLY EXCLUDED _____  EA/FONSI _____  EIS _____   OTHER APPROVED PLANS _X_

PERFORMANCE BOND:  Required _____   Not Required _____X____  Amount

LIABILITY INSURANCE:  Required _____   Not Required _____X____  Amount

ISSUANCE of this permit is subject to the conditions on the reverse hereof and appended pages and when appropriate to the payment to the U.S. Dept. of the Interior, National Park Service for its direct and indirect costs associated with managing the event.

The undersigned hereby accepts this permit subject to the terms, covenants, obligations, and reservations, expressed or implied herein.

PERMITTEE _____
                              Signature
Date

Authorizing Official

_____
                                              Signature
Date

Additional Authorizing Official

_____
            (if Required)                  Signature
Title                        Date



Page 2 of 2

**STANDARD CONDITIONS OF THIS PERMIT**

**1. The permittee shall exercise this privilege subject to the supervision of the Superintendent, and shall comply with all applicable laws and regulations of the area.**

**2. Damages - The permittee shall pay the United States for any damage resulting from this use which would not reasonably be inherent in the use which the permittee is authorized to make of the land described in this permit.**

**3. Benefit - No Member of Congress shall be admitted to any share or part of this permit or to any benefit that may arise therefrom: but this provision shall not be construed to extend to this grant if made with a corporation for its general benefit.**

**4. Assignment - This permit may not be transferred or assigned without the consent of the Superintendent, in writing.**

**5. Revocation - This permit may be terminated upon breach of any of the conditions herein or at the discretion of the Superintendent.**

**6. The permittee is prohibited from giving false information; to do so will be considered a breach of conditions and be grounds for revocation [Re: 36 CFR 2.32(a)(4)].**

**7. Permittee will comply with applicable public health and sanitation standards and codes.**

**8. Pursuant to 36 CFR 2.51(h) or 2.52 (h): It is prohibited for persons engaged in activities covered under this section to obstruct or impede pedestrians or vehicles, harass park visitors with physical contact or persistent demands, misrepresent the purposes or affiliations of those engaged in the sale or distribution, or misrepresent whether the printed matter is available without cost or donation.**

Attachment B



Attachment C



Mount Rushmore National Memorial
Designated First Amendment Area #2
"Walkway" area

Case 1:07-cv-09886-JR    Document 32-1    Filed 04/05/2005    Page 55 of 71

Mount Rushmore National Memorial
Designated First Amendment Area #2
"Walkway" area



Attachment D



Mount Rushmore National Memorial
Designated First Amendment Area #1
"Greenway" area



**Mount Rushmore National Memorial Designated First Amendment Area #3 "Amphitheater" area**

# EXHIBIT 4
Civ. Action No. 07-1986 (JR)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL BOARDLEY,

        Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE
INTERIOR, *et al.*,

        Defendants.

Civil Action No. 07-1986 (JR)

## <u>DECLARATION OF MARK OEHRLEIN</u>

I, Mark Oehrlein, hereby declare as follows:

1.    My name is Mark Oehrlein, and I am over the age of eighteen (18). I reside in Bloomington, Minnesota, and I make this declaration based on my personal knowledge.

2.    In July of 2006, I visited Mount Rushmore National Monument ("Mount Rushmore").

3.    I brought gospel tracts to distribute at no charge at Mount Rushmore.

4.    When I got to Mount Rushmore, I asked a park ranger about distributing the tracts, and the park ranger said I needed a permit to do so.

5.    At the advice of the park ranger, I went to the Mount Rushmore Ranger's Office to request a permit and was told by a park official to return later in the day because the person I needed to speak with was in a meeting.

6.     I returned to the ranger's office at the requested time. I met with a park official and she looked for a permit form but said she was unable to locate one. She instructed me to call the next day and speak with Mr. Baker or Mr. Pflaum.

7.     I called the ranger's office next morning about my request for a permit and spoke with Mr. Baker, who told me to come back to the ranger's office.

8.     I returned to the ranger's office to obtain a permit and Mr. Baker asked me what I intended to do. I responded that I wanted to distribute tracts about the Gospel and Christianity to visitors of the park.

9.     Mr. Baker replied that he didn't like that. He looked for a permit form for some time, but told me he could not find one.

10.    Mr. Baker stated that because he could not locate a form, he would have to speak with Mr. Pflaum about the permit form, but I was informed that he was at the dentist that morning.

11.    Mr. Baker invited me to return to the ranger's office again later that day. I called the ranger's office later that day but was unsuccessful in obtaining a permit.

12.    As a result, I could not obtain a permit from the Mount Rushmore ranger's office to distribute tracts while I was visiting the park and therefore left without being able to give tracts to anyone.

13.    I also called the South Dakota Governor's office later that afternoon to complain about the issue, but I received no meaningful response to my complaint, so I gave up trying to obtain a free speech permit at Mount Rushmore.

