## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAEL BOARDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action No. 07-01986 (JR)** |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF THE | ) | |
| INTERIOR, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANTS' MOTION TO DISMISS

Defendants, by and through undersigned counsel, respectfully move the Court, pursuant to

Fed. R. Civ. P. 12(b) (1), (2), and (6), to dismiss this action in its entirety or, in the alternative, to

dismiss the <u>Bivens</u> claims filed against the defendants sued in their individual capacity.[1]  Plaintiff's

---

[1]  Plaintiff has named the following defendants in this case: U.S. Department of Interior ("Interior"); National Park Service ("NPS"); Dirk Kempthorne, Secretary of Interior, in his official and individual capacity; Mary Bomar, Director, NPS, in her official and individual capacity; Ernie Quintana, Midwestern Regional Director, NPS, in his official and individual capacity; Gerard Baker, Superintendent, Mount Rushmore National Memorial ("Mount Rushmore"), in his official and individual capacity; and Mike Pflaum, Chief Park Ranger, Mount Rushmore, in his official and individual capacity.

Dick Kempthorne was served by leaving the summons with an adult resident at his home in Boise, Idaho (Docket Entry No. 19).  Mary Bomar was served by leaving the summons with her husband at their residence in Alexandria, Virginia (Docket Entry No. 19).  Ernie Quintana was personally served at the NPS office in Omaha, Nebraska (Docket Entry No. 11). Gerard Baker and Mike Plaum were personally served at Mount Rushmore in Keystone, South Dakota (Docket Entry Nos. 9 and 10).

Undersigned counsel do not currently represent the defendants in their individual capacities, but such request for authority is pending.  In any event, we note these claims fail for the reasons stated in our supporting memorandum of law.  We reserve the right to assert any additional Rule 12 defenses on behalf of these defendants upon receipt of the requested authority.

complaint should be dismissed for lack of jurisdiction due to the absence of an actual case or controversy. Plaintiff lacks standing to lodge an as-applied challenge to the National Park Service ("NPS") regulations requiring a permit to distribute printed matter because he did not submit a written application for a permit prior to visiting Mount Rushmore in August 2007, and has not been threatened with criminal prosecution for distributing leaflets without a permit at Mount Rushmore, a violation of 36 C.F.R. § 2.52 (a). This case is now moot because the NPS has approved a permit for plaintiff's return visit in August 2008, and will provide plaintiff with a permit for any similar future visits. Plaintiff's facial challenge to the regulations also fails because the challenged regulations have been held to be a reasonable time, manner or place restriction by the Eighth Circuit, where Mount Rushmore is located, in United States v. Kistner, 68 F.3d 218 (8th Cir. 1995).

Alternatively, in the event the Court should not dismiss the case in its entirety, the Court should dismiss plaintiff's claims against the various governmental officials sued in their individual capacities based on the bare allegation that "Defendants knew or should have known that denying Mr. Boardley permits violated his constitutional rights" (see Compl., ¶¶ 43, 70). This Court lacks personal jurisdiction over the non-resident officials, and the national officials, based in Washington, D.C., cannot be held liable under a respondeat superior theory for the actions of the local officials. Each of the officials is entitled to qualified immunity for actions taken in accordance with permit regulations that have been held to be constitutional, when coupled with NPS policy statements placing time limits on the processing of permit applications. Defendants further request that the Court stay discovery until the issues arising under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), are resolved. In support of this motion, Defendant respectfully refers the Court to the accompanying memorandum of points and authorities. A proposed Order consistent with this motion is attached hereto.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
JOHN G. INTERRANTE
PA Bar # 61373
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7220
(202) 514-8780 (fax)
John.Interrante@usdoj.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

MICHAEL BOARDLEY,               )

                             )

               **Plaintiff,**     )

                             )   **Civil Action No. 07-01986 (JR)**

         **v.**            )

                             )

UNITED STATES DEPARTMENT OF THE   )

INTERIOR <u>et al</u>.,               )

                             )

            **Defendants.**   )

_____)

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Michael Boardley, a resident of Coon Rapids, Minnesota, filed this lawsuit in

Washington, D.C. to challenge the National Park Service ("NPS") regulations governing general

demonstration activity and distribution of printed matter at Mount Rushmore National Memorial

("Mount Rushmore"), located in Keystone, South Dakota.  The regulations are found at 36 C.F.R.

§§ 1.2(a), 2.51, 2.52.  Plaintiff's complaint should be dismissed based on the absence of a case or

controversy.  Plaintiff lacks standing to lodge an as-applied challenge to the regulations because he

did not apply for a permit prior to visiting Mount Rushmore, and has never been threatened with

criminal prosecution for distributing leaflets without a permit.  This case is now moot because the

NPS has approved a permit for plaintiff's return visit in August 2008, and will provide plaintiff with

a permit for any similar future visits.  Thus, there is no likelihood of a recurring injury to plaintiff.

In addition, plaintiff's facial challenge fails because the challenged regulations are a

reasonable time, manner or place restriction on plaintiff's exercise of his First Amendment rights

at the national park.  Indeed, the Eighth Circuit, where Mount Rushmore is located, rejected a

constitutional challenge similar to plaintiff's in <u>United States v. Kistner</u>, 68 F.3d 218 (8th Cir. 1995)

(affirming conviction for distribution of pamphlets without a permit at Jefferson National Expansion Memorial in St. Louis, as a violation of 36 CFR § 2.52 (a)).

Alternatively, in the event the Court should not dismiss the case in its entirety, the Court should dismiss plaintiff's claims against the various governmental officials sued in their individual capacities based on on the bare allegation that "Defendants knew or should have known that denying Mr. Boardley permits violated his constitutional rights."[1]  These claims, presumably raised under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), should be dismissed for failure to state a claim, and, in any event, discovery should be stayed pending resolution of the claims.

---

[1]  Plaintiff has named the following defendants in this case: U.S. Department of Interior ("Interior"); National Park Service ("NPS"); Dirk Kempthorne, Secretary of Interior, in his official and individual capacity; Mary Bomar, Director, NPS, in her official and individual capacity; Ernie Quintana, Midwestern Regional Director, NPS, in his official and individual capacity; Gerard Baker, Superintendent, Mount Rushmore National Memorial ("Mount Rushmore"), in his official and individual capacity; and Mike Pflaum, Chief Park Ranger, Mount Rushmore, in his official and individual capacity.

Dick Kempthorne was served by leaving the summons with an adult resident at his home in Boise, Idaho (Docket Entry No. 19).  Mary Bomar was served by leaving the summons with her husband at their residence in Alexandria, Virginia (Docket Entry No. 19).  Ernie Quintana was personally served at the NPS office in Omaha, Nebraska (Docket Entry No. 11). Gerard Baker and Mike Plaum were personally served at Mount Rushmore in Keystone, South Dakota (Docket Entry Nos. 9 and 10).

