## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL BOARDLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) **Civil Action No. 07-01986 (JR)** |
| **v.** | ) |
| | ) |
| **UNITED STATES DEPARTMENT OF THE** | ) |
| **INTERIOR <u>et al.</u>,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MOTION TO DISMISS AND FOR STAY OF DISCOVERY PENDING RESOLUTION OF MOTION TO DISMISS

Defendants Dirk Kempthorne, Secretary of Interior, Mary Bomar, Director, National Park Service ("NPS"), Ernie Quintana, Midwestern Regional Director, NPS, Gerard Baker, Superintendent, Mount Rushmore National Memorial, and Mike Pflaum, Chief Park Ranger, Mount Rushmore National Memorial, (collectively the "DOI/NPS Officials"), through undersigned counsel, hereby move that the claims filed against the DOI/NPS Officials in their individual capacity be dismissed. Defendants seek dismissal pursuant to the qualified immunity doctrine and Federal Rules of Civil Procedure 12(b)(1), (2), and (6). In addition, Defendants request that the Court stay discovery pending resolution of the qualified immunity issues raised in this motion to dismiss. A supporting memorandum and proposed order are submitted herewith.

Dated: June 11, 2008                    Respectfully submitted,


                                        _____/s/_____

                                        JEFFREY A. TAYLOR, D.C. BAR #498610
                                        United States Attorney

/s/
—————————————————————————————
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/
—————————————————————————————
ROBIN M. MERIWEATHER, DC BAR # 490114
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7198 (voice);  (202) 514-8780 (fax)
Robin.Meriweather2@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL BOARDLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No. 07-01986 (JR)** |
| **v.** | ) |
| | ) |
| **UNITED STATES DEPARTMENT OF THE INTERIOR et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF THE DOI/NPS OFFICIAL DEFENDANTS' MOTION TO DISMISS
## AND FOR STAY OF DISCOVERY PENDING RESOLUTION OF
## MOTION TO DISMISS

### INTRODUCTION AND SUMMARY

Plaintiff Michael Boardley filed this lawsuit to challenge the National Park Service

("NPS") regulations governing general demonstration activity and distribution of printed matter

at Mount Rushmore National Memorial ("Mount Rushmore"), located in Keystone, South

Dakota, and his alleged inability to obtain a permit to distribute material.  Plaintiff has sued Dirk

Kempthorne, Secretary of Interior, Mary Bomar, Director, NPS, Ernie Quintana, Midwestern

Regional Director, NPS, Gerard Baker, Superintendent, Mount Rushmore National Memorial,

and Mike Pflaum, Chief Park Ranger, Mount Rushmore National Memorial (collectively "the

DOI/NPS Officials" or the "Officials") in their individual capacity, seeking damages pursuant to

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1]

---

[1] Plaintiff also sued the DOI/NPS Officials in their official capacity.  The grounds for dismissing those claims are addressed in Defendants' Motion to Dismiss, Dkt. Entry 36.  The instant memorandum addresses only the Bivens claims brought against the DOI/NPS Officials in their individual capacity.

Compl. ¶¶ 4, 16.  Plaintiff alleges that the DOI/NPS Officials violated his right to free speech by preventing him from distributing leaflets at Mount Rushmore without a permit, and that the same conduct imposed an undue burden upon his free exercise of his religion, in violation of the Religious Freedom Restoration Act ("RFRA").  Plaintiff also appears to seek injunctive and declaratory relief against the DOI/NPS Officials.  See id. at Prayer for Relief.

Qualified immunity shields the DOI/NPS Officials from liability for damages, and therefore bars Plaintiff's Bivens claims.  Qualified immunity applies insofar as the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 357 U.S. 800, 818 (1982).  The DOI/NPS Officials' alleged conduct did not violate Plaintiff's constitutional or statutory rights.  Even if their actions had been unlawful, the Officials could reasonably presume that the regulations — which expressly sanctioned their conduct — were constitutional and otherwise consistent with federal law.  They cannot be expected to have anticipated Plaintiff's constitutional challenge, particularly given that courts have consistently upheld the regulations as content-neutral and reasonable time, place, and manner restrictions.

The complaint is deficient in several other respects.  To the extent that Plaintiff seeks injunctive or declaratory relief against the DOI/NPS Officials in their individual capacity, he has failed to state a viable claim.  The Court lacks personal jurisdiction over the Officials who do not reside in the District of Columbia, because they have not engaged in any conduct that would trigger long-arm jurisdiction.  Finally, Plaintiff has failed to state a claim against the Officials who reside in the District of Columbia, because he has not alleged that they took any actions regarding his desire to distribute leaflets without a permit, and they cannot be held liable under a

respondeat superior theory.  For all those reasons, the claims brought against the DOI/NPS

Officials in their individual capacity should be dismissed.

## BACKGROUND

The factual and regulatory background are set forth in detail in the Memorandum in

support of Defendants' Motion to Dismiss, Dkt. Entry 36 (the "April 15, 2008 MTD").  The

DOI/NPS Officials will not repeat those factual allegations here, but instead incorporate the

April 15, 2008 MTD, and its supporting exhibits, herein by reference.  The following paragraphs

provide a succinct overview of the facts pertinent to the instant motion.

