UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL BOARDLEY,

       Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE
INTERIOR, *et al*.,

       Defendants.

Civil Action No. 07-1986 (JR)

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

I.    STATEMENT OF FACTS ................................................................................... 1

II.   ARGUMENT ..................................................................................................... 4

    A.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIM BECAUSE PLAINTIFF'S COMPLAINT SATISFIES STANDING REQUIREMENTS. ....................................................... 4

        1.    Plaintiff Has Standing Under Article III to Assert Claims for Declaratory and Injunctive Relief. .............................................. 5

        2.    Plaintiff Has Standing Under Article III to Pursue His Challenges to the Regulations as Applied to Him. ......................................... 6

        3.    At Minimum, Plaintiff Has Standing to Pursue His Facial Challenge to the Regulations. ..................................................... 7

        4.    Plaintiff's Case is Not Moot and Remains a Live Controversy. ................. 8

    B.    THIS COURT HAS PERSONAL JURISDICTION OVER EACH DEFENDANT. ................................................................................. 11

    C.    PLAINTIFF HAS PLED CLAIMS UPON WHICH RELIEF CAN BE GRANTED. ..................................................................................... 14

        1.    Plaintiff Adequately Pled His First Amendment Claim. ......................... 15

            a.    Plaintiff adequately pled a facial challenge to 36 C.F.R. §§2.51-2.52 under the First Amendment. ..................................... 15

                i.    36 C.F.R. §§2.51-2.52 are facially unconstitutional because they grant unfettered discretion to park officials in granting or denying permits. ........................... 18

                ii.   36 C.F.R. §§2.51-2.52 are facially unconstitutional because they are not narrowly tailored to achieve a significant government interest. ......................................... 22

                iii.  36 C.F.R. §§2.51-2.52 are facially unconstitutional because they do not leave open ample alternative channels of communication. .............................................. 28

                iv.   The cases cited by Defendants do not support their arguments that 36 C.F.R. §§2.51-2.52 are

constitutional or that Plaintiff failed to state a claim under the First Amendment. ...............................................29

2. Plaintiff Adequately Pled His Claim for Overbreadth Under the First and Fifth Amendments. .....................................................31

3. Plaintiff Adequately Pled His Fifth Amendment Claims. ........................33

4. Plaintiff Adequately Pled His RFRA Claim. .............................................35

5. Plaintiff Adequately Pled *Bivens* Claims Against Defendants in Their Individual Capacities.......................................................................37

6. Defendants are Not Entitled to Qualified Immunity................................39

III. CONCLUSION...............................................................................................41

# TABLE OF AUTHORITIES

## Cases

*A Quaker Action Group v. Morton,* 516 F.2d 717 (D.C. Cir. 1975)........................................26, 27

*Abigail Alliance for Better Access to Dev. Drugs v. Eschebach*, 469 F.3d 129 (D.C. Cir. 2006) .........................................................................................................................................4

*Adarand Constrs. Inc. v. Slater*, 528 U.S. 216 (2000)..................................................................8, 9

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600 (6th Cir. 2005) ...........................................................................................................................16, 23, 41

*Anderson v. Century Prods. Co.*, 943 F. Supp. 137 (D.N.H.1996)................................................13

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...............................................................................40

*Animal Legal Defense Fund, Inc. v. Glickman*, 154 F.3d 426 (D.C. Cir. 1998)...........................5

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002)) ...........................................................15, 31

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)...................................................................17

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987)..............................24, 34, 40

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007). ...........................................14, 15, 31, 36

*Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172 (D.D.C. 2004).......................4

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).................................................11, 37

*Broadrick v. Oklahoma,* 413 U.S. 601 (1973) ...........................................................................7, 8

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)................................................................................................................................10

*Burk v. Augusta-Richmond County*, 365 F.3d 1247 (11th Cir. 2004)................................16, 23, 41

*Butz v. Economou,* 438 U.S. 478 (1978)......................................................................................39

*Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993) ............................................................37

*City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988) ...................................8, 15, 16

*Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288 (1984) ..................................................17

*Cmty. For Creative Non-Violence v. Turner*, 893 F.2d 1387 (D.C. Cir. 1990)..................... *passim*

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................14

*Connally v. Gen. Constr. Co.*, 269 U.S. 385 (1926) ....................................................33

*County of Los Angeles v. Davis*, 440 U.S. 625 (1979)..................................................8

*Cox v. City of Charleston*, 416 F.3d 281 (4th Cir. 2005)...............................16, 23, 41

*Cox v. Louisiana*, 379 U.S. 536 (1965) ......................................................................16

*Crane v. New York Zoological Soc'y,* 894 F.2d 454 (D.C. Cir. 1990). ........................11

*Delgado v. Federal Bureau of Prisons*, 727 F. Supp. 24 (D.D.C.1989)......................11

*Douglas v. Brownell*, 88 F.3d 1511 (8th Cir. 1996) ............................................ *passim*

*Erickson v. Pardus*, 127 S.Ct. 2197 (2007) ................................................................14

*Fernandes v. Limmer*, 663 F.2d 619 (5th Cir. 1981) ...................................................19

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) .......................17, 29, 40

*Freedman v. Maryland*, 380 U.S. 51 (1965)................................................................20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000) .....................9

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). .................36

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .....................................................34

*Grossman v. City of Portland*, 33 F.3d 1200 (9th Cir. 1994) ............................... *passim*

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000).......................11

*Hafer v. Melo*, 502 U.S. 21 (1991) ..............................................................................39

*Henderson v. Kennedy,* 253 F.3d 12 (D.C. Cir. 2001)..................................................36

*Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S. 610 (1976)..................33

*Initiative and Referendum Inst. v. U.S. Postal Serv.*, 417 F.3d 1299 (D.C. Cir. 2005) .................15

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).....................................................11

*Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249 (D.C. Cir. 2005) ........................4

*Knowles v. City of Waco*, 462 F.3d 430 (5th Cir. 2006)...................................16, 23, 41

*Kolender v. Lawson,* 461 U.S. 352 (1983).....................................................................34

*Kunz v. New York*, 340 U.S. 290 (1951) ..................................................................16

*Lawrence v. Acree*, 79 F.R.D. 669 (D.D.C.1978)..........................................................11

*Lujan v. Defenders of Wildlife*, 503 U.S. 555 (1992) .................................................4, 5

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)....................................26, 33

*Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984) .........15, 31, 32, 40

*Mitchell v. Forsyth,* 472 U.S. 511 (1985) ...................................................................40

*NAACP v. Button*, 371 U.S. 415 (1963).............................................................31, 33

*Naturist Soc'y v. Fillyaw*, 958 F.2d 1515 (11th Cir. 1992) ...........................................8

*Naturist Soc'y, Inc. v. Fillyaw*, 858 F. Supp. 1559 (S.D. Fla. 1994) .......................18, 19

*New York Times Co. v. United States*, 403 U.S. 713 (1971).........................................17

*Niemotko v. Maryland*, 340 U.S. 268 (1951) .............................................................16

*Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1 (D.C. Cir. 1977)....................................13

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 127 S. Ct. 2738 (2007)....................10

*Parks v. Finan*, 385 F.3d 694 (6th Cir. 2004)...........................................23, 33, 34, 41

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983)..............................17, 40

*Robertson v. Merola*, 895 F. Supp. 1 (D.D.C.1995)....................................................11

*Saia v. New York*, 334 U.S. 558 (1948) ....................................................................16

*Saucier v. Katz*, 533 U.S. 194 (2001) .......................................................................39

*Sentinel Communications Co. v. Watts*, 936 F.2d 1189 (11th Cir. 1991).........................8

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969) ..................................15, 16

*Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366 (D.C. Cir. 1997) .............................37

*Solantic, LLC v. City of Neptune Beach,* 410 F.3d 1250 (11th Cir. 2005) ...................20, 21

*Stafford v. Briggs*, 444 U.S. 527 (1980) ....................................................................13

*Staub v. City of Baxley*, 355 U.S. 313 (1958) ...........................................................16

*Summit Health, Ltd. v. Pinhas*, 500 U.S. 322 (1991)..................................................14

*Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002) ............................................................ *passim*

*Thornhill v. Alabama*, 310 U.S. 88 (1940). ...................................................................31

*United States v. Botefuhr,* 309 F.3d 1263 (10th Cir. 2002) ............................................13

*United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199 (1968)................................9

*United States v. Frandsen*, 212 F.3d 1231 (11th Cir. 2000)................................... *passim*

*United States v. Kistner*, 68 F.3d 218 (8th Cir. 1995) ...................................29, 30, 32, 40

*United States v. Rainbow Family*, 695 F. Supp. 294 (E.D. Tex. 1988) .........................................19

*United States v. Sued*, 143 F. Supp. 2d 346 (S.D.N.Y. 2001)...........................................29, 30, 32

*Virginia v. Hicks*, 539 U.S. 113 (2003)...................................................................15

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ...................................................22

*Washington Legal Found. v. Henney*, 202 F.3d 331 (D.C. Cir. 2000) ...........................................9

*Washington State Grange v. Washington State Republican Party*, 128 S.Ct. 1184 (2008) .........31

*Watchtower Bible and Tract Soc'y of New York v. Vill. of Stratton*, 536 U.S. 150 (2002)...................................................................................25, 26, 33

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).............................................11

## Statutes

28 U.S.C. §1391...................................................................................13

36 C.F.R. §2.51 (2008) ........................................................................... *passim*

36 C.F.R. §2.52 (2008) ........................................................................... *passim*

42 U.S.C. § 2000bb-1(a)...................................................................................35, 36

D.C. Code § 13-423 (2007)...................................................................................12

## Other Authorities

4A Charles Alan Wright & Arthur A. Miller, *Federal Practice & Procedure* § 1069.7 (3d ed. 2002) ...................................................................................12, 13

Linda Sandstrom Simard, *Exploring the Limits of Specific Personal Jurisdiction*, 62 Ohio St. L.J. 1619 (2001).......................................................................................12, 14

**Rules**

Fed. R. Civ. P. 12 ................................................................................................4, 14

Fed. R. Civ. P. 8 ....................................................................................................14

Defendants have asked this Court to dismiss Mr. Boardley's case pursuant to Fed. R. Civ. P. 12 (b)(1), 12(b)(2), and 12(b)(6), but this Court has jurisdiction over all of the Defendants and Mr. Boardley's claims, and Mr. Boardley's complaint contains more than the necessary short and plain statement of his claims. Defendants' argument can be reduced to an assertion that since a couple of federal courts outside this jurisdiction have upheld the regulations at issue, Plaintiff has failed to state a claim—despite the cursory analysis of these opinions and the absence of any consideration of overbreadth. But controlling case law in this jurisdiction, as well as across the country, affirms the validity of Mr. Boardley's claims, and he has certainly satisfied the requirement that he plead claims which are "plausible." None of Mr. Boardley's claims should be dismissed, and Defendants' motion should be denied.

