UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL BOARDLEY, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) Civil Action No. 07-01986 (JR) |
| v. | ) <br> ) |
| UNITED STATES DEPARTMENT OF THE INTERIOR et al., | ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiff's challenge to the National Park Service ("NPS") regulations requiring permits to demonstrate and to distribute written materials at Mount Rushmore and other NPS venues, and the related claims against NPS officials in their official capacity, should be dismissed for two reasons. First, Plaintiff has failed to satisfy Article III's case-or-controversy requirement with respect to the claims for injunctive and declaratory relief. Second, he has failed to state a claim under the Religious Freedom Restoration Act ("RFRA") or the First or Fifth Amendment of the Constitution.

The portions of the Complaint that raise an as-applied challenge to the permit requirement do not present a live justiciable controversy. The claims premised upon Plaintiff's alleged inability to obtain a permit for his August 2008 trip to Mount Rushmore are moot, because Plaintiff has received a permit. Moreover, Plaintiff lacks standing to raise many of his claims, because he had not applied for a permit at the time the complaint was filed, and thus cannot claim that Defendants denied or delayed processing his permit application.

The deficiencies in Plaintiff's complaint also extend to the merits of his constitutional and statutory claims. The regulations do not impose a sufficiently heavy burden upon religion to implicate RFRA. Plaintiff also has not pled a viable equal protection claim, because he has not alleged that other individuals or groups were allowed to distribute leaflets without obtaining a permit. Finally, the First Amendment and void-for-vagueness claims fail for the reasons set forth in Defendants' Cross-Motion for Partial Summary Judgment. Accordingly, the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

**I. THE COURT LACKS JURISDICTION TO REVIEW SEVERAL OF PLAINTIFF'S CLAIMS BECAUSE THEY ARE MOOT AND HE LACKS STANDING TO BRING THEM.**

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases and controversies." Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 37 (1976) (citing Flast v. Cohen, 392 U.S. 83, 95 (1968)); see U.S. Const. Art. III, § 2 (authorizing federal courts to review "cases" or "controversies"); Allen v. Wright, 468 U.S. 737, 750 (1984) (discussing case or controversy requirement); National Black Police Ass'n v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997) (same). This requirement prevents the issuance of advisory opinions, as it demands the existence of an actual dispute between adverse parties with a stake in the outcome. See Richardson v. Ramirez, 418 U.S. 24, 36 (1974). The doctrines of standing, mootness, and ripeness all implement Article III's case-or-controversy requirement. See Spirit of Sage Council v. Norton, 411 F.3d 225, 230 (D.C. Cir. 2005).

### A. The Claims Premised Upon An Alleged Delay In Responding to Plaintiff's Requests for Permission to Distribute Leaflets And/Or An Alleged Failure to Grant Plaintiff A Permit to Distribute Leaflets Are Moot.

The mootness doctrine assesses whether post-complaint changes in the facts or law affect the continued existence of a particular controversy. See Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997); City of Orrville v. FERC, 147 F.3d 979, 985 n.5 (D.C. Cir. 2004). As the D.C. Circuit has explained:

> [E]ven where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal Court to refrain from deciding it if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."

Columbian Rope Co. v. West, 142 F.3d 1313, 1316 (D.C. Cir. 1998) (quoting Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)). Once a case becomes moot, the court loses jurisdiction. See City of Houston v. Department of Housing and Urban Dev., 24 F.3d 1421, 1426 (D.C. Cir. 1994).

