UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL BOARDLEY,

        Plaintiff,

v.                                                                    Civil Action No. 07-1986 (JR)

UNITED STATES DEPARTMENT OF THE
INTERIOR, *et al.*,

        Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' SECOND
MOTION TO DISMISS AND MOTION TO STAY DISCOVERY PENDING
RESOLUTION OF MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

I.     STATEMENT OF FACTS ................................................................................. 1

II.    ARGUMENT ...................................................................................................... 4

       A.    THIS COURT HAS PERSONAL JURISDICTION OVER EACH
             DEFENDANT............................................................................................. 5

       B.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY
             FROM THE CLAIMS AGAINST THEM IN THEIR INDIVIDUAL
             CAPACITIES. ............................................................................................ 9

             1.    Defendants Are Not Entitled to Qualified Immunity from Plaintiff's
                   First Amendment Claims. ................................................................. 10

                   a.    Plaintiff has adequately pled a violation of his First
                         Amendment rights.................................................................. 11

                         i.    36 C.F.R. §§2.51-2.52 are unconstitutional because
                               they grant unfettered discretion to park officials in
                               granting or denying permits. ......................................... 11

                         ii.   36 C.F.R. §§2.51-2.52 are unconstitutional because
                               they are not narrowly tailored to achieve a significant
                               government interest......................................................... 15

                         iii.  36 C.F.R. §§2.51-2.52 are unconstitutional because
                               they do not leave open ample alternative channels of
                               communication................................................................ 18

                   b.    Defendants' Regulations are Clearly Unconstitutional Under
                         Established Law. .................................................................... 18

             2.    Defendants Are Not Entitled to Qualified Immunity from Plaintiff's
                   Claim for Overbreadth Under the First and Fifth Amendments. ............... 21

             3.    Defendants Are Not Entitled to Qualified Immunity from Plaintiff's
                   Fifth Amendment Claims.................................................................. 23

             4.    Defendants Are Not Entitled to Qualified Immunity from Plaintiff's
                   RFRA Claim. .................................................................................. 25

             5.    Plaintiff Adequately Pled *Bivens* Claims Against Defendants in Their
                   Individual Capacities. ...................................................................... 29

III.   CONCLUSION................................................................................................... 31

# TABLE OF AUTHORITIES

### Cases

*Agrawal v. Briley*, 2006 WL 3523750
   (N.D. Ill. Dec. 6, 2006) ....................................................................................27

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*,
   418 F.3d 600 (6th Cir. 2005) .......................................................................15, 19

*Anderson v. Century Prods. Co.*,
   943 F. Supp. 137 (D.N.H.1996)........................................................................7

*Anderson v. Creighton*,
   483 U.S. 635 (1987)...........................................................................................9

*Ashcroft v. Free Speech Coal.*,
   535 U.S. 234 (2002)....................................................................................10, 20

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963)............................................................................................11

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*,
   482 U.S. 569 (1987)................................................................................16, 19, 23

*Bell Atlantic Corp. v. Twombly*,
   127 S.Ct. 1955 (2007)...............................................................4, 11, 14, 26

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
   403 U.S. 388 (1971)...............................................................................4, 5, 29

*Brown v. Hot, Sexy & Safer Prods.*,
   68 F.3d 525 (1st Cir. 1995).............................................................................28

*Burk v. Augusta-Richmond County*,
   365 F.3d 1247 (11th Cir. 2004) ...................................................................16, 19

*Cameron v. Thornburgh*,
   983 F.2d 253 (D.C. Cir. 1993)........................................................................29

*City of Boerne v. Flores*,
   521 U.S. 507 (1997)..........................................................................................27

*Cmty. For Creative Non-Violence v. Turner*,
   893 F.2d 1387 (D.C. Cir. 1990)............................................................ *passim*

*Commack Self-Serv. Kosher Meats, Inc. v. New York*,
954 F. Supp. 65 (E.D.N.Y.1997) ...............................................................27

*Conley v. Gibson*,
355 U.S. 41 (1957).....................................................................................4

*Connally v. Gen. Constr. Co.*,
269 U.S. 385 (1926)..................................................................................23

*Cox v. City of Charleston*,
416 F.3d 281 (4th Cir. 2005) ..............................................................15, 19

*Crane v. N.Y. Zoological Soc'y*,
894 F.2d 454 (D.C. Cir. 1990) ...................................................................6

*Delgado v. Fed. Bureau of Prisons*,
727 F. Supp. 24 (D.D.C. 1989) ...................................................................5

*Douglas v. Brownell*,
88 F.3d 1511 (8th Cir. 1996) ..............................................................15, 19

*Employment Div., Dep't of Human Resources v. Smith*,
494 U.S. 872 (1990)..................................................................................27

*Erickson v. Pardus*,
127 S.Ct. 2197 (2007)................................................................................4

*Ex parte Young*,
209 U.S. 123 (1908)....................................................................................4

*Fernandes v. Limmer*,
663 F.2d 619 (5th Cir. 1981) ....................................................................12

*Forsyth County v. Nationalist Movement*,
505 U.S. 123 (1992)...............................................................11, 19, 20, 24

*Gilmore-Bey v. Coughlin*,
929 F. Supp. 146 (S.D.N.Y. 1996)............................................................28

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006).............................................................................25, 28

*Grayned v. City of Rockford*,
408 U.S. 104 (1972)..................................................................................23

*Green v. Mansour*,
    474 U.S. 64 (1985)........................................................................................5

*Grossman v. City of Portland*,
    33 F.3d 1200 (9th Cir. 1994) ...............................................15, 17, 19, 22

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000) .................................................................6

*Hafer v. Melo*,
    502 U.S. 21 (1991).....................................................................................9

*Henderson v. Kennedy*,
    253 F.3d 12 (D.C. Cir. 2001)...................................................................26

*Hynes v. Mayor and Council of Borough of Oradell*,
    425 U.S. 610 (1976).................................................................................23

*Initiative and Referendum Inst. v. U.S. Postal Serv.*,
    417 F.3d 1299 (D.C. Cir. 2005) ..............................................................10

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)...................................................................................6

*Jama v. United States Immigration & Naturalization Serv.*,
    343 F. Supp. 2d 338 (D.N.J. 2004) ....................................................27, 28

*Jihaad v. O'Brien*,
    645 F.2d 556 (6th Cir. 1981) ..................................................................27

*Kentucky v. Graham*,
    473 U.S. 159 (1985)................................................................................5, 9

*Knowles v. City of Waco*,
    462 F.3d 430 (5th Cir. 2006) .............................................................15, 19

*Kolender v. Lawson*,
    461 U.S. 352 (1983).................................................................................23

*Koutny v. Martin*,
    530 F. Supp. 2d 84 (D.D.C. 2007) ............................................................9

*Lawrence v. Acree*,
    79 F.R.D. 669 (D.D.C.1978).....................................................................5

*Lepp v. Gonzales*,
 2005 WL 1867723 (N.D. Cal. Aug. 2, 2005) ................................................27

*\*Mack v. O'Leary*,
 80 F.3d 1175 (7th Cir. 1996) ...................................................................27, 28

*Malik v. Kindt*,
 107 F.3d 21 (10th Cir. 1997) ...........................................................................28

*\*McIntyre v. Ohio Elections Comm'n*,
 514 U.S. 334 (1995).................................................................................17, 22

*Members of City Council v. Taxpayers for Vincent*,
 466 U.S. 789 (1984)...........................................................................10, 19, 21

*Mitchell v. Forsyth*,
 472 U.S. 511 (1985).........................................................................................9

*NAACP v. Button*,
 371 U.S. 415 (1963)...................................................................................20, 21

*\*Naturist Soc'y, Inc. v. Fillyaw*,
 858 F. Supp. 1559 (S.D. Fla. 1994) ................................................................12

*\*Oetiker v. Jurid Werke, G.m.b.H.*,
 556 F.2d 1 (D.C. Cir. 1977) ..............................................................................7

*\*Parks v. Finan*,
 385 F.3d 694 (6th Cir. 2004) ......................................................16, 19, 22, 23

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
 460 U.S. 37 (1983)...........................................................................11, 19, 20

