UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-------------------------------------------------------
                                                    :
MICHAEL BOARDLEY,                   :        CASE NO. 1:07-CV-01986
                                                    :
            Plaintiff,                          :
                                                    :
vs.                                                :        OPINION & ORDER
                                                    :        [Resolving Doc. 64.]
UNITED STATES DEPARTMENT   :
      OF THE INTERIOR, *et al*.,         :
                                                    :
            Defendants.                     :
                                                    :
-------------------------------------------------------

JAMES S. GWIN,[1/] UNITED STATES DISTRICT JUDGE:

        Plaintiff Michael Boardley seeks a judgment for costs and attorney expenses after his

successful First-Amendment challenge to regulations promulgated by the Department of the Interior.

[Doc. 64.]  For the following reasons, the Court **GRANTS** the motion in part, and **DENIES** it in

part.

## I.

        Plaintiff Michael Boardley "filed this action, seeking a declaration that the [National Park

Service] regulations are unconstitutional and violative of the Religious Freedom Restoration Act

(RFRA), 42 U.S.C. § 2000bb–1, on their face and as applied to him." *Boardley v. U.S. Dep't of*

*Interior*, 615 F.3d 508, 512-13 (D.C. Cir. 2010).

        As the Court of Appeals interpreted the regulations,

        [t]he two regulations challenged here govern "[p]ublic assemblies, meetings," 36
        C.F.R. § 2.51, and the "[s]ale or distribution of printed matter," *id.* § 2.52, within the
        national parks. . . . First, they call for the designation of what the government calls
        "free speech areas." . . . Second, the regulations prohibit "[p]ublic assemblies,

_____

[1/]The Honorable James S. Gwin of the United States District Court for the Northern District of Ohio, sitting by
designation.

Case No. 1:07-CV-01986
Gwin, J.

> meetings, gatherings, demonstrations, parades and other public expressions of views"
> and "[t]he sale or distribution of [non-commercial] printed matter" within park areas,
> unless "a permit [authorizing the activity] has been issued by the superintendent." *Id.*
> §§ 2.51(a), 2.52(a).

*Boardley*, 615 F.3d at 512.

The Court of Appeals found the regulations fatally overboard because they applied to small

groups and individuals, and even in designated free speech areas. *Id.* at 520-23. Noting that "neither

party has argued that we should sever the regulations in order to leave part of them intact," the Court

of Appeals struck them down in their entirety. *Id.* at 525.

Having obtained some of the relief he sought—Boardley had also sought damages—on some

of his proposed bases, Boardley filed this petition for  fees and costs under the Equal Access to

Justice Act ("EAJA").  [Doc. 64.]

## II.

The EAJA  provides in certain circumstances for award of attorney's fees and costs to a

litigant who prevails in a lawsuit against the United States:

> A court shall award to a prevailing party other than the United States fees and other
> expenses, in addition to any costs  . . . incurred by that party in any civil action  . . .
> including proceedings for judicial review of agency action, brought by or against the
> United States in any court having jurisdiction of that action, unless the court finds that
> the position of the United States was substantially justified or that special
> circumstances make an award unjust.
> . . .
> The court, in its discretion, may reduce the amount to be awarded . . . or deny an
> award, to the extent that the prevailing party during the course of the proceedings
> engaged in conduct which unduly and unreasonably protracted the final resolution of
> the matter in controversy

28 U.S.C.A. § 2412(d)(1).

"Once a plaintiff has been shown to be a prevailing party, the burden is on the government

Case No. 1:07-CV-01986
Gwin, J.

to show that its litigation position was substantially justified on the law and the facts." *Cinciarelli v. Reagan*, 729 F.2d 801, 806 (D.C. Cir. 1984). To show substantial justification for purposes of the EAJA, the Government must show that its position was "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (quotation omitted). It must show that its position was "more than merely undeserving of sanctions for frivolousness." *Id.* at 566. Where the merits panel finds the Government's position was entirely without merit, it is not substantially justified for EAJA purposes. *See Halverson v. Slater*, 206 F.3d 1205, 1211 (D.C. Cir. 2000).

The Government's "position" for EAJA purposes "includes, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). "While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161-62 (1990). Nonetheless,

> [i]n some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. . . . The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

*Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983); *see Jean*, 496 U.S. at 161 (applying *Hensley*'s interpretation of "prevailing party" to the EAJA); *see also Gatimi v. Holder*, 606 F.3d 344, 350 (7th Cir. 2010); *Tripoli Rocketry Ass'n, Inc. v. ATF*, 698 F. Supp. 2d 168, 175 (D.D.C. 2010).