14.    I would like to be able to distribute tracts at Mount Rushmore if I visit again in the future.

## DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this __7__ day of April, 2008 in __Bloomington__, Minnesota.

Mark Oehrlein

# EXHIBIT 5
## Civ. Action No. 07-1986 (JR)

36 C.F.R. § 2.51

▶

**Effective: [See Text Amendments]**

Code of Federal Regulations Currentness
   Title 36. Parks, Forests, and Public Property
      Chapter I. National Park Service, Department of the Interior (Refs & Annos)
         Part 2. Resource Protection, Public Use and Recreation (Refs & Annos)

   → **§ 2.51 Public assemblies, meetings.**

<For statute(s) affecting validity, see: 16 USCA §§ 1, 3, 9a, 462(k).>

(a) Public assemblies, meetings, gatherings, demonstrations, parades and other public expressions of views are allowed within park areas, provided a permit therefor has been issued by the superintendent.

(b) An application for such a permit shall set forth the name of the applicant; the date, time, duration, nature and place of the proposed event; an estimate of the number of persons expected to attend; a statement of equipment and facilities to be used and any other information required by the permit application form.

(c) The superintendent shall, without unreasonable delay, issue a permit on proper application unless:

   (1) A prior application for a permit for the same time and place has been made that has been or will be granted and the activities authorized by that permit do not reasonably allow multiple occupancy of that particular area; or

   (2) It reasonably appears that the event will present a clear and present danger to the public health or safety; or

   (3) The event is of such nature or duration that it cannot reasonably be accommodated in the particular location applied for, considering

such things as damage to park resources or facilities, impairment of a protected area's atmosphere of peace and tranquility, interference with program activities, or impairment of public use facilities.

(d) If a permit is denied, the applicant shall be so informed in writing, with the reason(s) for the denial set forth.

(e) The superintendent shall designate on a map, that shall be available in the office of the superintendent, the locations available for public assemblies. Locations may be designated as not available only if such activities would:

   (1) Cause injury or damage to park resources; or

   (2) Unreasonably impair the atmosphere of peace and tranquility maintained in wilderness, natural, historic or commemorative zones; or

   (3) Unreasonably interfere with interpretive, visitor service, or other program activities, or with the administrative activities of the National Park Service; or

   (4) Substantially impair the operation of public use facilities or services of National Park Service concessioners or contractors; or

   (5) Present a clear and present danger to the public health and safety.

(f) The permit may contain such conditions as are reasonably consistent with protection and use of the park area for the purposes for which it is established. It may also contain reasonable limitations on the equipment used and the time and area within which the event is allowed.

(g) No permit shall be issued for a period in excess of 7 days, provided that permits may be extended for like periods, upon a new application, unless an-

36 C.F.R. § 2.51

other applicant has requested use of the same location and multiple occupancy of that location is not reasonably possible.

(h) It is prohibited for persons engaged in activities covered under this section to obstruct or impede pedestrians or vehicles, or harass park visitors with physical contact.

(i) A permit may be revoked under any of those conditions, as listed in paragraph (c) of this section, that constitute grounds for denial of a permit, or for violation of the terms and conditions of the permit. Such a revocation shall be made in writing, with the reason(s) for revocation clearly set forth, except under emergency circumstances, when an immediate verbal revocation or suspension may be made to be followed by written confirmation within 72 hours.

(j) Violation of the terms and conditions of a permit issued in accordance with this section may result in the suspension or revocation of the permit.

SOURCE: 31 FR 16651, Dec. 29, 1966, as amended at 48 FR 30282, June 30, 1983; 48 FR 43174, Sept. 22, 1983; 48 FR 54977, Dec. 8, 1983; 49 FR 7124, Feb. 27, 1984; 51 FR 33264, Sept. 19, 1986; 52 FR 10683, April 2, 1987, unless otherwise noted.

AUTHORITY: 16 U.S.C. 1, 3, 9a, 462(k).

36 C. F. R. § 2.51, **36 CFR § 2.51**

Current through April 3, 2008; 73 FR 18420

Copr. © 2008 Thomson/ West

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 6
Civ. Action No. 07-1986 (JR)

36 C.F.R. § 2.52

C

**Effective: [See Text Amendments]**

Code of Federal Regulations Currentness
  Title 36. Parks, Forests, and Public Property
    Chapter I. National Park Service, Department of the Interior (Refs & Annos)
      Part 2. Resource Protection, Public Use and Recreation (Refs & Annos)

➥ **§ 2.52 Sale or distribution of printed matter.**

(a) The sale or distribution of printed matter is allowed within park areas, provided that a permit to do so has been issued by the superintendent, and provided further that the printed matter is not solely commercial advertising.

(b) An application for such a permit shall set forth the name of the applicant, the name of the organization (if any), the date, time, duration, and location of the proposed sale or distribution, the number of participants, and any other information required by the permit application form.