Undersigned counsel do not currently represent the defendants in their individual capacities, but such request for authority is pending.  In any event, we note these claims fail for the reasons stated below.  We reserve the right to assert any additional Rule 12 defenses on behalf of these defendants upon receipt of the requested authority.

# BACKGROUND

## I.    Factual Statement

Plaintiff and a few other unspecified individuals visited Mount Rushmore on August 9, 2007, and distributed free gospel tracts without incident (Compl., ¶¶ 17-19).  Plaintiff did not request a permit prior to traveling to Mount Rushmore and was stopped by a Park Ranger at the Memorial the following day and was told that he could not distribute printed matter without a permit (see Compl. ¶¶ 17-26).  A Park Service employee advised plaintiff that he should allow two days for processing of a permit (Compl., ¶ 30).  Plaintiff voluntarily left the park grounds and returned home to Minnesota, where he began making inquiries about getting a permit for a planned return to Mount Rushmore on August 7, 2008, and August 8, 2008 (see Compl., ¶¶ 31-41; Decl. of Chief Park Ranger Mike Pflaum, Mount Rushmore ("Pflaum Decl.") (Docket Entry No. 16-4, Ex. C to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction, at ¶¶ 3-5).  Specifically, plaintiff made a telephonic request for information relating to distributing gospel tracts and "preaching" at Mount Rushmore in the summer of 2008 (Pflaum Decl., ¶ 3).  The request was forwarded to Chief Park Ranger Pflaum, who "remain[s] committed to processing Mr. Boardley's permit in an expedited manner, and would be able to issue him a permit for demonstration activity within 2 business days after receipt of an application" (Pflaum Decl., ¶ 8).

Chief Park Ranger Pflaum explained that permits for First Amendment activity at Mount Rushmore can be expedited, "if we are able to obtain appropriate information and come to [a] verbal agreement, we [can] simply issue the member of the public a permit based on telephone conversations or person to person meetings, rather than requiring the member of the public to fill out the application (Pflaum Decl., ¶ 6).  Chief Park Ranger Pflaum further stated, "In my 18 years

[as Chief Park Ranger, Mount Rushmore], I do not believe that the Memorial has ever formally denied a demonstration application" (Pflaum Decl., ¶ 2). Chief Park Ranger Pflaum has approved a permit for plaintiff to return to the park to engage in the requested First Amendment activities on August 7, 2008 and August 8, 2008 (Suppl. Pflaum Decl. (Docket Entry No. 20-2) at ¶ 4).

## II.  **Regulatory Framework**

The National Park Service general regulations require a permit for public assemblies, demonstrations, and the sale or distribution of printed matter within national park areas, 36 C.F.R. §§ 2.51, 2.52. Both regulations provide that the superintendent of a particular park "shall, without unreasonable delay, issue a permit on proper application," or specify the reasons why a permit is denied.  36 CFR §§ 2.51(c), 2.52(c).  For example, a superintendent may deny a permit for the sale or distribution of printed matter if:

(1)     A prior application for a permit for the same time and location has been made that has been or will be granted and the activities authorized by that permit do not reasonably allow multiple occupancy of the particular area; or

(2)     It reasonably appears that the sale or distribution will present a clear and present danger to the public health and safety; or

(3)     The number of persons engaged in the sale or distribution exceeds the number that can reasonably be accommodated in the particular location applied for considering such things as damage to park resources or facilities, impairment of a protected area's atmosphere of peace and tranquility, interference with program activities, or impairment of public use facilities; or

(4)     The location applied for has not been designated as available for the sale or distribution of printed matter; or

(5)     The activity would constitute a violation of an applicable law or regulation.

36 C.F.R. § 2.52(c).

4

If the superintendent denies a permit, "the applicant shall be so informed in writing with the reason(s) for the denial set forth."  36 C.F.R. § 2.52(d).  The superintendent shall also designate on a map "the locations within the park area that are available for the sale or distribution of printed matter."  36 C.F.R. § 2.52(e).

The NPS has also promulgated Management Policies relating to the processing of permits for First Amendment activities (see Docket Entry No. 16-2 and 16-3, Exs. A and B to Defendants' Opposition to Motion for Preliminary Injunction).[2]  Specifically, NPS Management Policy ¶ 8.6.3 (2006) explains that there are two different sets of NPS regulations governing demonstrations on national parkland, 36 C.F.R. § 7.96(g) for parks in the National Capital Region, and 36 C.F.R. § 2.51 for all other national parks (see Docket Entry Nos. 16-2 and 16-3, Exs. A, B).[3]  The Memorandum makes clear that "NPS Management Policies ¶ 8.6.3 (2006) also provides that a permit request under 36 C.F.R. § 2.51 will be issued or denied within two business days after receipt of a proper application" (id.)

The NPS website for Mount Rushmore now includes a link to obtain an Application for First Amendment Permit and a Map of Designated First Amendment Areas (www.nps.gov/moru/planyourvisit/permit.htm).  The application advises that the applicant should allow two business days for processing and that there is no fee for a First Amendment permit.

---

[2]  Exhibit A is a Memorandum dated October 24, 2007, from Mary A. Bomar, Director, NPS, to Regional Directors, NPS, referencing NPS Management Policies 8.6.3 (2006).  Exhibit B is the text of NPS Management Policies 8.6.3 (2006) (First Amendment Activities).

[3]  This statement is also accessible on the NPS website, www.nps.gov.

## LEGAL STANDARDS

When reviewing a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975). Where a motion to dismiss, however, presents a dispute over the factual basis for the Court's jurisdiction, the Court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." Phoenix Consulting, Inc. v. Rep. of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000). "The plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C.1998).

"On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant." Zakiya v. U.S., 267 F.Supp.2d 47, 51 (D.D.C. 2003) (citations omitted). Furthermore, the plaintiff "has the burden of 'alleging specific acts connecting the defendant with the forum . . . .'" Id. at 51-52 (citation omitted).[4]

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine whether the plaintiff has alleged sufficient facts in its complaint to state a cause of action. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court must accept all well-pleaded facts as true.

---

[4] Although defendants do not move to dismiss based on improper venue pursuant to Rule 12(b)(3), we continue to maintain that, if this case is not dismissed, this case should be transferred to the District of South Dakota pursuant to 28 U.S.C. § 1404(a). Venue is proper in the District of South Dakota because this case could have been brought there, as required by 28 U.S.C. § 1404(a), and this case should be transferred for the convenience of the witnesses and in the interest of justice.