Plaintiff distributed free gospel tracts at Mount Rushmore on August 9, 2007.  Compl. ¶¶

17-19.  The following day, a Park Ranger at Mount Rushmore informed Plaintiff that he could

not distribute printed matter without a permit, and that permit applications are processed within

two days.  See id. ¶¶ 17-26, 30.  Plaintiff did not submit a permit application while he was at

Mount Rushmore, but made telephonic requests for information regarding a permit application

for a planned return visit to Mount Rushmore in August 2008.  Although Plaintiff never

submitted a written permit application, Chief Park Ranger Pflaum has issued a permit to

Plaintiff, based upon Plaintiff's litigation declaration, which allows Plaintiff to return to the park

and distribute gospel leaflets on August 7, and August 8, 2008.  See Decl. of Chief Park Ranger

Mike Pflaum, ¶ 4 (Dkt. Entry 16-4, Exh. C to Defendants' Opposition to Plaintiff's Motion for

Preliminary Injunction).

The National Park Service regulations requiring a permit for public assemblies,

demonstrations, and the sale or distribution of printed matter within national park areas are

codified at 36 C.F.R. §§ 2.51, 2.52.  Section 2.52 governs the distribution of printed materials,

and provides in pertinent part:

(a)    The sale or distribution of printed matter is allowed within park areas, provided that a permit to do so has been issued by the superintendent, and provided further that the printed matter is not solely commercial advertising. . . . .

(c)    The superintendent shall, without unreasonable delay, issue a permit on proper application unless:

(1)    A prior application for a permit for the same time and location has been made that has been or will be granted and the activities authorized by that permit do not reasonably allow multiple occupancy of the particular area; or

(2)    It reasonably appears that the sale or distribution will present a clear and present danger to the public health and safety; or

(3)    The number of persons engaged in the sale or distribution exceeds the number that can reasonably be accommodated in the particular location applied for considering such things as damage to park resources or facilities, impairment of a protected area's atmosphere of peace and tranquility, interference with program activities, or impairment of public use facilities; or

(4)    The location applied for has not been designated as available for the sale or distribution of printed matter; or

(5)    The activity would constitute a violation of an applicable law or regulation.

36 C.F.R. § 2.52.  If the superintendent denies a permit, "the applicant shall be so informed in writing, with the reason(s) for the denial set forth."

4

**ARGUMENT**

I.    **THE DOCTRINE OF QUALIFIED IMMUNITY BARS PLAINTIFF'S <u>BIVENS</u> CLAIMS AGAINST THE DOI/NPS OFFICIALS.**

A plaintiff may bring a civil action for money damages against a federal official in his or her individual capacity for violation of the plaintiff's constitutional rights. <u>Bivens</u>, 403 U.S. at 389. Federal officials, however, may be entitled to a defense of qualified immunity. <u>Wilson v. Layne</u>, 526 U.S. 603, 618 (1999) (citing <u>Harlow</u>, 357 U.S. at 818). Qualified immunity "shields government officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Farmer v. Moritsugu</u>, 163 F.3d 610, 613 (D.C. Cir. 1998) (citing <u>Harlow</u>, 357 U.S. at 818). The qualified immunity doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent and those who knowingly violate the law." <u>Hunter v. Bryant</u>, 475 U.S. 335, 341 (1986).

In adjudicating a defense of qualified immunity, the court first must decide "whether the plaintiff has asserted a violation of a constitutional right at all." <u>Siegert v. Gilley</u>, 500 U.S. 226, 231 (1991). If the plaintiff has asserted a constitutional violation, the inquiry turns to the "objective legal reasonableness" of the defendants' conduct in light of clearly established law. <u>Harlow</u>, 457 U.S. at 818-19. That inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004).

The complaint fails to distinguish the claims brought against the Defendants in their individual capacities from Plaintiff's other challenges, thereby making it difficult to discern precisely what conduct is at issue in the <u>Bivens</u> claims. The <u>Bivens</u> claims appear to be based upon two theories. First, Plaintiff alleges that the DOI/NPS Officials' enforcement of 36 C.F.R.

3

Sections 2.51 and 2.52, i.e., their alleged refusal to allow Plaintiff to distribute literature without

a permit, was an unconstitutional restriction upon his right to free speech.  Second, Plaintiff

contends that the DOI/NPS Officials' adherence to the permit requirement effectively denied

him an opportunity to distribute the leaflets, thereby burdening his free exercise of religion in

violation of the Religious Freedom Restoration Act  ("RFRA"), 42 U.S.C. ¶ 2000(b).  Neither

claim articulates a clear violation of Plaintiff's constitutional rights.

> **A.     Plaintiff Has Not Alleged That The DOI/NPS Officials Engaged In Conduct That Violated His Clearly Established First Amendment Right to Free Speech.**

The first step of the qualified immunity analysis asks whether the complaint alleges facts

which establish that the officer's conduct violated the plaintiff's constitutional or statutory rights.