## I.    STATEMENT OF FACTS

Plaintiff Michael Boardley is a resident of Coon Rapids, Minnesota. (Compl. ¶6). He is a professing Christian, and he believes it is his Christian duty and privilege to inform others about the Gospel of Jesus Christ. (Compl. ¶7). Mr. Boardley hands out gospel tracts in public areas because of his sincerely held religious beliefs concerning Christianity. (Compl. ¶8). On August 9, 2007, Mr. Boardley and a few other individuals traveled to Mt. Rushmore to hand out free gospel tracts. (Compl. ¶17). They distributed the tracts beside the "Alley" or "Avenue of Flags," an open section with walkways for visitors after visitors gain entrance to the Mt. Rushmore National Memorial facility. (Compl. ¶18). Their activities occurred without incident or comment from park officials. (Compl. ¶19).

On August 10, 2007, Mr. Boardley and the other individuals returned to Mt. Rushmore and began to hand out the same gospel tracts near the same spot. (Compl. ¶20). Mr. Boardley was not engaging in any loud, consistent speech or using any amplification. (Compl. ¶¶21-22). Mr. Boardley was distributing the tracts by offering them to passersby, and at no time did he

attempt to force his tracts on anyone who did not wish to take one. (Compl. ¶¶23-24). While he was engaged in this activity, Mr. Boardley was approached by Park Ranger L. Hanson. (Compl. ¶25). Ranger Hanson told Mr. Boardley that unless he had a free speech permit for the free speech zone, he would not be allowed to distribute the free gospel tracts. (Compl. ¶26). Ranger Hanson told Mr. Boardley in order to obtain a free speech permit he needed to call a certain phone number—which was available on the Mt. Rushmore website—to request one. (Compl. ¶29). Ranger Hanson did not mention a permit application. (Compl. ¶¶29-30). There is a two-day waiting period for free speech permits at Mt. Rushmore. (Compl. ¶¶29-30).

After Mr. Boardley returned to Minnesota, he called the ranger's office in order to request a permit, and he left two messages. (Compl. ¶31). A park official returned his call and asked for some information from Mr. Boardley, such as his name and address. (Compl. ¶32). There was no application form given to Mr. Boardley to fill out personally. (Compl. ¶33). The park official said that she would mail a free speech permit to him; however, Mr. Boardley never received a permit or denial of permit. (Compl. ¶¶34-35).

On October 2, 2007, Mr. Boardley called Nancy Marteens at the ranger's office and left a voicemail requesting an additional new permit for a different date. (Compl. ¶36). Ms. Marteens returned his call and told Mr. Boardley to contact Chief Ranger Mike Pflaum regarding a permit. (Compl. ¶37). Ms. Marteens also said she would forward Mr. Boardley's request to Defendant Pflaum. (Compl. ¶38). Mr. Boardley called Defendant Pflaum and requested a permit. (Compl. ¶39). Mr. Boardley did not receive a permit from Defendant Pflaum or any other official until after this lawsuit was filed. (Compl. ¶40).

One of Mr. Boardley's associates, Mark Oehrlein, experienced similar problems obtaining a free speech permit in July of 2006. (Compl. ¶¶44-54). Mr. Oehrlein brought tracts

to distribute at no charge at Mt. Rushmore.  (Compl. ¶45).  He asked a park ranger about doing so, and the park ranger said he needed a permit to distribute tracts.  (Compl. ¶46).  Mr. Oehrlein went to the office to request a permit and was told by park staff to return later in the day.  (Compl. ¶47).  He returned at the requested time and did not receive a permit because the park official he spoke with said she could not find any.  (Compl. ¶48).

Mr. Oehrlein called the next morning about his request for a permit and spoke with a park official who told him to come back to the office.  (Compl. ¶49).  He returned to the office to obtain a permit and the park official asked him what he intended to do.  (Compl. ¶50).  Mr. Oehrlein responded that he wanted to distribute tracts about the Gospel and Christianity.  (Compl. ¶51).  The park official responded that he "didn't like that" and that Mr. Oehrlein would have to speak with Defendant Pflaum.  (Compl. ¶52).  However, Mr. Oehrlein was informed that Defendant Pflaum was at the dentist that day.  (Compl. ¶53).  Despite his efforts, Mr. Oehrlein was never able to obtain a permit and as a result left Mt. Rushmore without being able to give tracts to anyone as he had wished to do.  (Compl. ¶54).

36 C.F.R. §§2.51-2.52 (2008) apply to public expression at all national park lands, including Mt. Rushmore.  These regulations often use the same language.  (Compl. ¶¶58-59).  §2.51 allows "public assemblies, meetings, gatherings, demonstrations, and *other public expressions of views*" on park lands only where a permit has been granted by the park superintendent.  (Compl. ¶58) (emphasis added).  The time frame for granting a permit is only stated as "without unreasonable delay."  (Compl. ¶58).  A permit may be denied if the superintendent feels that the event will "present a clear and present danger to the public health or safety."  (Compl. ¶58).  The regulation also gives the superintendent the discretion to designate which areas are available for "public assemblies," allowing the superintendent to decide not to

allow the activity in an area if he or she determines that the activity will "unreasonably impair the atmosphere of peace and tranquility maintained in wilderness, natural, historic or commemorative zones," or if it presents a "clear and present danger to the public health and safety," among other reasons.  (Compl. ¶58).

§2.52 allows the sale or distribution of "printed matter" within park lands only where a permit has been granted by the park superintendent, and disallows any sale or distribution of printed matter if it is "solely commercial advertising."   (Compl. ¶59).   It allows the superintendent to deny a permit on the same grounds as §2.51.  (Compl. ¶59).  It also allows the superintendent to designate the area available for the activity, subject to the same conditions as §2.51.  (Compl. ¶59).

## II.    ARGUMENT

### A.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIM BECAUSE PLAINTIFF'S COMPLAINT SATISFIES STANDING REQUIREMENTS.

When a party files a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the plaintiff [ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction."  *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). A court considering a motion to dismiss for lack of jurisdiction must construe plaintiff's complaint in plaintiff's favor, accepting all inferences that can be derived from the facts alleged.  *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

At the motion to dismiss stage, Plaintiff's burden is simply to make adequate allegations of standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Abigail Alliance for Better Access to Dev. Drugs v. Eschebach*, 469 F.3d 129, 132 (D.C. Cir. 2006) ("At the

motion to dismiss stage, general factual allegations of injury . . . may suffice.") (internal quotations omitted). For plaintiffs to have standing, they must establish that they have suffered an injury in fact, that the injury is fairly traceable to the challenged action of the defendant; and that the injury will likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 561; see also *Animal Legal Defense Fund, Inc. v. Glickman*, 154 F.3d 426, 431 (D.C. Cir. 1998)

> **1.    Plaintiff Has Standing Under Article III to Assert Claims for Declaratory and Injunctive Relief.**

Plaintiff has adequately pled a current and actual injury, and thus has standing under Article III to assert claims for prospective relief. Plaintiff has alleged that he "desires to return to Mt. Rushmore to exercise his First Amendment rights, including distributing gospel tracts." (Compl. ¶41). According to Defendants' regulations, he is required to obtain a permit before he does that, or if he wants to "publicly express views." (Compl. ¶¶58-59). These regulations are unconstitutional, and are still in effect, so this Court has reason to grant relief to Mr. Boardley in the form of a permanent injunction to prevent Defendants from enforcing the regulations and declaratory relief.

Defendants assert that because "four of five causes of action" reference the Defendants' past unconstitutional behavior—specifically, ignoring Mr. Boardley's requests for a permit— somehow these claims disappear because Defendants finally decided to grant him a permit after this lawsuit was filed months later. But this is incorrect. The denial of a permit to Mr. Boardley is merely a symptom of the overarching problem, which is the existence of the unconstitutional regulations themselves. Plaintiff has been explaining throughout the briefing thus far that this case is *not* just about the denial of a permit to Mr. Boardley—he should not be required to have a permit in the first place. That Defendants persist in this line of argument is telling as to the strength of Mr. Boardley's claims. Nevertheless, because Mr. Boardley is still required to obtain

a permit to "publicly express views" or distribute "printed matter" in a national park, and because this requirement is unconstitutional, he retains standing to pursue prospective relief.

>   **2.     Plaintiff Has Standing Under Article III to Pursue His Challenges to the Regulations as Applied to Him.**

The continued existence and enforcement of these unconstitutional regulations shows that the harm to Mr. Boardley will realistically reoccur any time he visits a national park, including Mt. Rushmore, and is required to obtain a permit for exercising his First Amendment rights as an individual or small group in a traditional public forum.  But Mr. Boardley's Complaint also alleges that Defendants' unconstitutional regulation §2.52 was applied to him, and he suffered a constitutional injury as a result.  (Compl. ¶¶17-43, 68-71, 72-107).  Thus, Mr. Boardley not only has standing to obtain prospective relief against the Defendants for the continued violation of his rights, he also has standing to obtain redress for the past constitutional violation resulting from Defendants' application of §2.52 to him.