In this case, several of Plaintiff's claims became moot when Chief Park Ranger Pflaum approved the issuance of a permit which allows Plaintiff to distribute gospel tracts at Mount Rushmore National Memorial on August 7, and August 8, 2008. Specifically, there is no live controversy regarding any claim which seeks injunctive and/or declaratory relief premised upon Defendants' alleged failure to issue Plaintiff a permit or to respond to his requests for such a permit. Those claims are raised in: Count Two, which alleges that Defendants have "prohibit[ed] Mr. Boardley from obtaining a free speech permit, by refusing to respond to Mr. Boardley's requests," and have a "policy and practice of refusing to respond to Mr. Boardley's requests for a free speech permit," Compl. ¶¶ 86, 87; Count Four, which challenges Defendants' alleged "practice of refusing to timely respond to Mr. Boardley's requests for a permit, but not

3

refusing to respond to the requests of others" and "of restricting Mr. Boardley's expression by not responding to his requests for a permit," Compl. ¶¶ 99-100; and Paragraphs 70-71 of the Complaint, which allege that "denying Mr. Boardley a permit or other access to speak at Mt. Rushmore is a clear violation of his constitutional rights" and that he "has been, and is being, prevented from exercising his First Amendment rights at Mt. Rushmore," id. ¶¶ 70-71. It is undisputed that Plaintiff now has a permit to distribute leaflets in August 2008, and the issuance of that permit was a response to Plaintiff's oral requests for a permit.[1]

A defendant's "voluntary cessation of allegedly illegal conduct" renders a case moot when "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Coalition of Airline Pilots Ass'n v. FAA, 370 F.3d 1184, 1189 (D.C. Cir. 2004) (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)). Both elements are present here.

First, there is no reasonable expectation that the alleged refusal to issue Plaintiff a permit to distribute leaflets at Mt. Rushmore, and/or alleged delay in responding to his requests, will recur. The permit applications used at Mt. Rushmore and other national parks clearly state that permits will be processed within two days of their submission. See Exh. 1 (available at (www.nps.gov/moru/planyourvisit/permit.htm). The applications are readily accessible through the Mount Rushmore website. See id. Therefore, to the extent that the complaint is premised upon Plaintiff's alleged inability to obtain information regarding permit applications, or to obtain

---

[1] Plaintiff did not submit a written permit application. See Supplemental Pflaum Decl. ¶ 4 (Exh.1 to Dkt. Entry 20).

a permit in a timely manner, the current practices at Mt. Rushmore eliminate any possibility that he would face such difficulties in the future.

Nor is there any reasonable expectation that Plaintiff would be denied a permit in the future. Although the complaint alludes to a practice of "denying Mr. Boardley a permit," e.g. Compl. ¶ 70, it does not allege that he submitted a written permit application at any time prior to filing the complaint.² Thus, at the time the complaint was filed, there was no permit application which had been, or could be, "denied." Once Plaintiff submitted a declaration which contained sufficiently detailed information concerning his desire to distribute leaflets, that declaration was construed as an application for a permit, and the permit was issued. See Supplemental Pflaum Decl. ¶ 4 (Exh.1 to Dkt. Entry 20).

Chief Ranger Pflaum's approval of Plaintiff's recent permit request is consistent with the practice of Mount Rushmore officials. Chief Park Ranger Pflaum has testified that in his 18 years at Mount Rushmore, he "do[es] not believe that the Memorial has ever formally denied a demonstration application." Decl. of Chief Park Ranger Mike Pflaum, ¶ 2 ("Pflaum Decl.") (Dkt. Entry No. 16-4, Ex. C to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction, at ¶¶ 3-5). Neither Chief Ranger Pflaum nor other Mount Rushmore personnel have denied a request for First Amendment use within the most recent eight years, and anecdotally no denials have occurred in the many years preceding that. See Third Declaration of Mike Pflaum, ¶¶ 47, 53 ("Third Pflaum Decl.") (Exh. 1 to Dkt. Entry 44). Permits have been granted to a wide variety of speakers, ranging from members of the gay, lesbian, bisexual, and transgenered

---

² Chief Ranger Pflaum issued the permit based upon the statements made in Plaintiff's declaration in this litigation. See Supplemental Pflaum Decl. ¶ 4 (Exh.1 to Dkt. Entry 20).

community to religious groups wishing to conduct religious services, prayer, and musical programs. See Third Pflaum Decl., ¶¶ 45-46 & Attachment F (describing and providing examples of recent permitted activities at Mount Rushmore).