*Robertson v. Merola*,
 895 F. Supp. 1 (D.D.C.1995)............................................................................5

*Rust v. Clarke*,
 851 F. Supp. 377 (D. Neb. 1994).....................................................................28

*Sanders v. Dist. of Columbia*,
 16 F. Supp. 2d 10 (D.D.C. 1998) ......................................................................9

*Saucier v. Katz*,
 533 U.S. 194 (2001).........................................................................................9

*Simpkins v. Dist. of Columbia Gov't,*
    108 F.3d 366 (D.C. Cir. 1997) .......................................................29

*Stafford v. Briggs,*
    444 U.S. 527 (1980) ...........................................................................8

*Summit Health, Ltd. v. Pinhas,*
    500 U.S. 322 (1991) ...........................................................................4

*Sutton v. Rasheed,*
    323 F.3d 236 (3d Cir. 2003) .............................................................27

*Taylor v. F.D.I.C.,*
    132 F.3d 753 (D.C. Cir. 1997) .........................................................14

*Thomas v. Chicago Park Dist.,*
    534 U.S. 316 (2002) .........................................................................21

*Thornhill v. Alabama,*
    310 U.S. 88 (1940) ...........................................................................21

*United States v. Botefuhr,*
    309 F.3d 1263 (10th Cir. 2002) .........................................................7

*United States v. Frandsen,*
    212 F.3d 1231 (11th Cir. 2000) .............................................9, 11, 13

*United States v. Kistner,*
    68 F.3d 218 (8th Cir. 1995) .......................................................18, 21

*United States v. Rainbow Family,*
    695 F. Supp. 294 (E.D. Tex. 1988) ..................................................12

*United States v. Sheehan,*
    512 F.3d 621 (D.C. Cir. 2008) .........................................................20

*United States v. Sued,*
    143 F. Supp. 2d 346 (S.D.N.Y. 2001) .............................................21

*Virginia v. Hicks,*
    539 U.S. 113 (2003) .........................................................................10

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) .........................................................................15

*Washington State Grange v. Washington State Republican Party*,
        128 S.Ct. 1184 (2008) ........................................................................21

\*Watchtower Bible & Tract Soc'y of N.Y. v. Vill. of Stratton*,
        536 U.S. 150 (2002) ....................................................................17, 22

*Winburn v. Bologna*,
        979 F. Supp. 531 (W.D. Mich. 1997) .............................................28

*World-Wide Volkswagen Corp. v. Woodson*,
        444 U.S. 286 (1980) ..........................................................................6

**Statutes**

28 U.S.C. § 1391 ...............................................................................................8

36 C.F.R. § 2.51 (2008) .......................................................................... *passim*

36 C.F.R. § 2.52 (2008) .......................................................................... *passim*

36 C.F.R. §7.96 (2008) ...................................................................................20

42 U.S.C. § 2000bb (2008), *et seq.*.........................................................25, 27

D.C. Code § 13-423 (2007)..............................................................................6

**Other Authorities**

4A Charles Alan Wright & Arthur A. Miller, *Federal Practice & Procedure* § 1069.7
        (3d ed. 2002) .................................................................................7, 8

Linda Sandstrom Simard, *Exploring the Limits of Specific Personal Jurisdiction*,
        62 Ohio St. L.J. 1619 (2001) .......................................................7, 8

S. Rep. No. 103-111,
        *reprinted in* 1993 U.S.C.C.A.N. 1892 ..........................................28

**Rules**

Fed. R. Civ. P. 12 .......................................................................................4, 14

Fed. R. Civ. P. 8 ...............................................................................................4

*Pursuant to LCvR7(a) counsel has placed asterisks to the left of those cases or authorities on which counsel chiefly relies.

Defendants have asked this Court to dismiss Mr. Boardley's case against the Defendants in their individual capacities. But this Court has jurisdiction over all of the Defendants, and Mr. Boardley has clearly alleged violations of his constitutional rights by the Defendants. Controlling case law in this jurisdiction, as well as across the country, affirms the validity of Mr. Boardley's claims, and he has certainly satisfied the requirement that he plead claims which are "plausible." Moreover, Mr. Boardley's rights are clearly established, and a reasonable official would have known that the regulations and the actions at issue in this case violate the Constitution. Thus, Defendants are not entitled to qualified immunity. None of Mr. Boardley's claims against the Defendants in their individual capacities should be dismissed, and Defendants' motion must be denied.

## I.    STATEMENT OF FACTS

Plaintiff Michael Boardley is a resident of Coon Rapids, Minnesota. (Compl. ¶6). He is a professing Christian, and he believes it is his Christian duty and privilege to inform others about the Gospel of Jesus Christ. (Compl. ¶7). Mr. Boardley hands out gospel tracts in public areas because of his sincerely held religious beliefs concerning Christianity. (Compl. ¶8). On August 9, 2007, Mr. Boardley and a few other individuals traveled to Mt. Rushmore to hand out free gospel tracts. (Compl. ¶17). They distributed the tracts beside the "Alley" or "Avenue of Flags," an open section with walkways for visitors after visitors gain entrance to the Mt. Rushmore National Memorial facility. (Compl. ¶18). Their activities occurred without incident or comment from park officials. (Compl. ¶19).

On August 10, 2007, Mr. Boardley and the other individuals returned to Mt. Rushmore and began to hand out the same gospel tracts near the same spot. (Compl. ¶20). Mr. Boardley was not engaging in any loud, consistent speech or using any amplification. (Compl. ¶¶21-22). Mr. Boardley was distributing the tracts by offering them to passersby, and at no time did he

attempt to force his tracts on anyone who did not wish to take one. (Compl. ¶¶23-24). While he was engaged in this activity, Mr. Boardley was approached by Park Ranger L. Hanson. (Compl. ¶25). Ranger Hanson told Mr. Boardley that unless he had a free speech permit for the free speech zone, he would not be allowed to distribute the free gospel tracts. (Compl. ¶26). Ranger Hanson told Mr. Boardley in order to obtain a free speech permit he needed to call a certain phone number—which was available on the Mt. Rushmore website—to request one. (Compl. ¶29). Ranger Hanson did not mention a permit application. (Compl. ¶¶29-30). There is a two-day waiting period for free speech permits at Mt. Rushmore. (Compl. ¶¶29-30).

After Mr. Boardley returned to Minnesota, he called the ranger's office in order to request a permit, and he left two messages. (Compl. ¶31). A park official returned his call and asked for some information from Mr. Boardley, such as his name and address. (Compl. ¶32). There was no application form given to Mr. Boardley to fill out personally. (Compl. ¶33). The park official said that she would mail a free speech permit to him; however, Mr. Boardley never received a permit or denial of permit. (Compl. ¶¶34-35).

On October 2, 2007, Mr. Boardley called Nancy Martinz at the ranger's office and left a voicemail requesting an additional new permit for a different date. (Compl. ¶36). Ms. Martinz returned his call and told Mr. Boardley to contact Chief Ranger Mike Pflaum regarding a permit. (Compl. ¶37). Ms. Martinz also said she would forward Mr. Boardley's request to Defendant Pflaum. (Compl. ¶38). Mr. Boardley called Defendant Pflaum and requested a permit. (Compl. ¶39). Mr. Boardley did not receive a permit from Defendant Pflaum or any other official until after this lawsuit was filed. (Compl. ¶40).

One of Mr. Boardley's associates, Mark Oehrlein, experienced similar problems obtaining a free speech permit in July of 2006. (Compl. ¶¶44-54). Mr. Oehrlein brought tracts

to distribute at no charge at Mt. Rushmore. (Compl. ¶45). He asked a park ranger about doing so, and the park ranger said he needed a permit to distribute tracts. (Compl. ¶46). Mr. Oehrlein went to the office to request a permit and was told by park staff to return later in the day. (Compl. ¶47). He returned at the requested time and did not receive a permit because the park official he spoke with said she could not find any. (Compl. ¶48).