### III.

The Government concedes that Boardley is a prevailing party, [Doc. 69 at 8]and does not

Case No. 1:07-CV-01986
Gwin, J.

point to special circumstances that would make an award unjust.  Instead, the Government says that it was substantially justified in promulgating, maintaining, and defending the regulations.  [Doc. 69 at 8.]  It says that it prevailed on many issues and that Boardley did not obtain all of the relief he sought.[2/]  [Doc. 69 at 10-11.]  Boardley says that at least with regard the "other public expression of views" phrasing, and the regulations' failure to exempt individuals and small groups, the Department was not substantially justified.  [Doc. 64 at 5.]  He notes that he obtained invalidation of the entire regulation.  [Doc. 71 at 19.]

But , Boardley brought two distinctly different sets of claims: his successful First Amendment overbreadth challenge, and his unsuccessful claims premised on different legal rights and some even against different defendants.  [Doc. 1.]  These two sets of claims constitute "distinctly different" actions, premised on different factual predicates and different legal theories.  While the former deserves reimbursement, the latter do not.

### A. Free Speech and Due Process Claims

Throughout this litigation, the Government maintained that the regulations did not violate the free-speech clause of the First Amendment.  And the Court of Appeals found the regulations constitutionally deficient *in toto*.  *See Boardley*, 615 F.3d at 525.  Accordingly, evaluating the Government's free speech position holistically, the Court finds that the Government fails to carry its burden of showing substantial justification for its position.

#### 1. Reasoning of the Court of Appeals"

In "considering whether conduct is substantially justified, [a court] should look to the *reason*

---

[2/]  The Government also says that Boardley's filing violated Local Rule 7(m) because he failed to consult with defense counsel.  The Court disagrees.  An EAJA motion is 'dispositive,' and thus falls outside the scope of Rule 7(m). *Tripoli Rocketry Ass'n, Inc. v. ATF*, 698 F. Supp. 2d 168, 173 (D.D.C. 2010).

Case No. 1:07-CV-01986
Gwin, J.

the agency action was invalidated." *LePage's 2000, Inc. v. Postal Regulatory Comm'n*, 674 F.3d 862, 866 (D.C. Cir. 2012) (emphasis in original).  The Court of Appeals found the regulations "antithetical to the core First Amendment principle that restrictions on free speech in a public forum may be valid only if narrowly tailored.  Because these regulations penalize a substantial amount of speech that does not impinge on the Government's interests, [the court] f[ound] them overboard." *Boardley*, 615 F.3d at 508.

Overbreadth doctrine protects against free-speech-chilling regulation. *See id.* at 513 (quoting *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 129 (1992)).  It thus exists in some tension with the EAJA's "substantial justification" requirement:  Substantial justification might refer to the quality of the rationale for the regulation or scope of the regulation's tailoring.  The Court finds no reason to choose one construction over the other and finds the latter more applicable here.[3/]

The rationale the Government offer for the regulations, while justified in some applications, was  incongruous with the broad reach of the regulations.  *See Boardley*, 615 F.3d at 519.  The Court of Appeals particularly noted two shortcomings.  First, the Court of Appeals observed that the "'free speech areas' made available within national parks . . . are subject to the same permit requirement as all other locations within the national parks." *Id.* at 515.  But, "by definition, these are not areas where the Government has a paramount interest in maintaining a 'peaceful and tranquil environment." *Id.* at 521.  Accordingly, the Court of Appeals found that "within 'free speech

---

[3/]The scope construction fits with the purposes of the EAJA in the overbreadth context.  The EAJA favors a single position and places the burden on the Government to show that its position was substantially justified.  If the Government could show substantial justification by carrying its burden for one set of valid applications, then EAJA fees would rarely, if ever, be appropriate when a plaintiff brings an overbreadth challenge.  Indeed, the Government might escape EAJA liability in some circumstances where, on the merits, its argument is were frivolous because no reasonable person could find the justification sufficient to justify the regulation's breadth.

Case No. 1:07-CV-01986
Gwin, J.

areas,'the Government  has exceedingly little basis for hushing 'lone pamphleteer[s] . . . .'"  *Id.*
(further citation omitted).   Even after considering the justifiable applications of the regulation, the
Court of Appeals found this defect so grave that the regulation could not be saved by severability.
*See* id. at 522-23.   That it so found suggests just how ~~unjustifiably~~ overbroad the regulations were.