(c) The superintendent shall, without unreasonable delay, issue a permit on proper application unless:

  (1) A prior application for a permit for the same time and location has been made that has been or will be granted and the activities authorized by that permit do not reasonably allow multiple occupancy of the particular area; or

  (2) It reasonably appears that the sale or distribution will present a clear and present danger to the public health and safety; or

  (3) The number of persons engaged in the sale or distribution exceeds the number that can reasonably be accommodated in the particular location applied for, considering such things as damage to park resources or facilities, impairment of a protected area's atmosphere of peace

and tranquility, interference with program activities, or impairment of public use facilities; or

  (4) The location applied for has not been designated as available for the sale or distribution of printed matter; or

  (5) The activity would constitute a violation of an applicable law or regulation.

(d) If a permit is denied, the applicant shall be so informed in writing, with the reason(s) for the denial set forth.

(e) The superintendent shall designate on a map, which shall be available for inspection in the office of the superintendent, the locations within the park area that are available for the sale or distribution of printed matter. Locations may be designated as not available only if the sale or distribution of printed matter would:

  (1) Cause injury or damage to park resources; or

  (2) Unreasonably impair the atmosphere of the peace and tranquility maintained in wilderness, natural, historic, or commemorative zones; or

  (3) Unreasonably interfere with interpretive, visitor service, or other program activities, or with the administrative activities of the National Park Service; or

  (4) Substantially impair the operation of public use facilities or services of National Park Service concessioners or contractors.

  (5) Present a clear and present damage to the public health and safety.

(f) The permit may contain such conditions as are reasonably consistent with protection and use of the park area for the purposes for which it is estab-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

36 C.F.R. § 2.52

lished.

(g) No permit shall be issued for a period in excess of 14 consecutive days, provided that permits may be extended for like periods, upon a new application, unless another applicant has requested use of the same location and multiple occupancy of that location is not reasonably possible.

(h) It is prohibited for persons engaged in the sale or distribution of printed matter under this section to obstruct or impede pedestrians or vehicles, harass park visitors with physical contact or persistent demands, misrepresent the purposes or affiliations of those engaged in the sale or distribution, or misrepresent whether the printed matter is available without cost or donation.

(i) A permit may be revoked under any of those conditions, as listed in paragraph (c) of this section, that constitute grounds for denial of a permit, or for violation of the terms and conditions of the permit. Such a revocation shall be made in writing, with the reason(s) for revocation clearly set forth, except under emergency circumstances, when an immediate verbal revocation or suspension may be made, to be followed by written confirmation within 72 hours.

(j) Violation of the terms and conditions of a permit issued in accordance with this section may result in the suspension or revocation of the permit.

SOURCE: 31 FR 16651, Dec. 29, 1966, as amended at 48 FR 30282, June 30, 1983; 48 FR 43174, Sept. 22, 1983; 48 FR 54977, Dec. 8, 1983; 49 FR 7124, Feb. 27, 1984; 51 FR 33264, Sept. 19, 1986; 52 FR 10683, April 2, 1987, unless otherwise noted.

AUTHORITY: 16 U.S.C. 1, 3, 9a, 462(k).

36 C. F. R. § 2.52, **36 CFR § 2.52**

Current through April 3, 2008; 73 FR 18420

Copr. © 2008 Thomson/ West

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL BOARDLEY, | |
| Plaintiff, | |
| v. | Civ. Action No. 07-1986 (JR) |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | |
| Defendants. | |

## [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER coming to be heard on Plaintiff's Motion for Partial Summary Judgment, and the Court being advised upon consideration of Plaintiff's Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56(c) and LCvR 56.1, his Memorandum of Law in Support Thereof, Defendants' Brief in Response, and Plaintiff's Reply, it is HEREBY ORDERED and DECREED that Plaintiff's Motion for Partial Summary Judgment on his facial challenge to 36 C.F.R. §§2.51-2.52 (2008) is **GRANTED**.

IT IS SO ORDERED.

DATED this _____ day of _____, 2008.

_____
Hon. James Robertson
United States District Judge

1

Copy to:

John G. Interrante, Attorney for Defendants
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
John.Interrante@usdoj.gov

Jordan W. Lorence, Attorney for Plaintiff
ALLIANCE DEFENSE FUND
801 G Street, NW
Suite 509
Washington, DC 20001
jlorence@telladf.org

Timothy D. Chandler, Attorney for Plaintiff
Heather Gebelin Hacker, Attorney for Plaintiff
ALLIANCE DEFENSE FUND
101 Parkshore Drive, Suite 100
Folsom, California 95630
tchandler@telladf.org
hghacker@telladf.org


Kevin H. Theriot, Attorney for Plaintiff
W. Jesse Weins, Attorney for Plaintiff
ALLIANCE DEFENSE FUND
15192 Rosewood
Leawood, Kansas 66224
ktheriot@telladf.org
jweins@telladf.org