<u>Doe v. United States Dept. of Justice</u>, 753 F.2d 1092, 1102 (D.C. Cir. 1985). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Pursuant to Rule 12(b)(6), plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007). Generally speaking, the Court should not consider matters beyond the pleadings without converting the motion to one for summary judgment. Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

Plaintiff seeks declaratory and injunctive relief invalidating the NPS regulations on constitutional grounds. Without alleging a specific cause of action or statutory provision against the officials sued in their individual capacities, plaintiff also appears to seek declaratory and injunctive relief, and presumably damages under <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971), against the officials for "denying Mr. Boardley permits" (<u>see</u> Compl., ¶¶ 43, 70). Each of the claims lack merit and should be dismissed.

### I.    The Court Lacks Jurisdiction to Review Plaintiff's Claims

Article III of the U.S. Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984). This is a "bedrock requirement." <u>Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 471 (1982). As the Supreme Court stated in <u>Simon v. Eastern Ky. Welfare Rights Organization</u>, 426 U.S. 26, 37 (1976), "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to

7

actual cases or controversies." See also Federal Express Corp. v. Airline Pilots Ass'n, 67 F.3d 961,

963 (D.C. Cir. 1995) ("The federal courts are powerless to decide any matter unless it involves a

case or controversy.").

    **A.    Plaintiff Lacks Standing To Assert His Claims For Declaratory And Injunctive Relief As He Faces No Imminent Likelihood Of Suffering Injury In Fact**

It is axiomatic that "standing is an essential and unchanging part of the case-or-controversy

requirement of Article III," and goes to the Court's very jurisdiction to hear the case. Lujan v.

Defenders of Wildlife, 504 U.S. 555, 560 (1992). "[T]he irreducible constitutional minimum of

standing" requires: (1) that the plaintiff has suffered an "injury in fact" – an invasion of a legally

protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical; (2) that there is a causal link between the injury and the conduct

complained of – that the injury is fairly traceable to the challenged action of the defendant; and (3)

that the injury is likely to be redressed by a favorable decision from the court. Id. at 560-61. "The

party invoking federal jurisdiction has the burden of establishing these elements." Id. at 561

(citation omitted). "[A] deficiency on any one of the three prongs suffices to defeat standing." US

Ecology, Inc. v. U.S. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).

Four of the five causes of action alleged in the complaint challenge the NPS demonstration

and leafleting regulations based on an alleged failure by Defendants to respond to plaintiff's request

for a permit. See, e.g., First Cause of Action (Compl., ¶ 80) (allegation that the challenged

regulations, and NPS policies, "vest unfettered discretion" in officials responsible for approving

permits, in violation of plaintiff's First Amendment rights); Second Cause of Action (Compl., ¶ 86)

(allegation that Defendants have a policy and practice of refusing to respond to plaintiff's permit

requests, in violation of plaintiff's First Amendment rights); Third Cause of Action (Compl., ¶ 91) (allegation that "without unreasonable delay" language in challenged regulations is vague and allows for unfettered discretion in the permit approval process, in violation of plaintiff's Fifth Amendment rights); and Fourth Cause of Action (Compl., ¶ 99) (allegation that Defendants have a policy and practice of refusing to respond to plaintiff's permit requests, but not refusing to respond the requests of others, in violation of plaintiff's Fifth Amendment rights).[5]

Plaintiff lacks standing to lodge an as-applied challenge to enforcement of the permit regulations because it is undisputed that he did not submit a written application for a permit prior to distributing leaflets at Mount Rushmore in August 2007. See United States v. Sued, 143 F.Supp.2d 346, 349-50 (S.D.N.Y. 2001) (court held, that "without having previously sought a public assembly or printed matter permit from the Park Service Superintendent at Liberty Island," defendant could not attack the criminal citations issued for violations of 36 C.F.R. §§ 2.51 and 2.52 as unconstitutional as-applied to him). Accord Parker v. District of Columbia, 478 F.3d 370, 376 (D.C. Cir. 2007) (District of Columbia special police officer, who applied for and was denied a registration certificate to own a handgun, had standing to raise § 1983 challenge to provisions of the District of Columbia's gun control laws; remaining plaintiffs who only expressed an intention to violate the District of Columbia's gun control laws, but had suffered no injury in fact, lacked standing). Thomas v. U.S., 696 F. Supp. 702, 711-12 (D.D.C. 1988) ("Until plaintiffs have applied for such a permit and the Department of Interior or its delegate have acted on such a permit, plaintiffs' constitutional challenge to the Lafayette Park regulations on vagueness grounds must

---

[5] The First Amendment claims are addressed in Section II, infra. The Fifth Amendment claims are addressed in the Section III, infra. The Fifth Cause of Action alleges a violation of the Religious Freedom Restoration Act. This count is addressed in Section IV, infra.

fail.").

In order to assert standing to challenge a criminal statute or regulation, a plaintiff must "face 'realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" <u>Babbitt v. United Farm Workers</u>, 442 U.S. 289, 298-99 (1979) ("persons having no fear of [] prosecution except those that are imaginary or speculative . . . do not allege a dispute susceptible to resolution by a federal court") (citations omitted).  It is also settled that "'a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975); <u>see also</u> <u>New World Radio v. FCC</u>, 294 F.3d 164, 170 (D.C. Cir. 2002) ("[t]he burden is on the party seeking judicial review 'clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's powers.'") (internal citations omitted).

Accordingly, plaintiff's speculative, pre-enforcement challenge to the NPS permit regulations must fail for lack of standing.  Plaintiff has failed to allege facts sufficient to demonstrate the type of injury in fact necessary for the injunctive relief he seeks.  He did not seek approval to distribute leaflets prior to his visit to Mt. Rushmore National Memorial in August 2007, and suffered no actual or threatened injury while there (<u>see</u> Compl., ¶¶ 17-26).  To the contrary, plaintiff was able to distribute leaflets on Thursday, August 9, 2007, without incident, and was simply stopped by a park official on Friday, August 10, 2007, and told that he needed a permit to distribute leaflets in the park (<u>see</u> <u>id.</u>).  The official further advised plaintiff that it could take two days to get a permit (<u>see</u> Compl., ¶ 30).  Plaintiff was not given a citation and the ranger did not threaten him with criminal prosecution.  Rather, plaintiff voluntarily left the park, returned home to Minnesota, and began calling Mount Rushmore for a permit application for a return trip one year

10

later (see Compl., ¶¶ 31-41; Pflaum Decl. at ¶¶ 3-5).  He has since received a permit for his return

trip in August 2008 (Suppl. Decl. Of Mike Pflaum at ¶ 4).[6]

### B.    Plaintiff's Claims For Declaratory And Injunctive Relief Are Moot As He No Longer Has a Continuing Concrete Stake in the Outcome

Plaintiff also challenges the alleged delay in processing his request for a permit to return

to Mount Rushmore in August 2008.  To the extent that the Court finds that plaintiff has standing

to make an as-applied and facial challenge to the regulations, his claim is "moot" because, even

though plaintiff did not submit a proper permit application, the NPS issued a permit for the

requested First Amendment activities.[7]  Under established "mootness" principles, moreover, a claim

does not remain justiciable simply because the existing record is sufficient to allow an informed

decision on the merits.  Rather, the plaintiff must establish a continuing concrete stake in the

outcome of the litigation in order to obtain relief in court.  See, e.g., Friends of the Earth, Inc. v.

Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000) ("The Constitution's case-or-

controversy limitation on federal judicial authority, Art. III, § 2, underpins . . .  [this Court's]

mootness jurisprudence."); Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990) ("Article

III denies federal courts the power 'to decide questions that cannot affect the rights of litigants in

the case before them,'" and "[t]his case-or-controversy requirement subsists through all stages of

federal judicial proceedings, trial and appellate.") (quoting North Carolina v. Rice, 404 U.S. 244,

246 (1971)). Since Mount Rushmore has approved and issued the requested permit, and agreed to

---

[6]  Plaintiff is not entitled to compensatory damages for any alleged delay in processing a permit request because he did not submit a proper application and, in any event, the permit was approved months before his scheduled trip to Mount Rushmore in August 2008.

[7]  See Section II, infra, for discussion of plaintiff's facial challenge to the regulations.

consider any similar future permit requests, plaintiff has no concrete practical stake in any question that affects his rights.

In <u>Utah Animal Rights Coalition v. Salt Lake City Corp.</u>, 371 F.3d 1248 (10th Cir. 2004), an animal rights organization filed a lawsuit challenging the delay in the processing of its application for a permit to conduct a demonstration on public property during the Salt Lake City Olympics as unconstitutionally prolonged. The organization, however, did eventually receive a permit prior, and was able to conduct the requested protests at the Olympics. 371 F.3d at 1253-1254. The organization continued to pursue its lawsuit, "seeking a judicial holding that the eight-month delay in processing their application was unconstitutional and the Ordinance in its pre-amended form [without a 28-day processing period] was facially unconstitutional." <u>Id.</u> at 1262. The Tenth Circuit held that the organization's claims were moot, noting that:

> Federal courts, however, are not debating societies to determine whether past actions and defunct ordinances were constitutional. Federal courts exist to resolve live controversies, to remedy wrongs, and to provide prospective relief. There is no relief a court could order now that would undo the delay in processing Plaintiff's application . . . .

<u>Id.</u> The Court further held that there was "no point in deciding whether the former ordinance was unconstitutional on its face, because it has been amended to correct the alleged constitutional defect," <u>i.e.</u>, the lack of a specific time frame for processing the permit. <u>Id.</u> The Tenth Circuit further found that "there is no possibility that Plaintiffs will be subjected to similar, unconstitutional, treatment in the future, because the amended ordinance now requires prompt decision on permit applications. In other words, this controversy is over, it will not recur, and there is nothing this Court can do to affect the matter." <u>Id.</u>

Similarly, this case is moot because plaintiff has received a permit for his return visit to

Mount Rushmore in August 2008, and there is no danger of any delay in the processing of any future permit request, upon submission of a proper application, or that he will be denied a permit, except based on the reasons expressly stated in the regulations. Indeed, to the extent that plaintiff claims that there was improper delay in the processing of any prior permit requests or that he was unable to get a permit application, the Mount Rushmore website now provides public access to the permit form and advises applicants to allow two business days for processing (in accordance with the NPS management policies). Accordingly, while defendants by no means concede any unconstitutional treatment of plaintiff in the past, there is no possibility that any alleged harm will recur in the future. To the contrary, the NPS has indicated that it will approve any similar future permit request by plaintiff just as it has approved every other properly-submitted permit request in the past.

## II.    The NPS Regulations Have Been Held to Be Constitutionally Valid Time, Place, and Manner Restrictions on First Amendment Activity

Plaintiff's facial challenge to the constitutionality of the regulations under the First Amendment (Count I and II) must fail because he cannot "'establish[] that no set of circumstances exists under which [the regulations] would be valid,' i.e., that the law is unconstitutional in all of its applications." Washington State Grange v. Washington State Republican Party, – U.S. –, 128 S.Ct. 1184, 1190 (2008) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). The Supreme Court noted in Washington State Grange that "[f]acial challenges are disfavored," because (1) they "often rest on speculation," (2) they "run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is applied,'" and (3) they "threaten to short circuit the democratic process

by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." 128 S.Ct. at 1191.

It is well-established that the First Amendment does not grant a wholly unfettered right to express ideas.  "[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981) (citations omitted).  Similarly, it is beyond dispute that "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." Cornelius v. NAACP Legal Defense and Educational Fund Inc., 473 U.S. 788, 799-800 (1985) (citation omitted).

In A Quaker Action Group v. Morton, 516 F.2d 717 (D.C. Cir. 1975), the Court of Appeals expressly considered whether the Park Service's permit system for the National Capital Region constituted a prior restraint on First Amendment activity.  The Court of Appeals held that it did, but noted that "it is well settled that expressive conduct is subject to both contemporaneous and to prior restraint under certain circumstances." Id. at 725.  The Court went on to state that:

> Obviously, conduct that creates a danger to life and property, or that is destructive of public order, may be checked by authorities.  In such situations, when the First Amendment rights of demonstrators compete with other legitimate interests, government may develop a system of restraints, on the otherwise protected conduct, that attempts to accommodate these various competing interests.

Id.  The Court of Appeals further stated that:

> In so holding [that the permit regulation is a prior restraint], we are approving the overall permit system as being justified by the asserted governmental interests, and as being no more restrictive than necessary to preserve those interests.

14

A Quaker Action, 516 F.2d at 727 (footnote omitted).  See also Kroll v. U.S. Capitol Police, 847 F.2d 899, 903 (D.C. Cir. 1988).

In Clark v. Community for Creative Non-Violence, 468 U.S. 288 (1984), a case which involved an unsuccessful challenge to the Park Service's regulation banning camping in the National Parks except in campgrounds specifically designated for such purpose, the Supreme Court set out the test of a regulation that impacts speech in a traditional public forum:[8]

> Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions.  We have often noted that restrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.