Siegert, 500 U.S. at 231.  Plaintiff cannot satisfy that burden by pointing to a generalized right,

such as the First Amendment right to be free from unlawful restrictions upon one's speech and

expression.  Saucier, 533 U.S. at 201-02.  Instead, the Court must determine whether the specific

facts Plaintiff has alleged constitute a violation of the Constitution or a federal statute.  See

Cotton v. District of Columbia, 541 F. Supp. 2d 195 (D.D.C. 2008); Butera v. District of

Columbia, 235 F.3d 637, 646 (D.C. Cir. 2001) (noting that defining the right in overly broad

terms would "strip the qualified immunity defense of all meaning").

> **1.     The First Amendment Does Not Prohibit Federal Officers From Requiring Plaintiff to Obtain A Permit Prior to Distributing Leaflets At Mount Rushmore.**

It is well-established that the First Amendment does not grant a wholly unfettered right to

express ideas.  "[T]he First Amendment does not guarantee the right to communicate one's views

at all times and places or in any manner that may be desired." Heffron v. International Society

for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981) (citations omitted).  Similarly, it is

beyond dispute that "[n]othing in the Constitution requires the Government freely to grant access

to all who wish to exercise their right to free speech on every type of Government property

without regard to the nature of the property or to the disruption that might be caused by the

speaker's activities."  Cornelius v. NAACP Legal Defense and Educational Fund Inc., 473 U.S.

788, 799-800 (1985) (citation omitted).

In Clark v. Community for Creative Non-Violence, 468 U.S. 288 (1984), a case which

involved an unsuccessful challenge to the Park Service's regulation banning camping in the

National Parks except in campgrounds specifically designated for such purpose, the Supreme

Court articulated a standard for reviewing the constitutionality of regulations that impact speech

in a traditional public forum:[2]

> Expression, whether oral or written or symbolized by conduct, is subject to
> reasonable time, place, or manner restrictions.  We have often noted that
> restrictions of this kind are valid provided that they are justified without reference
> to the content of the regulated speech, that they are narrowly tailored to serve a
> significant governmental interest, and that they leave open ample alternative
> channels for communication of the information.

468 U.S. at 293-294 (citations omitted).[3]  That three-part test has been widely used and

reaffirmed by later decisions of the Supreme Court.  See, e.g., Ward v. Rock Against Racism,

---

[2]  The Court of Appeals noted in A Quaker Action that "First Amendment activity might
be inappropriate for a wilderness area such as Yellowstone Park."  516 F.2d at 724-25. The
DOI/NPS Officials do not concede that all areas of national parks are traditional public fora.
However, to the extent that the court finds that plaintiff may challenge the NPS regulations in
this case, we submit that the regulations easily satisfy the three-part Clark test.

[3]  In Clark, the plaintiff had sought to conduct a wintertime demonstration in Lafayette
Park and the Mall to demonstrate the plight of the homeless; as part of the demonstration,
plaintiff sought permission for the demonstrators to sleep in tents erected in these areas as a
symbol of homelessness.  468 U.S. at 291-92.

491 U.S. 781, 791 (1989).  Thus, the government may in appropriate circumstances place

reasonable restrictions on the time, place, or manner of protected speech, so long as ample

alternative means of communication are left open.  See, e.g., Ward, 491 U.S. at 791; City

Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789 (1984); Heffron, 452 U.S. at

647-48; ISKCON v. Kennedy, 61 F.3d 949, 955 (D.C. Cir. 1995).

 The permitting regulations, and hence the DOI/NPS Officials' enforcement of those

regulations, survive scrutiny under the Clark test, for the reasons set forth in the memorandum

supporting Defendants' April 15, 2008 Motion to Dismiss.  See Dkt. Entry 36 at Part II.  The

DOI/NPS Officials will not repeat that analysis here, but instead incorporate that memorandum

herein by reference.  Two points warrant special emphasis.

 First, the regulations that the DOI/NPS Officials applied are content-neutral.  See

Kistner, 68 F.3d at 221-22 (deeming regulations content-neutral because the Park Service issues

permits irrespective of the content of the literature).  Plaintiff has not alleged that the Officials

selectively enforced the regulations based upon the subject matter of the written materials at

issue.   Nor does he contend that the Officials allowed others to distribute written material

without a permit.  The regulations identify five grounds for denying a permit, none of which

depend upon the viewpoint of the prospective leafleter.  See 36 C.F.R. § 2.52(c).

 Second, the regulations should not be examined in isolation.  Instead, any analysis of

their constitutionality must also consider the NPS Management Policy and practice establishing a

two business day period for reviewing permit applications.  See Ward, 491 U.S. at 795-96;

United States v. Sued, 143 F. Supp. 2d 346, 352 (S.D.N.Y. 2001) (when reviewing

constitutionality of Section 2.51 and 2.52 court must consider the way the officials have

interpreted and applied the regulations).  That two-day rule is codified in NPS Management

Policies ¶ 8.6.3 (2006).  <u>See</u> Dkt Entry Nos. 16-2 and 16-3, Exhs. A, B.  As Plaintiff admits, a

park ranger advised him of that two-day processing time.  Compl.