Defendants, however, puzzlingly assert that the permit requirement was never applied to Mr. Boardley.  Defendants argue that because Mr. Boardley obeyed a law enforcement officer's request that he comply with the permit requirement, the requirement somehow was not applied to him—but this is nonsensical.  Mr. Boardley, seeking to obey the law and the ranger, ceased his activity because he did not have a permit.  (Compl. ¶¶25-26, 29-30).  Because of the two-day waiting period Ranger Hanson informed him of, he simply gave up, believing based on Ranger Hanson's statement that he would not be able to obtain a permit in time to exercise his First Amendment rights while he was still at Mt. Rushmore.  Ranger Hanson's enforcement of the permit requirement kept Mr. Boardley from exercising his First Amendment rights on August 10, 2007, and constitutes an actual injury to his constitutional rights.  Because Defendants apparently

did not enforce their own regulations on August 9 has no bearing on Mr. Boardley's standing to challenge the constitutional injury he suffered on August 10.

Additionally, Defendants argue that Mr. Boardley lacks standing for an as-applied challenge because he never "applied" for a permit, but this is disingenuous. If Defendants will not give Mr. Boardley a permit application, he cannot very well be required to fill one out, can he? No park official Mr. Boardley spoke with said anything about filling out a permit application. (Compl. ¶¶25-26, 29-40). Mr. Boardley did not even know of the existence of an actual application until after this lawsuit was filed. Despite this, Mr. Boardley requested a permit numerous times, but only received one after filing this lawsuit. (Compl. ¶¶29-40). As discussed below, the very requirement he have to obtain a permit at all violates the First Amendment, which means that he continues to suffer injury so long as Defendants' regulations remain on the books, as it will continue to be applied to him as it was in the past. Defendants' arguments in this respect must fail—Mr. Boardley has standing to pursue his claims challenging §2.52 and its application to him.

### 3. At Minimum, Plaintiff Has Standing to Pursue His Facial Challenge to the Regulations.

While Plaintiff has challenged the Defendants' regulation §2.52 as applied to him, he has also challenged §§2.51-2.52 on their face. While as-applied challenges require the traditional three elements of Article III standing, the Supreme Court has relaxed standing requirements for facial challenges under the First Amendment:

> [T]he Court has altered its traditional rules of standing to permit—in the First Amendment area—attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

*Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (internal citations omitted). In the unique First Amendment context, it is "well-established that . . . one has standing to challenge a statute or scheme 'on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license.'" *Naturist Soc'y v. Fillyaw*, 958 F.2d 1515, 1521 (11th Cir. 1992) (quoting *Sentinel Communications Co. v. Watts*, 936 F.2d 1189, 1197 (11th Cir. 1991)). Where a licensing statute "'allegedly vests unbridled discretion in a government official to permit or deny expressive activity,' the plaintiff may proceed in a lawsuit regardless of whether the government granted a permit, denied a permit, or the plaintiff never applied for a permit." *Fillyaw*, 958 F.2d at 1521 (quoting *Sentinel*, 936 F.2d at 1197 (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755 (1988)). Thus, even if Mr. Boardley had not applied for a permit to distribute "printed matter" or engage in "other public expression of views," he still has standing to challenge the regulations on their face. But in this case, Mr. Boardley was required to obtain a permit pursuant to §2.52, giving him standing to pursue an as-applied challenge to §2.52 as well.

### 4.    Plaintiff's Case is Not Moot and Remains a Live Controversy.

Defendants continue to insist that Plaintiff's case is moot, despite the fact that Plaintiff has facially challenged current federal regulations, has challenged the application of §2.52 to his activities, and has raised a claim for damages for the past violation that occurred as a result of the Defendants' actions. Plaintiff's case remains a live controversy, and Defendants do not meet their burden for proving the case is moot.

The burden of demonstrating mootness—given its preclusive effect—is a heavy one. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted). This heavy burden "lies with the party asserting mootness." *Adarand Constrs. Inc. v. Slater*, 528 U.S. 216,

222 (2000).    Where, as is partially true here, a defendant voluntarily ceases allegedly

unconstitutional conduct, a case is only mooted "if subsequent events made it *absolutely clear*

that the allegedly wrongful behavior could not reasonably be expected to recur."  *Washington*

*Legal Found. v. Henney*, 202 F.3d 331, 336 (D.C. Cir. 2000) (quoting *Friends of the Earth, Inc.*

*v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 170 (2000)) (emphasis added).  This stringent standard

is required because, by mooting such cases, "courts would be compelled to leave the defendant

free to return to his old ways."  *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S.

199, 203-04 (1968) (quotation marks and citation omitted).

Defendants argue that by finally granting Mr. Boardley the permit he needed to engage in

constitutionally protected expression, they have eliminated any need for this Court to provide

relief to Mr. Boardley.  But they cannot avoid constitutional liability so easily, and federal law

preserves a right to relief that is stronger than any litigation-motivated response by Defendants.

Defendants' argument oversimplifies this case and overlooks a) Mr. Boardley's facial challenge

to the regulations currently in effect; b) Mr. Boardley's as-applied challenge to the regulations,

still currently in effect; and c) Mr. Boardley's claim for damages against Defendants for the

previous violation of his rights.

Even if Mr. Boardley were merely challenging Defendants' actions in giving him the

runaround when he tried to get a permit, his claim is not moot because there is nothing in the

regulations which prevent Defendants from doing the same thing again, and voluntary cessation

of this action does not moot the case.  Defendants make much of the fact that their practice is to

grant or deny a permit within two days, and seem to believe that this alone cures any problems

with the regulations.  But this still allows the Park Service to delay granting a permit for speech

they do not like for the full two days, which cannot be justified and unnecessarily burdens

speech, and in many cases, can wholly prevent it.  For example, both Mr. Oehrlein and Mr. Boardley were unable to exercise their First Amendment rights because they did not stay at the park long enough to get a permit.  (Compl. ¶¶40-42, 54-56).  Thus, the constitutional harm in that respect will be repeated as long as the regulations remain in effect, and the constitutional challenge to this past action and requested prospective relief is not moot.

Additionally, Mr. Boardley has asserted a claim for damages against the Defendants for this constitutional violation.  It is well settled that voluntary cessation of a challenged action does not moot a claim for retrospective relief.  Plaintiff "sought damages in [his] complaint, which is sufficient to preserve [a court's] ability to consider the question."  *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 127 S. Ct. 2738, 2751 (2007). Damages claims present a live controversy.  *See, e.g., Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608-09 (2001).  Thus, Mr. Boardley's claims for retrospective relief against Defendants in their individual capacities are not moot.

But again, Mr. Boardley's case is not limited to this.  Mr. Boardley is challenging the idea that he should have to get a permit at all.  Because Defendants' regulations still require a permit for distribution of "printed matter" and "public expression of views," Mr. Boardley's rights are still being violated because such a permit requirement is an unjustified restriction of his First Amendment rights, as discussed below.  As such, Mr. Boardley's complaint still presents a live controversy.  Mr. Boardley has suffered harm in the past, and has a likelihood of suffering harm in the future at the hands of the Defendants pursuant to the challenged regulations; thus, his claims cannot be dismissed as moot or for lack of standing.

**B.    THIS COURT HAS PERSONAL JURISDICTION OVER EACH DEFENDANT.**

Plaintiff brought his actions for injunctive and declaratory relief against the Defendants in their official capacities, and his claims for damages against the Defendant in their individual capacities.  The Supreme Court held that there is an implied cause of action against federal employees for damages in their individual capacities in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).  Because *Bivens* suits are suits brought against government officials in their individual rather than their official capacities, "personal jurisdiction is necessary to maintain a Bivens claim." *Robertson v. Merola*, 895 F. Supp. 1, 3 (D.D.C.1995) (citing *Delgado v. Federal Bureau of Prisons*, 727 F. Supp. 24 (D.D.C.1989); *Lawrence v. Acree*, 79 F.R.D. 669, 670 (D.D.C.1978)).  On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction over each defendant.  *Crane v. New York Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).

The D.C. Circuit has set forth a two-part inquiry for establishing personal jurisdiction over a non-resident defendant.  First, a court must "examine whether jurisdiction is applicable under the state's long-arm statute," and second, "determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  To satisfy constitutional requirements of due process, a plaintiff must show "minimum contacts" between the defendant and the forum establishing that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  Under the "minimum contacts" standard, courts ensure that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Here, Plaintiff concedes that the unconstitutional actions of the Midwest Defendants did not take place in the District of Columbia, but they took place while the Defendants were acting under color of law pursuant to regulations and policies created and adopted in the District of Columbia.  The District of Columbia's long-arm statute, D.C. Code § 13-423 (2007), provides in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

The plain language of the long-arm statute focuses on commerce, and alone does not seem to provide personal jurisdiction over the Midwest Defendants in their individual capacities.  But this would result in the absurd requirement that Plaintiff file two cases arising from the same set of facts in separate jurisdictions.  The federal courts have recognized a doctrine which would prevent such an absurd outcome—the doctrine of pendant personal jurisdiction.

Pendent personal jurisdiction, like its better-known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, but lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, but, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim.  *See generally*, 4A Charles Alan Wright & Arthur A. Miller, *Federal Practice & Procedure* § 1069.7 (3d ed. 2002); Linda Sandstrom Simard, *Exploring the Limits of Specific Personal Jurisdiction*, 62 Ohio St. L.J.

1619, 1622-27 (2001). In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction. *Anderson v. Century Prods. Co.*, 943 F. Supp. 137, 145 (D.N.H.1996). The D.C. Circuit, among others, has applied this doctrine. *See Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 4-5, n.10 (D.C. Cir. 1977) (collecting cases and adopting pendent personal jurisdiction).

Where claims "arise from the same common nucleus of operative fact," "the inconvenience to a defendant . . . is not [necessarily] sufficient to dismiss . . . for lack of personal jurisdiction." *See United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (quoting Wright & Miller, *supra*, § 1069.7 at 228). This is especially true in this case, where this court has jurisdiction over the claims against the Midwest Defendants in their official capacities pursuant to 28 U.S.C. §1391(e). *See Stafford v. Briggs*, 444 U.S. 527 (1980). Plaintiff has adequately pled the claims against these Defendants in their official capacities, and these arise from the same common nucleus of operative fact as the claims against these Defendants in their individual capacities. There is therefore no great inconvenience to these Defendants that would otherwise require dismissal based on personal jurisdiction, as Defendants are already required to litigate the case involving the same facts in this Court. Moreover, it would promote judicial economy to deal with these similar claims involving the same set of facts in one case rather than two.