Plaintiff's conclusory assertion that the regulations do not preclude Defendants from "giving him the runaround" if he makes a future permit request is speculative and conjectural, and does not trump Defendants' contrary evidence.[3] It is clear that permit applications are readily available on the Park's website, that there is a two-day processing period, and that permit applications — including Plaintiff's — are routinely granted. In sum, although Defendants do not concede that their past treatment of Plaintiff was unconstitutional, there is no possibility that the harm alleged in Counts Two and Four, and Paragraphs 70-71 of the Complaint, will recur in the future.

Further, the issuance of the permit eliminated any effects of the allegedly unconstitutional conduct at issue in Counts Two and Four, and Paragraphs 70-71 of the Complaint. In the complaint and his motion for preliminary injunction, Plaintiff claimed that Defendants' alleged practice and conduct precluded him from returning to Mount Rushmore to distribute leaflets in August, 2008. Now that he has a permit, "any opinion regarding the [past inability to obtain a permit] would be merely advisory." Coalition of Airline Pilots Ass'n, 370 F.3d at 1190.

---

[3] To determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. See Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

Plaintiff's assertion that he suffered harm because, during his prior visit to Mount Rushmore, he did not stay at the park for long enough to obtain a permit, Opp. at 10, does not preserve the claims for injunctive and declaratory relief. At most, that demonstrates that Plaintiff may have suffered harm in the past. However, "[i]n actions for injunctive relief, harm in the past. . . is not enough to establish a present controversy." American Society for Prevention of Cruelty to Animals v. Ringling Bros., 317 F.3d 334, 336 (D.C. Cir. 2003); see also Steel Co., 523 U.S. at 108 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.").

Finally, Plaintiff's assertion that the issuance of the permit did not alter his interest in challenging the regulations on their face, or seeking damages from the officials sued in their individual capacities, misperceives the scope of Defendants' mootness argument. See Opp. at 9-10. As clarified supra, Defendants contend that the claims seeking injunctive and declaratory relief which are premised upon Plaintiff's alleged inability to obtain a permit and/or NPS officials' alleged delay in responding to his requests, are now moot. Whether or not other claims continue to present a live controversy is irrelevant to the analysis of whether those claims remain live.

   **B.   Plaintiff Lacks Standing To Bring Several of the Claims Raised in the Complaint.**

Standing is a critical component of the case-or-controversy requirement, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Plaintiff bears the burden of demonstrating that he has standing to raise each claim in the complaint. See id. at 561. To carry that burden, Plaintiff must show that three elements are present:

> First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560-61 (internal quotation marks and citations omitted). A plaintiff seeking injunctive or declaratory relief cannot rely on past injuries to satisfy the injury-in-fact requirement, but must show a likelihood of being injured in the future. See City of Los Angeles v. Lyons, 461 U.S. 95, 105-06 (1983); Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 108 (1998) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.").

Plaintiff lacks standing to bring any claim premised upon an alleged denial of his permit request, or undue delay in processing a permit request, because he cannot demonstrate that there is a concrete and material risk that he will be denied a permit, or that the processing of a permit application will be delayed, in the near future. "In actions for injunctive relief, harm in the past. . . is not enough to establish . . . an injury in fact." Ringling Bros., 317 F.3d at 336; see also Jaramillo v. FCC, 162 F.3d 675, 677 (D.C. Cir. 1998) ("past injury is not enough to support the standing of a party who doesn't seek damages or similar compensation for that injury"). As explained supra, the permit application is available online and must be processed within two days, and Defendants are aware of no instance in which Mount Rushmore officials have ever denied a permit. The two-day processing time was establised in 2006 — well before Plaintiff filed this complaint. See NPS Management Policy, Dkt. Entry Nos. 16-2 and 16-3, Exhs. A, B. Plaintiff's assertion that this case "is not just about the denial of a permit," Opp. at 5, does not

change the fact that he lacks standing to bring the claims which <u>are</u> about the denial of a permit (or delay in issuing a permit).