Mr. Oehrlein called the next morning about his request for a permit and spoke with a park official who told him to come back to the office. (Compl. ¶49). He returned to the office to obtain a permit and the park official asked him what he intended to do. (Compl. ¶50). Mr. Oehrlein responded that he wanted to distribute tracts about the Gospel and Christianity. (Compl. ¶51). The park official responded that he "didn't like that" and that Mr. Oehrlein would have to speak with Defendant Pflaum. (Compl. ¶52). However, Mr. Oehrlein was informed that Defendant Pflaum was at the dentist that day. (Compl. ¶53). Despite his efforts, Mr. Oehrlein was never able to obtain a permit and as a result left Mt. Rushmore without being able to give tracts to anyone as he had wished to do. (Compl. ¶54).

36 C.F.R. §§2.51-2.52 (2008) apply to public expression at all national park lands, including Mt. Rushmore. These regulations often use the same language. (Compl. ¶¶58-59). §2.51 allows "public assemblies, meetings, gatherings, demonstrations, and *other public expressions of views*" on park lands only where a permit has been granted by the park superintendent. (Compl. ¶58) (emphasis added). The time frame for granting a permit is only stated as "without unreasonable delay." (Compl. ¶58). A permit may be denied if the superintendent feels that the event will "present a clear and present danger to the public health or safety." (Compl. ¶58). §2.52 allows the sale or distribution of "printed matter" within park lands only where a permit has been granted by the park superintendent, and disallows any sale or

distribution of printed matter if it is "solely commercial advertising." (Compl. ¶59). It allows the superintendent to deny a permit on the same grounds as §2.51. (Compl. ¶59).

## II.    ARGUMENT

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must not dismiss a claim if the plaintiff pleads "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). The Federal Rules of Civil Procedure do not require Mr. Boardley to plead in detail all the facts upon which he bases his claim. Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Twombly*, 127 S. Ct. at 1965 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6), the court "must accept as true all factual allegations made in the complaint." *Erickson*, 127 S. Ct. at 2200; *see also Twombly*, 127 S. Ct. at 1965; *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991).

Plaintiff Michael Boardley brought this suit against the Department of Interior, National Park Service, and several federal officials. (Compl. ¶¶9-16). The federal officials have been named in their official and individual capacities. (Compl. ¶16). Mr. Boardley is plainly aware that sovereign immunity prevents him from obtaining relief in the form of damages against the Defendants in their official capacities, but *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), held that there is an implied cause of action for constitutional violations, which makes it possible to obtain damages against federal agents in their individual capacities. Further, Mr. Boardley may also obtain prospective relief against the Defendants in their official capacities. *Ex parte Young*, 209 U.S. 123 (1908). This includes

injunctive and declaratory relief. *Green v. Mansour*, 474 U.S. 64 (1985). Mr. Boardley has requested both prospective relief, in the form of an injunction and declaratory judgment, and retrospective relief, in the form of damages, from Defendants. Since Mr. Boardley named all of the non-agency Defendants in their official and individual capacities, there are no sovereign immunity problems with the forms of relief sought, and Plaintiff may obtain both legal and equitable relief.

Defendants may not avoid liability in their official capacities pursuant to any personal defenses. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Thus, the instant motion to dismiss deals only with the claims against Defendants in their personal capacities. But this Court has jurisdiction over the claims against all Defendants in their personal capacities, just as it has jurisdiction over the claims against Defendants in their official capacities, and Defendants lack qualified immunity. Accordingly, Defendants' second motion to dismiss must be denied.

## A.   THIS COURT HAS PERSONAL JURISDICTION OVER EACH DEFENDANT.

Mr. Boardley brought his claims for injunctive and declaratory relief against the Defendants in their official capacities, and his claims for damages against the Defendants in their individual capacities. The Supreme Court held that there is an implied cause of action against federal employees for damages in their individual capacities in *Bivens*, 403 U.S. 388. Because *Bivens* suits are suits brought against government officials in their individual rather than their official capacities, "personal jurisdiction is necessary to maintain a Bivens claim." *Robertson v. Merola*, 895 F. Supp. 1, 3 (D.D.C. 1995) (citing *Delgado v. Fed. Bureau of Prisons*, 727 F. Supp. 24 (D.D.C. 1989); *Lawrence v. Acree*, 79 F.R.D. 669, 670 (D.D.C. 1978)). On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal

5

jurisdiction over each defendant.  *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir.

1990).

      The D.C. Circuit uses a two-part inquiry for establishing personal jurisdiction over a non-resident defendant.  First, a court must "examine whether jurisdiction is applicable under the state's long-arm statute," and second, "determine whether a finding of jurisdiction satisfies the constitutional requirements of due process."  *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  To satisfy constitutional requirements of due process, a plaintiff must show "minimum contacts" between the defendant and the forum establishing that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  Under the "minimum contacts" standard, courts ensure that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

      Here, Plaintiff concedes that the unconstitutional actions of the Midwest Defendants did not take place in the District of Columbia, but they took place while the Defendants were acting under color of law pursuant to regulations and policies created and adopted in the District of Columbia.  The District of Columbia's long-arm statute, D.C. Code § 13-423 (2007), provides in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

The plain language of the long-arm statute focuses on commerce, and alone does not seem to provide personal jurisdiction over the Midwest Defendants in their individual capacities. But this would result in the absurd requirement that Plaintiff file two cases arising from the same set of facts in separate jurisdictions. The federal courts have recognized a doctrine which would prevent such an absurd outcome—the doctrine of pendent personal jurisdiction.

Pendent personal jurisdiction, like its better-known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, but lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim. *See generally*, 4A Charles Alan Wright & Arthur A. Miller, *Federal Practice & Procedure* § 1069.7 (3d ed. 2002); Linda Sandstrom Simard, *Exploring the Limits of Specific Personal Jurisdiction*, 62 Ohio St. L.J. 1619, 1622-27 (2001). In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" other claims over which it lacks independent personal jurisdiction onto it, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction. *Anderson v. Century Prods. Co.*, 943 F. Supp. 137, 145 (D.N.H. 1996). The D.C. Circuit, among others, has applied this doctrine. *See Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 4-5, n.10 (D.C. Cir. 1977) (collecting cases and adopting pendent personal jurisdiction).

Where claims "arise from the same common nucleus of operative fact," "the inconvenience to a defendant . . . is not [necessarily] sufficient to dismiss . . . for lack of personal jurisdiction." *See United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (quoting

Wright & Miller, *supra*, § 1069.7 at 228). This is especially true in this case, where this Court has jurisdiction over the claims against the Midwest Defendants in their official capacities pursuant to 28 U.S.C. §1391(e). *See Stafford v. Briggs*, 444 U.S. 527 (1980). Plaintiff has adequately pled the claims against these Defendants in their official capacities, and these arise from the same common nucleus of operative fact as the claims against these Defendants in their individual capacities. There is therefore no great inconvenience to these Defendants that would otherwise require dismissal based on personal jurisdiction, as Defendants are already required to litigate the case involving the same facts in this Court. Moreover, it would promote judicial economy to deal with these similar claims involving the same set of facts in one case rather than two.

Requirements of due process are likewise satisfied since the Midwest Defendants are already being "haled into court" here for claims against them in their official capacity under §1391(e), so it therefore would be no inconvenience or surprise for them to also litigate the claims against them in their individual capacities here. Additionally, Defendants' counsel, also located in this jurisdiction, represents the Defendants in all capacities, so it simply makes sense to litigate all the claims together in the same jurisdiction. Splitting the case up among two forums involves more inconvenience, the potential for inconsistent verdicts, and systemic inefficiency. Simard, *supra*, at 1624. Thus, pendent personal jurisdiction is proper in this situation and will best serve the interests of justice for both parties. This Court therefore can, and should, exercise personal jurisdiction over all of the Defendants in their individual capacities. Mr. Boardley's claims cannot be dismissed for lack of jurisdiction.