Second, the Court of Appeals found "considerable support from this and other circuits" that
the failure of the regulations to exempt small groups and lone individuals rendered the regulations
defectively overbroad.  *Id.* at 520.  Indeed the Court of Appeals noted that the Ninth Circuit found
that "we and almost every other circuit to have considered the issue have refused to uphold
registration requirements that apply to individual speakers or small groups in a public forum."  *Id.*
(quoting *Berger v. City of Seattle*, 569 F.3d 1029, 1038-39 (9th Cir. 2009) (en banc)).  Such a string
of losses is indicative.  *See Pierce*, 487 U.S. 569.

The reasoning of the Court of Appeals thus suggests that the regulations unjustifiably reached
substantially beyond any legitimate sweep.  And, while, in an appropriate case, some overbreadth
might not render defending a regulation substantially unjustified, in this case, the Court of Appeals
suggested that the tailoring differed so far from the regulations' legitimate sweep as to lack
substantial justification.  Moreover, the Court of Appeals's finding that the regulations could not be
severed suggests that differentiating the extent of the legitimate sweep against the overboard portion
would have been a fool's errand.  The illegitimate sweep so overwhelmed the legitimate sweep as
to render the regulations defunct as a whole.[4]  These considerations coupled with existing precedents

---

[4]The Government also says that it cabined the language of the regulation through its management policies,
which  offered "a binding and precise interpretation of the term."  [Doc. 69 at 16.]  This position is incoherent:  if the
phrase's narrow meaning had been "clear" , it would not have needed clarifying.  Moreover, on initial consideration, this
Court determined that the interpretation, "[i]f anything . . . gives officials more discretion than the regulation itself."
[Doc. 56 at 11-12.]  And the Court of Appeals apparently found the management policy so insignificant that it declined

Case No. 1:07-CV-01986
Gwin, J.

suggest that the Government was not substantially justified in maintaining and defending the regulations.

### 2. Precedent in Support of the Government's Position

The Court of Appeals' reliance on overbreadth also renders the Eight Circuit's holding in *United States v. Kistner* and the opinion of a Magistrate Judge in *United States v. Sued* unhelpful in carrying the Government's burden of showing that its position was substantially justified. From a strategic perspective these cases upholding the regulations suggest that the Government would be substantially justified in continuing to defend the regulations. Nonetheless,

> the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified. Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose.

*Pierce*, 487 U.S. at 569. Again, the Court "look[s] to the *reason* the agency action was invalidated," in this case, overbreadth. *LePage's 2000*, 674 F.3d at 866 (emphasis in original).

Neither *Kistner* nor *Sued* addressed overbreadth. *Kistner* explicitly noted that the court took no position on overbreadth. The Eight Circuit explained:

> [Kistner] does not specifically allege that the policy statement (or regulation) should be invalidated for overbreadth. He also does not identify a significant difference between his claim that the policy statement is unconstitutional as applied to his particular activities and a claim that the policy statement is invalid for overbreadth. *See Van Bergen v. State of Minn.*, 59 F.3d 1541, 1549–50 (8th Cir.1995) (*statute would not be reviewed for overbreadth because appellant failed to identify a significant difference between his claim that the statute was overbroad and his claim that it was unconstitutional as applied*).

*United States v. Kistner*, 68 F.3d 218, 220 n.5 (8th Cir. 1995) (emphasis added). *Kistner* thus offers no support for the regulations' validity in the face of an overt breadth challenge.

---

to consider it at all.

-7-

Case No. 1:07-CV-01986
Gwin, J.

*Sued* likewise focused on case-specific factors.  The court emphasized that Sued "could have engaged in leafleting and public assembly in other suitable areas, such as the vicinity of the Battery Park Facility from which the ferries to the Statue of Liberty embark."  *United States v. Sued*, 143 F. Supp. 2d 346 (S.D.N.Y. 2001).  The court's conclusion was "buttressed by the Park Service's undisputed representations that permits for public assembly or the distribution of written materials at the Statue of Liberty are never denied."  *Id.* at 352.  Thus, the opinion cannot reasonably be read as considering the regulations' overbreadth writ large.  Indeed, the Court of Appeals here went to great lengths to point out that it found the regulations unconstitutional because they applied to zones designated as "free speech areas,"—the very areas *Sued* found important in curing constitutional infirmity.  *See Boardley*, 615 F.3d at 521.