468 U.S. at 293-294 (citations omitted).[9]  The three-part test set out in Clark has been widely used and reaffirmed by later decisions of the Supreme Court.  See, e.g., Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).  Thus, the government may in appropriate circumstances place reasonable restrictions on the time, place, or manner of protected speech, so long as ample alternative means of communication are left open.  See, e.g., Ward, 491 U.S. at 791; City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789 (1984); Heffron, 452 U.S. at 647-48; ISKCON v. Kennedy, 61 F.3d 949, 955 (D.C. Cir. 1995).

---

[8]  The Court of Appeals noted in A Quaker Action that "First Amendment activity might be inappropriate for a wilderness area such as Yellowstone Park."  516 F.2d at 724-25. Defendants do not concede that all areas of national parks are traditional public fora.  However, to the extent that the court finds that plaintiff may challenge the NPS regulations in this case, we submit that the regulations easily satisfy the three-part Clark test.

[9]  In Clark, the plaintiff had sought to conduct a wintertime demonstration in Lafayette Park and the Mall to demonstrate the plight of the homeless; as part of the demonstration, plaintiff sought permission for the demonstrators to sleep in tents erected in these areas as a symbol of homelessness.  468 U.S. at 291-92.

To withstand First Amendment scrutiny, a permitting scheme must also contain "narrowly drawn, reasonable, and definite" standards that prevent the exercise of "limitless discretion" by state officials in determining what expression is allowed. Niemotko v. Maryland, 340 U.S. 268, 271-72 (1951); see also Forsyth Cty. v. Nationalist Movement, 505 U.S. 123, 132-33, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). The doctrine prohibiting unbridled discretion "requires that the limits [the defendant] claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 770 (1988).

Plaintiff cannot establish that no set of circumstances exists under which the Act would be constitutionally valid. To the contrary, the constitutionality of the same regulations challenged here has been affirmed in two cases where single leafleters who, unlike plaintiff, were given criminal citations for leafleting without a permit. See United States v. Kistner, 68 F.3d 218 (8th Cir. 1995) (affirming conviction for distribution of pamphlets without a permit at Jefferson National Expansion Memorial in St. Louis and rejecting as-applied and facial challenge to the constitutionality of 36 CFR § 2.52 (a)); United States v. Sued, 143 F.Supp.2d 346, 349-50 (S.D.N.Y. 2001) (court denied motion to dismiss, based on a constitutional challenge, charges arising from citations issued for violations of 36 C.F.R. §§ 2.51 and 2.52 at Statute of Liberty and Liberty Island). Specifically, in Kistner, the leafleter was given a citation at the Jefferson National Expansion Memorial at a large event where First Amendment permits were also made available on the day of the event. 68 F.3d at 219-220. In Sued, the leafleter was given a citation at the Statute of Liberty, a busy national park, whose website instructed applicants "to apply for a permit at least 72 hours before their planned activities," limited permits to "two public assembly and two printed

16

matter permits . . . issued on a 'first come, first served basis' for any given day," and further restricted each permitee to "a two-hour period in a designated [area of the park]."  143 F.Supp.2d at 349.  At Mount Rushmore, the two-business day rule was clearly in place because the ranger who stopped plaintiff advised that it could take two days to get a permit.  However, that time is clearly a ceiling, given Park Ranger Pflaum's statements in his declaration that a permit could be processed in less time, and he is aware of no instance when a permit has been denied at Mount Rushmore (Pflaum Decl., ¶¶ 2,6).  As stated, NPS Management Policies § 8.6.3 (2006), which applies to Mount Rushmore, sets a two business day period for reviewing permit applications.

The NPS regulations challenged by plaintiff here have been found to be reasonable time, place, or manner restrictions because they are based on "content neutral reasons for requiring permits to avoid overcrowding and overlapping activities, to preserve peace and tranquility, to prevent dangers to health and safety, and to minimize damage to park resources and facilities." Kistner, 68 F.3d at 222-24 (citing 36 C.F.R. ¶ 2.52); accord Sued, 143 F.Supp.2d at 352-53. Indeed, the Eighth Circuit in Kistner rejected a facial and as-applied First Amendment challenge to the same national regulation at issue here and held that the National Park Service "policy statement and regulation are content neutral," and "that the regulation and policy statement on the sale or distribution of printed matter satisfy the requirements for a reasonable time, place, or manner restriction under the First Amendment." 68 F.3d at 221-222.  A superintendent may deny a permit for the sale or distribution of printed matter only for the following limited reasons stated in the regulation and these reasons clearly  satisfy the three-part Clark test:

> (1)    A prior application for a permit for the same time and location has been made that has been or will be granted and the activities authorized by that permit do not reasonably allow multiple occupancy of the particular area; or

(2)    It reasonably appears that the sale or distribution will present a clear and present danger to the public health and safety; or

(3)    The number of persons engaged in the sale or distribution exceeds the number that can reasonably be accommodated in the particular location applied for considering such things as damage to park resources or facilities, impairment of a protected area's atmosphere of peace and tranquility, interference with program activities, or impairment of public use facilities; or

(4)    The location applied for has not been designated as available for the sale or distribution of printed matter; or

(5)    The activity would constitute a violation of an applicable law or regulation.

36 C.F.R. § 2.52( c).  Thus, these restrictions are of the kind that were held to be constitutional in

Clark because "they are justified without reference to the content of the regulated speech, that they

are narrowly tailored to serve a significant governmental interest, and that they leave open ample

alternative channels for communication of the information."  468 U.S. at 293-294.  Furthermore,

the restrictions here are limited only to the distribution of printed matter, and do not prevent

individuals from approaching others and requesting permission to talk to them.  See Kistner, 68

F.3d at 222.

The Supreme Court recently upheld a "content-neutral" permit scheme by the Chicago Park

District regulating uses (including First Amendment speech uses) of public parkland.  Thomas v.

Chicago Park District, 534 U.S. 316 (2002).  The Supreme Court held that the permit scheme's

time, place, and manner  restrictions were constitutional because the reasons for denying a permit

did not relate to the content of the speech, and were "narrowly drawn, reasonable and definite

standards." 534 U.S. at 324 (citation omitted).  The object of the permit regulations in Thomas, like

the NPS regulations at issue here, was "not to exclude particular communications, but to coordinate

multiple uses of limited space; assure preservation of park facilities; prevent dangerous, unlawful, or impermissible uses; and assure financial accountability for damage caused by an event." Id. at 322. Moreover, "[r]egulations of the use of a public forum that ensure the safety and convenience of the people are not 'inconsistent with civil liberties but . . . [are] one of the means of safeguarding the good order upon which [civil liberties] ultimately depend." Id. at 323 (citation omitted).