¶ 30.  That is significant, as the regulations have been deemed constitutional by every court that

has considered them in connection with a specific time frame for processing permits.

> **2.    An Objectively Reasonable Official Would Believe That the Permit Requirement Could Be Enforced Without Violating Plaintiff's First Amendment Right to Free Speech.**

A government official is entitled to qualified immunity "unless '[t]he contours of the

right [were] sufficiently clear that a reasonable official would [have] under[stood] that what he

[was] doing violate[d] that right."  <u>Farmer</u>, 163 F.3d at 613 (citation omitted).  The unlawfulness

must be "apparent" in light of pre-existing law.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 640

(1987).  If, at the time of the alleged unlawful conduct, "officers of reasonable competence"

could disagree on whether the alleged conduct violated the plaintiff's rights, "immunity should

be recognized."  <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986); <u>see</u> <u>also</u> <u>Wilson v. Layne</u>, 526 U.S.

603, 618 (1999) (noting that if courts "disagree on a constitutional question, it is unfair to subject

police to money damages for picking the losing side of the controversy").

The DOI/NPS Officials could reasonably believe that they acted lawfully when they

allegedly informed Plaintiff that he had to obtain a permit to distribute leaflets.  The DOI/NPS

Officials were simply applying the agency's regulations, which require a permit for the sale or

distribution of printed matter within national park areas.  <u>See</u> 36 C.F.R. § 2.52.  Section 2.52

was binding and in effect at the time of the alleged incident, and remains valid to this day.

7

It was objectively reasonable for park police officials to rely upon those regulations when determining whether to allow Plaintiff to distribute leaflets at Mount Rushmore. The Supreme Court has held that law enforcement officers generally are entitled to rely upon the constitutionality of statutes which officially sanction the actions they take. See, e.g., Pierson v. Ray, 386 U.S. 547, 555 (1967) (upholding "good faith" defense to section 1983 liability in action for false arrest stemming from enforcement of law later declared unconstitutional). Although the Court has recognized an exception to the Pierson rule for those "law[s] so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws," Michigan v. DeFillippo, 443 U.S. 31, 38 (1979), the doctrine on which Pierson is based remains intact – unless a federal official should have known that the statute in question was clearly unconstitutional, qualified immunity will protect that individual from the burdens of suit.

The same is true where, as here, the underlying laws on which an agency official relies are federal regulations. See Lederman v. United States, 291 F.3d 36, 47 (D.C. Cir. 2002) (discussing DeFillippo and holding that a similar standard should apply when the official relies upon regulations); Wolfel v. Morris, 972 F.2d 712, 719-20 (6th Cir. 1992) (finding officials entitled to qualified immunity because "a reasonable official could have thought that relying on the facially valid regulation here did not violate the prisoner's constitutional rights"); see generally Wilson, 526 U.S. at 617 (deeming fact that challenged police conduct was consistent with Marshals Service policy "important" to its conclusion that a reasonable official could have believed the conduct was lawful).

Those principles apply with particular force in light of the precedent upholding the constitutionality of the national parks' permit requirement. Mount Rushmore is located in the

Eighth Circuit, which long ago held in the Kistner case that the regulations that governed

Plaintiff's desire to distribute leaflets at Mount Rushmore are constitutional time, manner or

place restrictions.  See United States v. Kistner, 68 F.3d 218 (8th Cir. 1995) (affirming conviction

for distribution of pamphlets without a permit at Jefferson National Expansion Memorial in St.

Louis and rejecting as-applied and facial challenge to the constitutionality of 36 CFR § 2.52 (a)).

A district judge in the Southern District of New York also has upheld the constitutionality of the

regulations.  Sued, 143 F. Supp. 2d at 349-50 (denying motion to dismiss, based on a

constitutional challenge, charges arising from citations issued for violations of 36 C.F.R. §§ 2.51

and 2.52 at Statute of Liberty and Liberty Island).  Indeed, no Court has held the requirement of

a permit to conduct First Amendment activity at a national park is unconstitutional, and criminal

citations issued for violations of the permit requirements have withstood constitutional

challenges in a number of cases, as discussed in Defendants' April 15, 2008 Motion to Dismiss

(Dkt. Entry 36).

       To be sure, in United States v. Frandsen, 212 F.3d 1231 (11th Cir. 2000), the Eleventh

Circuit found the challenged regulations to be unconstitutional due to the absence of a specific

time limit for processing the permit.  However, a disagreement among judges does not make the

regulations "clearly" or "apparently" unlawful.  See Wilson, 526 U.S. at 618.  Moreover, the

current NPS management policies specifically address the Frandsen issues  by requiring that a

permit be processed in two business days.  There can be no dispute that this policy was

recognized by the officials at Mount Rushmore because plaintiff was advised that it could take

two business days to process a permit request.  More recently, the Eleventh Circuit has held that

"time limits are not per se required when the licensing scheme at issue is content-neutral."