Requirements of due process are likewise satisfied since the Midwest Defendants are already being "haled into court" here for claims against them in their official capacity under §1391(e), so it therefore would be no inconvenience or surprise for them to litigate the claims

against them in their individual capacities here as well. Moreover, Defendants' counsel, also located in this jurisdiction, has sought authorization to represent Defendants in all capacities, so it simply makes sense to litigate all the claims together in the same jurisdiction. Splitting the case up among two forums involves more inconvenience, the potential for inconsistent verdicts, and systemic inefficiency. Simard, *supra*, at 1624. Thus, pendent personal jurisdiction is proper in this situation and will best serve the interests of justice for both parties. This court therefore can, and should, exercise personal jurisdiction over all of the Defendants in their individual capacities, and Mr. Boardley's claims cannot be dismissed for lack of jurisdiction.

### C.    PLAINTIFF HAS PLED CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must not dismiss a claim if the plaintiff pleads "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The Federal Rules of Civil Procedure do not require Mr. Boardley to plead in detail all the facts upon which he basis his claim. Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Twombly*, 127 S.Ct. at 1965 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); see also *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6), the court "must accept as true all factual allegations made in the complaint." *Erickson*, 127 S.Ct. at 2200; *see also Twombly*, 127 S.Ct. at 1965; *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991).

1.    **Plaintiff Adequately Pled His First Amendment Claim.**

a.    **Plaintiff adequately pled a facial challenge to 36 C.F.R. §§2.51-2.52 under the First Amendment.**

The Supreme Court recognizes two ways to bring a facial challenge to a law or regulation under the First Amendment. *Initiative and Referendum Inst. v. U.S. Postal Serv.*, 417 F.3d 1299, 1312-13 (D.C. Cir. 2005) (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984)). A law is invalid on its face if it is "unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad." *Id.* at 1312. Although the "every application" formulation is the "general rule, the latter is the rule for facial challenges brought under the First Amendment." *Id.* Plaintiff is therefore not required to prove that *all* applications of the regulations are unconstitutional to succeed on his facial challenge. "The showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate all enforcement of that law." *Id.* at 1312-13 (quoting *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003); citing *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244, 256 (2002)). Moreover, at the motion to dismiss stage, Mr. Boardley is not required to *prove* his case—only state facts which allege a "plausible" claim. *Twombly*, 127 S.Ct. at 1974.

The Supreme Court has long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a permit. *Lakewood*, 486 U.S. at 755-56. At the "root of this long line of precedent is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *Id.* at 756 (citing, e.g., *Shuttlesworth v. City of*

*Birmingham*, 394 U.S. 147, 151 (1969); *Cox v. Louisiana*, 379 U.S. 536 (1965); *Staub v. City of Baxley*, 355 U.S. 313, 321-322 (1958); *Kunz v. New York*, 340 U.S. 290, 294 (1951); *Niemotko v. Maryland*, 340 U.S. 268 (1951); *Saia v. New York*, 334 U.S. 558 (1948)).  And "these evils engender identifiable risks to free expression that can be effectively alleviated *only* through a facial challenge." *Id.* (emphasis added).

Federal courts apply the four-part prior restraint test where a prior restraint is being challenged on its face.  *See, e.g., Knowles v. City of Waco*, 462 F.3d 430, 433, 436 (5th Cir. 2006) (finding permit requirement a facially invalid time, place and manner restriction without evaluating overbreadth); *Cox v. City of Charleston*, 416 F.3d 281, 285-86 (4th Cir. 2005) (finding permit requirement facially invalid because it was not narrowly tailored and because it was overbroad);  *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608 (6th Cir. 2005) (finding permit requirement facially invalid because it was not narrowly tailored and because it was overbroad); *Douglas v. Brownell*, 88 F.3d 1511, 1524-25 (8th Cir. 1996) (finding permit requirement facially invalid because it was not narrowly tailored); *see also Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1250-55 (11th Cir. 2004) (analyzing facial challenge to permit requirement under prior restraint test and finding unconstitutional because it was content-based, declining to rule on narrow tailoring).  Thus, it is proper here for the Court to analyze Defendants' regulations using the prior restraint test, which it utterly fails.

Defendants rely solely on unconvincing and nonbinding opinions from other courts finding these regulations, or similar ones, to be constitutional.  They misstate the standard for evaluating time, place and manner regulations under the First Amendment, asserting that the government can place "reasonable restrictions on the time, place, or manner of protected speech,

so long as ample alternative means of communication are left open." (Defs. Memo. Supp. Mot. Dismiss at 15).

In a traditional public forum, the government may regulate speech with time, place and manner regulations, so long as the regulations are 1) content-neutral; 2) narrowly tailored to serve a significant government interest; *and* 3) leave open ample alternative channels of communication. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). In order to pass constitutional scrutiny, a time, place or manner regulation must meet *all three* of these criteria, not simply the requirement that they leave open ample alternative channels of communication. *Clark*, cited by Defendants, does not hold any differently. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293-94 (1984).

Moreover, regulations requiring authorization from a public official before expressive activity may occur in an archetypical public forum are a prior restraint on speech. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992). Prior restraints bear a heavy presumption against their constitutionality. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Thus, prior restraints have to meet the three-part test for speech restrictions in a traditional public forum, *and also* a fourth requirement prohibiting delegation of overly broad discretion to a government official. *Forsyth County*, 505 U.S. at 130.

Permit requirements are prototypical examples of prior restraints, and the permit requirements of §2.51 and 2.52 are no exception. *See United States v. Frandsen*, 212 F.3d 1231, 1237 (11th Cir. 2000). Because the freedoms at stake are so fundamental, in traditional public forums government regulations must meet all three requirements; if the regulation is a prior restraint, it must meet all four, and the government has the burden of proving that it does. *See New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam).

        **i.**     **36 C.F.R. §§2.51-2.52 are facially unconstitutional because they grant unfettered discretion to park officials in granting or denying permits.**

Even if Plaintiff were required to prove all applications of the regulations at issue are invalid, he can do so. Here, the regulations at issue have no constitutional application because on their face, they are prior restraints which do not restrain the discretion of government officials in granting or denying a permit. (Compl. ¶¶80, 92-94). The limitation of discretion is an essential ingredient of any prior restraint that can be deemed constitutional; neither of Defendants' regulations contains any such limitation. As such, they can never be applied constitutionally because an administrator will always be able to decide, free of any constraints, whether or not they want to permit speech, and how long they should wait until they grant the permit. Thus, Plaintiff has adequately pled, and will succeed, on his facial challenge to the regulations under the First Amendment, even if the standard for facial challenges outside the First Amendment context applied here.

§§2.51-2.52 are facially unconstitutional because the criteria park officials must follow in considering whether to grant or deny a permit are vague and permit those officials to exercise unbridled discretion. (Compl. ¶¶ 68, 75, 77, 80). Both regulations permit the park superintendent to deny a permit if "it reasonably appears" that the expressive conduct "will present a clear and present danger to the public health or safety." 36 C.F.R. §2.51(c)(2), §2.52(c)(2). The language of the regulations also allows park officials to restrict the areas speech is allowed in according to this same standard. Other courts have found similar language to vest excessive discretion in administrators, since the term is not defined and is unduly vague. For example, in *Naturist Soc'y, Inc. v. Fillyaw*, 858 F. Supp. 1559 (S.D. Fla. 1994), the court found a state park regulation containing the same language to be unconstitutional on its face. The court found that "clear and present danger" was somewhat vague, and "require[d] park

managers to make individualized judgments about the nature of a demonstration." *Id.* at 1570. In the court's opinion, this "bestow[s] too much discretion upon park managers, and therefore pose[s] a danger that permits may be denied based upon the content of a demonstrator's message." *Id.*

In *United States v. Rainbow Family*, 695 F. Supp. 294 (E.D. Tex. 1988), the court found that a Forest Service regulation with the same language at issue here was facially unconstitutional for granting unbridled discretion to administrators because the "clear and present danger to public health and safety" ground for denial of a special use permit is standardless, and allows Forest Service officials to deny permits for expressive activity based on their subjective, unbridled discretion." *Id.* at 311.

Likewise, in *Fernandes v. Limmer*, 663 F.2d 619, 628, 631 (5th Cir. 1981), *cert. dismissed,* 458 U.S. 1124 (1982), the Fifth Circuit struck down a permit requirement which gave administrators the authority to deny a permit for expressive activities if they had "good reason to believe that the granting of the permit will result in a direct and immediate danger or hazard to the public security, health, safety or welfare." *Id.* at 631. In the Fifth Circuit's view, this standard of "good reason" for denial of a permit is "indefinite" and "does not comport with the constitutional requirement that discretion in public officials be specifically and narrowly circumscribed." *Id.* *Fernandes* also pointed out that this very type of "unbridled discretion has been *condemned time and time again by the Supreme Court*." *Id.* (emphasis added). §§2.51 and 2.52 contain the same language as the regulations in *Fillyaw* and *Rainbow Family*, and similar language to the regulations at issue in *Fernandes*. For like reasons, these regulations are facially unconstitutional prior restraints because they bestow too much discretion on the park

superintendent in whether to grant or deny a permit or in determining where speech is allowed to occur.

Additionally, §2.51 requires a permit for any "public expression of views."  As discussed in Part II (C)(3) *infra*, if the Defendants do not mean to require a permit for every instance of someone publicly expressing their views at a national park, these words are unduly vague and do not restrain administrators in deciding whether or not a permit should be required.  The words of the regulation give park administrators the authority to decide what, in their sole discretion, constitutes a "public expression of views" necessitating a permit.  This type of unbridled discretion is repugnant to the First Amendment, and renders §2.51 unconstitutional.