      Moreover, Plaintiff's failure to submit a written application for a permit precludes him from asserting a pre-enforcement as-applied challenge to the regulations.[4]  It is undisputed that, at the time the complaint was filed, Plaintiff had not submitted a written application for a permit. Nonetheless, he distributed leaflets at Mount Rushmore on August 9, 2007, without incident. Compl. ¶¶ 17-26.  He also distributed leaflets on August 10, 2007, again, without obtaining or applying for a permit.  <u>See id.</u> ¶¶ 20, 23.  Therefore, like the plaintiff in <u>Sued</u>, he cannot claim that the permit requirements were unconstitutionally applied to him.  Rather, he can only make a facial challenge to the requirement itself.  <u>United States v. Sued</u>, 143 F. Supp. 2d 346, 351 (S.D.N.Y. 2001) ("[O]ne who might have had a license for the asking may call into question the whole scheme of licensing when he is prosecuted for failure to procure it.").

      Plaintiff's vagueness challenge illustrates the speculative nature of his alleged injury. Plaintiff contends that the regulations' reference to the "public expression of views" is unconstitutionally vague or overbroad, but he has not personally suffered an injury as a result of that alleged vagueness.  In his memoranda of law, he speculates that the term "public expression of views" could conceivably reach conduct such as wearing a button or t-shirt containing a message.  However, the complaint does not allege that Plaintiff engaged in such conduct, or was told that he could not do so without a permit.  Instead, the complaint focuses on Plaintiff's past distribution of gospel leaflets and his alleged desire to do so in the future.  That conduct is

---

[4] To bring a First Amendment facial challenge to the regulations, Plaintiff must demonstrate "a credible threat of prosecution."  <u>American Library Ass'n v. Barr</u>, 956 F.2d 1178 (D.C. Cir. 1992).

governed by the portion of the regulations which expressly require a permit prior to distributing written materials.  See 26 C.F.R. §§ 2.51, 2.52.

Plaintiff also contends that the regulations are unconstitutionally vague because, inter alia, officials have unbridled discretion to determine whether a distribution of materials presents a clear and present danger to public health and safety, and permits may include conditions that are 'reasonably consistent with protection and use of the park area."  Compl. ¶¶ 92, 94.  To raise those claims in an as-applied challenge, Plaintiff would have to show that he has been "personally injured" by those requirements.  P&V Enterprises v. U.S. Army Corps of Engineers, 466 F. Supp. 2d 134, 143 (D.D.C. 2006).  He cannot do so, because at the time the complaint was filed, he had not submitted a permit application to which those allegedly vague standards could have been applied.

Although Plaintiff now claims that the regulations were enforced against him, and prevented him from continuing to distribute leaflets on August 10, 2007, that is not what the Complaint alleges.  Instead, the Complaint references Plaintiff's desire to obtain a permit to distribute leaflets on a future date.  See Compl. ¶¶ 36, 41.  Moreover, in the declaration submitted with his preliminary injunction motion, Plaintiff expressed a desire to distribute leaflets in August 2008.  Plaintiff cannot use his opposition memorandum to amend his complaint, and therefore Plaintiff's newly minted assertion that he desired to distribute additional leaflets in August 2007 comes too late.  See Mazloum v. District of Columbia, 442 F. Supp. 2d 1, 12 n. 7 (D.D.C. 2006) (noting plaintiff cannot amend complaint through an opposition brief).

## II. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### A. Plaintiff's Allegations Do Not Establish A Viable RFRA Claim.

As Plaintiff admits, his RFRA claim must fail unless he shows that the government's regulations "substantially burden" his religion. Henderson v. Kennedy, 253 F.3d 12, 16 (D.C. Cir. 2001). He cannot make that showing on the facts alleged here. Plaintiff does not contend that his religion requires him to distribute gospel tracts at Mount Rushmore, or in any other location. Instead, he simply states that he has a "duty and privilege to inform others about the Gospel of Jesus Christ." Compl. ¶ 7. Like the ban on sales of t-shirts on the Mall which the D.C. Circuit has upheld, the permit requirement at issue in this case "is at most a restriction on one of a multitude of means by which [Plaintiff[ may engage in [his] vocation to spread the gospel." Henderson v. Kennedy, 265 F.3d 1072, 1074 (D.C. Cir. 2001) (internal quotation marks omitted) (quoting Henderson, 253 F.3d at 17). Therefore "it is not a substantial burden on [his] vocation." Id. Further, the regulations do not ban the distribution of gospel tracts or any other religious literature; they simply require Plaintiff to obtain a permit prior to engaging in that activity.