**B.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FROM THE CLAIMS AGAINST THEM IN THEIR INDIVIDUAL CAPACITIES.**

While acting pursuant to official duties does not insulate government officials from suit, when sued in a personal capacity, officials are permitted to assert a defense of qualified immunity.  *Hafer v. Melo*, 502 U.S. 21, 29 (1991); *see also Graham*, 473 U.S. at 167.  On a motion to dismiss, a court must first ask whether "taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right." *Koutny v. Martin*, 530 F. Supp. 2d 84, 89 (D.D.C. 2007).  If so, a court will determine "whether the right was clearly established."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  This means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985)).  Where the facts pled by the plaintiff establish a clear constitutional violation, but where the court cannot say as a matter of law that the defendants reasonably could not have been aware that their actions would violate the constitution, a motion to dismiss on qualified immunity grounds will be denied.  *Sanders v. Dist. of Columbia*, 16 F. Supp. 2d 10, 15 (D.D.C. 1998).

While this Circuit has not yet held that these exact regulations are unconstitutional, it has certainly come close in a similar case, and the Eleventh Circuit actually did back in 2000.  *See, e.g., Cmty. For Creative Non-Violence v. Turner*, 893 F.2d 1387 (D.C. Cir. 1990) (finding a permit requirement for all First Amendment activities on Washington Metropolitan Area Transit Authority property unconstitutional because it lacked narrow tailoring); *United States v. Frandsen*, 212 F.3d 1231, 1239-40 (11th Cir. 2000) (striking down 36 C.F.R. §2.51 as facially unconstitutional because it lacked a time frame in which a permit must be granted or denied,

9

granting unfettered discretion to officials).  Moreover, Defendants' regulations contradict long-standing principles of First Amendment law, but Defendants still continue to enforce the regulations.  The regulations at issue violate Mr. Boardley's clearly established constitutional rights, and Defendants are not entitled to qualified immunity from the claims against them in their personal capacities.  At this point, Plaintiff has presented the Court with the reasons these regulations are unconstitutional several times at length.  In the interest of brevity, Plaintiff incorporates the arguments previously made, while summarizing them below.

**1.    Defendants Are Not Entitled to Qualified Immunity from Plaintiff's First Amendment Claims.**

Mr. Boardley challenges 36 C.F.R. §§2.51-2.52 as violations of the First and Fifth Amendments both on their face and as applied.  The Supreme Court recognizes two ways to bring a facial challenge to a law or regulation under the First Amendment.  *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 417 F.3d 1299, 1312-13 (D.C. Cir. 2005) (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984)).  A law is invalid on its face if it is "unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad."  *Id.* at 1312.  Although the "every application" formulation is the "general rule, the latter is the rule for facial challenges brought under the First Amendment."  *Id.*  Plaintiff is therefore not required to prove that *all* applications of the regulations are unconstitutional to succeed on his facial challenge.  "The showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate all enforcement of that law."  *Id.* at 1312-13 (quoting *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003); citing *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244, 256 (2002)).  Mr. Boardley can certainly show that Defendants' application of the regulations to him violated the Constitution.  Furthermore, at

the motion to dismiss stage, Mr. Boardley is not required to *prove* his case—he must only state facts which allege a "plausible" claim. *Twombly*, 127 S. Ct. at 1974.

> **a.      Plaintiff has adequately pled a violation of his First Amendment rights.**

In a traditional public forum, the government may regulate speech with time, place, and manner regulations, so long as the regulations are 1) content-neutral; 2) narrowly tailored to serve a significant government interest; *and* 3) leave open ample alternative channels of communication. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Moreover, regulations requiring authorization from a public official before expressive activity may occur in an archetypical public forum are a prior restraint on speech. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992). Prior restraints bear a heavy presumption against their constitutionality. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Thus, prior restraints have to meet the three-part test for speech restrictions in a traditional public forum, *and also* a fourth requirement prohibiting delegation of overly broad discretion to a government official. *Forsyth County*, 505 U.S. at 130. Permit requirements are prototypical examples of prior restraints, and the permit requirements of §2.51 and 2.52 are no exception. *See Frandsen*, 212 F.3d at 1237.

> **i.      36 C.F.R. §§2.51-2.52 are unconstitutional because they grant unfettered discretion to park officials in granting or denying permits.**

Even if Plaintiff were required to prove all applications of the regulations at issue are invalid, he can do so. Here, the regulations at issue have no constitutional application because on their face, they are prior restraints which do not restrain the discretion of government officials in granting or denying a permit. (Compl. ¶¶80, 92-94). It is well-established that the limitation of discretion is an essential ingredient of any prior restraint that can be deemed constitutional;

neither of Defendants' regulations contains any such limitation. As such, they can never be applied constitutionally because an administrator will always be able to decide, free of any constraints, whether or not they want to permit speech, and how long they should wait until they grant the permit. Thus, Plaintiff has adequately pled, and will succeed, on his facial challenge to the regulations under the First Amendment, even if the standard for facial challenges outside the First Amendment context applied here.

§§2.51-2.52 are unconstitutional because the criteria park officials must follow in considering whether to grant or deny a permit are vague and permit those officials to exercise unbridled discretion. (Compl. ¶¶ 68, 75, 77, 80). Both regulations permit the park superintendent to deny a permit if "it reasonably appears" that the expressive conduct "will present a clear and present danger to the public health or safety." 36 C.F.R. §2.51(c)(2), §2.52(c)(2). Other courts have found similar language to vest excessive discretion in administrators, since the term is not defined and is unduly vague. *See United States v. Rainbow Family*, 695 F. Supp. 294, 311 (E.D. Tex. 1988) (finding that a Forest Service regulation with the same language at issue here was facially unconstitutional for granting unbridled discretion to administrators); *Naturist Soc'y, Inc. v. Fillyaw*, 858 F. Supp. 1559 (S.D. Fla. 1994) (finding a state park regulation containing the same language to be unconstitutional on its face); *see also Fernandes v. Limmer*, 663 F.2d 619, 628, 631 (5th Cir. 1981), *cert. dismissed,* 458 U.S. 1124 (1982) (striking down a permit requirement which gave administrators the authority to deny a permit for expressive activities if they had "good reason to believe that the granting of the permit will result in a direct and immediate danger or hazard to the public security, health, safety or welfare").

Additionally, §2.51 requires a permit for any "public expression of views." If the Defendants do not mean to require a permit for every instance of someone publicly expressing their views at a national park, these words are unduly vague and do not restrain administrators in deciding whether or not a permit should be required. The words of the regulation give park administrators the authority to decide what, in their sole discretion, constitutes a "public expression of views" necessitating a permit. This type of unbridled discretion is repugnant to the First Amendment, and renders §2.51 unconstitutional.

Another way §§2.51-2.52 grant unfettered discretion to administrators is through the lack of a defined time period on the face of the regulation in which the permit must be granted or denied. (Compl. ¶91). For example, in *United States v. Frandsen*, the Eleventh Circuit held that §2.51 was facially unconstitutional because it failed to confine the time within which park officials must grant or deny a permit application. 212 F.3d at 1239-40. Although §2.51(c) requires the park superintendent to issue a permit "without unreasonable delay," the Eleventh Circuit found that this "does not provide the superintendent, the public, or any reviewing court, with any guidance as to what is considered 'unreasonable.'" *Id.* at 1240. §2.52(c) contains the same language.

These concerns about the language in §§2.51-2.52 were borne out by what happened to Mr. Boardley and Mr. Oehrlein at the hands of the Defendants. Here, Mr. Boardley applied twice for a permit and received no response until after this lawsuit was filed. (Compl. ¶¶31-40). Mr. Oehrlein also tried to apply for a permit but was told by a park official that they "didn't like" what he wanted to do, they "could not find" the permits, and Defendant Pflaum was at the dentist and unavailable, so he never received a permit and left the park without having been able to engage in his desired expression. (Compl. ¶¶44-54). Defendants effectively silenced Mr.

Oehrlein's speech through their concerted inaction—precisely the danger of the vague language and lack of constraints in §§2.51-2.52 that was pointed out by the Eleventh Circuit.