This is a reasonably close case.  Two cases upholding the regulations might typically be sufficient to show substantial justification. But *Kistner* and *Sued* were insufficient to establish the validity of the regulations in every national park under every legal theory.  *Cf. Boardley*, 615 F.3d at 515.  Considered in context of the reasons on which the Court of Appeals actually decided this case, these cases cannot carry the Government's burden.

**B.  Claims under the Free-Exercise Clause and the Religious Freedom Restoration Act**

Still, that Boardley prevailed on one set of claims does not entitle Boardley to reimbursement for the costs of his entire lawsuit.  Boardley's as-applied challenges and his religious freedom claims were unsuccessful.  [Doc. 56 at 4-7.]  He had no prospect of showing that the Government had violated the principle of content-neutrality, and later he conceded that the regulations were content-neutral.  [*Id.*]  It follows that the Government was substantially justified in opposing the RFRA and free-exercise causes of action.  Since, these causes of action were "distinctly different" from the

Case No. 1:07-CV-01986
Gwin, J.

facial challenge, and because the Government prevailed on this array of claims, the Court will not

order compensation. *Hensley*, 461 U.S. at 435.

### C.  Claims against Individual Defendants

Although they involved the same facts and legal theories as the main actions in this case, the

*Bivens* actions cannot give rise to attorneys' fee compensation, regardless of their merits.  The EAJA

specifies that it provides compensation only for actions against "the United States," which it defines

to include "any agency and any official of the United States acting in his or her official capacity."

28 U.S.C. § 2412(d)(2)(C).   *Bivens* claims are premised on personal liability.  *See Bivens v. Six*

*Unknown Named Agents of the Fed. Bur. of Narcotics*, 403 U.S. 388, 392 (1971).   Boardley's

Complaint specifies that all officials are being sued in both "individual and official capacities."

[Doc. 1 at ¶ 16.]  It follows that any efforts expended solely on the *Bivens* claims, must be excluded

from  Boardley's fee award.  *See GasPlus, L.L.C. v. U.S. Dep't of Interior*, 593 F. Supp. 2d 80, 89

(D.D.C. 2009).

### IV.

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve

auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use

estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

Boardley brought five causes of action.  Ultimately, he was successful on one.  He sought damages,

but obtained only invalidation of the regulation.  The case involved no discovery.  The Court

Case No. 1:07-CV-01986
Gwin, J.

accounts for these considerations, against the backdrop afforded by the Supreme Court's observation

that it need not "become green-[a] eyeshade accountant[]."[5/]  *Id.*

A substantial portion of the work in this case involved claims where fee shifting is not

available.  The Court acknowledges that Boardley has already declined to make fee claims for some

work done on these failed claims.  But given the limited success when measured against all the

claims that had been made, the Court finds further reduction appropriate.  Accordingly, the Court will

grant Boardley half of his requested award and half of the expenses requested.

### V.  Conclusion

For these reasons, the Court **GRANTS** Boardley's motion for costs and fees in part but

**DENIES** it in part.  The Court awards Plaintiff $74,554.74 in fees and expenses.

IT IS SO ORDERED.


Dated:  February 7, 2013                                    s/          *James S. Gwin*
                                                           JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE

---

[5/]The parties' briefing engages in protracted, line-by-line dispute over the submitted billing statements.  The Government does not contest that a cost of living adjustment is appropriate [Doc. 69 at 21 n.5], yet decries any additional award for "specialization and/or expertise," and makes no suggestion of an appropriate hourly rate.  [Doc. 69 at 22.] Boardley seeks compensation for a week's worth of paralegal time for the preparation of his fee petition.  [Docs. 74 at 22; 75 at 2.]  The Government decries these fees as unreasonable and proposes a 20% reduction in fees for time spent in preparing the fee petition, yet, needlessly protracts this phase of the litigation by protesting a billing of "64.75 for a transcript of the oral argument . . . because there is no indication that the transcript was necessary for the preparation of any motions or briefs."  [Doc. 69 at 28.]  "Boardley admits the validity of these objections with respect to the transcript fee and the expense of serving officials in their individual capacities," and accordingly agrees to a reduction of $395.75. [Doc. 71 at 21.]  Still, he reasserts that he should be reimbursed for his *pro hac vice* admission fees.  [Doc. 71 at 21.] Both parties also devote considerable time to discussing the reasonableness of billing 0.1 hours for certain emails.  [Doc. 69 at 25; 71 at 17.]