The Supreme Court considered the permit scheme in Thomas to be a ministerial necessity to preserve the opportunity of effective freedom of speech for all citizens. Id. at 323. The Court also recognized that limiting use of park space by requiring permits could actually increase the speech that is heard: "[T]o allow unregulated access to all comers could easily reduce rather than enlarge the park's utility as a forum for speech." Id. at 322 (citation omitted). The Court rejected the argument that absolute specificity was required in the ordinance, and stated that a case arguing an abuse of a permit process, e.g., discrimination based on content, should only be "dealt with if and when a pattern of unlawful favoritism appears, rather than by insisting upon a degree of rigidity that is found in few legal agreements." Id. at 325.

In addition, the Eighth Circuit rejected the claim in Kistner that the requirement that permits be issued "without reasonable delay" under § 2.52 (a) was not narrowly tailored to serve a significant government interest because the policy statement of the national park at issue in that case required that permits "should be received at least ten (10) working days prior to date needed." 68 F.3d at 221-22. The NPS Management Policies § 8.6.3 (2006), provides that a First Amendment permit request will be issued or denied "within two business days after receipt of a proper

application," a more restrictive time period than the one at issue in <u>Kistner</u>.[10]  <u>See also</u> <u>Sued</u>, 143

F.Supp.2d 346 at 349-50 ("published procedures" afforded NPS officials "at least 72 hours to

review each written permit application, [although] in practice the review is considerably less

involved").  <u>See also</u> <u>Liberman v. Schesventer</u>, 447 F. Supp. 1355 (M.D. Fla. 1978) (finding an

earlier version of the printed matter regulation, 36 CFR § 2.52, to be constitutional, even as applied

in nondiscriminatory fashion to religious literature).  <u>But see</u> <u>United States v. Frandsen</u>, 212 F.3d

1231 (11th Cir. 2000) (36 C.F.R. § 2.51( c) found to be facially unconstitutional in case because

the regulation fails to set a time limit for issuing a permit "without unreasonable delay" in the only

case under the challenged regulation where no local policy or time limit for reviewing permit was

considered).

     <u>Frandsen</u> is a pre-<u>Thomas</u> case.  Since <u>Thomas</u>, the Eleventh Circuit has held that "time

limits are not per se required when the licensing scheme at issue is content-neutral."  <u>See</u>, <u>e.g.</u>,

<u>Solantic, LLC v. City of Neptune Beach</u>, 410 F.3d 1250 (11ᵗʰ Cir. 2005).  In any event, in <u>Frandsen</u>,

the Eleventh Circuit , unlike the Eighth Circuit in <u>Kistner</u>, was not asked to consider a NPS policy

statement specifying the time for reviewing a permit application.  <u>See</u> <u>Sued</u>, 143 F.Supp.2d at 352

(distinguishing <u>Frandsen</u> for failure to consider not only regulation, "but also how it has been

interpreted by the persons charged with its implementation, and what their actual practices are.")

(citing, <u>e.g.</u>, <u>Rock against Racism</u>, 491 U.S. at 795).  The constitutionality of the NPS regulations

has been affirmed by every court that has considered the regulations in connection with a specific

time frame that was placed on the processing of permits by a policy and practice.  Plaintiff,

---

    [10]  <u>Accord</u> <u>A Quaker Action Group v. Morton</u>, 516 F.2d 717, 735 (D.C. Cir. 1975) (Court
of Appeals approved a provision requiring applicants to apply for a permit 48 hours in advance
of a planned public gathering).

therefore fails to establish that there are no set of circumstances under which the regulations are constitutionally valid.  <u>Washington State Grange v. Washington State Republican Party</u>, – U.S. –, 128 S.Ct. 1184, 1190 (2008).

### III.     <u>Plaintiff Fails to Allege A Fifth Amendment Violation</u>

Plaintiff advances claims under the Due Process and Equal Protection Clauses of the Fifth Amendment in the Third and Fourth Causes of Action alleged in the complaint.  Plaintiff first alleges that he has been denied due process because the Park Service's regulations applicable to their permit application are too vague and allow for unbridled discretion (Third Cause of Action, ¶¶ 89-94).  To the contrary, there is nothing unconstitutionally vague about the permit regulations and accompanying management policies, which specify the reasons upon which a permit may be denied and require that a permit be processed in two business days.  Nor do the regulations and management policies allow for unbridled discretion in the permit approval process.  <u>See</u>, <u>Kistner</u>, 68 F.3d at 221 ("We thus find unpersuasive Kistner's speculation that the government's discretion under the policy statement creates an unacceptable risk that free speech may be regulated on the basis of content."); <u>Sued</u>, 143 F.Supp.2d at 352 ("[T]he regulations do not appear to afford the Park Service officials unbridled discretion.").

As for the Equal Protection argument, plaintiff asserts that he was treated differently than other permit applicants based on content and viewpoint of his speech (Fourth Cause of Action ¶¶ 95-102).  To establish an Equal Protection violation, plaintiff must establish as a threshold matter that Defendants failed to "afford similar treatment to similarly situated persons."  <u>News America Pub., Inc. V. FCC</u>, 844 F.2d 800, 804 (D.C. Cir. 1988).  Plaintiff cannot meet this threshold here because he did not apply for a permit before his August 2007 visit to Mount Rushmore, and

therefore cannot claim to be treated differently than persons who applied for permits, which were granted in all cases.

### IV.    Plaintiff Fails to State a Claim for Relief under RFRA

Plaintiff claims the regulations are unconstitutional and violate the Religious Freedom Restoration Act  ("RFRA"), 42 U.S.C. ¶ 2000(bb) et seq., in the Fifth Cause of Action alleged in the complaint.  RFRA was enacted in response to the Supreme Court's decision in Employment Division, Dept. of Human Res. v. Smith, 494 U.S. 872 (1990).  It creates a statutory right requiring the government to satisfy the compelling interest test where a government action substantially burdens the free exercise of religion.  Thus, a violation of RFRA requires the same elements that a pre-Smith Free Exercise violation required: the plaintiff must initially establish that the government has placed a substantial burden on his or her free exercise of religion.  See Sherbert v. Verner, 374 U.S. 398, 406 (1963).[11]

Applying the "substantial burden" test here, it is plain that RFRA is not implicated.  This is especially true because "[t]he burden must be more than an inconvenience; the burden must rise to the level of pressuring the adherent to commit an act the religion forbids, or preventing the adherent from engaging in conduct that the faith requires."  Brown v. Polk County Iowa, 37 F.3d 404, 410 (8th Cir. 1994).  Plaintiff here may distribute leaflets at Mount Rushmore whenever he wants simply by applying for a permit.

---

[11]  RFRA did not effect a waiver of the government's sovereign immunity to damages claims.  Webman v. Fed. Bur. Of Prisons, 441 F.3d 1022 (D.C. Cir.), reh'g and reh'g en banc denied (June 20, 2006).