9

Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250 (11th Cir. 2005).  Thus, each of the

DOI/NPS officials is entitled to qualified immunity because a reasonable official would not have

recognized that the alleged actions of which Plaintiff complains violated clearly established law.

**B.     The <u>Bivens</u> Remedy Does Not Extend to Violations of RFRA.**

A damages remedy under <u>Bivens</u> can only be created if no "special factors counsel

hesitation" in doing so. <u>Chappell v. Wallace</u>, 462 U.S. 296, 298 (1983).  "Those factors do not

relate to 'the merits of a particular remedy' being sought, but involve 'the question of who

should decide whether such a remedy should be provided.'" <u>Rasul v. Myers</u>, 512 F.3d 644, 672

(D.C. Cir. 2008) (Brown, concurring).  Courts have recognized that special factors counseling

against the creation of an alternative <u>Bivens</u>-type remedy must be recognized where a

comprehensive statutory scheme has been established to provide relief in a given area.  <u>See</u>, <u>e.g.</u>,

<u>Mittleman v. U.S. Treasury</u>, 773 F. Supp. 452, 454 (D.D.C. 1991) (Privacy Act bars plaintiff's

constitutional claims); <u>Weiss v. International Brotherhood of Electrical Workers</u>, 729 F. Supp.

144, 147 (D.D.C. 1990) (to the extent that plaintiff's emotional injuries were the result of the

stressful work situation created by the defendant, her claim of intentional infliction of emotional

distress must be dismissed as subsumed within Title VII) (and cases cited therein); <u>Spagnola v.

Mathis</u>, 859 F.2d 223, 229-30 (D.C. Cir. 1988) (en banc) (recognizing the exclusivity of the

Civil Service Reform Act's remedies); <u>see</u> <u>also</u> <u>Bush v. Lucas</u>, 462 U.S. 367 (1983)

(comprehensive procedural and substantive provisions of the Civil Service Reform Act

constitute "special factors" counseling hesitation against a <u>Bivens</u> remedy); <u>Gleason v.

Malcomb</u>, 718 F.2d 1044, 1048 (11th Cir. 1983) (special factors counsel against a <u>Bivens</u>

10

remedy where plaintiff could have sought equitable relief pursuant to the Administrative Procedure Act ("APA").

Here, RFRA provides the comprehensive remedial scheme which should foreclose the creation of a <u>Bivens</u> remedy.  The statute was enacted to "provide a claim or defense to persons whose religious exercise is substantially burdened by government." 42 U.S.C. § 2000bb.  "A person whose religious exercise has been burdened in violation of [RFRA] may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against the government." <u>Id.</u> § 2000bb-1(c).  It follows that, under the special factors analysis, Plaintiff can state no <u>Bivens</u> claim premised upon a RFRA violation.  <u>See</u> <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 423 (1988) (noting Supreme Court's reluctance to expand <u>Bivens</u> remedy into new contexts and noting that <u>Bivens</u> remedy has only been created where there is no statutory alternative remedy); <u>Johnson v. Executive Office for U.S. Attorneys</u>, 310 F.3d 771, 777 (D.C. Cir. 2002) (finding it "clear" that courts are prohibited from creating a <u>Bivens</u> remedy "if the statute at issue provides a comprehensive system to administer public rights").

Moreover, <u>Bivens</u> applies to asserted violations of a <u>constitutional</u> right.  RFRA creates a statutory right to be free from undue burdens upon the free exercise of one's religion.  The Constitution's Free Exercise clause does not reach the conduct of which Plaintiff complains, because "it does not prohibit burdens on the exercise of religion imposed by neutral laws of general applicability." <u>Village of Bensonville v. FAA</u>, 457 F.3d 52, 59-60 (D.C. Cir. 2006) Indeed, RFRA was passed precisely because the Supreme Court had limited the scope of constitutional claims in that manner.  <u>See</u> <u>Village of Bensonville</u>, 457 F.3d at 60.

11

C.      **Even If Plaintiff Could Premise a <u>Bivens</u> Claim Upon A RFRA Violation, Qualified Immunity Would Protect the Defendants From Liability.**

**1. The Facts Alleged in the Complaint Do Not Establish a Violation of RFRA.**

RFRA was enacted in response to the Supreme Court's decision in <u>Employment Division, Dept. of Human Res. v. Smith</u>, 494 U.S. 872 (1990). It creates a statutory right requiring the government to satisfy the compelling interest test where a government action substantially burdens the free exercise of religion. Thus, a violation of RFRA requires the same elements that a pre-<u>Smith</u> Free Exercise violation required: the plaintiff must initially establish that the government has placed a substantial burden on his or her free exercise of religion. <u>See</u> <u>Sherbert v. Verner</u>, 374 U.S. 398, 406 (1963).[4]

Applying the "substantial burden" test here, it is plain that this case does not implicate RFRA. This is especially true because "[t]he burden must be more than an inconvenience; the burden must rise to the level of pressuring the adherent to commit an act the religion forbids, or preventing the adherent from engaging in conduct that the faith requires." <u>Brown v. Polk County Iowa,</u> 37 F.3d 404, 410 (8th Cir. 1994). Plaintiff here may distribute leaflets at Mount Rushmore whenever he wants simply by applying for a permit.