Another way §§2.51-2.52 grant unfettered discretion to administrators is through the lack of a defined time period on the face of the regulation in which the permit must be granted or denied.  (Compl. ¶91).  For example, in *United States v. Frandsen*, the Eleventh Circuit held that §2.51 was facially unconstitutional because it failed to confine the time within which park officials must grant or deny a permit application.  212 F.3d at 1239-40.  Although §2.51(c) requires the park superintendent to issue a permit "without unreasonable delay," the Eleventh Circuit found that this "does not provide the superintendent, the public, or any reviewing court, with any guidance as to what is considered 'unreasonable.'"  *Frandsen* at 1240.  §2.52(c) contains the same language.

*Frandsen* was decided before *Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002),[1] which held that the *Freedman*[2] criteria for prior restraints should not be applied where the law is facially content-neutral.  While the Eleventh Circuit later held that the lack of a time frame is not "per se unconstitutional" in *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1271 (11th

---

[1] The permit requirement at issue in *Thomas* applied to groups of 50 or more.
[2] *Freedman v. Maryland*, 380 U.S. 51 (1965).

Cir. 2005), *Frandsen*'s analysis of the regulation was in the context of its discussion of unfettered discretion, and the court's concerns about the effect of a lack of time constraint on the discretion of officials and the resulting danger of content-based enforcement remain highly relevant.

The *Frandsen* court was concerned that because this language puts no real time limits on the park superintendent, he or she could receive a permit application for planned speech well in advance, but fail to act on the request until after the date of the event, deciding on his or her own that they were acting without "unreasonable delay." 212 F.3d at 1240. The court was also concerned that a superintendent that does not agree with the political message to be espoused could allow the permit request to sit on his or her desk for an indefinite period of time—resulting in speech being silenced by inaction. *Id.* In *Solantic*, the Eleventh Circuit pointed out a similar concern: "The absence of any decisionmaking deadline effectively vests . . . officials with unbridled discretion to pick and choose which signs may be displayed by enabling them to pocket veto the permit applications for those bearing disfavored messages . . . precisely the type of prior restraint on speech that the First Amendment will not bear." 410 F.3d at 1272. *Solantic* further points out that *Thomas* held that even content-neutral prior restraints are "subject to the requirement that it contain 'adequate standards to guide the licensing official's discretion.'" *Id.* at 1271 (quoting *Thomas*, 534 U.S. at 323).

These concerns about the language in §§2.51-2.52 were borne out by what happened to Mr. Boardley and Mr. Oehrlein at the hands of the Defendants. Here, Mr. Boardley applied twice for a permit and received no response until after this lawsuit was filed. (Compl. ¶¶31-40). Mr. Oehrlein also tried to apply for a permit but was told by a park official that they "didn't like" what he wanted to do, they "could not find" the permits, and Defendant Pflaum was at the dentist

and unavailable, so he never received a permit and left the park without having been able to engage in his desired expression. (Compl. ¶¶44-54). Defendants effectively silenced Mr. Oehrlein's speech through their concerted inaction—precisely the danger of the vague language and lack of constraints in §§2.51-2.52 that was pointed out by the Eleventh Circuit.

This danger is of particular significance in the context of National Parks and Monuments. Many of the parks and monuments are geographically isolated, making quick, last minute trips out of the question for most individuals, and visitors to the parks and monuments often only stay for a short time. Like Mr. Boardley and Mr. Oehrlein found, allowing the Park Service to give potential speakers the runaround for even a couple of days effectively forecloses their speech, since many cannot wait and have to leave. (Compl. ¶¶26-31, 44-54). Aside from their broad language as to when they apply and when a permit should be granted, §§2.51-2.52 are also facially unconstitutional because they fail to adequately confine the time in which the park official must act in granting or denying a permit, vesting unfettered discretion in the park administrators and allowing them to simply delay, and by default deny, a permit. Both regulations are therefore facially unconstitutional prior restraints.

             **ii.**      **36 C.F.R. §§2.51-2.52 are facially unconstitutional because they are not narrowly tailored to achieve a significant government interest.**

Even though Defendants' regulations fail the first requirement for prior restraints, which is all that is necessary for them to fail constitutional scrutiny, they are also facially unconstitutional because they are not narrowly tailored. (Compl. ¶¶74, 79). In order to satisfy a requirement of narrow tailoring, a regulation must promote a "substantial government interest that would be achieved less effectively absent the regulation," but must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). However, Defendants' regulations burden a vast

amount of speech that is not related to furthering any legitimate government interest, rendering them unconstitutional.

First, the regulations at issue here do not restrict the applicability of the permit requirement by the size of the group. Rather, they require a permit for *any* "public assemblies, meetings, gatherings, demonstrations, parades and other public expressions of views . . . within park areas," §2.51, and for *any* "sale or distribution of printed matter," §2.52. Thus, on their face, the ordinances apply to individual speakers or pamphleteers. Because Defendants' regulations can apply to even individual speakers, they are not narrowly tailored and are therefore unconstitutional under precedent from this Circuit and six others. *See, e.g., Cmty. For Creative Non-Violence v. Turner*, 893 F.2d 1387 (D.C. Cir. 1990); *Douglas*, 88 F.3d 1511; *Grossman v. City of Portland*, 33 F.3d 1200 (9th Cir. 1994); *Cox*, 416 F.3d 281; *see also Knowles*, 462 F.3d at 436 ("Other circuits have held, and we concur, that ordinances requiring a permit for demonstrations by a handful of people are not narrowly tailored to serve a significant government interest"); *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608 (6th Cir. 2005) ("Permit schemes and advance notice requirements that potentially apply to small groups are nearly always overly broad and lack narrow tailoring"); *Burk*, 365 F.3d at 1259 (Barkett, C.J., concurring) (striking down an ordinance as not narrowly tailored because it applied to "small intimate groups"); *Parks v. Finan*, 385 F.3d 694 (6th Cir. 2004) (striking down a permit requirement for individuals to engage in an activity of "broad public purpose" as a "substantially overbroad restriction on individual speech").

In *Turner*, this circuit struck down a permit scheme that applied to all "free speech activities" on transit authority property. *Turner*, 893 F.2d at 1392. The court pointed out that while the defendant transit authority's state interests were achieved more effectively with the

regulation than without it, the permit requirement also "restricts many incidents of free expression that pose little or no threat to WMATA's ability to provide safe and efficient transportation and an equitably available forum for public expression." *Id.* The court found this requirement so overbroad that it was "unclear what free speech activities would *not* be covered by the permit requirement," thereby restricting a "substantial quantity of speech that does not impede WMATA's permissible goals." *Id.* Even if the defendants' interests were admirable, requiring a permit for all free speech activities, even by individuals, accomplished that interest at "too high a cost." *Id.*

Additionally, §2.51 is facially unconstitutional because sweeps broadly and requires a permit for a vast range of First Amendment activities. It prohibits *any* "public expression of views" without a permit, which does not even come close to being narrowly tailored to satisfy a substantial government interest. The language of the regulation is very similar to that at issue in *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987), where the Supreme Court struck down a policy at Los Angeles International Airport (LAX) that banned all "First Amendment activities." The Court stated that "under such a sweeping ban, virtually every individual who enters LAX may be found to violate the resolution by engaging in some "First Amendment activity." *Id.* at 575. Indeed, it is hard to see what types of expression would *not* be included within the realm of "public expression of views."

Further, even a waiting period of a few business days (which is not present on the face of the regulations) to obtain a permit is not justified. One could imagine a common scenario where a person arrives at Mt. Rushmore on a Friday evening and desires to "publicly express views" or distribute printed matter while visiting for the weekend. Under the Defendants' policy, unless the potential speaker both a) knew they wanted to engage in First Amendment expression ahead

of time and b) knew of the permit requirement ahead of time, they would not receive a permit before leaving the park. And the Defendants have offered no justification for this burden on protected expression.

Defendants have tried to minimize the burden their regulations place on speech, but courts have recognized that the reason permit requirements are so highly scrutinized is that the mere presence of a requirement stifles speech, and requiring a permit to engage in fundamental forms of expression is contrary to the tradition of free expression in this country:

> It is offensive—not only to the values protected by the First Amendment, but to the very notion of a free society—that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so. Even if the issuance of permits . . . is a ministerial task that is performed promptly and at no cost to the applicant, a law requiring a permit to engage in such speech constitutes a dramatic departure from our national heritage and constitutional tradition.

*Watchtower Bible and Tract Soc'y of New York v. Vill. of Stratton*, 536 U.S. 150, 165-66 (2002).

Both regulations also fail the narrow tailoring requirement because they completely foreclose two crucial types of expression without adequate justification. Because §§2.51-2.52 require a permit before even an individual may engage in expressive activity or leafleting, they completely eliminate the possibility of spontaneous speech in every National Park in the country. And because an individual must fill out an application before they may engage in any expressive activities, anonymous speech is likewise eliminated.

Spontaneous expression is often "the most effective kind of expression." *Grossman*, 33 F.3d at 1206. But "[b]oth the procedural hurdle of filling out and submitting a written application, and the temporal hurdle of waiting for the permit to be granted may discourage potential speakers. Moreover, because of the delay caused by complying with the permitting

procedures, immediate speech can no longer respond to immediate issues." *Id.* (internal quotations omitted).

Because anonymous speech is so vital to the First Amendment, laws banning or burdening it have been struck down by the Supreme Court as a violation of the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995); *see also Watchtower*, 536 U.S. at 166-67 (holding a permit requirement for door-to-door leafleting effectively prevents a canvasser from remaining anonymous). By requiring a person to fill out an application and obtain a permit prior to any "public expression of views" or distributing any "printed matter," Defendants' regulations completely foreclose anonymous speech at National Parks because they require any would-be speaker to identify themselves to the government, something they may not wish to do for various reasons. "[A]nonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or . . . privacy. . . Whatever the motivation may be . . . the interest in having anonymous [speech] enter the marketplace of ideas unquestionably outweighs any public interest in requiring disclosure as a condition of entry." *McIntyre*, 514 U.S. at 341-42.