### B. Plaintiff's Allegations Do Not Establish A Viable Equal Protection Claim.

To successfully mount an equal protection challenge to the regulations and their application to him, Plaintiff must show that he was treated differently than others who are similarly situated to him, and that there is no rational basis for the difference in treatment. See 3883 Connecticut LLC v. District of Columbia, 336 F.3d 1068, 1075 (D.C. Cir. 2003); News America Pub., Inc. v. FCC, 844 F.2d 800, 804 (D.C. Cir. 1998). Individuals or groups that applied for a permit and were granted permission to distribute leaflets at Mount Rushmore are

not similarly situated to Plaintiff, who does not allege that he applied for a permit. Therefore, Plaintiff's assertion that Defendants gave others access to public areas at Mount Rushmore does not, in itself, support a Fifth Amendment equal protection claim. Plaintiff does allege that Defendants delayed processing his permit application but did not delay others' applications; however, the claims premised upon delay are moot for the reasons discussed supra. Defendants acknowledge that a selective enforcement claim might satisfy Rule 12(b)(6)'s notice pleading requirements; however, Plaintiff has not alleged that Defendants allow others to distribute leaflets without a permit. The equal protection claims should therefore be dismissed.

### C. Plaintiff's Allegations Do Not Establish A Viable Void-for-Vagueness or First Amendment Claim.

Finally, Plaintiff's void-for-vagueness and First Amendment Claims (Counts One and Three), also should be dismissed. Defendants' 12(b)(6) arguments are not premised upon an alleged failure to satisfy Rule 8's notice pleading requirements, although Plaintiff appears to believe otherwise. Instead, Defendants have moved for dismissal because their policies and practices would survive constitutional scrutiny even if Plaintiff's allegations are accepted as true and given the benefit of all inferences. The legal analysis supporting Defendants' position is fully set forth in Defendants' Cross-Motion for Summary Judgment, Docket Entry 45, which is incorporated herein by reference, and refutes the arguments presented in pages 15-35 of Plaintiff's opposition. As explained in that legal memorandum, the regulations are a reasonable content-neutral time, place, and manner restriction, and establish a permit process that is neither vague nor overbroad.

### III. THE CLAIMS AGAINST NPS OFFICIALS IN THEIR INDIVIDUAL CAPACITIES ALSO SHOULD BE DISMISSED.

Plaintiff's Bivens claims also should be dismissed, for the reasons set forth in Defendants' separate motion to dismiss those claims. See Dkt. Entry 44. At the time the April 15, 2008 motion was filed, counsel for Defendants had not received authority to represent the NPS officials in their individual capacities; nonetheless, the motion to dismiss the official capacity claims discussed some of the defenses that would be available to the NPS officials in their individual capacity. See April 15, 2008 MTD, Dkt. Entry 36, at 23-28. Counsel for Defendants subsequently obtained representational authority, and moved that the Bivens claims be dismissed. See Dkt. Entry 44. Given the overlap between the jurisdictional and qualified immunity arguments addressed in the two motions, and the fact that only the latter motion directly presents those defenses, Defendants will not re-hash those arguments in this reply brief. Instead, Defendants will respond to Plaintiff's arguments regarding the Bivens claims in their reply in support of the motion to dismiss those claims.[5]

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted.

Dated: June 30, 2008                                Respectfully submitted,

                                                    /s/
                                                    JEFFREY A. TAYLOR, D.C. Bar # 498610
                                                    United States Attorney

---

[5] Plaintiff noted that he was responding to the arguments concerning dismissal of the Bivens claims "out of an abundance of caution," and suggested that he may raise additional arguments when opposing Defendants' Bivens motion to dismiss. Opp. at 37 n.7.