Defendants argue that the Court should also take into account the management policies which state that permit applications pursuant to the regulations must be processed within two business days, asserting this cures any constitutional ills the regulations have.[1]  But in a motion to dismiss, it is not proper to consider materials outside of the pleadings—the question before the Court is merely whether the plaintiff adequately pled a "plausible" case against the Defendants. *Twombly*, 127 S. Ct. at 1974; *Taylor v. F.D.I.C.*, 132 F.3d 753, 762 (D.C. Cir. 1997) (court may not draw upon facts outside the pleadings when considering a motion to dismiss under Rule 12(b)(6)). In terms of qualified immunity, based only on the allegations in the complaint and taken in the light most favorable to Mr. Boardley, it impossible to say that Defendants reasonably could not have been aware that it is unconstitutional to apply a vague, overbroad regulation requiring a permit before an individual is permitted to "publicly express views" or distribute printed matter.  Whether all of the evidence in the case shows it was reasonable for Defendants to enforce and apply the regulations, and ultimately whether they will be liable for monetary damages, is a different question that should be answered after discovery.  (And Plaintiff believes the question of liability will be answered in the affirmative.)

Thus, aside from their broad language as to when they apply and when a permit should be granted, §§2.51-2.52 are facially unconstitutional because they fail to adequately confine the time in which the park official must act in granting or denying a permit, vesting unfettered discretion in the park administrators and allowing them to simply delay, and by default deny, a

---

[1] Plaintiff has already discussed at length why, even if these policies are considered, they do not correct the constitutional problems with the regulations. (*See* Pls. Opp. Defs. Mot. Part. Summ. J. at 18-21, 34-35).

permit.   Both regulations are therefore facially unconstitutional prior restraints, and Mr.

Boardley's complaint adequately pleads the clear violation of his constitutional rights.

> ii.    **36 C.F.R. §§2.51-2.52 are unconstitutional because they are not narrowly tailored to achieve a significant government interest.**

Even though Defendants' regulations fail the first requirement for prior restraints, which

is all that is necessary for them to fail constitutional scrutiny, they are also facially

unconstitutional because they are not narrowly tailored.  (Compl. ¶¶74, 79).  In order to satisfy a

requirement of narrow tailoring, a regulation must promote a "substantial government interest

that would be achieved less effectively absent the regulation," but must not "burden substantially

more speech than is necessary to further the government's legitimate interests."  *Ward v. Rock

Against Racism*, 491 U.S. 781, 799 (1989).  However, Defendants' regulations burden a vast

amount of speech that is not related to furthering any legitimate government interest, rendering

them unconstitutional.

First, the regulations at issue here do not restrict the applicability of the permit

requirement by the size of the group.  Rather, they require a permit for *any* "public assemblies,

meetings, gatherings, demonstrations, parades and other public expressions of views . . . within

park areas," §2.51, and for *any* "sale or distribution of printed matter," §2.52.  Thus, on their

face, the ordinances apply to individual speakers or pamphleteers.   Because Defendants'

regulations can apply to even individual speakers, they are not narrowly tailored and are

therefore unconstitutional under precedent from this Circuit and six others.  *See, e.g., Turner*,

893 F.2d 1387; *Douglas v. Brownell*, 88 F.3d 1511 (8th Cir. 1996); *Grossman v. City of

Portland*, 33 F.3d 1200 (9th Cir. 1994); *Cox v. City of Charleston*, 416 F.3d 281 (4th Cir. 2005);

*see also Knowles v. City of Waco*, 462 F.3d 430, 436 (5th Cir. 2006) ("Other circuits have held,

and we concur, that ordinances requiring a permit for demonstrations by a handful of people are

not narrowly tailored to serve a significant government interest"); *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608 (6th Cir. 2005) ("Permit schemes and advance notice requirements that potentially apply to small groups are nearly always overly broad and lack narrow tailoring"); *Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1259 (11th Cir. 2004) (Barkett, C.J., concurring) (striking down an ordinance as not narrowly tailored because it applied to "small intimate groups"); *Parks v. Finan*, 385 F.3d 694 (6th Cir. 2004) (striking down a permit requirement for individuals to engage in an activity of "broad public purpose" as a "substantially overbroad restriction on individual speech").

In *Turner*, this circuit struck down a permit scheme that applied to all "free speech activities" on transit authority property. *Turner*, 893 F.2d at 1392. The court pointed out that while the defendant transit authority's state interests were achieved more effectively with the regulation than without it, the permit requirement also "restricts many incidents of free expression that pose little or no threat to WMATA's ability to provide safe and efficient transportation and an equitably available forum for public expression," such as the speech of individuals or small groups. *Id.*

Additionally, §2.51 is facially unconstitutional because it sweeps broadly and requires a permit for a vast range of First Amendment activities. It prohibits *any* "public expression of views" without a permit, which does not even come close to being narrowly tailored to satisfy a substantial government interest. The language of the regulation is very similar to that at issue in *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987), where the Supreme Court struck down a policy at Los Angeles International Airport (LAX) that banned all "First Amendment activities." The Court stated that "under such a sweeping ban, virtually every individual who enters the airport may be found to violate the resolution by engaging in some

'First Amendment activity.'" *Id.* at 575.  Indeed, it is hard to see what types of expression would *not* be included within the realm of "public expression of views."

Defendants have tried to minimize the burden their regulations place on speech, but courts have recognized that the reason permit requirements are so highly scrutinized is that the mere presence of a requirement stifles speech, and requiring a permit to engage in fundamental forms of expression is contrary to the long-standing tradition of free expression in this country. *See Watchtower Bible & Tract Soc'y of N.Y. v. Vill. of Stratton*, 536 U.S. 150, 165-66 (2002).

Both regulations also fail the narrow tailoring requirement because they completely foreclose two crucial types of expression without adequate justification.  Because §§2.51-2.52 require a permit before even an individual may engage in expressive activity or leafleting, they completely eliminate the possibility of spontaneous speech in every National Park in the country. Spontaneous expression is often "the most effective kind of expression." *Grossman*, 33 F.3d at 1206.  But "[b]oth the procedural hurdle of filling out and submitting a written application, and the temporal hurdle of waiting for the permit to be granted may discourage potential speakers. Moreover, because of the delay caused by complying with the permitting procedures, immediate speech can no longer respond to immediate issues." *Id.* (internal quotations omitted).

And because individuals must fill out an application and identify themselves before they may engage in any expressive activities, anonymous speech is likewise eliminated.  Because anonymous speech is so vital to the First Amendment, laws banning or burdening it have been struck down by the Supreme Court as a violation of the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995); *see also Watchtower*, 536 U.S. at 166-67 (holding a permit requirement for door-to-door leafleting effectively prevents a canvasser from remaining anonymous).

Defendants' regulations completely foreclose fundamental methods of expressive activity and severely burden expression in general by the vast breadth of their permit requirement, which cannot be justified by a legitimate government purpose. Defendants' regulations are not narrowly tailored and are therefore unconstitutional on this additional basis.

> ### iii.    36 C.F.R. §§2.51-2.52 are unconstitutional because they do not leave open ample alternative channels of communication.

When considering whether a regulation leaves open ample alternative channels of communication, the Supreme Court generally upholds regulations which merely limit expressive activity to a specific part of the regulated area or to a limited time frame. *Turner*, 893 F.2d at 1393. But in contrast, Defendants' permit requirements at issue here completely exclude all individuals wishing to engage in "public expression of views" or "distribution of printed matter," from all areas of all National Park land unless they obtain a permit. There are no National Park lands, other than those in the National Capital Region, *not* covered by the permit requirement. Thus, "there is no intra-forum alternative." *Id.* Defendants' regulations and actions fail this final prong of prior restraint analysis, and are unconstitutional under the First Amendment as unlawful prior restraints.

> ### b.    Defendants' Regulations are Clearly Unconstitutional Under Established Law.

Defendants claim that they are entitled to qualified immunity because "long ago" *United States v. Kistner*, 68 F.3d 218 (8th Cir. 1995), upheld the regulations at issue.[2] [3] (Defs. Memo. Supp. 2d Mot. Dismiss at 9). But even longer ago, the Supreme Court established that prior

---

[2] *Kistner* was decided by the Eighth Circuit in 1995.
[3] Defendants note that the *Kistner* decision came from the Eighth Circuit, where Mt. Rushmore is located. But this fact is irrelevant because a) the regulations apply to national park land nationwide, and b) because the Defendants with the power to change the regulations in conformity with the law are located in the District of Columbia.

restraints must not grant unfettered discretion to officials; that even time, place or manner restrictions in a traditional public forum must be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication; and that regulations affecting First Amendment rights must be narrowly defined and not overbroad or vague. *See, e.g., Forsyth County*, 505 U.S. at 130; *Perry Educ. Ass'n*, 460 U.S. at 45; *Taxpayers for Vincent*, 466 U.S. at 799. Even longer ago, the Supreme Court established that a ban on all "First Amendment activities," even in a nonpublic forum, was unconstitutionally overbroad. *Jews for Jesus*, 482 U.S. at 575. Even longer ago,[4] this Circuit held that a permit requirement that applied to all "free speech activities" on transit authority property, even by individuals, was unconstitutional because it was overbroad and not narrowly tailored. *Turner*, 893 F.2d at 1392.