Furthermore, it is not the case that every activity which can be cast as "religiously motivated" is the kind of exercise of religion protected by RFRA. <u>Henderson v. Kennedy</u>, 253 F.3d. 12, 16-17 (D.C. Cir. 2001). Plaintiff does not allege that his religion compels him to distribute leaflets at Mount Rushmore. This is fatal to plaintiff's claim because there is no reasonable way the slight limitation of a permit requirement can be construed to be a substantial burden on the free exercise of religion. <u>Accord</u> <u>Lyng v. Northwest Indian Cemetery Protective Assoc.</u>, 108 S. Ct. 1319, 1328 (1988) (Court ruled that free exercise clause did not prohibit government from permitting timber harvesting and road construction in area in question based on challenge under American Indian Religious Freedom Act).

### V.    Plaintiff Fails to State a Claim for Relief Against the Agency Officials In Their Individual Capacities

Plaintiff sues each agency official in his or her official and individual capacities (Compl., ¶16). Although undersigned counsel do not yet represent the defendants in their individual capacities, such request for authority is pending.[12] In any event, the only allegations relating to the claims against the officials acting in their individual capacities are that "Defendants knew or should have known that denying Mr. Boardley permits violated his constitutional rights" (<u>see</u> Compl., ¶¶ 43, 70). Accordingly, we note that these claims fail as improperly brought pursuant to <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971).

As a preliminary matter, because the declaratory relief sought by plaintiff can only be pursued against these federal defendants in their official capacities, his claim cannot succeed in the fashion he suggests. <u>See</u> <u>Brancaccio v. Reno</u>, 964 F. Supp. 1, 2 n.4 (D.D.C. 1997) (plaintiff failed

---

[12] We reserve the right to assert any additional Rule 12 defenses on behalf of these defendants upon receipt of the requested authority.

to state a claim against federal officials in their individual capacities where allegations made against them referred to actions that could only be performed by the defendants in their official capacities and where plaintiff requested injunctive relief which could only be performed by defendants in their official capacities); Simpkins v. District of Columbia Government, 108 F.3d 366, 368 (D.C. Cir. 1997) (A Bivens suit is an action against a federal officer in an individual capacity, seeking damages for violations of the plaintiff's constitutional rights.)

A plaintiff may bring a civil action for money damages against a federal official in his or her individual capacity for violation of the plaintiff's constitutional rights. Bivens, 403 U.S. at 389. Federal officials, however, may be entitled to a defense of qualified immunity. Wilson v. Layne, 526 U.S. 603, 618 (1999) (citing Harlow v. Fitzgerald, 357 U.S. 800, 818 (1982)). "It is well-established that qualified immunity shields government officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998) (citing Harlow, 357 U.S. at 818).  A government official is entitled to judgment in his or her favor "unless '[t]he contours of the right [were] sufficiently clear that a reasonable official would [have] under[stood] that what he [was] doing violate[d] that right."  Id. (citation omitted). "[Q]ualified immunity provides not simply a defense to liability, but also 'an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which plaintiff complains violated clearly established law.'" Id. (citation omitted).

Here, Mount Rushmore is located in the Eighth Circuit, which long ago held in the Kistner case that the challenged regulations are constitutional time, manner or place restrictions.  Indeed,

24

no Court has held the requirement of a permit to conduct First Amendment activity at a national

park is unconstitutional, and criminal citations issued for violations of the permit requirements have

withstood constitutional challenges in a number of cases, as discussed, supra.  Although the

Eleventh Circuit in the Frandsen case found the challenged regulations to be unconstitutional due

to the absence of a specific time limit for processing the permit, United States v. Frandsen, 212 F.3d

1231 (11th Cir. 2000), the current NPS management policies specifically address this issue by

requiring that a permit be processed in two business days.  There is no dispute that this policy was

recognized by the officials at Mount Rushmore because plaintiff was advised that it could take two

business days to process a permit request.  Thus, each of defendants sued individually are entitled

to qualified immunity because a reasonable official could not have understood that any actions

taken by the official violated clearly established law.

### A.    This Court Lacks Personal Jurisdiction over the Non-Resident Defendants Quintana, Baker and Plaum

"To prevail in a Bivens action, a plaintiff must 'demonstrate an injury consequent upon the

violation' of his constitutional rights by federal employees."  Fletcher v. District of Columbia, 481

F.Supp.2d 156, 164 (D.D.C. 2007) (quoting Bivens, 403 U.S. at 397).  Plaintiff does not allege that

any of the officials actually promulgated a challenged policy or practice of refusing to process

plaintiff's requests for a permit.  Accordingly, plaintiff's actionable injury in this case must arise

from the application of the challenged federal regulations and policies to him, and therefore must

be limited to those officials who actually enforce the regulations and policies.  See id. at 165.

"On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden

of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant."

Zakiya v. U.S., 267 F.Supp.2d 47, 51 (D.D.C. 2003) (citations omitted).  Furthermore, the plaintiff

"has the burden of 'alleging specific acts connecting the defendant with the forum . . . .'" <u>Id.</u> at 51-52 (citation omitted). Defendants Quintana, Baker and Pflaum will move to dismiss this complaint because this Court does not have personal jurisdiction over them.   <u>See</u>, <u>e.g.</u>, <u>Zakiya v. U.S.</u>, 267 F.Supp.2d 47, 51 (D.D.C. 2003).   These defendants are employed by the NPS in Nebraska (Quintana) and South Dakota (Baker and Pflaum).

Personal jurisdiction over the three non-resident defendants may only be exercised in this jurisdiction pursuant to the District of Columbia's long-arm statute, D.C. Code § 13-423(a). <u>Zakiya</u>, 267 F.Supp.2d at 52. "To determine whether this Court may exercise personal jurisdiction over the nonresident defendants, it must conduct a two part inquiry which entails (1) 'examin[ing] whether jurisdiction is applicable under the state's long-arm statute [and (2)] . . . determin[ing] whether a finding of jurisdiction satisfies the constitutional requirements of due process.'" <u>Id.</u> at 52 (citations omitted).  The District of Columbia long-arm statute provides, in pertinent part,

> (a)      A District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
>
>> (1) transacting any business in the District of Columbia;
>>
>> (2) contracting to supply services in the District of Columbia;
>>
>> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>>
>> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered in the District of Columbia; . . . .

D.C. Code § 13-423(a).

There is no allegation that any of the three non-resident officials took any actions directed at plaintiff in the District of Columbia. To the contrary, all challenged actions relate to the alleged failure by defendant to respond to plaintiff's requests for a permit at Mount Rushmore, located in Keystone, South Dakota. Thus, it is clear that any injury sustained by plaintiff took place in South Dakota and this Court should decline to exercise personal jurisdiction of the federal defendants residing in Nebraska and South Dakota. See, e.g., Zakiya, 267 F.Supp.2d at 52-53 (citations omitted).