Further, Plaintiff's allegation that his desire to distribute leaflets is "religiously motivated" does not transform that activity into the kind of exercise of religion protected by RFRA. <u>Henderson v. Kennedy</u>, 253 F.3d 12, 16-17 (D.C. Cir. 2001). Plaintiff does not allege that his religion compels him to distribute leaflets at Mount Rushmore. This is fatal to plaintiff's

---

[4] RFRA did not effect a waiver of the government's sovereign immunity to damages claims. <u>Webman v. Fed. Bur. Of Prisons</u>, 441 F.3d 1022 (D.C. Cir.), <u>reh'g and reh'g en banc denied</u> (June 20, 2006).

claim because there is no reasonable way the slight limitation of a permit requirement can be construed to be a substantial burden on the free exercise of religion. Accord Lyng v. Northwest Indian Cemetery Protective Assoc., 108 S. Ct. 1319, 1328 (1988) (Court ruled that free exercise clause did not prohibit government from permitting timber harvesting and road construction in area in question based on challenge under American Indian Religious Freedom Act).

### 2. An Objectively Reasonable Official Would Believe That the Permit Requirement Could Be Enforced Without Violating RFRA.

Assuming arguendo that Plaintiff had alleged facts sufficient to show that the DOI/NPS Officials' conduct violated RFRA, the Officials would nonetheless enjoy qualified immunity. As noted, federal regulations expressly sanction the Officials' alleged refusal to permit Plaintiff to distribute leaflets without a permit. Therefore, to defeat the qualified immunity defense, Plaintiff must demonstrate that it would be obvious to a reasonable official that those regulations conflicted with RFRA. Plaintiff cannot satisfy that burden.

A reasonable official would not be on notice that the permitting regulations implicate or violate RFRA. The regulations are content-neutral, and do not single out religious expression. See 36 C.F.R. §§ 2.51 and 2.52. Plaintiff has identified no precedent deeming the national parks' permitting requirements an unconstitutional or otherwise unlawful burden upon religion. Indeed, a district court held that an earlier version of the regulations governing distribution of printed materials was constitutional even as applied to religious literature. See Liberman v. Schesventer, 447 F. Supp. 1355 (M.D. Fla. 1978). Notably, the regulations do not ban the distribution of religious material, or any other literature, but simply require that a permit be obtained in advance. Accordingly, even if Plaintiff had alleged that his religion requires him to distribute religious materials — and he did not — the DOI/NPS Officials' enforcement of the

13

regulations would not preclude him from doing so.  Those factors, considered with the precedent

discussed <u>supra</u>, provide a sound basis for a reasonable official to believe that it was lawful to

apply the permitting requirements to individuals who desire to distribute religious leaflets.

## II.    PLAINTIFF CANNOT OBTAIN EQUITABLE RELIEF AGAINST THE DOI/NPS OFFICIALS IN THEIR INDIVIDUAL CAPACITY.

Plaintiff has not stated a viable claim for declaratory or injunctive relief against the

DOI/PS Officials in  their individual capacities because the relief he seeks can only be pursued

against the DOI/PS Officials in their official capacities.  As discussed <u>supra</u>, <u>Bivens</u> permits a

plaintiff to sue a federal officer in his/her individual capacity, seeking damages for violations of

the plaintiff's constitutional rights.  <u>Simpkins v. District of Columbia Government</u>, 108 F.3d

366, 368 (D.C. Cir. 1997).  However, <u>Bivens</u> suits are not a vehicle for obtaining injunctive or

declaratory relief.

Moreover, the nature of the actions Plaintiff challenges makes declaratory or injunctive

relief inappropriate.  Plaintiff claims that the alleged denial of a permit to distribute leaflets

violated his First Amendment rights.  However, to the extent that any of the DOI/NPS Officials

could have participated in a denial of a permit or the promulgation of policies requiring a permit,

they could do so only in their official capacities.  As private individuals they lacked the authority

to participate in any NPS or Mount Rushmore permitting decision.  Accordingly, the DOI/NPS

Officials are improper defendants, in their individual capacity, for Plaintiff's claim for

declaratory or other equitable relief.  <u>See</u> <u>Hatfill v. Gonzales</u>, 519 F. Supp. 2d 13,19-21, 25

(D.D.C. 2007) (concluding plaintiff failed to state claim against individual defendants in

individual capacities where the equitable relief sought could only be obtained from and would

only affect defendants in their official capacities as government officers); <u>Brancaccio v. Reno</u>, 964 F. Supp. 1, 2 n.4 (D.D.C. 1997) (plaintiff failed to state a claim against federal officials in their individual capacities where allegations made against them referred to actions that could only be performed by the defendants in their official capacities and where plaintiff requested injunctive relief which could only be performed by defendants in their official capacities); <u>see also</u> <u>Feit v. Ward</u>, 886 F.2d 848, 858 (7th Cir. 1989) (plaintiff failed to state a claim for equitable relief against Forest Service employees in individual capacities because challenged policy was carried out in defendants' official capacities).