Defendants argue that the regulations at issue are narrowly tailored because the D.C. Circuit upheld a permit system for the National Capital Region, even though it was a prior restraint, because it was narrowly tailored. *A Quaker Action Group v. Morton*, 516 F.2d 717 (D.C. Cir. 1975).[3] However, the regulations at issue in *Morton* applied to demonstrations in the

---

[3] Defendants note that *Morton* also pointed out that "First Amendment activity might be inappropriate for a wilderness area such as Yellowstone Park." (Defs. Memo. Supp. Mot. Dismiss at 15 n.8 (quoting *Morton*, 516 F.2d at 724-35)). Plaintiff does not dispute that certain expressive activities are not consistent with wilderness areas, and does not assert anything to the contrary. Rather, Plaintiff's position is that if Defendants wish to require permits for expressive activity in wilderness areas, or any other areas of national park land which is inappropriate for certain types of activities, they should do it in a regulation narrowly tailored to serve those

immediate area of the White House, which clearly presents specific security and safety concerns that the regulations here do not, which contributed to the Court's finding that the regulations were narrowly tailored in that context. *Id.* But notably, the *Morton* court pointed out that the regulation's requirement of a permit for any "public gathering," similar to §2.51's requirement for any "public expression of views," was overbroad, *even though the term was defined in the regulation*:

> The problem is that the Park Service may have defined "public gathering" for enforcement purposes to mean only those public gatherings with expressive content. We inquired on this point at oral argument. Government counsel then took the position that a "public gathering" would be any group in which at least one person carried a sign or engaged in First Amendment activity. By contrast, counsel noted that a group of persons in the White House area would not be considered a "public gathering" if there were no manifestation of such expressive activity. Further, Government counsel put it that *even a single individual constituted a "public gathering" by taking up a sign and marching in behalf of some cause. This result is absurd and it demonstrates the aridity of the Government's approach.*

*Id.* at 728 (emphasis added).

This is precisely the problem with Defendants' permit requirement for individuals engaged in "public expression of views," which is *not* defined in the regulation. On its face, it allows the government to require a permit before an individual may publicly express a "view"— this could mean an individual wearing a t-shirt with a political slogan, sporting a tattoo, or wearing a button is subject to a permit requirement at the national parks. As the D.C. Circuit stated, this is absurd.

Defendants' regulations completely foreclose fundamental methods of expressive activity, and severely burden expression in general by the vast breadth of their permit

---

interests. Areas of national parks such as the Avenue of Flags, which are publicly accessible and physically indistinguishable from any other public plaza, park or sidewalk, are not the same as wilderness areas and they should not be lumped together.

requirement, which cannot be justified by a legitimate government purpose. Defendants cannot show any reason that an individual like Mr. Boardley, "publicly expressing a view" or distributing "printed matter" in the publicly accessible area of a National Park like the Avenue of Flags at Mt. Rushmore, should be required to obtain a permit and have to wait up to two days to receive one. Defendants' regulations are not narrowly tailored and are therefore unconstitutional on this additional basis.

### iii. 36 C.F.R. §§2.51-2.52 are facially unconstitutional because they do not leave open ample alternative channels of communication.

In considering whether a regulation leaves open ample alternative channels of communication, the Supreme Court generally upholds regulations which merely limit expressive activity to a specific part of the regulated area or to a limited time frame. *Turner*, 893 F.2d at 1393. But in contrast, Defendants' permit requirements at issue here completely exclude all individuals wishing to engage in "public expression of views" or "distribution of printed matter," from all areas of all National Park land unless they obtain a permit. There are no National Park lands *not* covered by the permit requirement. Thus, "there is no intra-forum alternative." *Id.* Defendants' regulations and actions fail this final prong of prior restraint analysis, and are unconstitutional under the First Amendment as unlawful prior restraints.

Applicable case law in this Circuit and across the country shows that Defendants' regulations are facially unconstitutional. As such, the application of these regulations to his speech is correspondingly unconstitutional, regardless of whether or not Defendants have now decided to start giving permits to people who want to distribute gospel tracts. (Compl. ¶¶68, 74-75, 77, 79-80). It goes without saying, then, that Plaintiff has adequately pled his First Amendment claim in this case and Defendants' motion to dismiss it should be denied.

iv. **The cases cited by Defendants do not support their arguments that 36 C.F.R. §§2.51**Error! Bookmark not defined.**-2.52 are constitutional or that Plaintiff failed to state a claim under the First Amendment.**

Defendants argue that their regulations are not facially unconstitutional because *United States v. Kistner*, 68 F.3d 218 (8th Cir. 1995) and *United States v. Sued*, 143 F. Supp. 2d 346, 349-50 (S.D.N.Y. 2001) support their contention that §§2.51-2.52 are not unconstitutional in every application, since these decisions found the regulations to be acceptable. In *Kistner*, the Eighth Circuit evaluated the constitutionality of policies implemented by the Gateway Arch park authorities pursuant to 36 C.F.R. §2.52.[4] It should also be noted that *Kistner* was criticized by a sister circuit as being wrongly decided because it conflicted with Supreme Court precedent in *Forsyth County*, 505 U.S. 123. *Frandsen*, 212 F.3d at 1240 n.8. The *Frandsen* court struck down the same regulations at issue here because they granted unfettered discretion to government officials.[5] *Id.*

But beyond what the *Frandsen* court had to say about it, the *Kistner* opinion itself is unconvincing. *Kistner* analyzes whether there was evidence to suggest that permits were granted or denied under the local policy interpretation of § 2.52 based on the content of speech involved, but does not engage in significant analysis of the language of the policy. (Notably, *Kistner* limited its analysis to only the language of the local policy interpretation of § 2.52, not the regulation itself or §2.51). Moreover, *Kistner* was decided before *Douglas v. Brownell*, which struck down a permit requirement for parades of ten or more people noting, "We entertain doubt whether applying the permit requirement to such a small group is sufficiently tied to the City's interest in protecting the safety and convenience of citizens who use the public sidewalks and

---

[4] Because the defendant in *Kistner* was only cited for violating §2.52, the Eighth Circuit limited its analysis to the local policy interpretations of that regulation only.

[5] *See* discussion of *Frandsen* in conjunction with *Thomas v. Chicago Park District*, *supra* pp. 20-21.

streets." 88 F.3d at 1524. *Kistner* is inconsistent with the later ruling in *Douglas*, not to mention this Circuit's ruling in *Turner*. Thus, if Defendants choose to build their arguments on *Kistner*, they should soon discover that they have built on sand rather than stone.

Additionally, Defendants rely on *United States v. Sued*, 143 F. Supp. 2d 346, but *Sued*'s analysis of whether the regulation is a valid prior restraint does not consider the breadth of the term "public expression of views"; the fact that a permit requirement itself burdens speech, even if permits are routinely granted; and that permit requirements foreclose anonymous or spontaneous speech. In short, its analysis is incomplete and the persuasiveness of the decision is lacking.[6]

Finally, Defendants rely on *Thomas*, 534 U.S. 316, but this reliance is misplaced. *Thomas* upheld a permit requirement for events in Chicago's parks involving 50 or more people, what the Court referred to as a "large-scale" event, not individuals or small groups like the regulations here. *Id*. at 317. This is more closely tied to the City's enumerated interest, which according to the Court, was "to coordinate multiple uses of limited space, to assure preservation of the park facilities, to prevent uses that are dangerous, unlawful, or impermissible under the Park District's rules, and to assure financial accountability for damage caused by the event," concerns that are far more significant when a large group is involved. Additionally, the

---

[6] Defendants note that "the restrictions here are limited only to the distribution of printed matter and do not prevent individuals from approaching others and requesting permission to talk to them." (Defs. Memo. Supp. Mot. Dismiss at 18 (citing *Kistner*, 68 F.3d at 222)). But Defendants forget that Plaintiff is also challenging §2.51, which requires a permit for any "public expression of views," in addition to §2.52, which requires a permit for distribution of "printed matter." Thus, under the plain language of §2.51 (which *Kistner* did not evaluate), Plaintiff *would not* be free to approach other National Park visitors and talk to them if he wished to "express" a "view"—he would have to get a permit first. *Sued* similarly made this observation, which is even more odd considering that the defendant in that case had challenged §2.51, and so too would not be "free" to express his views to others at the Statue of Liberty. 143 F. Supp. 2d at 353.

plaintiff's argument that the ordinance in that case allowed for unfettered discretion turned on the use of the word "may" instead of "shall," but Mr. Boardley's argument for unfettered discretion does not rely on such a narrow distinction, and the regulations here are not as limited as the ordinance in *Thomas*.  *Id.* at 319 n.1, 324.

Even if these opinions were persuasive, their existence does not mean Mr. Boardley failed to state a First Amendment claim.  He is only required to plead "enough facts to state a claim for relief that is plausible on its face."  *Twombly*, 127 S.Ct. at 1974.  He certainly has done that.  (Compl. ¶¶68, 74-75, 77, 79-80).  The weight of the applicable case law, including in this jurisdiction, supports his claims, not just enough to survive a motion to dismiss, but enough to show that he will be successful on his claims.  Defendants' motion to dismiss Mr. Boardley's First Amendment claim should be denied.

       **2.**       **Plaintiff Adequately Pled His Claim for Overbreadth Under the First and Fifth Amendments.**

"The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere."  *Free Speech Coal.*, 535 U.S. at 244; *see NAACP v. Button*, 371 U.S. 415, 433 (1963) ("In the First Amendment area government may regulate only with narrow specificity.")   A regulation is unconstitutional on its face on overbreadth grounds where there is a likelihood that the statute's very existence will inhibit free expression by inhibiting the speech of third parties who are not before the Court.  *Taxpayers for Vincent*, 466 U.S. at 799, 800; *see also Thornhill v. Alabama*, 310 U.S. 88, 97 (1940).  Defendants cite only the standard for facial challenges *outside* the First Amendment context.  *See Washington State Grange v. Washington State Republican Party*, 128 S.Ct. 1184, 1191 n.6 (2008) (distinguishing facial challenges for overbreadth under the First Amendment).  But with respect to the First Amendment, the Court has recognized that the fundamental right to free

speech must be guarded against undue chilling resulting from an overbroad regulation on expressive activity.