        /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

      /s/ Robin M. Meriweather
ROBIN M. MERIWEATHER, D.C. Bar # 490114
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7198
(202) 514-8780 (fax)
Robin.Meriweather2@usdoj.gov

(NPS Form 10-930)
(OMB No. 1024-0026)
(NEW 10/00)
(Expires 3/31/2010)

**National Park Service**
**Mount Rushmore National Memorial**
13000 Hwy. 244, Bldg. 31 Suite 1
Keystone, SD  57751
(605) 574-3113, 3125, 3115
Fax (605) 574-2307



### Application for Special Use Permit – First Amendment Request

Please supply the information requested below. **Attach additional sheets, if necessary, to provide required information**. Allow 4 business days for processing (2 business days for First Amendment requests).  A non-refundable processing fee must accompany this application unless the requested use is an exercise of a First Amendment right.  You will be notified of the disposition of the application and the necessary steps to secure your final permit. (Note: there may be additional fees charged, and you **may** be required to provide proof of liability insurance.)

| | |
|---|---|
| Applicant Name: | Organization Name: |
| Social Security #: | Tax ID #: |
| Street/Address: | Street/Address: |
| City/State/Zip Code: | City/State/Zip Code: |
| Telephone #: | Telephone #: |
| Cell phone #: | Cell phone #: |
| Fax #: | Fax#: |
| E-mail: | E-mail: |

Description of Proposed Activity (attach diagram; attach additional pages if necessary):




Requested Location: _____

Date(s): _____

| Event set up will begin: (date and time) | Event will begin: (date and time) | Event will end: (date and time) | Removal will be done: (date and time) |
|---|---|---|---|
| | | | |

Maximum Number of Participants _____ (please provide best estimate)

Maximum Number of Vehicles _____ (attach parking plan)

Support Equipment (list all equipment; attach additional pages if necessary)


List support personnel (contractors, etc. including addresses and telephones; attach additional pages if necessary)


Individual in charge of event on site (include address, telephone and cell phone numbers):


| | Y | N |
|---|---|---|
| Is this an exercise of First Amendment Rights? | ☐ | ☐ |
| Are you familiar with/have you visited the requested area? | ☐ | ☐ |
| Have your obtained a permit from the National Park Service in the past? | ☐ | ☐ |
| (If yes, provide a list of permit dates and locations on a separate page.) | | |
| Do you plan to advertise or issue a press release before the event? | ☐ | ☐ |
| Will you distribute printed material? | ☐ | ☐ |
| Is there any reason to believe there will be attempts to disrupt, protest or prevent your event?(If yes, please explain on a separate sheet.) | ☐ | ☐ |
| Do you intend to solicit donations or offer items for sale? (These activities may require an additional permit.) | ☐ | ☐ |

The applicant by his or her signature certifies that all the information given is complete and correct, and that no false or misleading information or false statements have been given.

Signature _____   Date _____

*******************************************************************************
Information provided will be used to determine whether a permit will be issued.  A completed application must be accompanied by an application fee in the form of a cashiers check or money order in the amount of $ _0_ made payable to **National Park Service**.  Application and administrative charges are non-refundable. *This completed application should be mailed to_ Permit Coordinator _ at the Park address found on the first page of this application.*

**Note** that this is an application only, and does not serve as permission to conduct any use of the park.  If your request is approved, a permit containing applicable conditions and regulations will be sent to the person designated on the application.  The permit must be signed by the responsible person and returned to the park prior to the event for final approval by the Park Superintendent.

*******************************************************************************
**Paperwork Reduction Act Statement:** This information is being collected to allow the park manager to make a value judgment on whether or not to allow the requested use.  All the applicable parts of the form must be completed. A Federal agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

**Estimated Burden Statement:** Public reporting burden for this form is estimated to average 30 minutes per response including the time it takes to read, gather and maintain data, review instructions and complete the form.  Direct comments regarding this burden estimate or any aspects of this form to the National Park Service, Special Park Uses Program Manager, 1849 C Street NW (2460), Washington, D.C. 20240.