If that were not enough, the Fourth, Fifth, Sixth, Eighth, Ninth and Eleventh Circuits have all held that permit requirements for speech in a traditional public forum applied to individuals and small groups are unconstitutional. *Knowles*, 462 F.3d at 436; *Cox*, 416 F.3d 281; *American-Arab*, 418 F.3d at 608; *Burk*, 365 F.3d at 1259; *Douglas*, 88 F.3d 1511; *Grossman*, 33 F.3d 1200; *see also Parks*, 385 F. 3d 694 (striking down a permit requirement for individuals to engage in an activity of "broad public purpose" as a "substantially overbroad restriction on individual speech"). And the Eighth Circuit's reasoning in its later decision in *Douglas* concerning a permit requirement for speech by individuals or small groups is inconsistent with its earlier holding in *Kistner*.

Defendants' regulations violate all of this established law, yet Defendants persist in enforcing them and have not revised them in conformity with legal precedent. Moreover, in

---

[4] *Turner* was decided by the D.C. Circuit in 1990.

terms of common sense, it is a mystery why the Defendants would think that §§2.51-2.52, which require a permit for even an individual to engage in First Amendment activity, would not violate the First Amendment requirement that restrictions on speech be narrowly tailored and not overbroad. Aside from all of the precedent discussed above, Defendants' own regulations allow groups of less than twenty-five people to engage in First Amendment activity on the sidewalk in front of the White House without a permit. 36 C.F.R. §7.96(g)(2)(ii)(E) (2008); *see also United States v. Sheehan*, 512 F.3d 621, 625 (D.C. Cir. 2008). As a matter of fact, Defendants' regulations allow speech activity without a permit for groups of less than twenty-five people throughout the National Capital Region parks and monuments. 36 C.F.R. §7.96(g)(2)(i). Given the vast amounts of visitors to the National Capital Region, and the great risk of terrorists targeting these iconic areas, Defendants have no possible interest in the park lands outside the National Capital Region which would exceed the interests at stake in the Region, so broader, more restrictive regulations on speech are blatantly unjustified. Finally, the fact that the regulations themselves apply to such a broad diversity of parks shows that they are not tied narrowly to address specific government concerns, which is an unambiguous requirement for restrictions on speech and expression. *See, e.g., Forsyth County*, 505 U.S. at 130; *Perry Educ. Ass'n*, 460 U.S. at 45; *Turner*, 893 F.2d at 1392.

Consequently, Defendants cannot claim that the constitutional rights asserted by Mr. Boardley were not clearly established, and they cannot succeed in obtaining qualified immunity from suit in their individual capacities. Thus, Defendants' motion to dismiss Mr. Boardley's First Amendment claims against them in their individual capacities must fail.

2.    **Defendants Are Not Entitled to Qualified Immunity from Plaintiff's Claim for Overbreadth Under the First and Fifth Amendments.**

"The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Free Speech Coal*., 535 U.S. at 244; *see NAACP v. Button*, 371 U.S. 415, 433 (1963) ("In the First Amendment area government may regulate only with narrow specificity.")   A regulation is unconstitutional on its face on overbreadth grounds where there is a likelihood that the statute's very existence will inhibit free expression by inhibiting the speech of third parties who are not before the Court. *Taxpayers for Vincent*, 466 U.S. at 799, 800; *see also Thornhill v. Alabama*, 310 U.S. 88, 97 (1940). Defendants cite only the standard for facial challenges *outside* the First Amendment context. *See Washington State Grange v. Washington State Republican Party*, 128 S. Ct. 1184, 1191 n.6 (2008) (distinguishing facial challenges for overbreadth under the First Amendment).   But with respect to the First Amendment, the Court has recognized for many years that the fundamental right to free speech must be guarded against undue chilling resulting from an overbroad regulation on expressive activity. *Thornhill*, 310 U.S. at 97; *Button*, 371 U.S. at 433.

Additionally, the cases cited by Defendants to support their argument that the regulations at issue are not facially invalid did not consider the issue of overbreadth. *Kistner* specifically noted that the defendant did not raise a distinct challenge based on overbreadth and it therefore did not consider that issue.  68 F.3d at 220 n.5.  The discussion of *Frandsen* in *United States v. Sued*, 143 F. Supp. 2d 346, 352 (S.D.N.Y. 2001), makes clear that it did not consider whether the regulation was unconstitutionally overbroad, as it took into account not only the text of the specific statute or regulation, but also how it has been interpreted by the persons who are charged with its implementation.   But in a challenge for facial overbreadth, the interpretation of a regulation by government officials is irrelevant, since the court is examining whether the plain

language of the regulation sweeps unnecessarily broadly and chills the speech of those not before the court. *See Taxpayers for Vincent*, 466 U.S. at 799. Thus, *Sued* plainly did not consider the issue of overbreadth. And *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 317 (2002), considered only whether the ordinance was a facially unconstitutional prior restraint, and not whether it was facially overbroad. As a result, Defendants can point to no case law which justifies their enforcement of the overbroad regulations.

Defendants' regulations are facially overbroad because they include a sweeping amount of protected activity within their scope. (Compl. ¶75-76). §2.51 and §2.52 require a permit for any individual who may "publicly express views" or distribute literature. (Compl. ¶¶58-59). As discussed above, there is no justification for the regulation of such small scale First Amendment activities in a traditional public forum, yet this clearly protected activity is swept in with expressive conduct such as a large gathering, march, or parade involving many people, a type of activity that may be more properly regulated with a permit scheme. Moreover, simply requiring a permit before even an individual may engage in expressive activity or leafleting chills speech because it makes it less likely an individual will jump through all of the bureaucratic hoops to do so. *See Grossman*, 33 F.3d at 1206 (internal citations omitted).

§§2.51-2.52 additionally chill protected speech by completely foreclosing crucial methods of expression. As discussed above, requiring a person to apply for and obtain a permit prior to "publicly expressing views" or distributing any "printed matter" completely forecloses both spontaneous and anonymous speech. Limitations on these types of speech without justification are overbroad and violate the First Amendment. *Watchtower*, 536 U.S. at 166-67; *McIntyre*, 514 U.S. 334; *Parks*, 385 F.3d at 702-03. §2.51 is also facially overbroad because it grants unfettered discretion to administrators in determining what "public expression of views"

22

means, as it is a vague term not defined by the regulation.  (Compl. ¶68, 80, 93).  This discretion creates the danger of uneven or discriminatory enforcement.  These regulations are both substantially overbroad in relation to their legitimate purposes, and violate the First Amendment on this alternative ground.  Accordingly, Mr. Boardley has more than satisfied his burden of pleading a plausible claim for overbreadth, and Defendants' regulations violate clearly established law.

### 3.    Defendants Are Not Entitled to Qualified Immunity from Plaintiff's Fifth Amendment Claims.

For a statute to pass muster with respect to vagueness, it must define the offense involved with sufficient specificity so that a person of ordinary intelligence is not required to guess at what conduct is prohibited.  *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).  This standard is applied even more strictly to statutes that inhibit free speech because of the high value our society places on it.  *Hynes v. Mayor of Borough of Oradell*, 425 U.S. 610, 620 (1976).  A "void for vagueness" challenge may be brought against regulations if the terms are vague and would result in arbitrary and discriminatory enforcement by law enforcement officials.  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also Grayned v. City of Rockford*, 408 U.S. 104,108-09 (1972).