**B.    Plaintiff Fails to State a Claim against the National Defendants, Kempthorne and Bomar, Who Cannot Be Held Personally Liable Under the Doctrine of Respondeat Superior**

Neither of the two national officials named individually in this case (Kempthorne and Bomar) had any direct involvement in the actions taken at Mount Rushmore pursuant to the challenged regulations. Plaintiff alleges that the violation of his constitutional rights stemmed from the failure of agency officials to respond to his requests for a permit, but plaintiff does not allege that he ever submitted a written application for a permit. Hence, neither national official could have taken any action with respect to the alleged failure to process any request by plaintiff for a permit to distribute leaflets at Mount Rushmore.

The national defendants, the Secretary and NPS National Director, cannot be held personally liable for constitutional torts of employees they supervise under the doctrine of respondeat superior. Monell v. Department of Social Services, 436 U.S. 658 (1978); Cameron v. Thornburgh, 983 F.2d 253, 258 (D.C. Cir. 1993); Meyer v. Reno, 911 F.Supp. 11, 15 (D. D.C. 1996). In Cameron, the D.C. Circuit dismissed the Attorney General and Director from the suit because the complaint failed to allege their personal involvement and was based solely "on the bare

27

assumption" that policy decisions in the District of Columbia influenced the prisoner's treatment in a federal prison in Indiana.  Id. at 258.

In the Meyer case, this Court discussed respondeat superior within the context of federal inmate lawsuits:

> Absent any allegations that defendants Reno and Hawk personally participated in the events which gave rise to the plaintiff's claims, or any corroborative allegations to support the inference that these defendants had notice of or acquiesced in the improper securing of detainers against the plaintiff by their subordinates, dismissal is appropriate. See  Haynesworth v. Miller, 820 F.2d 1245, 1259 (D.C. Cir.1987) (fellow government employees cannot be held liable under the theory of respondeat superior for either constitutional or common law torts); Smith-Bey v. District of Columbia, 546 F.Supp. 813, 814 (D.D.C.1982) (same). Respondeat superior has been consistently rejected as a basis for the imposition of § 1983 or Bivens liability. See, e.g., Monell v. Dep't of Social Srvcs., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 375-76, 96 S.Ct. 598, 606-07, 46 L.Ed.2d 561 (1976); Boykin v. District of Columbia, 689 F.2d 1092, 1097-99 (D.C. CIR.1982); Tarpley v. Greene, 684 F.2d 1, 9-11 (D.C. Cir.1982). Therefore, any potential § 1983 or Bivens claims against these defendants, whose only relationship to the instant litigation is their ultimate supervisory status, must be dismissed.

Plaintiff makes no allegations to support a claim against the national officials in their individual capacities.  There is no allegation that either participated in any decision to refuse to process a request for a permit by plaintiff, to delay the processing of such a request, or to otherwise order non-compliance with the NPS management policy requiring that permit requests be processed in two business days.   Rather, just as in the Cameron case, the Plaintiff seems to be basing his claim against the national officials in their individual capacities on an assumption that policy decisions made in Washington might have somehow affected his treatment at Mount Rushmore. This is an insufficient basis upon which to maintain a claim against the national officials. Therefore, Plaintiff has failed to state a claim against the national officials in this Bivens action and Kempthorne and Bomar must be dismissed as defendants.

C.    <u>Threshold Qualified Immunity Issues Should Be Resolved Prior to Discovery</u>

It is a commonplace in <u>Bivens</u> litigation that there should be no discovery until the qualified immunity claims have been resolved.  <u>E.g.</u>, <u>Harlow</u>, 457 U.S. at 816.  As the Supreme Court recognized, qualified immunity "is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).  Importantly, the Supreme Court has long admonished that the question of qualified immunity "should be resolved at the earliest possible stage of a litigation."  <u>Anderson v. Creighton</u>, 483 U.S. 635, 646 n. 6 (1987).

Critical for present purposes, the Supreme Court has cautioned that until the "threshold immunity question is resolved, discovery should not be allowed."  <u>Harlow</u>, 457 U.S. at 818.  As the Supreme Court later emphasized, "[u]nless the plaintiff's allegations state a violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  <u>Mitchell</u>, 472 U.S. at 526.

Indeed, our Court of Appeals issued a stay of proceedings and a writ of mandamus to this Court in a case in which this Court had ordered an evidentiary proceeding prior to resolving the qualified immunity issues before it.  <u>E.g.</u>, <u>Fludd v. United States Secret Service</u>, 771 F.2d 549 (D.C. Cir. 1985).  In that case the plaintiff contended that the individual defendants, agents of the United States Secret Service, had violated his Fourth Amendment rights in their service of a subpoena for a handwriting exemplar on him.  <u>Id.</u> at 550.  After the individual defendants moved to dismiss or for summary judgment on qualified immunity grounds, this Court deferred resolution of the qualified immunity issue.  <u>Id.</u> at 552.  Instead, this Court ordered a factual hearing on the authority of the property owner to give consent to enter.  <u>Id.</u>  When this Court declined to reconsider its

29

decision to hold an evidentiary hearing before resolving qualified immunity, the Circuit issued a writ of mandamus directing the cancellation of the evidentiary hearing.

In explaining its decision to issue the extraordinary writ, the Circuit relied heavily on the Supreme Court's then "recent" pronouncement in <u>Harlow</u>.  771 F.2d at 552.  The Circuit quoted <u>Harlow</u> extensively, including the passage noting that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed."  771 F.2d at 553 (quoting 457 U.S. at 818).  Although the Circuit observed that an evidentiary hearing is not always forbidden, it issued the writ because this Court had "exceeded the permissible limits of such a hearing."  771 F.2d at 554.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss should be granted.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
JOHN G. INTERRANTE
PA Bar # 61373
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7220
(202) 514-8780 (fax)
John.Interrante@usdoj.gov

31

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL BOARDLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 07-01986 (JR)** |
| **v.** ) | |
| ) | |
| **UNITED STATES DEPARTMENT OF THE INTERIOR <u>et</u> <u>al.</u>,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>ORDER</u>

Upon Consideration of Defendants' Motion to Dismiss, plaintiff's opposition thereto, and the entire record herein, it is hereby

**ORDERED** that the motion is **GRANTED**.

It is further **ORDERED** that the complaint is dismissed with prejudice.

It is **SO ORDERED** this _____ day of _____, 2008.

_____
JAMES ROBERTSON
United States District Judge