**III.    THIS COURT LACKS PERSONAL JURISDICTION OVER THE NON-RESIDENT DEFENDANTS QUINTANA, BAKER AND PLAUM.**

"To prevail in a <u>Bivens</u> action, a plaintiff must 'demonstrate an injury consequent upon the violation' of his constitutional rights by federal employees." <u>Fletcher v. District of Columbia</u>, 481 F.Supp.2d 156, 164 (D.D.C. 2007) (quoting <u>Bivens</u>, 403 U.S. at 397). Plaintiff does not allege that any of the officials actually promulgated a challenged policy or practice of refusing to process plaintiff's requests for a permit. Accordingly, plaintiff's actionable injury in this case must arise from the application of the challenged federal regulations and policies to him, and therefore must be limited to those officials who actually enforce the regulations and policies. <u>See</u> <u>id.</u> at 165.

"On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant." <u>Zakiya v. U.S.</u>, 267 F.Supp.2d 47, 51 (D.D.C. 2003) (citations omitted). Furthermore, the plaintiff "has the burden of 'alleging specific acts connecting the defendant with the forum . . . .'" <u>Id.</u> at 51-52 (citation omitted). Defendants Quintana, Baker and Pflaum

15

seek dismissal of this complaint because this Court does not have personal jurisdiction over

them.  See, e.g., Zakiya v. U.S., 267 F.Supp.2d 47, 51 (D.D.C. 2003).  These defendants are

employed by the NPS in Nebraska (Quintana) and South Dakota (Baker and Pflaum).  See

Compl. ¶¶13-15.

Personal jurisdiction over the three non-resident defendants may only be exercised in this

jurisdiction pursuant to the District of Columbia's long-arm statute, D.C. Code § 13-423(a).

Zakiya, 267 F.Supp.2d at 52.  "To determine whether this Court may exercise personal

jurisdiction over the nonresident defendants, it must conduct a two part inquiry which entails (1)

'examin[ing] whether jurisdiction is applicable under the state's long-arm statute [and (2)] . . .

determin[ing] whether a finding of jurisdiction satisfies the constitutional requirements of due

process.'"  Id. at 52 (citations omitted).  The District of Columbia long-arm statute provides, in

pertinent part,

> (a)    A District of Columbia Court may exercise personal jurisdiction over a
> person, who acts directly or by an agent, as to a claim for relief arising from the
> person's –
>
>> (1) transacting any business in the District of Columbia;
>>
>> (2) contracting to supply services in the District of Columbia;
>>
>> (3) causing tortious injury in the District of Columbia by an act or
>> omission in the District of Columbia;
>>
>> (4) causing tortious injury in the District of Columbia by an act or
>> omission outside the District of Columbia if he regularly does or solicits
>> business, engages in any other persistent course of conduct, or derives
>> substantial revenue from goods used or consumed, or services rendered in
>> the District of Columbia; . . . .

D.C. Code § 13-423(a).

There is no allegation that any of the three non-resident officials took any actions directed at plaintiff in the District of Columbia.   To the contrary, all challenged actions relate to the alleged failure by defendant to respond to plaintiff's requests for a permit at Mount Rushmore, located in Keystone, South Dakota.  Thus, it is clear that any injury sustained by plaintiff took place in South Dakota and this Court should decline to exercise personal jurisdiction of the federal defendants residing in Nebraska and South Dakota.  See, e.g., Zakiya, 267 F.Supp.2d at 52-53 (citations omitted).

**IV.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE NATIONAL DEFENDANTS, KEMPTHORNE AND BOMAR, WHO CANNOT BE HELD PERSONALLY LIABLE UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR.**

Neither of the two national officials named individually in this case (Kempthorne and Bomar) had any direct involvement in the actions taken at Mount Rushmore pursuant to the challenged regulations.  Plaintiff alleges that the violation of his constitutional rights stemmed from the failure of agency officials to respond to his requests for a permit, but he does not allege that he ever submitted a written application for a permit.  Hence, neither national official could have taken any action with respect to the alleged failure to process any request by Plaintiff for a permit to distribute leaflets at Mount Rushmore.

The national defendants, the Secretary and NPS Director, cannot be held personally liable for constitutional torts of employees they supervise under the doctrine of respondeat superior. See Cameron v. Thornburgh, 983 F.2d 253, 258 (D.C. Cir. 1993); Monell v. Department of Social Services, 436 U.S. 658 (1978); Meyer v. Reno, 911 F.Supp. 11, 15 (D. D.C. 1996).  In Cameron, the D.C. Circuit dismissed the Attorney General and Director from the suit because the complaint failed to allege their personal involvement and was based solely "on the bare

assumption" that policy decisions in the District of Columbia influenced the prisoner's treatment

in a federal prison in Indiana.  Id. at 258.