Additionally, the cases cited by Defendants to support their argument that the regulations at issue are not facially invalid did not consider the issue of overbreadth. *Kistner* specifically noted that the defendant did not raise a distinct challenge based on overbreadth and it therefore did not consider that issue. 68 F.3d at 220 n.5. *Sued*'s discussion of *Frandsen* makes clear that it did not consider whether the regulation was unconstitutionally overbroad, as it took into account not only the text of the specific statute or regulation, but also how it has been interpreted by the persons who are charged with its implementation. 143 F. Supp. 2d. at 352. But in a challenge for facial overbreadth, the interpretation of a regulation by government officials is irrelevant, since the court is examining whether the plain language of the regulation sweeps unnecessarily broadly and chills the speech of those not before the court. *See Taxpayers for Vincent*, 466 U.S. at 799. Thus, *Sued* plainly did not consider the issue of overbreadth. And *Thomas* considered only whether the ordinance was a facially unconstitutional prior restraint, and not whether it was facially overbroad. 534 U.S. at 317.

Here, Defendants' regulations are facially overbroad because they include a sweeping amount of protected activity within their scope. (Compl. ¶75-76). §2.51 and §2.52 require a permit for any individual who may "publicly express views" or distribute literature. (Compl. ¶¶58-59). As discussed above, there is no justification for the regulation of such small scale First Amendment activities in a traditional public forum, yet this clearly protected activity is swept in with expressive conduct such as a large gathering, march, or parade involving many people, a type of activity that may be more properly regulated with a permit scheme. Moreover, simply requiring a permit before even an individual may engage in expressive activity or leafleting chills

speech because it makes it less likely an individual will jump through all of the bureaucratic hoops to do so. *See Grossman*, 33 F.3d at 1206 (internal citations omitted).

§§2.51-2.52 additionally chill protected speech by completely foreclosing crucial methods of expression. As discussed above, requiring a person to apply for and obtain a permit prior to "publicly expressing views" or distributing any "printed matter" completely forecloses both spontaneous and anonymous speech. Limitations on these types of speech without justification are overbroad and violate the First Amendment. *Watchtower*, 536 U.S. at 166-67; *McIntyre*, 514 U.S. 334; *Parks*, 385 F.3d at 702-03. §2.51 is also facially overbroad because it grants unfettered discretion to administrators in determining what "public expression of views" means, as it is a vague term not defined by the regulation. (Compl. ¶68, 80, 93). This discretion creates the danger of uneven or discriminatory enforcement. These regulations are both substantially overbroad in relation to their legitimate purposes, and violate the First Amendment on this alternative ground. Thus, Mr. Boardley has more than satisfied his burden of pleading a plausible claim for overbreadth.

### 3.    Plaintiff Adequately Pled His Fifth Amendment Claims.

For a statute to pass muster with respect to vagueness, it must define the offense involved with sufficient specificity so that a person of ordinary intelligence is not required to guess at what conduct is prohibited. *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). This standard is applied even more strictly to statutes that inhibit free speech because of the high value our society places on it. *Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S. 610, 620 (1976). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *Button*, 371 U.S. at 433 (1963). A "void for vagueness" challenge may be brought against regulations if the terms are vague and would result in arbitrary and discriminatory enforcement by law enforcement

officials. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also Grayned v. City of Rockford*, 408 U.S. 104,108-09 (1972).

Just like the provisions at issue in *Turner* and *Jews for Jesus*, it is unclear what expressive activity would *not* be included within the ambit of these regulations. §2.51 requires a permit for any "public expression of views." A "public expression of views" could mean anything from a planned speech or rally to simply holding a sign, wearing a t-shirt emblazoned with some type of message, arguing with a friend, wearing an armband, etc. *Jews for Jesus*, 482 U.S. at 574-75; *Parks*, 385 F.3d at 703. The requirement of a permit for *all* "public expression of views" in all National Park lands is clearly unconstitutionally overbroad, as discussed above. Defendants cannot save their regulations by trying to read them more narrowly because if they are not meant to proscribe such a broad spectrum of expression, the language of §2.51 is unconstitutionally vague, since on its face it is so broad that it will cause potential speakers to self-censor speech in order to not run afoul of the regulation. If it is not meant to proscribe such a broad gamut of speech, the language does not put a person of reasonable intelligence on notice of what conduct is and is not allowed. In turn, this allows park officials to apply the regulation at their sole discretion, which cannot be countenanced under the First Amendment.

Additionally, in applying the regulations to Mr. Boardley, Defendants violated his Fifth Amendment right to equal protection. Mr. Boardley alleged that "Defendants' regulation, 36 C.F.R. § 2.52, and its corresponding policies and practices as applied to Mr. Boardley constitute impermissible content- and viewpoint-based restrictions on constitutionally protected expression in public fora." (Compl. ¶73). He also alleged that "upon information and belief, Defendants allow similarly situated persons access to public ways at Mt. Rushmore to engage in speech, expression and conduct" and that Defendants have a practice of "refusing to timely respond to

Mr. Boardley's requests for a permit, but not refusing to respond to the requests of others . . . on the basis of the content and viewpoint of his speech." (Compl. ¶98-99). If the Court assumes these allegations are true, as it is required to, Plaintiff has established an equal protection violation.

Moreover, even though discovery has not been conducted yet, Plaintiff currently has evidence of a practice of content-based discrimination by Defendants in using the challenged regulations to burden or prevent speech they do not agree with. In July 2006, Mark Oehrlein, another individual who visited Mt. Rushmore with the purpose of distributing gospel tracts, was told by park officials that they could not find any permits, and he was never granted one. (Compl. ¶¶44-48). Mr. Oehrlein was asked by Defendant Baker why he wanted a permit; when Mr. Oehrlein told him he wished to distribute free gospel tracts, the park official stated, "I don't like that," and told Mr. Oehrlein he would instead have to speak with Defendant Pflaum about obtaining a permit. (Compl. ¶¶ 49-52). Mr. Oehrlein was subsequently informed by park officials that Defendant Pflaum was at the dentist that day. (Compl. ¶53). As a result, after two days of trying, Mr. Oehrlein left Mt. Rushmore without being able to distribute any gospel tracts. (Compl. ¶54). This is certainly evidence of a content based motive, and shows that Plaintiff has more than exceeded his burden of stating a "plausible" claim for the violation of his equal protection rights under the Fifth Amendment.

### 4.    Plaintiff Adequately Pled His RFRA Claim.

Under the Religious Freedom Restoration Act, the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). There is one exception: the government may impose such a burden "only if it demonstrates that application of the burden . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that

compelling governmental interest." *Id.* § 2000bb-1(b); *see generally Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006). Once a plaintiff shows that applying a statute to him will substantially burden his religion, the government must justify the burden by establishing a sufficiently compelling interest and showing that it could not accommodate religion more without serving that interest less.

A "substantial burden" on religious exercise under RFRA is a government action which forces an adherent to engage in conduct that their religion forbids or prevents them from engaging in conduct their religion requires. *Henderson v. Kennedy*, 253 F.3d 12, 16 (D.C. Cir. 2001). Plaintiff alleged in his Verified Complaint that he is a "professing Christian, and he believes it is his Christian duty and privilege to inform others about the Gospel of Jesus Christ." (Compl. ¶7). He also alleged that he "hands out gospel tracts in public areas because of his sincerely held religious beliefs concerning Christianity." (Compl. ¶8). Finally, he alleged that "Defendants' regulations, 36 C.F.R. §§ 2.51–2.52, and their corresponding policies and practices, substantially burden [his] exercise of religion." (Compl. ¶105). Defendants' regulations inhibit him from being able to fulfill his sincerely held religious duty by distributing gospel tracts, and in this case, stopped him from being able to do so, and told him pursuant to Defendants' regulations and policies, that he needed a permit and that it would take two days to get one. (Compl. ¶¶26, 29-30). Thus, Defendants actually put a stop to Mr. Boardley's religious exercise that day.

At the motion to dismiss stage, Plaintiff is simply required to plead "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974 (2007). Mr. Boardley's RFRA claim is surely "plausible," and he should be given the opportunity to prove it

up through summary judgment. Defendants' motion to dismiss Plaintiff's RFRA claim should be denied.

### 5.    Plaintiff Adequately Pled *Bivens* Claims Against Defendants in Their Individual Capacities.[7]

Mr. Boardley has sued each Defendant in their official and individual capacities under *Bivens*, 403 U.S. 388. A *Bivens* suit is an action against a federal officer in their individual capacity seeking damages for violations of the plaintiff's constitutional rights. *See Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 368 (D.C. Cir. 1997). *Bivens* claims cannot rest merely on respondeat superior. *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993). The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct. *Simpkins*, 108 F.3d at 369. Because Defendants have tried to limit the "illegal conduct" in this case to the denial of a permit to Mr. Boardley, they argue that Defendants Kempthorne, Bomar, and Quintana were not personally involved in that and therefore no *Bivens* claim can be sustained against them. But because the illegal conduct in this case involves the creation, promulgation and enforcement of unconstitutional regulations, and each Defendant is personally involved in those activities, they are therefore liable in their individual capacities for the constitutional harm caused by the regulations. Mr. Boardley alleged that each of these Defendants are responsible for the administration and enforcement of regulations and policies in National Park lands. (Compl. ¶¶10-15). Mr. Boardley also alleged that the actions taken pursuant to the unconstitutional regulations were done under color of federal law, and that the Defendants knew or should have known that denying Mr. Boardley access to speak at Mt.

---

[7] To the extent that Defendants do not have the authority to represent the Defendants in their individual capacities, they have no basis for making these arguments at this time, or arguments with respect to qualified immunity. However, out of an abundance of caution, Plaintiff responds to these arguments now, and reserves the right to make additional arguments if Defendants do receive the necessary authority and file a separate motion to dismiss the individual capacity claims.

Rushmore was unconstitutional. (Compl. ¶¶62, 70). Mr. Boardley repeatedly alleged that the regulations themselves are unconstitutional. (Compl. ¶¶67-69, 73-80, 85-88, 90-94, 105). Taking all these allegations as true, as the Court is required to do at the motion to dismiss stage, Plaintiff has clearly stated a claim against each Defendant in their individual capacity.