Just like the provisions at issue in *Turner* and *Jews for Jesus*, it is unclear what expressive activity would *not* be included within the ambit of these regulations.  §2.51 requires a permit for any "public expression of views."   A "public expression of views" could mean anything from a planned speech or rally to simply holding a sign, wearing a t-shirt emblazoned with some type of message, arguing with a friend, wearing an armband, etc.  *Jews for Jesus*, 482 U.S. at 574-75; *Parks*, 385 F.3d at 703.  The requirement of a permit for *all* "public expression of views" in all National Park lands is clearly unconstitutionally overbroad, as discussed above.

Defendants cannot save their regulations by trying to read them more narrowly because if they are not meant to proscribe such a broad spectrum of expression, the language of §2.51 is unconstitutionally vague, since on its face it is so broad that it will cause potential speakers to self-censor speech in order to not run afoul of the regulation.  If it is not meant to proscribe such a broad gamut of speech, the language does not put a person of reasonable intelligence on notice of what conduct is and is not allowed.  In turn, this allows park officials to apply the regulation at their sole discretion, which is clearly unconstitutional under established First Amendment law.

Additionally, in applying the regulations to Mr. Boardley, Defendants violated his Fifth Amendment right to equal protection.  Mr. Boardley alleged that "Defendants' regulation, 36 C.F.R. § 2.52, and its corresponding policies and practices as applied to Mr. Boardley constitute impermissible content- and viewpoint-based restrictions on constitutionally protected expression in public fora."  (Compl. ¶73).  He also alleged that "upon information and belief, Defendants allow similarly situated persons access to public ways at Mt. Rushmore to engage in speech, expression and conduct" and that Defendants have a practice of "refusing to timely respond to Mr. Boardley's requests for a permit, but not refusing to respond to the requests of others . . . on the basis of the content and viewpoint of his speech."  (Compl. ¶98-99).  If the Court assumes these allegations are true, as it is required to, Plaintiff has established an equal protection violation.

Contrary to Defendants' contention, Mr. Boardley did in fact allege that the regulations were applied in a content-based manner.  (Compl. ¶¶68-69, 73, 79, 99-100).  And content-based discrimination is clearly unconstitutional under well-established law.  The Supreme Court has held "time and again: [r]egulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment."  *Forsyth County*,

505 U.S. at 135 (internal quotations omitted).  Moreover, even though discovery has not been conducted yet, Plaintiff currently has evidence of a practice of content-based discrimination by Defendants in using the challenged regulations to burden or prevent speech they do not agree with.  In July 2006, Mark Oehrlein, another individual who visited Mt. Rushmore with the purpose of distributing gospel tracts, was told by park officials that they could not find any permits, and he was never granted one.  (Compl. ¶¶44-48).  Mr. Oehrlein was asked by Defendant Baker why he wanted a permit; when Mr. Oehrlein told him he wished to distribute free gospel tracts, the park official stated, "I don't like that," and told Mr. Oehrlein he would instead have to speak with Defendant Pflaum about obtaining a permit.  (Compl. ¶¶ 49-52).  Mr. Oehrlein was subsequently informed by park officials that Defendant Pflaum was at the dentist that day.  (Compl. ¶53).  As a result, after two days of trying, Mr. Oehrlein left Mt. Rushmore without being able to distribute any gospel tracts.  (Compl. ¶54).  This is certainly evidence of a content-based motive, and shows that Plaintiff has more than exceeded his burden of stating a "plausible" claim for the violation of his equal protection rights under the Fifth Amendment.  In addition, Plaintiff has shown that these rights are clearly established, so Defendants do not have qualified immunity from Mr. Boardley's Fifth Amendment claims against them in their individual capacity.

### 4.    Defendants Are Not Entitled to Qualified Immunity from Plaintiff's RFRA Claim.

Under the Religious Freedom Restoration Act (RFRA), the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."  42 U.S.C. § 2000bb-1 (a).  There is one exception: the government may impose such a burden "only if it demonstrates that application of the burden . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that

compelling governmental interest." *Id at.* § 2000bb-1(b); *see generally Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006). Once a plaintiff shows that applying a statute to him will substantially burden his religion, the government must justify the burden by establishing a sufficiently compelling interest and showing that it could not accommodate religion more without serving that interest less.

A "substantial burden" on religious exercise under RFRA is a government action which forces adherents to engage in conduct that their religion forbids or prevents them from engaging in conduct their religion requires. *Henderson v. Kennedy*, 253 F.3d 12, 16 (D.C. Cir. 2001). Plaintiff alleged in his Verified Complaint that he is a "professing Christian, and he believes it is his Christian duty and privilege to inform others about the Gospel of Jesus Christ." (Compl. ¶7). He also alleged that he "hands out gospel tracts in public areas because of his sincerely held religious beliefs concerning Christianity." (Compl. ¶8). Finally, he alleged that "Defendants' regulations, 36 C.F.R. §§ 2.51–2.52, and their corresponding policies and practices, substantially burden [his] exercise of religion." (Compl. ¶105). Defendants' regulations inhibit him from being able to fulfill his sincerely held religious duty by distributing gospel tracts, and in this case, stopped him from being able to do so, and told him pursuant to Defendants' regulations and policies that he needed a permit and that it would take two days to get one. (Compl. ¶¶26, 29-30). Thus, Defendants actually put a stop to Mr. Boardley's religious exercise that day. At the motion to dismiss stage, Plaintiff is simply required to plead "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. Mr. Boardley has adequately pled a violation of his rights under RFRA, since his claim is surely "plausible."

Defendants contend that Mr. Boardley cannot use *Bivens* as a remedy to recover damages against the Defendants for their violation of RFRA. However, none of the cases cited by

Defendants hold that a plaintiff cannot obtain a *Bivens* remedy under RFRA.  To the contrary, at least one circuit court and multiple district courts have held that damages *are* available under RFRA when federal officials are sued in their individual capacities. *See Mack v. O'Leary*, 80 F.3d 1175, 1177 (7th Cir. 1996), *vacated on other grounds sub nom.* 522 U.S. 801 (1997); *Lepp v. Gonzales*, 2005 WL 1867723, *8 (N.D. Cal. Aug. 2, 2005); *Jama v. United States Immigration & Naturalization Serv.*, 343 F. Supp. 2d 338, 376 (D.N.J. 2004); *see also Agrawal v. Briley*, 2006 WL 3523750, *9-11 (N.D. Ill. Dec. 6, 2006) (applying *Mack* and *Jama* to extend RFRA damages analysis to Religious Land Use & Institutionalized Persons Act).

There are three reasons why RFRA allows suits for money damages against federal officials sued in their individual capacities.  First, although RFRA does not explicitly permit individual capacity suits for money damages, it does not explicitly preclude them, either. §2000bb-1 (c); *Jama*, 343 F. Supp. 2d at 374.  "It is by no means evident that because Congress did not expressly state that money damages are available in that section, 'appropriate relief against a government' does not include money damages.  *Id.* (quoting *Commack Self-Serv. Kosher Meats, Inc. v. New York*, 954 F. Supp. 65, 69 (E.D.N.Y.1997)).

Second, a conclusion that RFRA does not allow for suits for money damages "would seem to be at odds with the general Congressional purpose that animates the statute."  *Id*. Congress enacted RFRA to reinvigorate free exercise protections after the Supreme Court's decision in *Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872 (1990).  *See* § 2000bb (a) & (b); *City of Boerne v. Flores*, 521 U.S. 507, 512-16 (1997).  And courts "have always recognized § 1983 and *Bivens* claims for money damages against officials for violation of the Free Exercise Clause." *Jama*, 343 F. Supp. 2d at 374 (citing *Sutton v. Rasheed*, 323 F.3d 236, 249, 258 n.38 (3d Cir. 2003) (§ 1983); *Jihaad v. O'Brien*, 645 F.2d 556 (6th Cir. 1981)

(*Bivens*)).  It therefore is "unlikely that Congress would restrict the kind of remedies available to plaintiffs who challenge free exercise violations in the same statute it passed to elevate the kind of scrutiny to which such challenges would be entitled." *Id*. at 375.  RFRA's legislative history confirms this view.  *See* S. Rep. No. 103-111, at 1902, *reprinted in* 1993 U.S.C.C.A.N. 1892, 1902 ("the act does not expand, contract or alter the ability of a claimant to obtain relief in a manner consistent with the Supreme Court's free exercise jurisprudence under the compelling governmental interest test prior to *Smith*").