      In the Meyer case, this Court discussed respondeat superior within the context of federal

inmate lawsuits:

> Absent any allegations that defendants Reno and Hawk personally participated in
> the events which gave rise to the plaintiff's claims, or any corroborative
> allegations to support the inference that these defendants had notice of or
> acquiesced in the improper securing of detainers against the plaintiff by their
> subordinates, dismissal is appropriate. See Haynesworth v. Miller, 820 F.2d 1245,
> 1259 (D.C. Cir.1987) (fellow government employees cannot be held liable under
> the theory of respondeat superior for either constitutional or common law torts);
> Smith-Bey v. District of Columbia, 546 F.Supp. 813, 814 (D.D.C.1982) (same).
> Respondeat superior has been consistently rejected as a basis for the imposition of
> § 1983 or Bivens liability. See, e.g., Monell v. Dep't of Social Srvcs., 436 U.S.
> 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S.
> 362, 375-76, 96 S.Ct. 598, 606-07, 46 L.Ed.2d 561 (1976); Boykin v. District of
> Columbia, 689 F.2d 1092, 1097-99 (D.C. CIR.1982); Tarpley v. Greene, 684 F.2d
> 1, 9-11 (D.C. Cir.1982). Therefore, any potential § 1983 or Bivens claims against
> these defendants, whose only relationship to the instant litigation is their ultimate
> supervisory status, must be dismissed.

      Plaintiff makes no allegations to support a claim against the national officials in their

individual capacities.  He does not allege that either participated in any decision to refuse to

process a request for a permit by Plaintiff, to delay the processing of such a request, or to

otherwise order non-compliance with the NPS management policy requiring that permit requests

be processed in two business days.   Rather, just as in the Cameron case, Plaintiff seems to be

basing his claim against the national officials on an assumption that policy decisions made in

Washington might have somehow affected his treatment at Mount Rushmore.  This is an

insufficient basis upon which to maintain a claim against the national officials in their individual

capacity.  Therefore, Plaintiff has failed to state a claim against the national officials in this

Bivens action, and Kempthorne and Bomar must be dismissed as defendants.

## V.     THRESHOLD QUALIFIED IMMUNITY ISSUES SHOULD BE RESOLVED PRIOR TO DISCOVERY.

"[Q]ualified immunity provides not simply a defense to liability, but also 'an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which plaintiff complains violated clearly established law.'" Farmer,163 F.3d at 613 (citation omitted).  That immunity from suit "is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Accordingly, the Supreme Court has cautioned that until the "threshold immunity question is resolved, discovery should not be allowed." Harlow, 457 U.S. at 818; accord Mitchell, 472 U.S. at 526 ("Unless the plaintiff's allegations state a violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").  Indeed, the Supreme Court has long admonished that the question of qualified immunity "should be resolved at the earliest possible stage of a litigation." Anderson v. Creighton, 483 U.S. 635, 646 n. 6 (1987).

In light of those well-settled principles, discovery should be deferred pending the Court's resolution of the qualified immunity defenses discussed supra. As explained in Defendants' April 15, 2008 motion to dismiss (Dkt. Entry 36), Supreme Court and D.C. Circuit precedent dictate that the threshold qualified immunity issues be addressed prior to conducting discovery.  The DOI/NPS Defendants therefore respectfully request that the Court grant their motion to stay discovery, for the reasons set forth supra and in Defendants' April 15, 2008 motion to dismiss.

## CONCLUSION

For the foregoing reasons, the claims against the DOI/NPS Officials in their individual capacity should be DISMISSED, and discovery should be stayed pending resolution of the qualified immunity defenses that those Defendants have raised.

Dated: June 11, 2008                          Respectfully submitted,


                                      _____/s/_____
                                      JEFFREY A. TAYLOR, D.C. BAR #498610
                                      United States Attorney


                                      _____/s/_____
                                      RUDOLPH CONTRERAS, D.C. BAR #434122
                                      Assistant United States Attorney


                                      _____/s/___Robin M. Meriweather_____
                                      ROBIN M. MERIWEATHER
                                      D.C. BAR # 490114
                                      Assistant United States Attorney
                                      Civil Division
                                      555 4th Street, N.W.
                                      Washington, D.C. 20530
                                      (202) 514-7198 (voice);  (202) 514-8780 (fax)
                                      Robin.Meriweather2@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MICHAEL BOARDLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No. 07-01986 (JR)** |
| **v.** | ) |
| | ) |
| **UNITED STATES DEPARTMENT OF THE** | ) |
| **INTERIOR** <u>et</u> <u>al</u>**.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## ORDER

Upon consideration of the Motion to Dismiss filed by Dirk Kempthorne, Mary Bomar,

Ernie Quintana, Gerard Baker, and Mike Pflaum, it is this _____ day of

_____,

ORDERED that Defendants Kempthorne, Bomar, Quintana, Baker, and Pflaum's Motion

to Dismiss be and hereby is GRANTED;

It is FURTHER ORDERED that the claims filed against Defendants Kempthorne,

Bomar, Quintana, Baker, and Pflaum in their individual capacity be and hereby are DISMISSED.

SO ORDERED.


_____
United States District Judge