Defendants Kempthorne, Bomar, and Quintana are not personally liable for the constitutional violations in this case simply because of respondeat superior. There is more at stake besides Defendants Baker and Pflaum's unconstitutional actions in denying Mr. Boardley a permit. When Defendants Baker and Pflaum required Mr. Boardley to obtain a permit, they were acting pursuant to regulations that did not appear out of nowhere, nor are they the same as a "bare assumption" that policy decisions "influenced" what happened to Mr. Boardley. The Defendants Kempthorne and Bomar run the Department of the Interior and the National Park Service, respectively, and Defendant Quintana runs national park lands in the Midwestern region of the country, as Mr. Boardley alleged. (Compl. ¶¶10-15). That plainly includes the enforcement of federal regulations and policies.[8] As Plaintiff has made clear, the harm to Mr. Boardley is occurring because of the continued existence and enforcement of these unconstitutional regulations and policies, which all Defendants are responsible for.

Defendants also assert that Plaintiff cannot pursue a claim against Defendants in their individual capacity because the actions taken could "only be taken in their official capacity."

---

[8] Indeed, since the filing of the Verified Complaint, additional evidence has come to light regarding the national Defendants' responsibility to enforce and interpret the challenged regulations. While it is improper to rely on evidence outside the pleadings on a motion to dismiss, and Plaintiff does not need to in order to prevail in stating a claim, Plaintiff simply notes that Defendants filed a policy memo as an exhibit before this Court from Defendant Bomar to all regional directors (which would include Defendant Quintana) about the proper enforcement of the challenged regulations. (Defs. Opp. Mot. Prelim. Inj. Ex. A). If Defendants' argument boils down to an assertion that Plaintiff did not allege "magic words" in the complaint including the phrase "personally responsible," Plaintiff is happy to amend his complaint to include this and the other evidence that has come to light.

But this is inconsistent with the law.  In *Hafer v. Melo*, 502 U.S. 21 (1991), the Supreme Court examined and rejected this precise argument in the context of §1983.  In *Hafer*, the defendant asserted that "she may not be held personally liable under §1983 for discharging respondents because she acted in her official capacity as auditor general of Pennsylvania."  502 U.S. at 26 (internal quotation marks omitted).  But the Court held that suits under §1983 necessarily involve actions taken under color of state law, and therefore even personal capacity suits arise from actions taken by an official in the course of their governmental duties.  "The requirement of action under color of state law means that Hafer may be liable for discharging respondents precisely because of her authority as auditor general.  We cannot accept the novel proposition that this same official authority insulates Hafer from suit."  *Id.* at 27.  Instead, "[o]n the merits, to establish personal liability in a §1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  *Id.* at 25 (quotation omitted).  And "federal officials should enjoy no greater zone of protection when they violate federal constitutional rules than do state officers."  *Butz v. Economou*, 438 U.S. 478, 501 (1978).  As discussed above, Defendants were all involved in the promulgation and implementation of unconstitutional regulations; as such, Plaintiff has stated a successful claim against them in their personal as well as their official capacities.

### 6.    Defendants are Not Entitled to Qualified Immunity.

While acting pursuant to official duties does not insulate government officials from suit, when sued in a personal capacity, officials are permitted to assert a defense of qualified immunity.  *Hafer*, 502 U.S. at 29.  When determining whether an official has qualified immunity, a court must ask whether "the facts alleged show the officer's conduct violated a constitutional right" and if so, "whether the right was clearly established."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  This means that the "contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985)).  While this Circuit has not yet held that these exact regulations are unconstitutional, it has certainly come close, and the Eleventh Circuit actually did back in 2000.  *See, e.g., Frandsen*, 212 F.3d at 1239-40.  But Defendants still continue to enforce the regulations.

Defendants claim that they are entitled to qualified immunity because "long ago" the *Kistner* court upheld the regulations at issue.[9] [10] (Defs. Memo. Supp. Mot. Dismiss at 24).  But even longer ago, the Supreme Court established that prior restraints must not grant unfettered discretion to officials; that even time, place or manner restrictions in a traditional public forum must be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication; and that regulations affecting First Amendment rights must be narrowly defined and not overbroad or vague.  *See, e.g., Forsyth County*, 505 U.S. at 130; *Perry Educ. Ass'n*, 460 U.S. at 45; *Taxpayers for Vincent*, 466 U.S. at 799.  Even longer ago, the Supreme Court established that a ban on all "First Amendment activities," even in a nonpublic forum, was unconstitutionally overbroad.  *Jews for Jesus*, 482 U.S. at 575.  Even longer ago,[11] this Circuit held that a permit requirement that applied to all "free speech activities" on transit authority property, even by individuals, was unconstitutional because it was overbroad and not narrowly tailored.  *Turner*, 893 F.2d at 1392.

---

[9] *Kistner*, 68 F.3d 218, was decided by the Eighth Circuit in 1995.
[10] Defendants note that the *Kistner* decision came from the Eighth Circuit, where Mt. Rushmore is located.  But this fact is irrelevant because a) the regulations apply to national park land nationwide, and b) because the Defendants with the power to change the regulations in conformity with the law are located in the District of Columbia.
[11] *Turner* was decided by the D.C. Circuit in 1990.

If that were not enough, the Fourth, Fifth, Sixth, Eighth, Ninth and Eleventh Circuits have all held that permit requirements for speech in a traditional public forum applied to individuals and small groups are unconstitutional. *Knowles*, 462 F.3d at 436; *Cox*, 416 F.3d 281; *American-Arab*, 418 F.3d at 608; *Burk*, 65 F.3d at 1259; *Douglas*, 88 F.3d 1511; *Grossman*, 33 F.3d 1200; *see also Parks*, 385 F.3d 694 (striking down a permit requirement for individuals to engage in an activity of "broad public purpose" as a "substantially overbroad restriction on individual speech"). And particularly, as noted above, the Eighth Circuit's reasoning in its later decision in *Douglas* concerning a permit requirement for speech by individuals or small groups is inconsistent with its earlier holding in *Kistner*.

Defendants' regulations violate all of this established law, yet Defendants persist in enforcing them and have not revised them in conformity with legal precedent. Consequently, Defendants cannot claim that the constitutional rights asserted by Mr. Boardley are not clearly established, and they cannot succeed in obtaining qualified immunity from suit in their individual capacities. Thus, Defendants' motion to dismiss the claims against them in their individual capacities must fail.

### III.    CONCLUSION

It seems Defendants' arguments that Plaintiff's case should be dismissed boil down to the fact that a few courts have upheld the regulations at issue, or similar regulations, as acceptable time, place and manner restrictions. But Defendants' arguments ignore the brevity of some of these opinions, as well as the fact that the opinions upholding the regulations plainly did not even consider an overbreadth challenge to the regulations, which Mr. Boardley does present here. Thus, the limited applicability of these opinions, coupled with the fact that a majority of the Courts of Appeals, including this Circuit, have struck down permit requirements for individuals and small groups as a violation of the First Amendment, shows that Mr. Boardley has not just

met the bare minimum of stating his claims—he has stated winning claims.  This exceeds Plaintiff's burden at the motion to dismiss stage, and consequently, Defendants' motion to dismiss should be wholly denied.

Respectfully submitted this 11th day of June, 2008.

By: /s/ Heather Gebelin Hacker
      Heather Gebelin Hacker
      ALLIANCE DEFENSE FUND


Jordan W. Lorence
D.C. Bar No. 385022
801 G. Street NW, Suite 509
Washington, D.C. 20001
Tel: (202) 637-4610
Fax: (202) 347-3622
jlorence@telladf.org

Timothy D. Chandler*
California Bar No. 234325
Heather Gebelin Hacker*
California Bar No. 249273
101 Parkshore Drive, Suite 100
Folsom, California 95630
Tel: (916) 932-2850
Fax: (916) 932-2851
tchandler@telladf.org
hghacker@telladf.org


Kevin H. Theriot*
Kansas Bar No. 21565
W. Jesse Weins*
Kansas Bar No. 23127
15192 Rosewood
Leawood, Kansas 66224
Tel: (913) 685-8000
Fax: (913) 685-8001
ktheriot@telladf.org
jweins@telladf.org

Benjamin W. Bull+
Arizona Bar No. 009940
15100 N. 90th Street
Scottsdale, Arizona 85260
Tel: (480) 444-0020
Fax: (480) 444-0028
bbull@telladf.org


*Admitted *pro hac vice*
+Of counsel, not admitted in this jurisdiction

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL BOARDLEY,

             Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE
INTERIOR, *et al*.,

             Defendants.

Civ. Action No. 07-1986 (JR)

**[PROPOSED] ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

     THIS MATTER coming to be heard on Defendants' Motion to Dismiss, and the Court

being advised upon consideration of Defendants' Motion to Dismiss and Memorandum in

Support, Plaintiff's Memorandum in Opposition, and Defendants' Reply, it is HEREBY

ORDERED that Defendants' Motion to Dismiss is **DENIED**.

IT IS SO ORDERED.

DATED this _____ day of _____, 2008.

_____
Hon. James Robertson
United States District Judge

1

Copy to:

Robin M. Meriweather, Attorney for Defendants
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
Robin.Meriweather2@usdoj.gov

Jordan W. Lorence, Attorney for Plaintiff
ALLIANCE DEFENSE FUND
801 G Street, NW
Suite 509
Washington, DC 20001
jlorence@telladf.org

Heather Gebelin Hacker, Attorney for Plaintiff
Timothy D. Chandler, Attorney for Plaintiff
ALLIANCE DEFENSE FUND
101 Parkshore Drive, Suite 100
Folsom, California 95630
hghacker@telladf.org
tchandler@telladf.org

Kevin H. Theriot, Attorney for Plaintiff
W. Jesse Weins, Attorney for Plaintiff
ALLIANCE DEFENSE FUND
15192 Rosewood
Leawood, Kansas 66224
ktheriot@telladf.org
jweins@telladf.org

Benjamin W. Bull, Attorney for Plaintiff
ALLIANCE DEFENSE FUND
15100 North 90th Street
Scottsdale, Arizona 85260
bbull@telladf.org