Third, many courts have assumed that damages are available in *Bivens* actions under RFRA, even if those courts have not awarded damages.  Those courts chose not to award damages based on the merits of the RFRA claim, and not whether damages were available in the first place.  *Jama*, 343 F. Supp. 2d at 375; *see Mack*, 80 F.3d at 1177; *Malik v. Kindt*, 107 F.3d 21 (10th Cir. 1997); *Brown v. Hot, Sexy & Safer Prods.*, 68 F.3d 525, 537-38 (1st Cir. 1995); *Winburn v. Bologna*, 979 F. Supp. 531, 535 (W.D. Mich. 1997); *Gilmore-Bey v. Coughlin*, 929 F. Supp. 146, 151 (S.D.N.Y. 1996); *Rust v. Clarke*, 851 F. Supp. 377, 381 (D. Neb. 1994).

Finally, even if *Bivens* remedies did not extend to RFRA, that would not mean that Plaintiff could obtain no relief—obviously, Congress wanted RFRA to have some meaning when it was enacted.  Plaintiff would still be free to obtain prospective relief, in the form of an injunction, against Defendants under RFRA.  *See O Centro Espirita*, 546 U.S. 418 (upholding grant of injunctive relief to plaintiffs against federal government to protect their sacramental use of hoasca in religious practices).

Defendants are not entitled to qualified immunity from Mr. Boardley's RFRA claim because Defendants violated his clearly established rights. It is difficult to see how a reasonable official could not have known that stopping Mr. Boardley from distributing his gospel tracts

28

would have burdened his religious exercise without adequate justification. Mr. Boardley and his companions distributed tracts at Mt. Rushmore on August 9, 2007 without incident until he was informed on August 10 that he needed a permit and must wait two days to get it. (Compl. ¶¶17-30). Obviously, Mr. Boardley's distribution of tracts proselytizing others to his faith implicates his religious beliefs, but he was forced to stop by park officials acting pursuant to the regulations—not because he was causing a disturbance or damaging park resources, but simply because he lacked a piece of paper stating the park superintendent gave him permission to pass out his tracts. Thus, it would have been clear to any reasonable official that permit requirement was an unjustified restriction on Mr. Boardley's religious exercise in violation of RFRA. Defendants are not entitled to qualified immunity from Mr. Boardley's RFRA claim.

### 5.    Plaintiff Adequately Pled *Bivens* Claims Against Defendants in Their Individual Capacities.

Mr. Boardley sued each of the Defendants in their individual capacities under *Bivens*, 403 U.S. 388. A *Bivens* suit is an action against a federal officer in his or her individual capacity seeking damages for violations of the plaintiff's constitutional rights. *See Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 368 (D.C. Cir. 1997). *Bivens* claims cannot rest merely on respondeat superior. *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993). The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct. *Simpkins*, 108 F.3d at 369. Because Defendants have tried to limit the "illegal conduct" in this case to the denial of a permit to Mr. Boardley, they argue that Defendants Kempthorne, Bomar, and Quintana were not personally involved in that and therefore no *Bivens* claim can be sustained against them. But because the illegal conduct in this case involves the promulgation and enforcement of unconstitutional regulations, and each Defendant is personally involved in those activities, they are liable for damages in their individual capacities for the

constitutional harm caused by the regulations. Mr. Boardley alleged that each of these Defendants are responsible for the administration and enforcement of regulations and policies in National Park lands. (Compl. ¶¶10-15). Mr. Boardley also alleged that the actions taken pursuant to the unconstitutional regulations were done under color of federal law, and that the Defendants knew or should have known that denying Mr. Boardley access to speak at Mt. Rushmore was unconstitutional. (Compl. ¶¶62, 70). Mr. Boardley repeatedly alleged that the regulations themselves are unconstitutional. (Compl. ¶¶67-69, 73-80, 85-88, 90-94, 105). Taking all these allegations as true, as the Court is required to do at the motion to dismiss stage, Plaintiff has clearly stated claims against each of the Defendants in their individual capacities.

Defendants Kempthorne, Bomar, and Quintana are not personally liable for the constitutional violations in this case simply because of respondeat superior. There is more at stake other than Defendants Baker and Pflaum's unconstitutional actions in denying Mr. Boardley a permit. When Defendants Baker and Pflaum required Mr. Boardley to obtain a permit, they were acting pursuant to regulations that did not appear out of nowhere, nor are they the same as a "bare assumption" that policy decisions "influenced" what happened to Mr. Boardley. Defendants Kempthorne and Bomar run the Department of the Interior and the National Park Service, respectively, and Defendant Quintana runs national park lands in the Midwestern region of the country, as Mr. Boardley alleged. (Compl. ¶¶10-15). That plainly includes the enforcement of federal regulations and policies.[5] As Mr. Boardley has made clear,

---

[5] Indeed, since the filing of the Verified Complaint, additional evidence has come to light regarding the national Defendants' responsibility to enforce and interpret the challenged regulations in light of established law. While it is improper to rely on evidence outside the pleadings on a motion to dismiss, and Plaintiff does not need to in order to prevail in stating a claim against the Defendants in their individual capacities, Plaintiff simply notes that Defendants filed two policy memos as exhibits before this Court from Defendant Bomar and a past acting NPS director to all regional directors, attention to superintendents (which would include

the harm to him is occurring because of the continued existence and enforcement of these unconstitutional regulations and policies, which all Defendants are responsible for.

Defendants were all involved in the promulgation and continued enforcement of regulations which violate Mr. Boardley's clearly established constitutional rights; as such, he has stated a successful claim against them in their personal as well as their official capacities.

### III.    CONCLUSION

Defendants' regulations violate settled principles of constitutional law—they are unconstitutional prior restraints, they are overbroad and vague, and have been applied by Defendants in an unconstitutional manner.  This, coupled with the fact that a majority of the Courts of Appeals, including this Circuit, have struck down permit requirements for individuals and small groups as a violation of the First Amendment, shows that Mr. Boardley has not just met the bare minimum of stating his claims—he has stated winning claims. As Mr. Boardley clearly alleged violations of his constitutional rights by Defendants, and his rights are clearly established, Defendants do not have qualified immunity from the claims against them in their personal capacities.  Mr. Boardley's well-pled complaint has exceeded his burden at the motion to dismiss stage, and consequently, Defendants' motion to dismiss should be wholly denied.

---

Defendants Quintana and Baker) about the proper enforcement of the challenged regulations. (Wenk Decl. Att. H, I).  If Defendants' argument boils down to an assertion that Plaintiff did not allege "magic words" in the complaint including the phrase "personally responsible," Plaintiff is happy to amend his complaint to include this and the other evidence that has come to light.

Respectfully submitted this 30th day of June, 2008.

By: /s/ Heather Gebelin Hacker
    Heather Gebelin Hacker
    ALLIANCE DEFENSE FUND


Jordan W. Lorence
D.C. Bar No. 385022
801 G. Street NW, Suite 509
Washington, D.C. 20001
Tel: (202) 637-4610
Fax: (202) 347-3622
jlorence@telladf.org

Timothy D. Chandler*
California Bar No. 234325
Heather Gebelin Hacker*
California Bar No. 249273
101 Parkshore Drive, Suite 100
Folsom, California 95630
Tel: (916) 932-2850
Fax: (916) 932-2851
tchandler@telladf.org
hghacker@telladf.org


Kevin H. Theriot*
Kansas Bar No. 21565
W. Jesse Weins*
Kansas Bar No. 23127
15192 Rosewood
Leawood, Kansas 66224
Tel: (913) 685-8000
Fax: (913) 685-8001
ktheriot@telladf.org
jweins@telladf.org

Benjamin W. Bull+
Arizona Bar No. 009940
15100 N. 90th Street
Scottsdale, Arizona 85260
Tel: (480) 444-0020
Fax: (480) 444-0028
bbull@telladf.org


*Admitted *pro hac vice*
+Of counsel, not admitted in this jurisdiction